IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GLORIA SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER: |
| | ) | 2:07-cv-704-MEF |
| COOSA COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendant. | | |

## DEFENDANT'S BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Gloria Sims ("Plaintiff") worked for the Coosa County Board of Education (the "Board" or "Defendant") as a substitute lunchroom worker for approximately six weeks in the fall of 2006. When the Board posted the position (as state law required), Plaintiff applied but was not selected. Plaintiff believes the reason she did not get the job was her race and her gender, while the Board asserts that she did not get the job because she lacked a high school diploma or GED as the job posting required.

Although the parties disagree about many facts in this case, the parties agree that (1) the job posting specifically stated that candidates had to have a high school diploma or a GED (Pl. Dep. 52-53, DEX3), and (2) Plaintiff had neither and the

successful candidate had a high school diploma. (Pl. Dep. 22; Jones Dep. 13, PEX7 (Bates No. 0035); Forbus Dep. 42).

Plaintiff also claims Jan Forbus, the Cafeteria Manager who supervised her, gave a poor job reference to a potential employer in the Spring of 2007 in retaliation for her discrimination complaint against the Board.  The undisputed facts establish that Forbus gave an honest, personal opinion, that she was not authorized to speak for the Board, and that her comments were not causally connected to Plaintiff's protected activity.

There exist no genuine issues of material fact and the Board is entitled to judgment on all Plaintiff's claims.

## I.    STATEMENT OF FACTS

### A.    Plaintiff's Employment as a Substitute Worker.

Plaintiff first applied for a position with the Board as a substitute in 2004.[1] (Pl. Dep. 23).  The Board does not post substitute jobs and has no educational requirements for substitutes. (Pl. Dep. 55; Wingard Dep. 19, 22). Plaintiff worked as a substitute lunchroom worker in various locations and at the beginning of the 2005-2006 school year, Jan Forbus (white female), the Cafeteria

---

[1]  Although Plaintiff testified that she believes she applied for a position in April 2004, the only application she ever submitted is dated August 20, 2004. (Pl. Dep. 61, DEX4).  According to that document, she was placed on the substitute Lunchroom and Janitor lists on or about May 9, 2005. (Pl. Dep. DEX4).

Manager at Central High School, called her to come substitute because one of the regular employees, Michael Kelly, had just quit. (Pl. Dep. 23-25, 41-42; *see* Forbus Dep. 21 (explaining that Plaintiff was substituting for Kelley)).  Plaintiff spoke only with Forbus about the assignment at the high school.  Forbus put her right to work and told her she was doing a good job. (Pl. Dep. 42-43, 81).  Plaintiff reports that in August 2006, Forbus said that the lunchroom position was "a man's job" and that Pam Jones (African American female), the Child Nutrition Director, said she had to get some color in the lunchroom.[2] (Pl. Dep. 18).

### B.     Filling the Lunchroom Worker Vacancy in the Fall of 2006.

On September 5, 2006, as state law requires (Ala. Code § 16-22-15), the Board announced that it had a vacancy for a 6-Hour Temporary Lunchroom Worker. (Pl. Dep. DEX3).  The posting, which the Board has used for every Lunchroom Worker vacancy since 1997, clearly specified the qualifications for the position were a high school diploma or GED. (Pl. Dep. 52-53, DEX3; Jones Aff., ¶¶ 2, 5).  Although Plaintiff possesses neither a high school diploma nor GED (Pl.

---

[2]  Forbus denies making these comments but admits that she felt the job was better suited for a man because of the lifting. (Forbus Dep. 57).  Forbus also denies that Jones or anyone else in management with the Board ever told her that she needed to get "some color in the lunchroom", but admits that a prior employee, Kim Abrams, who left her job in the lunchroom during Forbus' first year at the high school (2003 or 2004), made the comment. (Forbus Dep. 40).  The Board recognizes that for purposes of summary judgment, the Court must accept Plaintiff's allegations as true but is otherwise not conceding the truth of these statements.

Dep. 22), she indicated she was interested[3] and was interviewed for the position on September 22, 2006. (Pl. Dep. 67).

A committee comprised of Forbus, Keith Bullard (white male), the Principal at Central High School, and Pamela Jones, who oversees all the lunchroom operations in the school system, interviewed each candidate. (Wingard Dep. 17; Jones Dep. 9, 11; Forbus Dep. 33; Pl. Dep. 39-40). The committee interviewed the following seven candidates:

| Candidate Name | Race/Gender | Diploma/GED |
|---|---|---|
| Plaintiff | White/Female | no |
| Krystal Benson | African American/Female | high school diploma |
| Anthony Braxton Borden | African American/Male | high school diploma |
| Gladdis M. Harris | African American/Female | no |
| Frank T. Jones | African American/Male | no |
| Jerry W. McKinney | African American/Male | high school diploma |
| Larry Wayne Rogers | White/Male | no |

(Jones Aff., ¶ 7). During the interviews, the committee asked the candidates a number of questions about their qualifications and suitability for the position. (Jones Aff., ¶ 8). The committee also asked each candidate whether he or she had a high school diploma or a GED. (Jones Aff., ¶ 8; *see* Pl. Dep. 68 (the issue of whether Plaintiff had a diploma or GED came up in her interview)). Four of the candidates (Plaintiff, Gladdis Harris, Frank Jones, or Wayne Rogers) reported that they did not have a high school diploma or GED. (Jones Aff., ¶ 8; Pl. Dep. 68-69

---

[3] Plaintiff did not submit a written application for the position (other than her August 2004 application for the substitute position) but made her interest known. (Pl. Dep. 50, 61-62, DEX4).

(Plaintiff told the committee she did not have a diploma or GED)).  After learning that they did not possess the posted qualifications, the committee did not further consider them for the position. (Jones Aff., ¶ 8; *see* Wingard Dep. 52 (3 or 4 candidates were eliminated from consideration because they lacked the education requirement); *see* Bullard Aff., p. 1 (once he discovered Plaintiff lacked the educational requirement he no longer considered her)).

The committee recommended Jerry McKinney for the position because he had a high school diploma (Forbus Aff., ¶ 6; Bullard Aff., p. 2), and Bullard thought he gave the best interview. (Bullard Aff., p. 2).  Jones believed McKinney was the best candidate for the position. (Jones Dep. 11, 13).  McKinney's or Plaintiff's race and gender had nothing to do with the decision. (Forbus Aff., ¶¶ 5, 6; Bullard Aff., p. 2; Jones Aff., ¶ 11).  Wingard made a written recommendation to the Board that it hire McKinney for the 6-Hour Temporary Lunchroom Worker position. (Pl. Dep. 75-77).  The Board unanimously voted in favor of hiring McKinney. (Pl. Dep. 77).

### C.    Plaintiff's Last Day on the Job.

Forbus told Plaintiff that she was not recommended to fill the position because she did not have a high school diploma or GED and that the successful candidate, McKinney, had a high school diploma. (Pl. Dep. 44-47).  Plaintiff told Forbus that when she applied (for the substitute position in April 2004) there was

no educational requirement and she thought the decision was unfair. (Pl. Dep. 34, 45-46).

Plaintiff received this news when "the kids were fixing to come in for lunch." (Pl. Dep. 44-45). Upon learning she did not get the job, she was upset, was ugly to Forbus, and left work. (Pl. Dep. 44-45, 107-108). Forbus felt Plaintiff walked off the job, and left her in the lurch and understaffed for the lunch hour. (Forbus Aff., ¶ 7, 8).

**D.    The Subsequent Reference Request.**

On October 27, 2006 Forbus went on a leave of absence because of a personal tragedy. (Forbus Dep. 50, 55; Forbus Aff., ¶ 2). She never returned to work and retired at the end of the school year (May 2007). (Forbus Dep. 8, 50, 56; Forbus Aff., ¶ 2).

Several months later, while Forbus was on leave, someone called her at her home to ask her about Plaintiff. (Forbus Dep. 47-49). Forbus was upset that she was being contacted at home, given she was on leave to deal with a personal tragedy. (Forbus Dep. 50). She had not been authorized by the Board to speak on its behalf and, given that she was contacted at home, she felt she was giving a personal opinion. (Forbus Aff., ¶ 9). Although Forbus cannot recall exactly what she was asked, she recalls that she said that Plaintiff was a substitute and that Plaintiff had walked off the job and left her in the lurch. (Forbus Dep. 52-53;

Forbus Aff., ¶ 8). Forbus was not speaking as a Board employee and was simply giving her honest opinion of Plaintiff. (Forbus Aff., ¶ 9). Although Forbus knew about Plaintiff's discrimination complaint at that time, Plaintiff's complaint did not affect her opinion of Plaintiff's performance and did not affect what she told the caller. (Forbus Aff., ¶ 10).

### E.    The Board's Prior Enforcement of its Education Requirement.

During the time that Wingard and Jones have been in their positions, the Board has posted the Lunchroom Worker position at least nine times. (Jones Aff., ¶ 4; Jones Dep. PEX7 (Bates 0035) (reflecting 9 hires since 2001)). Each posting for the position since 1997 consistently specified that candidates must possess a high school diploma or GED. (Jones Aff., ¶¶ 2, 4; Jones Dep. 17-18). Wingard's predecessor as Superintendent began requiring the educational qualification and Wingard believes that, given the fact that the Board is in the business of education, it is important to require all employees to have at least a high school education or equivalent. (Wingard Dep. 34-35). Sample job postings from the State Board of Education include such an educational requirement. (Wingard Dep. 35).

Prior to the filling of the Temporary Lunchroom Worker position in the Fall of 2006, the Board had a less formal process for filling the cafeteria jobs. (Wingard Dep. 31, 53). The screening and interviews were left to the schools, which then

made recommendations to Jones. (Wingard Dep. 31, 53; Jones Aff., ¶ 3). Jones simply accepted the schools' recommendations and neither Jones nor Wingard were involved in the screening or interviewing process. (*See* Jones Dep. 21 (explaining that she simply accepted the interviewer's recommendations with respect to Cleveland's hire); Wingard Dep. 31, 53). Apparently the schools were not doing a very good job of checking applicants' qualifications and three Lunchroom Workers who lack a high school diploma or GED were hired ((Lisa Cleveland (white female), Barbara Murphy (white female), Calvin Owens (African American male)). (Wingard Dep. 31, 46-50, 53; Jones Dep. 17-18, PEX7 (Bates No. 0035); Jones Aff., ¶ 4(providing race of employees)). Neither Jones nor Wingard were aware that these employees lacked the necessary educational qualifications and only learned that fact in the course of discovery in this lawsuit. (Wingard Dep. 53-54; Jones Dep. 17). The other Lunchroom Workers hired during Wingard's and Jones' time in office have high school diplomas or GEDs. (*See* Jones Dep. PEX7 (Bates No. 0035)).

### F.    Plaintiff's Protected Activity.

At some point after the Board awarded the position to McKinney, Plaintiff complained that she had been discriminated against because of her race and her gender. She told Forbus that her comments were discriminatory and that she thought she was being treated unfairly. (Pl. Dep. 46, 83, 98-99). She also told

the Board that when she applied for the position there was no educational requirement and she felt she had been treated unfairly. (Pl. Dep. 34). Finally, she filed a charge of discrimination with the EEOC on or about November 14, 2006 raising a hiring claim based on race and gender. (Pl. Dep. DEX6). The EEOC issued a Dismissal and Notice of rights on May 3, 2007.

Plaintiff filed this lawsuit on August 3, 2007. (Pl. Dep. DEX2). She raises claims under Title VII and Section 1981 of discriminatory failure to hire and retaliation based on a job reference in April 2007.

## II.    ARGUMENT

### A.    Summary Judgment Standard.

Summary judgment is warranted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the movant, the Board bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U. S. 317 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Thereafter, the burden shifts to Plaintiff, the non-movant, "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. No dispute of material fact exists and the Board is entitled to summary judgment on all of Plaintiff's claims.

## B.     Plaintiff's Hiring Claim Fails as a Matter of Law.

Plaintiff claims that when the Board did not hire her for the Lunchroom Worker position it discriminated against her on the basis of her race (white) and gender (female).  Her claim makes no sense in that she admits she lacks the objective, posted qualification for the job; a high school diploma or GED. (Pl. Dep. 22, DEX3).  Furthermore, Plaintiff admits that she was told the reason she did not get the job was that she lacked a diploma and the person who got the job had one. (Pl. Dep. 45-47, DEX3).  Regardless of who got the job or how allegedly biased the decision makers were, Plaintiff was not eligible for the job, so any discrimination could not have been against her.  Plaintiff cannot establish that the Board's failure to award her a job for which she admits she is not qualified is intentional race or gender discrimination.

A plaintiff may establish a case of unlawful discrimination, which requires a showing of discriminatory intent, through direct evidence, circumstantial evidence, or statistical evidence. *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004). Although the Board anticipates that Plaintiff will argue that she possesses direct evidence, she does not.

Forbus' alleged comment that the Lunchroom Worker job was a "man's job" is not direct evidence of discriminatory intent because it does not establish "the existence of discriminatory intent behind the employment decision without any

inference or presumption." *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *see also Cooper*, 390 F.3d at 724 n.15 ("[d]irect evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor.")  Forbus, who had no input in setting the posted qualifications for the position, was one of three interviewers and, according to Plaintiff, told the committee Plaintiff was doing a good job. (Pl. Dep. 71).  Her alleged comment could be read more than one way: that she felt the job was easier for a man, that a man had previously held the job, or, perhaps, as Plaintiff infers, that she was biased against hiring women in the job. The comment is not so blatant that the intent could be nothing other than to discriminate.    Accordingly, while the alleged comment might be considered circumstantial evidence of Forbus' bias against women, it is not direct evidence of discrimination.

Similarly, the comment attributed to Jones also does not constitute direct evidence of racial discrimination.  Even if the Court overlooks the hearsay nature of the evidence, Jones' alleged comment that "she had to get some color in the lunchroom" simply does not establish intentional discrimination against Plaintiff without inference or presumption.  While Plaintiff, who offers no context for the comment or indication when Jones made this alleged comment, suggests that it must mean that Jones felt an African American had to be hired, that is only one

interpretation.  Perhaps Jones was suggesting that they needed to increase the pool of minority applicants for the lunchroom positions so that they could increase their chances to hire a diverse workforce.  Perhaps a comment about "color in the lunchroom" did not refer to employees but to some other aspect of the lunchroom (*e.g.*, the décor, the menu).  Plaintiff did not report that Jones allegedly said they needed to hire African American lunchroom workers.  Again, while the alleged comment may be circumstantial evidence of Jones' racial bias, it does not, without inference or presumption, establish intentional discrimination.

Because Plaintiff has no direct evidence, she must prove her case using circumstantial evidence within the familiar *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Under *McDonnell Douglas*, Plaintiff must carry the initial burden and establish a *prima facie* case. For her failure to hire claim, she must establish: (1) that she is in a protected class (*e.g.*, white, female); (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that after her rejection, the position was filled by a person outside the plaintiff's protected class. *Enwonwu v.The Fulton-Dekalb Hospital Authority*, 2008 WL 2009517, *11 (11th Cir.).

If Plaintiff can make out a *prima facie* case, a presumption of unlawful discrimination arises, and the burden shifts to the Board to articulate some legitimate non-discriminatory reason for not hiring Plaintiff. *Burdine*, 450 U.S. at 254; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). "In other words, the defendant must produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Cooper*, 390 F.3d at 725 (citations and quotations omitted). The defendant's burden is "exceedingly light", *id*, and the employer merely has a burden of production, not persuasion. *Burdine*, 450 U.S. at 254; *Combs*, 106 F.3d at 1528. It is sufficient if the employer "produce[s] admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Combs*, 106 F.3d at 1528.

Once the Board articulates a legitimate, non-discriminatory reason, the presumption of discrimination is eliminated and the burden shifts back to Plaintiff. *Cooper*, 390 F.3d at 725. Plaintiff must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination. *Combs*, 106 F.3d at 1528; *Cooper*, 390 F.3d at 725. This evidence must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper*, 390 F.3d at 725.

1.   **Plaintiff Cannot Establish Her *Prima Facie* Case Because She Did Not Meet the Posted Qualifications for the Position and the Board Hired a Candidate Who Did.**

To establish her hiring claim, Plaintiff must establish that she did not receive the Temporary Lunchroom Worker position because of her race or gender. She cannot prove her *prima facie* case because although she applied for the Lunchroom Worker position, she did not meet the posted, objective qualifications. As state law required, the Board posted the position. The posting clearly stated that candidates had to have a high school diploma or a GED (Pl. Dep. 52-53, DEX3) and Plaintiff has neither. (Pl. Dep. 22).

Because Plaintiff did not possess the educational qualification, the interview committee agreed that she could not be considered for the job (along with three other candidates who did not possess the same qualification). (Bullard Aff., p.1; Forbus Aff., ¶ 5; Jones Aff., ¶ 8). Forbus told Plaintiff the reason she did not get the job was because she did not have a high school diploma or GED and the successful candidate did. (Pl. Dep. 45-47). Accordingly, the undisputed facts establish that Plaintiff did not meet the posted qualifications for the position and the person the Board hired did, and her *prima facie* case fails.

2.    **The Board Did Not Hire Plaintiff Because She Did Not Meet the Posted Qualifications and She Cannot Establish that the Board's Reason is a Pretext for Race or Gender Discrimination.**

Even if Plaintiff could establish her *prima facie* case, the Board has articulated a legitimate, nondiscriminatory reason for not hiring her: she did not meet the posted job qualification. Furthermore, the Board had at least three candidates who met the qualification and hired one of them. (Jones Aff., ¶¶ 7, 9). The Board's articulated reason is legitimate and nondiscriminatory. The educational requirement is legitimate; the Board is "in the education business" and it makes sense that it would seek to hire educated people. (*See* Wingard Dep. 33-35). Since 1997, every job posting for Lunchroom Worker in Coosa County included the same educational requirement. (Jones Aff., ¶ 2). Additionally, Coosa County is not unique; the State Board of Education provides sample job postings that include this same requirement. (Wingard Dep. 35). The Board's reason is clearly nondiscriminatory in that, as even Plaintiff admits, a high school diploma or GED is attainable regardless of race or gender. (Pl. Dep. 58-59).

Plaintiff cannot bear her burden to prove that the Board's articulated reason is pretextual. First, she has no evidence that the Board added the educational qualification only to the posting for which she applied or that it was somehow aimed at her or other white or female candidates. As noted above, the Board has used the same job posting since 1997; long before Plaintiff applied. (Jones Aff.,

¶ 2).   Second, Plaintiff has no evidence that the Board's application of the educational qualification in September 2006 was somehow unfair or aimed at her or her protected classes.   The undisputed evidence is that when the interview committee learned that four of its seven candidates lacked the posted educational qualification, the committee excluded them from further consideration. (Jones Aff., ¶ 8).   Of those four, one was a white female (Plaintiff), one was an African American female (Gladdis M. Harris), one was a white male (Larry Wayne Rogers), and one was an African American male (Frank T. Jones). (Jones Aff., ¶ 7).   No one who met the educational requirement was excluded and no one who did not meet the educational requirement was allowed to compete further in the process.   The result clearly does not suggest discrimination on the basis of anything other than merit.

Finally, the Board's historical application of the educational qualification does not suggest race or sex discrimination.   Using this job posting, the Board has hired six employees who met the educational qualification (3 white, 3 African American; 4 female, 2 male) and three who did not (2 white, 1 African American; 2 female, 1 male). (Jones Dep. PEX7 (Bates No. 0035); Jones Aff., ¶ 4).   Two of the three people the Board hired who did not meet that qualification share Plaintiff's protected characteristics; Cleveland and Murphy are both white females. (Jones Dep. PEX7 (Bates No. 0035); Jones Aff. ¶ 4).   Again, the Board's past

application of the requirement does not suggest disparate treatment on the basis of race or gender.

Undoubtedly Plaintiff will argue that the Board did not enforce (or perhaps waived) its educational requirement in the past and to enforce it with respect to Plaintiff is somehow discriminatory. The Board admits that before the Fall of 2006 it had a more informal process in which neither Wingard nor Jones ensured that the people hiring lunchroom staff were checking for the educational requirement. (Wingard Dep. 31, 53; Jones Aff., ¶ 3). That their prior process resulted in the hiring of two unqualified white women in 2003 and 2005 and an unqualified African American man in 2002 (unbeknownst to Wingard or Jones) suggests a mistake rather than intentional discrimination.

The undisputed evidence establishes that in filling the Lunchroom Worker position in September 2006, the Board changed the process and constituted an interview committee that included Jones. (Wingard Dep. 17, 31, 53; Jones Aff., ¶ 3). This committee asked each candidate whether he or she had a diploma or GED and excluded those who did not. (Jones Aff.,¶ 8). That the Board improved its selection process and insured its posted qualifications were applied does not suggest discrimination on the basis of race or gender. That the improvement resulted in the exclusion of four candidates (2 white, 2 African American; 2 female, 2 male) certainly does not suggest racial or gender discrimination.

Plaintiff cannot prove that the Board's articulated reason is pretextual and the Board is entitled to judgment as a matter of law.

### B.    Plaintiff's Retaliation Claim Fails as a Matter of Law.

Although Plaintiff alleges that Forbus' statements to a reference checker were retaliatory (Pl. Dep. 93-94), she can offer no facts to support that claim. In the absence of direct evidence of retaliation, a court must analyze a Title VII claim under the familiar framework set out in *McDonnell Douglas* and *Burdine*. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). The first step in the *McDonnell Douglas* analysis is for the plaintiff to establish a *prima facie* case of retaliation by showing that "(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, fn. 52 (11th Cir. 2008) (*quoting Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998)). The plaintiff must show a materially adverse action and she cannot merely show "the petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006) (citations omitted). To show causal connection, the plaintiff must prove "that the protected activity and the adverse action are not completely unrelated," *Wideman*, 141 F.3d at 1457, but "merely showing that the alleged

adverse action occurred sometime after the protected expression does not establish the causation element-- for temporal progression to be enough, the events must be in 'very close' proximity." *Davis v. Coca-Cola*, 516 F.3d at fn. 52 (*citing Clark County Sch. Dist. V. Breeden*, 532 U.S. 268, 273 (2001)). Plaintiff cannot establish her *prima facie* case because she cannot establish a materially adverse action by the Board and she can establish no causal connection between Forbus' alleged retaliatory conduct and her complaints of discrimination.

Plaintiff did not suffer a materially adverse employment action. First, the alleged retaliatory reference was not an employment action because it was not the Board's action. Forbus, who had no authority to fire or give written evaluations to employees and did not even know employee salaries (Forbus Dep. 15-16, 23), was not authorized to speak on behalf of the Board. (Forbus Aff., ¶ 9). Accordingly, Forbus was not in a position to take any employment action against Plaintiff because she was not her employer. Second, assuming Forbus was acting on behalf of the Board, her comments were not materially adverse. Forbus told the truth. Plaintiff admits that she walked off the job (Pl. Dep. 44-45), which is what Forbus reported. (Forbus Aff., ¶ 8; Forbus Dep. 52). Certainly the filing of a discrimination claim does not insulate an individual from an honest, if less than flattering, reference. At most Forbus' report to the reference checker-- that

Plaintiff admits is true-- is one of the "petty slights" or "minor annoyances . . . that all employees experience." *Burlington Northern*, 126 S.Ct. at 2415.

Finally, Plaintiff can establish no causal connection between the reference check and her protected activity. Forbus acknowledges that she knew about Plaintiff's discrimination complaints when she got the call but that fact did not affect what she told the reference checker. (Forbus Aff., ¶¶ 8-10). Plaintiff has no evidence to suggest that the reason Forbus provided the reference was retaliation.

Plaintiff also lacks significant temporal proximity between her protected activity and the reference check to establish a causal connection. The reference check occurred several months after Plaintiff walked off the job (apparently April 24, 2007[4]), while Forbus was on leave of absence. (Forbus Aff., ¶¶ 7, 8). Plaintiff filed her charge of discrimination on November 14, 2006. (Pl. Dep. DEX6). Accordingly, Forbus' comments about Plaintiff and the alleged retaliation occurred (at least) more than five and one half months after Plaintiff's protected activity.

While a plaintiff can meet the burden of establishing causation by showing close temporal proximity between the statutorily protected activity and the adverse

---

[4] Plaintiff produced a document in discovery indicating that Employment Screening Services performed a background check on Plaintiff on or about April 24, 2007. (Forbus Dep. PEX2). The Board does not dispute that the background check occurred but would object to this document being offered as proof of the truth of the matters asserted. This is not a Board document and the Board believes that much of what it contains is inadmissible hearsay. The Board is submitting it as part of the record on summary judgment because Plaintiff's counsel used it as an exhibit during Forbus' deposition and the Board is submitting deposition transcripts with all exhibits for the sake of completeness.

employment action, mere temporal proximity without more, must be very close. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). In the absence of other evidence tending to show causation, a substantial delay between the protected activity and the adverse action causes a complaint of retaliation to fail as a matter of law. *Id.* In fact, a three or four month disparity is enough to dispel a suggestion of causation. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Thomas*, 506 F.3d at 1364.

Plaintiff testified that she told Forbus of her belief that the Board's failure to hire her was discriminatory immediately upon learning of the decision, if not before. (Pl. Dep. 45-46, 98). Thus, Forbus knew that Plaintiff felt she had been discriminated against because Plaintiff told her so before she walked off the job. Accordingly, by the time Forbus gave her reference about Plaintiff in April 2007, Plaintiff's protected activity had occurred at least five and a half months earlier. Absent more, five and a half months is simply too long to establish causation, *see Clark County*, 532 U.S. at 273 (three to four months is enough to dispel suggestion of causation), and her *prima facie* case fails.

Even if Plaintiff could establish a *prima facie* case of retaliation, her claim fails because she cannot rebut the Board's legitimate, nonretaliatory reasons for the job reference: Forbus was not authorized to speak for the Board and she gave a truthful, personal reference about Plaintiff. This was not a reference provided by

someone at the Board of Education or by someone authorized to speak on behalf of the Board. (Forbus Aff., ¶ 9). Upon receiving a call at home while she was on terminal leave from her job, Forbus gave her personal opinion; not a statement on behalf of the Board. (Forbus Aff., ¶¶ 2, 8-10). Additionally, Forbus gave her honest opinion. (Forbus Aff., ¶ 8). Plaintiff worked 5 or 6 weeks with Forbus and ended their association by walking of the job without notice and leaving Forbus understaffed and in the lurch. (Forbus Aff., ¶¶ 3, 7-8). Plaintiff admits she walked off and she did so when the "kids were fixing to come in for lunch" (Pl. Dep. 44-45), so she cannot even dispute the truth of Forbus' statement. Finally, Forbus says she gave the reference without regard to Plaintiff's discrimination complaints (Forbus Aff., ¶¶ 8-10), and Plaintiff has no evidence otherwise. Plaintiff cannot establish pretext and her retaliation claim fails as a matter of law.

## III.   CONCLUSION

The Board posted a job and said the successful candidate needed a high school diploma or a GED. Plaintiff applied for the job knowing that she had neither and did not get the job. She admits she lacked the educational qualification and that the successful candidate had it. While she might believe the qualification was unnecessary and that she could perform the job without it; that is simply not good enough. The Board is entitled to set nondiscriminatory qualifications and

even Plaintiff admits a high school diploma or GED is available regardless of race or gender. She cannot establish a case of intentional race or gender discrimination and the Board is entitled to judgment as a matter of law.

With regard to her retaliation claim, an honest reference, even one that is unflattering, is not an adverse employment action. Not only was Forbus speaking for herself (rather than for the Board), she told the truth without regard to Plaintiff's discrimination complaint. That the reference came more than five and a half months after the protected activity further dissolves any causal connection and judgment is due as a matter of law.

s/Donald B. Sweeney, Jr.
DONALD B. SWEENEY, JR.


s/Anne R. Yuengert
ANNE R. YUENGERT

OF COUNSEL

Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jerry Roberson, Esq.
Roberson & Roberson
P.O. Box 380487
Birmingham, AL  35238

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None

s/Anne R. Yuengert
Of Counsel