# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| GLORIA SIMS, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | |
| | ) | 2:07-cv-704-MEF |
| COOSA COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S EVIDENTIARY MATERIALS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Plaintiff Gloria Sims and submits the following evidentiary materials in Opposition to the Defendant's Motion for Summary Judgment:

Exhibit 1.    Deposition I transcript of Todd Wingard

Exhibit 2.    Deposition transcript of Jan Forubs

Exhibit 3.    Deposition transcript of Gloria Sims

Exhibit 4.    Deposition transcript of Pam Jones

Exhibit 5.    Job Posting dated 9/5/2006

Exhibit 6.    ESS - Job reference from Forbus

Exhibit 7.    Affidavit of Barbara Murphy

Exhibit 8.    Affidavit of Jan Forbus

Exhibit 9.    Application of Gloria Sims

Exhibit 10.    Gloria Sims EEOC Charge

Exhibit 11.    Deposition transcript of Barbara Murphy

Exhibit 12.    Deposition transcript of Lisa Cleveland

Exhibit 13.    Deposition transcript of Calvin Owens

Exhibit14.    Deposition transcript of Jerry McKinney

Exhibit 15.    Deposition II transcript of Todd Wingard

Exhibit 16.    Lunchroom worker posting dates/GED, HS Diploma

Respectfully submitted,

s/Jerry Roberson
Jerry Roberson (ROB010)
Roberson & Roberson
P.O. Box 380487
Birmingham, Alabama 35238
Telephone:    (205) 981-3906
Fax:          (205) 981-3908
E-mail: **jdratty@charter.net**
        **tlbaker@charter.net**

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June, 2008, I electronically filed the foregoing with the Clerk of the Court using the using the Electronic Filing system which will send notification of such filing to the following:

Donald B. Sweeney, Jr. (SWE002)
Anne Regina Yuengert
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2119
Telephone:   (205) 521-8000
Facsimile:   (205) 521-8800

s/Jerry Roberson
Jerry Roberson (ROB010)

In The Matter Of:

## GLORIA SIMS
v.
## COOSA COUNTY BOARD OF EDUCATION

### NO. 2:07-CV-704-MEF

---

## TODD WINGARD
## May 21, 2008

---



**TYLER EATON MORGAN NICHOLS & PRITCHETT INC.**

## THE HIGHEST QUALITY IN COURT REPORTING

205.252.9152 • Toll-Free 800.458.6031 • Fax 205.252.0196
One Federal Place, Suite 1020 • 1819 Fifth Avenue North • Birmingham, Alabama 35203
———————— www.TylerEaton.com ————————

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CIVIL ACTION NO. 2:07-CV-704-MEF

GLORIA SIMS,
          Plaintiff,
vs.
COOSA COUNTY BOARD OF EDUCATION,
          Defendant.


VIDEO DEPOSITION
OF
TODD WINGARD
May 21, 2008


REPORTED BY:  Gail B. Pritchett
          Certified Realtime Reporter,
          Registered Professional
          Reporter and Notary Public

---

**Page 2**

1          S T I P U L A T I O N

2

3          IT IS STIPULATED AND AGREED,

4     by and between the parties, through their

5     respective counsel, that the deposition of

6     TODD WINGARD may be taken before Gail B.

7     Pritchett, Commissioner, Certified

8     Realtime Reporter, Registered Professional

9     Reporter and Notary Public;

10          That the signature to and

11     reading of the deposition by the witness

12     is waived, the deposition to have the same

13     force and effect as if full compliance had

14     been had with all laws and rules of Court

15     relating to the taking of depositions;

16          That it shall not be necessary

17     for any objections to be made by counsel

18     to any questions, except as to form or

19     leading questions, and that counsel for

20     the parties may make objections and assign

21     grounds at the time of trial, or at the

22     time said deposition is offered in

23     evidence, or prior thereto.

---

**Page 3**

          A P P E A R A N C E S

FOR THE PLAINTIFF:
     Mr. Jerry D. Roberson
     Attorney at Law
     Roberson & Roberson
     3765 Kinross Drive
     P. O. Box 380487
     Birmingham, Alabama 35238-0487

FOR THE DEFENDANT:
     Ms. Anne R. Yuengert
     Attorney at Law
     Bradley, Arant, Rose & White, LLP
     One Federal Place
     1819 Fifth Avenue North
     Birmingham, Alabama 35203

---

**Page 4**

          INDEX OF EXAMINATION
               PAGE:
EXAMINATION BY MR. ROBERSON          7
EXAMINATION BY MS. YUENGERT          59


          INDEX OF EXHIBITS
               PAGE:
Plaintiff's Exhibit 4          14
Plaintiff's Exhibit 5          37
Plaintiff's Exhibit 6          41

---

1 (Pages 1 to 4)

Page 5

1 I, Gail B. Pritchett, a
2 Certified Realtime Reporter and Registered
3 Professional Reporter of Birmingham,
4 Alabama, and a Notary Public for the State
5 of Alabama at Large, acting as
6 Commissioner, certify that on this date,
7 as provided by the Federal Rules of Civil
8 Procedure of the United States District
9 Court, and the foregoing stipulation of
10 counsel, there came before me at the Coosa
11 County Board of Education, 2001 Nixburg
12 Road, Rockford, Alabama, on the 21st day
13 of May, 2008, commencing at 10:50 a.m.,
14 TODD WINGARD, witness in the above cause,
15 for oral examination, whereupon the
16 following proceedings were had:
17
18 MR. ROBERSON: This is tape
19 one of the videotape deposition of Todd
20 Wingard. Today is May 21st. We are at
21 the offices of the Coosa County Board of
22 Education in Rockford, Alabama. This case
23 is Gloria Sims versus the Coosa County

Page 6

1 Board of Education. It's pending in the
2 United States District Court for the
3 Middle District of Alabama, Northern
4 Division, CV 07-704.
5 My name is Jerry Roberson. I
6 represent the plaintiff, Gloria Sims. And
7 I would ask all counsel of record to state
8 their name and the party they represent.
9 MS. YUENGERT: I'm Anne
10 Yuengert. And along with Donald Sweeney,
11 I represent the Coosa County Board of
12 Education.
13 MR. ROBERSON: Ma'am, would
14 you swear our witness? It's 10:50.
15
16 TODD WINGARD,
17 having been first duly sworn, was examined
18 and testified as follows:
19
20 THE COURT REPORTER: Usual
21 stipulations?
22 MR. ROBERSON: Yes.
23 MS. YUENGERT: Do you want to

Page 7

1 read and sign?
2 THE DEPONENT: Possibly.
3 MS. YUENGERT: Okay. We will
4 just leave that open and you can let us
5 know.
6
7 EXAMINATION BY MR. ROBERSON:
8 Q. Mr. Wingard, you have been
9 here for the deposition of Ms. Forbus,
10 correct?
11 A. Yes, sir.
12 Q. And you are Todd Wingard?
13 A. Yes, sir.
14 Q. And you are the present
15 superintendent of the Coosa County Board
16 of Education?
17 A. Yes, sir.
18 Q. That's an elected position,
19 correct?
20 A. Yes, sir.
21 Q. So you have to run for office
22 -- is it every four years?
23 A. Yes, sir.

Page 8

1 Q. I saw your signs as I was
2 driving to the deposition, so you are up
3 for election this year?
4 A. Yes, sir.
5 Q. How long have you held that
6 position, sir?
7 A. Seven and one-half years.
8 Q. Okay. So you have been
9 elected twice so far?
10 A. Correct.
11 Q. Now, what did you do before
12 you became the superintendent?
13 A. I was an elementary/middle
14 school principal.
15 Q. Here in Coosa?
16 A. Here in Coosa County, yes.
17 Q. And as the superintendent, how
18 many schools are you over?
19 A. We are actually -- we actually
20 have four schools currently, one
21 elementary school, one middle school, one
22 high school and one career/technical
23 center.

2 (Pages 5 to 8)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
May 21, 2008

---

Page 9

1    Q.    Okay.  And besides you as the
2  superintendent, is there a school board?
3    A.    Yes, sir.
4    Q.    How many members on that
5  board?
6    A.    Five board members.
7    Q.    Are they elected as well?
8    A.    Yes, sir.
9    Q.    Are their terms staggered so
10  you don't get a new board every time?
11    A.    Yes, sir, they are staggered.
12    Q.    Okay.  And then does the board
13  and the superintendent on a day-to-day
14  basis manage the school system -- or maybe
15  you on a day-to-day basis and them more
16  oversee it?
17    A.    Yes, sir.
18    Q.    Okay.  Do you know how many
19  employees, approximately, y'all have here?
20    A.    Approximately two hundred.
21    Q.    And do I understand that Coosa
22  County was formerly subject -- the subject
23  or one of many school systems that were

Page 10

1  the subject of a lawsuit and a consent
2  decree about their hiring practices, et
3  cetera?
4    A.    Yes, sir.
5    Q.    Okay.  And you are aware of
6  that lawsuit?
7    A.    Yes, sir.
8    Q.    And I assume you have had some
9  responsibility for dealing with that
10  lawsuit, not that you were here when it
11  began, but the aftermath?
12    A.    Yes, sir.
13    Q.    And have you recently
14  petitioned to get back to making your own
15  decisions, that is, not having a decree
16  that you have to follow?
17    A.    We applied for unitary status
18  probably over -- about a year ago.  I'm
19  not sure of the date, but we have received
20  unitary status and have been lifted from
21  the federal court order.
22    Q.    Okay.  And unitary status
23  means they returned the control to you and

Page 11

1  the board, is that correct?
2    A.    Correct.
3    Q.    Okay.  And so now since the
4  last year, y'all are making the hiring
5  decisions, correct?
6    A.    We made the hiring decisions
7  before.
8    Q.    Okay.
9    A.    And still make them.
10    Q.    Okay.  Well, maybe that's a
11  poor question.
12          You weren't -- you are not now
13  subject to a consent decree about your
14  hiring decisions --
15    A.    Correct.
16    Q.    -- is that a fair statement?
17    A.    Correct, yes.
18    Q.    Okay.  And up until you
19  received this unitary status, you were
20  subject to that decree, correct?
21    A.    Yes, sir.
22    Q.    Okay.  And one of the things
23  that that lawsuit addressed was minority

Page 12

1  hiring, is that -- do you agree with that?
2    A.    Yes, sir.
3    Q.    And so y'all had to keep
4  statistics about how many employees you
5  had and what their races were, correct?
6    A.    Yes, sir.
7    Q.    And you had to report that
8  information to the Court periodically,
9  correct?
10    A.    Yes, sir.
11    Q.    And in addition, you had to
12  make efforts to attract and retain
13  minorities in staffing your schools,
14  correct?
15    A.    Yes, sir.  The main emphasis
16  on the recruitment was in the certified
17  areas.
18    Q.    Teachers?
19    A.    Teachers, yes.
20    Q.    Right, okay.  And it is
21  difficult to attract and retain minority
22  candidates for certified positions, would
23  you agree with that?

3 (Pages 9 to 12)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
May 21, 2008

Page 13

A.   Yes, sir.
Q.   I mean, they are -- they are very much in demand?
A.   Correct.
Q.   Okay.  Now, had y'all received unitary status at the time of this hiring decision where Mr. McKinney was hired?
A.   I can't recall the time line on that.  I would have to go back and look at our records to see exactly when we received unitary status.  I'm not sure if we were still under the court order or not at that time.
Q.   Well, do you know when this system did receive unitary status?  Would that be by a court order?
A.   Yes.
Q.   So that should be available to me?
A.   Correct.
Q.   But do you happen to know the date?
A.   Not off the top of my head, I

Page 14

don't.
Q.   Okay.  Now, you heard Ms. Forbus testify, correct?
A.   Correct.
Q.   In fact, Ms. Forbus denied knowing about Ms. Sims' EEOC charge; do you recall that testimony?
A.   Correct.
Q.   But, in fact, Ms. Forbus signed an affidavit for the EEOC about Ms. Sims' EEOC charge, didn't she?
A.   Correct.
Q.   And I'm going to mark as Exhibit 4 --
MR. ROBERSON:  We will keep the numbers sequential from the earlier deposition.
Q.   (BY MR. ROBERSON:)  I'm going to mark as Exhibit 4 the affidavit that Ms. Forbus gave to the EEOC.
(Whereupon, Plaintiff's Exhibit 4 was marked for identification.)

Page 15

Q.   Have you seen that, sir?  I shouldn't -- maybe I shouldn't say to the EEOC.  She gave it at the request of the school, which was provided to the EEOC.  Maybe that's a better -- a more accurate way of saying it.
MS. YUENGERT:  Correct.
A.   I have seen this document.  And I would like to say that Ms. Forbus -- I remember Ms. Forbus doing an affidavit with our board attorney and I believe we were asked to -- once it was typed up to get it back to Ms. Forbus to review it to make sure this was accurate on what her testimony was at that time.  I would also like to say that most of our support personnel with acronyms such as EEOC probably don't even know what that means.
Q.   The point of my question is not to cast some aspersion on Ms. Forbus' --
A.   Okay.
Q.   -- integrity or credibility.

Page 16

It's simply to say that she was, indeed, involved in this process, perhaps she has forgotten that she was, but she -- she may have been on leave, so -- what's the date of Exhibit 4?
A.   It was certified and signed by Ms. Jan Forbus on 11th day of April, 2007.
Q.   Okay.  Thank you.  And as you say, she met with the lawyer for the school board, correct?
A.   Correct.
MS. YUENGERT:  Object to the form.
Q.   Would that be Mr. Sweeney?
A.   Correct.
Q.   Okay.  And the purpose of her providing this information was to provide her statement to the EEOC; whether she knew it or not, that was the purpose, correct?
A.   Correct.
Q.   Okay.  And so I assume that -- I know Mr. Sweeney, I practice law with

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Page 17

1  him, that he would make her aware of what
2  she was doing, so I -- it wasn't a secret,
3  was it, what the purpose was? Y'all
4  didn't --
5      A.   No, sir. No, sir.
6      Q.   Okay. Now, I want to talk to
7  you about the hiring of Mr. McKinney and
8  that process, okay?
9      A.   Yes, sir.
10     Q.   And I understand that Mr.
11 McKinney was hired by a committee who
12 interviewed him that Ms. Forbus
13 identified, Mr. Bullard, Ms. Forbus and
14 Ms. Jones, correct?
15     A.   Correct.
16     Q.   And you didn't participate in
17 the interviews, correct?
18     A.   Correct.
19     Q.   But you did have some
20 recommendation or approval concerning the
21 candidate, correct?
22     A.   Correct.
23     Q.   There were numerous

Page 18

1  applicants; is that a fair statement?
2      A.   Yes.
3      Q.   And do you agree with me that
4  although the lunchroom worker is not a
5  high dollar job, they do have valuable
6  benefits associated with those positions?
7      A.   Yes.
8      Q.   And so from that sense they --
9  that encourages candidates to apply; and
10 they did in this case, correct?
11     A.   Correct.
12     Q.   And it's also desirable
13 because it -- at the time Ms. Sims was
14 working a six-hour shift from 8:30 to
15 2:30, correct?
16     A.   Correct.
17     Q.   Is that still the same shift
18 that that position is working, or do you
19 know?
20     A.   I'm not sure.
21     Q.   But my point is that if you
22 have school-aged children, it's a job that
23 you can work and not have to have day

Page 19

1  care, correct?
2      A.   Correct.
3      Q.   I mean, it coincides with the
4  times that your children will be going and
5  coming from school, correct?
6      A.   Correct.
7      Q.   Okay. And -- now, the job as
8  -- I'm going to use the term substitute, a
9  substitute lunchroom worker. Do your
10 requirements -- do you have to post that,
11 that there is a substitute job open or
12 available?
13     A.   No.
14     Q.   How does that word get out,
15 usually by people that work in the
16 lunchroom and say --
17     A.   Well, it's not that a job is
18 open. We hire substitutes for lunchroom
19 workers, janitors, bus drivers and
20 teachers. And it's not that a position is
21 open, it's just that we know someone
22 that's in the regular position may be out
23 at some point and we would need a

Page 20

1  substitute in that position.
2      Q.   Sure. They might have a brief
3  illness or something or a situation that
4  requires them to miss some work, so you
5  just get a substitute?
6      A.   Correct.
7      Q.   All right. And is there a
8  list of people who are substitutes?
9      A.   Yes, sir.
10     Q.   For the cafeteria?
11     A.   Yes, sir.
12     Q.   How do you get on that list?
13     A.   You fill out a substitute
14 application, and there are different
15 choices as far as if you want to be a
16 substitute worker for the cafeteria
17 program or custodial program or teacher --
18 substitute teacher program. There are
19 different requirements to be -- to receive
20 the substitute teacher license than just
21 to be a cafeteria worker or a substitute
22 secretary or -- and there are different
23 requirements to be a substitute bus driver

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                                http://www.TylerEaton.com

Page 21

1  too. So each position has different
2  requirements.
3       Q.   You have to have a driver's
4  license, I assume, to be a bus driver,
5  correct?
6       A.   Correct.
7       Q.   You don't have to have a CDL,
8  do you?
9       A.   Yes.
10      Q.   You do have to have a CDL?
11      A.   Yes.
12      Q.   Okay. So would that be what
13 you mean by the different requirements --
14      A.   Yes.
15      Q.   -- you have to have a CDL in
16 order to be a bus driver?
17      A.   Yes.
18      Q.   And what about a teacher, do
19 you have to have some requirement to be a
20 substitute teacher?
21      A.   They make application for a
22 substitute teacher license through the
23 State.

Page 22

1       Q.   Are you aware of what
2  requirements there are?
3       A.   The requirements for a
4  substitute teacher, I think they are
5  required to go through a criminal
6  background check. And I think that's the
7  main requirement is to pass the criminal
8  background check.
9       Q.   Is there any educational
10 requirement?
11      A.   Not for --
12      Q.   A substitute?
13      A.   Not for a substitute teacher.
14      Q.   Okay. And lunchroom worker,
15 are you aware of any requirements for that
16 to be a substitute?
17      A.   Requirements for that, I'm
18 pretty sure that a substitute lunchroom
19 worker would have to go through a criminal
20 background check too. I'm not certain on
21 that, but I think that's the case.
22      Q.   Okay. Now, Mr. Wingard, when
23 you filled this position permanently --

Page 23

1  and you heard the conversation I had with
2  Ms. Forbus about the lunchroom, they get
3  tenure after -- in their fourth year, is
4  that correct?
5       A.   I don't think that's correct.
6       Q.   Okay.
7       A.   I think sometimes it's
8  confused with certified teachers that when
9  they are hired back for their fourth year
10 they receive tenure.
11      Q.   That's right.
12      A.   I think on support personnel,
13 if they complete their third year they
14 receive tenure, I believe, I'm not -- on
15 that. I think it's a little different
16 than the teacher.
17      Q.   All right. Let's discuss
18 during the first three years, if we can.
19      A.   Okay.
20      Q.   Do they have an annual
21 contract? I know they are not a teacher,
22 but do they have an annual agreement?
23      A.   Yes.

Page 24

1       Q.   Okay. So if they are awarded
2  the permanent position, they are awarded
3  it for a year, correct?
4       A.   Correct.
5       Q.   And then if -- assuming their
6  job performance was satisfactory, they
7  could be renewed for additional years,
8  correct?
9       A.   Correct.
10      Q.   And if you renew them for
11 three years, then they are tenured, or I
12 assume that's tenure?
13      A.   Continue -- tenured in a
14 sense. Continuing service for support
15 personnel is what -- the terminology we
16 use.
17      Q.   All right. And does that mean
18 it takes -- it's more difficult for them
19 to lose their position?
20      A.   Yes.
21      Q.   You have to have some kind of
22 just cause in order to remove them?
23      A.   Correct.

6 (Pages 21 to 24)

GLORIA SIMS

TODD WINGARD

COOSA COUNTY BOARD OF EDUCATION

May 21, 2008

---

Page 25

1    Q.    Okay.  That's all I want to --
2    so -- but during this three-year time
3    period, are they called a temporary
4    lunchroom worker?
5        A.    No, sir.
6        Q.    Okay.  What do you mean --
7    what job position are you referring to as
8    a temporary lunchroom worker?
9        A.    Temp -- the temporary
10   lunchroom worker that was posted was a
11   position that we thought we would not need
12   possibly for the entire school year
13   because of construction going on with a
14   new kitchen.  And with the new kitchen, we
15   didn't think we were going to need as many
16   labor hours to get the job completed.
17            And the reason we look at meals
18   per laborer hour in our child nutrition
19   program is that there are recommended
20   guidelines from the State that you don't
21   need to have too many laborer hours per
22   meal served.  So we felt like -- we knew
23   our meals per laborer hour was over, but

Page 26

1    we had a situation where we were
2    transporting a lot of food, satellitting
3    food in because we did not have a kitchen,
4    it was under construction, and we thought
5    we might have that finished during that
6    school year and not need as many
7    employees.  So that's the reason we posted
8    a temporary position.
9        Q.    Is that the position that Lisa
10   received, the temporary position?
11       A.    I don't recall.  I don't
12   recall.
13       Q.    What school was that, do you
14   know?
15       A.    The temporary position that
16   I'm familiar -- most familiar with is the
17   one -- involves this lawsuit, and that was
18   for Central High School.
19       Q.    Okay.  Well, my client is
20   under the impression that --
21            MR. ROBERSON:  What's Lisa's
22   last name?
23            MS. SIMS:  Cleveland.

Page 27

1    Q.    Do you know a Lisa Cleveland?
2        A.    I do.
3        Q.    Do you know if she has a high
4    school education?
5        A.    I think during this process it
6    was checked, and I don't think she has a
7    high school education.
8        Q.    Do you know if she has a GED?
9        A.    I don't think so.
10       Q.    Do you know what position she
11   is working?
12       A.    She is working as a lunchroom
13   worker.
14       Q.    Is it a permanent position?
15       A.    Support personnel --
16       Q.    That's a poor question.
17       A.    Okay.
18       Q.    Let me rephrase it so you can
19   try to understand what I really mean.
20            Is her position the same or
21   equivalent to the position that Mr.
22   McKinney was awarded?
23       A.    Again, I don't recall when she

Page 28

1    was hired if we had posted that as a
2    temporary position.  That's possible, but
3    I would have to go back and look at that
4    job posting, because I don't remember on
5    her.  I do know the one Jerry McKinney was
6    hired for was a temporary job posting for
7    that position for that school year.
8        Q.    Okay.  So if -- if Ms.
9    Cleveland's job position was temporary,
10   those would be similar or equivalent
11   positions?
12       A.    Correct.
13       Q.    Okay.  All right.  Well, how
14   can she work that job but Ms. Sims be
15   ineligible to hold the position?
16       A.    Because she was hired and
17   recommended to the Board of Education to
18   be hired for that job, and Ms. Sims was
19   not.
20       Q.    But the reason Ms. Sims was
21   not was because she didn't meet the
22   educational requirements, correct?
23       A.    Correct.

7 (Pages 25 to 28)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
May 21, 2008

Page 29

Q.   Why don't the educational
requirements apply to her --
A.   Well, let me -- let me
elaborate --
Q.   -- Ms. Cleveland?
A.   -- on that.  That's part of
the reason she was not hired for the job.
Q.   Part?
A.   Part of the reason.
Q.   What was the other part?
A.   The three-person committee
made a recommendation to me on who they
thought was best for that job, best
qualified for that job.  So that's the
other part.
Q.   Ms. Forbus, Ms. Jones and Mr.
Bullard?
A.   Correct.
Q.   And you approved it based on
their recommendation?
A.   Correct.
Q.   Well, is there a requirement
with this school board that in order to

Page 30

work as a lunchroom worker that you have
to have a high school education or a GED?
A.   If we post that as the
qualification on the job posting, then
it's required for this Board.
Q.   Do y'all have some option
about whether you can post it or not?
A.   The superintendent usually
makes the decision on what the job
qualifications should be for each job.
Q.   Well, you made the decision,
then, to require a high school diploma
when Mr. McKinney was awarded the
position?
A.   Correct.
Q.   When Ms. Cleveland was awarded
the position, you did not require a high
school diploma?
A.   No, I'm not -- I don't think
that's the case.
Q.   Oh, I --
A.   I would think that we were
consistent in our job postings that it did

Page 31

require a high school education diploma.
Q.   Well, how did she get the job
if she doesn't have one?
A.   Well, at the time Ms.
Cleveland was hired -- was hired, we did
not have a three-person committee.  We had
-- I would call it a less formal process
of getting a recommendation back to me, in
that probably when Ms. Cleveland was
hired, a lunchroom manager -- she would
probably have been a substitute, a
lunchroom manager made a recommendation to
Ms. Jones that this is who we needed to
hire.  And evidently they did not do a
good job of screening, and then it was
recommended to me and I did not do a good
job of screening Ms. Cleveland to see if
she had that high school diploma and met
that requirement.
Q.   Well, you know now she doesn't
have it?
A.   Correct.
Q.   Have you taken any action

Page 32

against her?
A.   No.
Q.   Well, so the requirement can
be waived by the superintendent, correct?
A.   Can be waived?
Q.   Yeah.
A.   I wouldn't say it could be
waived, but I didn't think it was fair to
go back and fire her after we made the
mistake.  She didn't make the mistake.
Q.   Well, has she been able to --
Ms. Cleveland been able to satisfactorily
perform her job without a high school
education?
A.   She has.
Q.   So the requirement is really
unnecessary, isn't it?
MS. YUENGERT:  Object to the
form.  You can answer.
A.   No, I don't think it is
unnecessary.
Q.   Well, we know Ms. Cleveland is
doing a satisfactory job and she is not --

8 (Pages 29 to 32)

Page 33

1 doesn't possess a high school education,
2 correct?
3     A.    Correct.
4     Q.    We know Ms. Murphy is doing a
5 satisfactory job and she doesn't possess a
6 high school education, correct?
7     A.    Correct.
8     Q.    These people don't provide any
9 instruction -- academic instruction, do
10 they?
11     A.    No.
12     Q.    But your substitute teachers
13 do, correct?
14     A.    Correct.
15     Q.    And a substitute schoolteacher
16 doesn't have to have a high school degree,
17 correct?
18     A.    Correct.
19     Q.    Well, I'm not in education,
20 but I don't understand why that is.  Can
21 you explain it to me?
22     A.    I certainly can.  I certainly
23 can.  We are in the education business.

Page 34

1     Q.    Yes, sir.
2     A.    And we think it sets a good
3 example for people who work in our school
4 system to have at least a high school
5 diploma or a GED equivalent.  And we think
6 anyone that works in our cafeteria program
7 would have a better chance with a high
8 school diploma or GED equivalent to be
9 able to read recipe labels, read product
10 information on cleaning products to make
11 sure they are mixing chemicals correctly.
12 So there are a number of reasons why it
13 would be good to make sure someone can
14 read before they are hired in a cafeteria
15 worker position.
16     Q.    Ms. Sims have any problem
17 following recipes or using cleaning
18 products?
19     A.    I'm not aware of any problems.
20     Q.    Does Ms. Cleveland have any
21 such problems?
22     A.    I haven't had any problems
23 reported to me.

Page 35

1     Q.    Is this rule that in order to
2 hold the position -- I'm going to use the
3 -- not a substitute, is that a permanent
4 position or temporary, how -- I just want
5 to use your terminology.  A temporary
6 school lunchroom worker position, what's
7 the source of the requirement that you
8 have to have a high school education?
9     A.    The source is, first of all,
10 our previous superintendent felt like --
11 felt like that was -- since we are in the
12 education business, felt like the
13 education of employees should have at
14 least a high school diploma or GED
15 equivalent.  We also have recommended --
16 recommended policy sample -- manuals from
17 the State Department of Education with
18 sample job postings for child nutrition
19 workers that had that same language in it,
20 high school diploma or GED equivalent.
21 And so that's what we decided to put on
22 our job postings.
23     Q.    Is there any State

Page 36

1 requirement?
2     A.    I don't think there is a State
3 requirement.
4     Q.    So if you chose to, you could
5 eliminate that requirement, correct?
6     A.    Correct.
7     Q.    I mean, it's up to the school
8 board's discretion, correct?
9     A.    Yes.
10     Q.    And, in fact, you just
11 recently came out from under a consent
12 decree where you were supposed to attract
13 minority applicants to all your staff
14 positions, correct?
15     A.    That's not correct.
16     Q.    It's not?  Y'all weren't
17 supposed to attempt to make efforts to
18 attract and obtain minority applicants in
19 all of your staffing positions?
20     A.    No.
21     Q.    There is no -- well, do you
22 attract those statistics in your -- in
23 your staffing?

9 (Pages 33 to 36)

Page 37

A.   We do in every area but transportation.

Q.   Okay.  And how many --

A.   Or we did in every area but transportation.  We do not now.

(Whereupon, Plaintiff's Exhibit 5 was marked for identification.)

Q.   Mr. Wingard, I'm going to show you what I will mark as Exhibit 5 to your deposition and ask you if you are familiar with this document.  And I will represent to you, I don't want you to read it on tape, but it's a forty-one page consent decree in CV 3101-N, Anthony Lee versus United States of America, NEA, Coosa County Board of Education.

Have you seen that document?

A.   Yes, sir.

Q.   Are you familiar with it?

A.   Yes, sir.

Q.   Is that the consent decree that governed until you -- until you were

Page 38

awarded unitary status?

A.   Yes, sir.

Q.   Okay.  Fine, thank you.

Do you know Ms. Jones?  I assume you do, she works for you?

A.   Yes.

Q.   She is a black female?

A.   Yes.

Q.   Child nutrition -- what is her title?

A.   Child nutrition director.

Q.   Do you know what the extent of her education is?

A.   She has completed a four-year degree in teacher education, and I know she has had extensive training through the State Department in child nutrition program.

Q.   Is she certified in some capacity by the State regarding child nutrition?

A.   I think she is in the process of going through certification.

Page 39

Q.   How long has she been the child nutrition director?

A.   She has been child nutrition director for -- she has been the child nutrition director since I have been in office, seven and a half --

Q.   Seven years?

A.   Seven and a half years.

Q.   Okay.  Do you know if that position -- a requirement of that position is that you have an educational background and training and certification in child nutrition?

A.   I know that child nutrition directors are required to go to training to get certain certifications.  I was not -- she was hired before I took office, so I'm not sure exactly what the qualifications were when that job was posted.

Q.   In fact, she was hired while y'all were under this consent decree, correct?

Page 40

A.   Correct.

Q.   And under the consent decree, you could waive requirements in order to attract and retain minority applicants, correct?

A.   I'm not familiar -- if that's in the consent decree, I'm not familiar with waiving any requirements for teachers or support personnel since we were under the court order.

Q.   Well, Ms. Jones has been obtaining her educational requirements since she became -- she was hired here, correct?

A.   Correct.

Q.   She has had seven years to obtain them, right?

A.   Correct.

Q.   Gloria Sims, had she been hired, she could have obtained a GED or high school equivalency after she was hired, correct?

MS. YUENGERT:  Object to the

10 (Pages 37 to 40)

GLORIA SIMS                                                                                      TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION                                                                    May 21, 2008

---

Page 41

form. You can answer if you can.
2      A.    I don't know if she could have
3   received it or not.
4      Q.    Well, she could have pursued a
5   course of study to obtain it, correct?
6      A.    Correct.
7      Q.    Do y'all offer those courses
8   here?
9      A.    We do not offer those, but we
10  have adult education that we allow our
11  facilities to offer tutoring for those
12  classes, yes.
13     Q.    Who provides that adult
14  education, sir?
15     A.    I'm not sure who funds -- I
16  think some of it is volunteer services,
17  but Central Alabama Community College
18  operates the adult education program, they
19  are over that and the surrounding
20  counties.
21         (Whereupon, Plaintiff's
22         Exhibit 6 was marked for
23         identification.)

---

Page 42

1      Q.    I'm going to show you what I
2   have marked as -- I will mark as Exhibit
3   6. This is the affidavit of Pam Jones. I
4   would ask you to read that, and I would
5   direct your attention to the second page
6   about the posting qualifications.
7      A.    (Reviewing document.) Okay.
8      Q.    Do you see in about the middle
9   of the second page where Ms. Jones
10  indicates that the requirements for the
11  position were -- just let me let you read
12  it because, I will probably misquote it if
13  I don't. I will read it. "Ms. Sims was
14  not qualified. She did not meet the
15  qualifications we stated as required for
16  the jobs. These jobs were posted in
17  compliance with State law."
18         State law requires that the
19  positions be posted, correct?
20     A.    Correct.
21     Q.    State law does not require
22  that you have a high school education or a
23  GED, that's your requirement?

---

Page 43

1      A.    Correct.
2      Q.    Okay. I want to be straight
3   about that.
4          Mr. Wingard, in the seven years
5   that y'all -- that you were superintendent
6   and y'all were under the consent decree,
7   did you come to the conclusion that
8   lawsuits were expensive?
9      A.    Yes.
10         MS. YUENGERT: Object to the
11  form. You can answer.
12     A.    Yes.
13     Q.    And, in fact, they are a very
14  inefficient monetarily way of
15  accomplishing certain things; would you
16  agree with that?
17         MS. YUENGERT: Object to the
18  form. You can answer.
19     A.    Repeat that question.
20     Q.    Well, let me explain it to
21  you.
22         Everything that was
23  accomplished by the consent decree could

---

Page 44

1   have been accomplished without spending
2   all that money on lawyers; would you agree
3   with that?
4          MS. YUENGERT: I'm going to
5   object to the form. You can answer.
6      Q.    I'm talking myself out of a
7   job here. Did y'all have lawyers?
8      A.    Yes. The --
9      Q.    Did you pay them?
10     A.    Yes.
11     Q.    Lots of money that could have
12  been used for educational purposes?
13     A.    Yes.
14     Q.    Did the other side, the
15  plaintiffs in that lawsuit, have lawyers?
16     A.    Yes.
17     Q.    Did they get paid?
18     A.    Yes.
19     Q.    By you?
20     A.    Yes.
21     Q.    Lots of money that could have
22  been used for educational purposes?
23     A.    Correct.

---

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                                    http://www.TylerEaton.com

GLORIA SIMS                                                          TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION                                     May 21, 2008

Page 45

Q.   My point is it's an inefficient way of accomplishing change, correct?

MS. YUENGERT:  Object to the form.  You can answer.

A.   I would rather not have to pay attorneys.  I would rather not even have to deal with them.

Q.   I understand that.  Make your life a lot easier, wouldn't it?

A.   Yes, sir.

Q.   This job that -- when was Lisa Cleveland's job filled, do you know?  And I apologize, y'all gave me some records.

A.   I don't know.

MR. ROBERSON:  I tell you what, let me go off the record and take a break and find these.

MS. YUENGERT:  Okay.

MR. ROBERSON:  We will go off the record at 11:30.

(Whereupon, a break was had from 11:30 a.m. until 11:40

Page 46

a.m.)

MR. ROBERSON:  We are back on the record with Mr. Wingard.  It's 11:40.

Q.   (BY MR. ROBERSON:)  Mr. Wingard, there are -- this is number -- this Sims case number 0035 of documents provided to me by the school board's attorney.  And this document lists the staff members, correct, at the -- the lunchroom staff members, those top people are at the high school, correct?

A.   Correct.

Q.   And the lower members are at the elementary school?

A.   Elementary, middle school, correct.

Q.   Okay.  Now, of the lunchroom workers at the high school, there are five listed, is that correct?

A.   Five, yes.

Q.   And only Ms. Murphy doesn't have a high school education or GED, correct?

Page 47

A.   Correct.

Q.   Okay.  And is only Mr. McKinney out of those five individuals, is only he a black?

A.   Correct.

Q.   He is the only black, okay.  And at your elementary and middle schools, how many lunchroom workers are there?  Are those two different facilities?

A.   Yes.

Q.   How many total are there?

A.   Seven.

Q.   Okay.  How many do not have a high school or --

A.   I'm sorry, eight.  Three out of those eight --

Q.   Can you just identify on the record who those individuals are who don't have a high school degree?

A.   Lisa Cleveland, Essie Moon, Calvin Owens.

Q.   And Ms. Cleveland was -- does it show her hire date on that document?

Page 48

A.   Yes.

Q.   When was that?

A.   August 8th, 2005.

Q.   Now, is that her hire date as a -- as a substitute or is that her hire date for this position?

A.   For the position.

Q.   So she was hired in 2005 as a temporary worker?

A.   Correct.

Q.   All right.  Well, did y'all have that requirement, high school degree at that time?

A.   I'm -- I know we had that requirement that we should have posted on that position for her.  I haven't seen that posting, but I would -- I'm thinking that we probably had that requirement on the posting if we were consistent with the way we had been posting cafeteria worker positions.

Q.   When was Ms. Murphy hired?

A.   Ms. Murphy was hired September

12 (Pages 45 to 48)

GLORIA SIMS                                         TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION             May 21, 2008

---

Page 49

1  9th, 2003.
2     Q.   Okay.  Were you the
3  superintendent?
4     A.   Yes, I was.
5     Q.   Did y'all have the requirement
6  then?
7     A.   Again, that should have been a
8  requirement on that job posting.
9     Q.   Okay.  Now, the other two
10  individuals at the other schools, when
11  were they hired?  Give me the name and
12  when they were hired.
13     A.   Essie Moon was hired September
14  1st, 1978.
15     Q.   Okay.  So she is a long -- has
16  been here a long time?
17     A.   Correct.
18     Q.   Before your tenure?
19     A.   Calvin -- correct, correct.
20     Q.   Okay.  So it would be -- it
21  wouldn't be fair to suggest that that was
22  a requirement back when she was hired, is
23  that correct?

---

Page 50

1     A.   Correct.
2     Q.   Okay.  Now, who's the other
3  individual?
4     A.   Calvin Owens.
5     Q.   When was he hired?
6     A.   July 22nd, 2002.
7     Q.   Were you superintendent?
8     A.   Yes.
9     Q.   And he doesn't have a high
10  school education?
11     A.   No.
12     Q.   What race is he?
13     A.   He is -- he is African-
14  American.
15     Q.   And Ms. Moon, what race is
16  she?
17     A.   African-American.
18     Q.   Okay.  Now, the position that
19  Ms. Cleveland filled, do you know who held
20  it before she did?
21     A.   No, I don't.
22     Q.   Do you know what race they
23  were or what gender?

---

Page 51

1     A.   I don't know, but Ms.
2  Cleveland is white.
3     Q.   I understand that, and do you
4  know if she replaced another white female
5  who retired?
6     A.   I have no idea.
7     Q.   Okay.
8     MS. SIMS:  I can't think of
9  her name.
10     Q.   Okay.  Now, Ms. Murphy was
11  hired, Calvin was hired and Lisa were
12  hired all while you were superintendent,
13  all while this supposed requirement that
14  you have a high school education, and none
15  of them do, correct?
16     A.   Correct.
17     Q.   The only person who has been
18  prevented from being hired because she did
19  not possess a high school education or GED
20  is Gloria Sims, correct?
21     MS. YUENGERT:  Object to the
22  form.
23     A.   Answer?

---

Page 52

1     Q.   Yes.
2     MS. YUENGERT:  You can answer
3  if you can.
4     A.   No.
5     Q.   No?
6     A.   No.
7     Q.   Who else?
8     A.   Well, for the position that
9  Ms. Sims applied for, there was a -- there
10  was a black male that was not -- that did
11  not have a high school diploma.  There was
12  a -- there were three or four applicants
13  that did not have a high school diploma.
14     Q.   Let me rephrase my question.
15     A.   Okay.
16     Q.   I apologize.
17     A.   Okay.
18     Q.   The only time that candidates
19  were required to have a high school
20  diploma or a GED was in the hiring of Mr.
21  McKinney; would that be a fair statement?
22     A.   No.
23     Q.   Okay.  All right.  I don't

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                             http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
May 21, 2008

Page 53

1 want to split hairs with you.
2     A.    Okay.
3     Q.    Do you know why a high school
4 diploma wasn't required for Calvin?
5     A.    I'm assuming it should have
6 been required for Calvin.
7     Q.    Do you know why it wasn't
8 required?
9     A.    We -- as I said before, we at
10 that time had a lot less formal -- before
11 this one a lot less formal interviewing
12 and screening process where cafeteria
13 managers interviewed, made recommendations
14 to the child nutrition director and
15 eventually was recommended to me to the
16 Board -- to recommend the Board, and we
17 did not do a good job of screening our
18 application to make sure they had the
19 requirement on the job posting.
20     Q.    Did you know at the time he
21 was hired he didn't have a high school
22 education?
23     A.    No.

Page 54

1     Q.    Ms. Murphy didn't have one.
2 Were you -- why wasn't one required for
3 her?  Same reason?
4     A.    I'm assuming it was required
5 for her on the job posting, but for the
6 same reason, yes.
7     Q.    Did you know she didn't have a
8 high school education when you approved
9 her?
10     A.    No.
11     Q.    Lisa Cleveland, why wasn't one
12 required for her?  Same reason?
13     A.    Same reason.
14     Q.    Did you know when she was
15 hired she didn't have one?
16     A.    No, I didn't know any of these
17 three didn't have one until it was brought
18 up in this complaint.
19     Q.    Well, now you know.  Are you
20 going to take any action against any of
21 them?
22     A.    Not for that.
23     Q.    Well, can you understand why

Page 55

1 Ms. Sims might be confused as to why she
2 was required to have one and no one else
3 has been, can you understand that?
4     MS. YUENGERT:  Object to the
5 form.  You can answer.
6     A.    I don't know about confused.
7 I understand why she might be upset that
8 she didn't get the job.
9     Q.    And others did get the job,
10 correct?
11     MS. YUENGERT:  Object to the
12 form.  You can answer.
13     A.    Yes.
14     Q.    In fact, your requirement has
15 been violated more than it has been
16 observed, correct?
17     A.    We probably hired more -- I
18 think we have hired more with a high
19 school diploma since we required that than
20 -- so no, that's not correct.
21     Q.    Looking at the hire dates?
22 Was Ms. Cleveland --
23     A.    Let me finish answering that.

Page 56

1     Q.    I'm sorry, I thought you had.
2 I apologize.
3     A.    Okay.  (Reviewing document.)
4 Seven have been hired since that
5 requirement was in place since I have been
6 in office that did have high school
7 diplomas.
8     Q.    Okay.  And three without them,
9 is that correct?
10     A.    Three, correct.
11     Q.    Okay.  Hey, does Calvin do a
12 good job for you?
13     A.    Yeah, he has done a good job,
14 yeah.
15     Q.    Does Lisa do a good job for
16 you?
17     A.    Yes.
18     Q.    Would you agree Barbara does a
19 good job?
20     A.    Yes.
21     Q.    Would you agree that a high
22 school education isn't necessary to do a
23 good job as a lunchroom worker?

14 (Pages 53 to 56)

GLORIA SIMS                                                        TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION                                    May 21, 2008

---

Page 57

1  A. No, I think it would depend on
2  how much -- how much knowledge you had
3  before you didn't get that high school
4  diploma.
5  Q. Do y'all have positions that
6  are male positions here at the school?
7  A. No.
8  Q. Is every position open to
9  applicants of each gender?
10  A. I can't think of any position
11  that would require -- that wouldn't
12  require -- that would require a gender.
13  Q. Me either.
14  A. Okay.
15  Q. Can you think of one that
16  would require any particular race, or
17  would any race be okay?
18  A. Any race would be okay, yes.
19  Q. Any race, any gender, any
20  position, correct?
21  A. Correct.
22  Q. So why would someone say
23  that's a man's job, referring to a

---

Page 58

1  lunchroom position?
2  MS. YUENGERT: Object to the
3  form.
4  A. I can't -- I can't answer
5  that, why they would say that.
6  Q. Why would someone say we need
7  to get some color in the lunchroom if any
8  race could apply?
9  A. I couldn't answer why anyone
10  would say that.
11  Q. Would you agree with me that
12  those would be inappropriate remarks if --
13  A. Yes.
14  Q. -- they were made?
15  A. Yes.
16  MR. ROBERSON: Mr. Wingard,
17  I'm going to let you go to your meeting.
18  It's ten till 12.
19  Ms. Anne, do you have any
20  questions?
21  MS. YUENGERT: If you can give
22  me just a second.
23  MR. ROBERSON: I can, but it's

---

Page 59

1  53:43, just to --
2  MS. YUENGERT: Understood.
3  MR. ROBERSON: -- let you
4  know. Do you want to go off the record
5  for a second?
6  MS. YUENGERT: No, go right
7  ahead.
8
9  EXAMINATION BY MS. YUENGERT:
10  Q. Mr. Wingard, I'm Anne
11  Yuengert, and I represent the Board of
12  Education.
13  At one point you said that you
14  did not become aware that Ms. Cleveland or
15  Ms. Murphy or Mr. Owens did not have high
16  school educations until -- you said this
17  process. When you referred to this
18  process, do you mean this lawsuit?
19  A. Correct.
20  MS. YUENGERT: That's all I
21  have.
22  MR. ROBERSON: Thank you, Mr.
23  Wingard. Off the record.

---

Page 60

1  (Whereupon, the deposition of
2  Todd Wingard was concluded at
3  11:52 a.m. on the 21st day of
4  May, 2008.)
5
6  FURTHER THE DEPONENT SAITH NOT

---

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                              http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
May 21, 2008

Page 61

C E R T I F I C A T E

2
3
4      STATE OF ALABAMA)
5      JEFFERSON COUNTY)
6
7              I hereby certify that the
8      above and foregoing deposition was taken
9      down by me in stenotypy, and the questions
10     and answers thereto were reduced to
11     typewriting under my supervision, and that
12     the foregoing represents a true and
13     correct transcript of the deposition given
14     by said witness upon said hearing.
15             I further certify that I am
16     neither of counsel nor of kin to the
17     parties to the action, nor am I in anywise
18     interested in the result of said cause.
19
20
21
22
              COMMISSIONER - NOTARY PUBLIC
23            ACCR LICENSE NO. 116

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                          http://www.TylerEaton.com

**GLORIA SIMS**
**COOSA COUNTY BOARD OF EDUCATION**

**TODD WINGARD**
**May 21, 2008**

## A

able
32:11,12 34:9
academic
33:9
accomplished
43:23 44:1
accomplishing
43:15 45:2
ACCR
61:23
accurate
15:5,14
acronyms
15:17
acting
5:5
action
1:5 31:23 54:20 61:17
addition
12:11
additional
24:7
addressed
11:23
adult
41:10,13,18
affidavit
14:10,19 15:10 42:3
African
50:13
African–American
50:17
aftermath
10:11
ago
10:18
agree
12:1,23 18:3 43:16 44:2
56:18,21 58:11
AGREED
2:3
agreement
23:22
ahead
59:7
Alabama
1:2 3:9,17 5:4,5,12,22
6:3 41:17 61:4
allow
41:10
America
37:16
American
50:14
Anne
3:12 6:9 58:19 59:10
annual
23:20,22
answer

32:19 41:1 43:11,18 44:5
45:5 51:23 52:2 55:5
55:12 58:4,9
answering
55:23
answers
61:10
Anthony
37:15
anywise
61:17
apologize
45:14 52:16 56:2
applicants
18:1 36:13,18 40:4 52:12
57:9
application
20:14 21:21 53:18
applied
10:17 52:9
apply
18:9 29:2 58:8
approval
17:20
approved
29:19 54:8
approximately
9:19,20
April
16:7
Arant
3:14
area
37:1,4
areas
12:17
asked
15:12
aspersion
15:20
assign
2:20
associated
18:6
assume
10:8 16:22 21:4 24:12
38:5
assuming
24:5 53:5 54:4
attempt
36:17
attention
42:5
attorney
3:5,13 15:11 46:8
attorneys
45:7
attract
12:12,21 36:12,18,22 40:4
August
48:3

available
13:18 19:12
Avenue
3:16
awarded
24:1,2 27:22 30:13,16
38:1
aware
10:5 17:1 22:1,15 34:19
59:14
a.m
5:13 45:23 46:1 60:3

## B

B
1:20 2:6 5:1
back
10:14 13:9 15:13 23:9
28:3 31:8 32:9 46:2
49:22
background
22:6,8,20 39:11
Barbara
56:18
based
29:19
basis
9:14,15
began
10:11
believe
15:11 23:14
benefits
18:6
best
29:13,13
better
15:5 34:7
Birmingham
3:9,17 5:3
black
38:7 47:4,6 52:10
board
1:10 5:11,21 6:1,11 7:15
9:2,5,6,10,12 11:1,15
16:10 28:17 29:23 30:5
37:17 53:16,16 59:11
board's
36:8 46:7
Box
3:8
Bradley
3:14
break
45:18,22
brief
20:2
brought
54:17
Bullard

17:13 29:17
bus
19:19 20:23 21:4,16
business
33:23 35:12

## C

C
3:1 61:1,1
cafeteria
20:10,16,21 34:6,14 48:20
53:12
call
31:7
called
25:3
Calvin
47:21 49:19 50:4 51:11
53:4,6 56:11
candidate
17:21
candidates
12:22 18:19 52:18
capacity
38:20
care
19:1
career/technical
8:22
case
5:22 18:10 22:21 30:20
46:6
cast
15:20
cause
5:14 24:22 61:18
CDL
21:7,10,15
center
8:23
Central
26:18 41:17
certain
22:20 39:16 43:15
certainly
33:22,22
certification
38:23 39:13
certifications
39:16
certified
1:21 2:7 5:2 12:16,22
16:6 23:8 38:19
certify
5:6 61:7,15
cetera
10:3
chance
34:7
change

45:2
charge
14:6,11
check
22:6,8,20
checked
27:6
chemicals
34:11
child
25:18 35:18 38:9,11,17,20
39:2,3,4,12,14 53:14
children
18:22 19:4
choices
20:15
chose
36:4
Civil
1:5 5:7
classes
41:12
cleaning
34:10,17
Cleveland
26:23 27:1 29:5 30:16
31:5,9,17 32:12,22
34:20 47:20,22 50:19
51:2 54:11 55:22 59:14
Cleveland's
28:9 45:13
client
26:19
coincides
19:3
College
41:17
color
58:7
come
43:7
coming
19:5
commencing
5:13
Commissioner
2:7 5:6 61:22
committee
17:11 29:11 31:6
Community
41:17
complaint
54:18
complete
23:13
completed
25:16 38:14
compliance
2:13 42:17
concerning
17:20

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
May 21, 2008

concluded
60:2
conclusion
43:7
confused
23:8 55:1,6
consent
10:1 11:13 36:11 37:14,22
39:22 40:2,7 43:6,23
consistent
30:23 48:19
construction
25:13 26:4
Continue
24:13
Continuing
24:14
contract
23:21
control
10:23
conversation
23:1
Coosa
1:10 5:10,21,23 6:11 7:15
8:15,16 9:21 37:16
correct
7:10,19 8:10 11:1,2,5,15,17
11:20 12:5,9,14 13:4,20
14:3,4,8,12 15:7 16:10
16:11,15,20,21 17:14,15
17:17,18,21,22 18:10,11
18:15,16 19:1,2,5,6 20:6
21:5,6 23:4,5 24:3,4,8
24:9,23 28:12,22,23
29:18,21 30:15 31:22
32:4 33:2,3,6,7,13,14,17
33:18 36:5,6,8,14,15
39:23 40:1,5,14,15,18
40:22 41:5,6 42:19,20
43:1 44:23 45:3 46:9
46:11,12,16,19,23 47:1,5
48:10 49:17,19,19,23
50:1 51:15,16,20 55:10
55:16,20 56:9,10 57:20
57:21 59:19 61:13
correctly
34:11
counsel
2:5,17,19 5:10 6:7 61:16
counties
41:20
County
1:10 5:11,21,23 6:11 7:15
8:16 9:22 37:17 61:5
course
41:5
courses
41:7
court
1:1 2:14 5:9 6:2,20 10:21

12:8 13:12,16 40:10
credibility
15:23
criminal
22:5,7,19
currently
8:20
custodial
20:17
CV
6:4 37:15

D

D
3:4
date
5:6 10:19 13:22 16:4
47:23 48:4,6
dates
55:21
day
5:12 16:7 18:23 60:3
day-to-day
9:13,15
deal
45:8
dealing
10:9
decided
35:21
decision
13:7 30:9,11
decisions
10:15 11:5,6,14
decree
10:2,15 11:13,20 36:12
37:15,22 39:22 40:2,7
43:6,23
Defendant
1:11 3:11
degree
33:16 38:15 47:19 48:12
demand
13:3
denied
14:5
Department
35:17 38:17
depend
57:1
DEPONENT
7:2 60:6
deposition
1:14 2:5,11,12,22 5:19 7:9
8:2 14:17 37:11 60:1
61:8,13
depositions
2:15
desirable
18:12

different
20:14,19,22 21:1,13 23:15
47:9
difficult
12:21 24:18
diploma
30:12,18 31:1,18 34:5,8
35:14,20 52:11,13,20
53:4 55:19 57:4
diplomas
56:7
direct
42:5
director
38:11 39:2,4,5 53:14
directors
39:15
discretion
36:8
discuss
23:17
District
1:1,2 5:8 6:2,3
Division
1:3 6:4
document
15:8 37:12,18 42:7 46:8
47:23 56:3
documents
46:6
doing
15:10 17:2 32:23 33:4
dollar
18:5
Donald
6:10
Drive
3:7
driver
20:23 21:4,16
drivers
19:19
driver's
21:3
driving
8:2
duly
6:17

E

E
3:1,1 61:1,1
earlier
14:16
easier
45:10
education
1:10 5:11,22 6:1,12 7:16
27:4,7 28:17 30:2 31:1
32:14 33:1,6,19,23 35:8

35:12,13,17 37:17 38:13
38:15 41:10,14,18 42:22
46:22 50:10 51:14,19
53:22 54:8 56:22
59:12
educational
22:9 28:22 29:1 39:11
40:12 44:12,22
educations
59:16
EEOC
14:6,10,11,20 15:3,4,17
16:18
effect
2:13
efforts
12:12 36:17
eight
47:15,16
either
57:13
elaborate
29:4
elected
7:18 8:9 9:7
election
8:3
elementary
8:21 46:14,15 47:7
elementary/middle
8:13
eliminate
36:5
emphasis
12:15
employees
9:19 12:4 26:7 35:13
encourages
18:9
entire
25:12
equivalency
40:21
equivalent
27:21 28:10 34:5,8 35:15
35:20
Essie
47:20 49:13
et
10:2
eventually
53:15
evidence
2:23
evidently
31:14
exactly
13:10 39:18
examination
4:1,3,4 5:15 7:7 59:9
examined

6:17
example
34:3
Exhibit
4:9,10,11 14:14,19,22 16:5
37:7,10 41:22 42:2
EXHIBITS
4:7
expensive
43:8
explain
33:21 43:20
extensive
38:16
extent
38:12

F

F
61:1
facilities
41:11 47:9
fact
14:5,9 36:10 39:21 43:13
55:14
fair
11:16 18:1 32:8 49:21
52:21
familiar
26:16,16 37:11,20 40:6,7
far
8:9 20:15
federal
3:15 5:7 10:21
felt
25:22 35:10,11,12
female
38:7 51:4
Fifth
3:16
fill
20:13
filled
22:23 45:13 50:19
find
45:18
Fine
38:3
finish
55:23
finished
26:5
fire
32:9
first
6:17 23:18 35:9
five
9:6 46:18,20 47:3
follow
10:16

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031

http://www.TylerEaton.com

GLORIA SIMS                                                    TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION                                May 21, 2008

following
5:16  34:17
follows
6:18
food
26:2,3
Forbus
7:9  14:3,5,9,20  15:9,10
   15:13,21  16:7  17:12,13
   23:2  29:16
force
2:13
foregoing
5:9  61:8,12
forgotten
16:3
form
2:18  16:13  32:19  41:1
   43:11,18  44:5  45:5
   51:22  55:5,12  58:3
formal
31:7  53:10,11
formerly
9:22
forty-one
37:14
four
7:22  8:20  52:12
fourth
23:3,9
four-year
38:14
full
2:13
funds
41:15
further
60:6  61:15

           G

Gail
1:20  2:6  5:1
GED
27:8  30:2  34:5,8  35:14
   35:20  40:20  42:23
   46:22  51:19  52:20
gender
50:23  57:9,12,19
getting
31:8
give
49:11  58:21
given
61:13
Gloria
1:7  5:23  6:6  40:19  51:20
go
13:9  22:5,19  28:3  32:9
   39:15  45:17,20  58:17
   59:4,6

going
14:13,18  19:4,8  25:13,15
   35:2  37:9  38:23  42:1
   44:4  54:20  58:17
good
31:15,16  34:2,13  53:17
   56:12,13,15,19,23
governed
37:23
grounds
2:21
guidelines
25:20

           H

hairs
53:1
half
39:6,8
happen
13:21
head
13:23
heard
14:2  23:1
hearing
61:14
held
8:5  50:19
Hey
56:11
high
8:22  18:5  26:18  27:3,7
   30:2,12,17  31:1,18  32:13
   33:1,6,16  34:4,7  35:8
   35:14,20  40:21  42:22
   46:11,18,22  47:14,19
   48:12  50:9  51:14,19
   52:11,13,19  53:3,21
   54:8  55:18  56:6,21
   57:3  59:15
hire
19:18  31:14  47:23  48:4,5
   55:21
hired
13:7  17:11  23:9  28:1,6,16
   28:18  29:7  31:5,5,10
   34:14  39:17,21  40:13,20
   40:22  48:8,22,23  49:11
   49:12,13,22  50:5  51:11
   51:11,12,18  53:21  54:15
   55:17,18  56:4
hiring
10:2  11:4,6,14  12:1  13:6
   17:7  52:20
hold
28:15  35:2
hour
25:18,23
hours

25:16,21
hundred
9:20

           I

idea
51:6
identification
14:23  37:8  41:23
identified
17:13
identify
47:17
illness
20:3
impression
26:20
inappropriate
58:12
INDEX
4:1,7
indicates
42:10
individual
50:3
individuals
47:3,18  49:10
inefficient
43:14  45:2
ineligible
28:15
information
12:8  16:17  34:10
instruction
33:9,9
integrity
15:23
interested
61:18
interviewed
17:12  53:13
interviewing
53:11
interviews
17:17
involved
16:2
involves
26:17

           J

Jan
16:7
janitors
19:19
JEFFERSON
61:5
Jerry
3:4  6:5  28:5
job

18:5,22  19:7,11,17  24:6
   25:7,16  28:4,6,9,14,18
   29:7,13,14  30:4,9,10,23
   31:2,15,17  32:13,23
   33:5  35:18,22  39:19
   44:7  45:12,13  49:8
   53:17,19  54:5  55:8,9
   56:12,13,15,19,23  57:23
jobs
42:16,16
Jones
17:14  29:16  31:13  38:4
   40:11  42:3,9
July
50:6

           K

keep
12:3  14:15
kin
61:16
kind
24:21
Kinross
3:7
kitchen
25:14,14  26:3
knew
16:19  25:22
know
7:5  9:18  13:14,21  15:18
   16:23  18:19  19:21  23:21
   26:14  27:1,3,8,10  28:5
   31:20  32:22  33:4  38:4
   38:12,15  39:9,14  41:2
   45:13,15  48:14  50:19,22
   51:1,4  53:3,7,20  54:7
   54:14,16,19  55:6  59:4
knowing
14:6
knowledge
57:2

           L

L
2:1
labels
34:9
labor
25:16
laborer
25:18,21,23
language
35:19
Large
5:5
law
3:5,13  16:23  42:17,18,21
laws
2:14

lawsuit
10:1,6,10  11:23  26:17
   44:15  59:18
lawsuits
43:8
lawyer
16:9
lawyers
44:2,7,15
leading
2:19
leave
7:4  16:4
Lee
37:15
Let's
23:17
license
20:20  21:4,22  61:23
life
45:10
lifted
10:20
line
13:8
Lisa
26:9  27:1  45:12  47:20
   51:11  54:11  56:15
Lisa's
26:21
list
20:8,12
listed
46:19
lists
46:8
little
23:15
LLP
3:14
long
8:5  39:1  49:15,16
look
13:9  25:17  28:3
Looking
55:21
lose
24:19
lot
26:2  45:10  53:10,11
Lots
44:11,21
lower
46:13
lunchroom
18:4  19:9,16,18  22:14,18
   23:2  25:4,8,10  27:12
   30:1  31:10,12  35:6
   46:10,17  47:8  56:23
   58:1,7

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                              http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
May 21, 2008

## M

main
12:15 22:7
making
10:14 11:4
male
52:10 57:6
manage
9:14
manager
31:10,12
managers
53:13
manuals
35:16
man's
57:23
mark
14:13,19 37:10 42:2
marked
14:22 37:7 41:22 42:2
Ma'am
6:13
McKinney
13:7 17:7,11 27:22 28:5
   30:13 47:3 52:21
meal
25:22
meals
25:17,23
mean
13:2 19:3 21:13 24:17
   25:6 27:19 36:7 59:18
means
10:23 15:18
meet
28:21 42:14
meeting
58:17
members
9:4,6 46:9,10,13
met
16:9 31:18
middle
6:3 8:21 42:8 46:15 47:7
minorities
12:13
minority
11:23 12:21 36:13,18 40:4
misquote
42:12
mistake
32:10,10
mixing
34:11
monetarily
43:14
money
44:2,11,21
Moon

47:20 49:13 50:15
Murphy
33:4 46:21 48:22,23
   51:10 54:1 59:15

## N

N
2:1 3:1
name
6:5,8 26:22 49:11 51:9
NEA
37:16
necessary
2:16 56:22
need
19:23 25:11,15,21 26:6
   58:6
needed
31:13
neither
61:16
new
9:10 25:14,14
Nixburg
5:11
North
3:16
Northern
1:2 6:3
Notary
1:23 2:9 5:4 61:22
number
34:12 46:5,6
numbers
14:16
numerous
17:23
nutrition
25:18 35:18 38:9,11,17,21
   39:2,3,5,13,14 53:14

## O

O
2:1 3:8
object
16:12 32:18 40:23 43:10
   43:17 44:5 45:4 51:21
   55:4,11 58:2
objections
2:17,20
observed
55:16
obtain
36:18 40:17 41:5
obtained
40:20
obtaining
40:12
offer
41:7,9,11

offered
2:22
office
7:21 39:6,17 56:6
offices
5:21
Oh
30:21
okay
7:3 8:8 9:1,12,18 10:5,22
   11:3,8,10,18,22 12:20
   13:5 14:2 15:22 16:8,16
   16:22 17:6,8 19:7 21:12
   22:14,22 23:6,19 24:1
   25:1,6 26:19 27:17
   28:8,13 37:3 38:3 39:9
   42:7 43:2 45:19 46:17
   47:2,6,13 49:2,9,15,20
   50:2,18 51:7,10 52:15
   52:17,23 53:2 56:3,8,11
   57:14,17,18
once
15:12
one-half
8:7
open
7:4 19:11,18,21 57:8
operates
41:18
option
30:6
oral
5:15
order
10:21 13:12,16 21:16
   24:22 29:23 35:1 40:3
   40:10
oversee
9:16
Owens
47:21 50:4 59:15

## P

P
2:1 3:1,1,8
page
4:2,8 37:14 42:5,9
paid
44:17
Pam
42:3
part
29:6,8,9,10,15
participate
17:16
particular
57:16
parties
2:4,20 61:17
party

6:8
pass
22:7
pay
44:9 45:6
pending
6:1
people
19:15 20:8 33:8 34:3
   46:10
perform
32:13
performance
24:6
period
25:3
periodically
12:8
permanent
24:2 27:14 35:3
permanently
22:23
person
51:17
personnel
15:17 23:12 24:15 27:15
   40:9
petitioned
10:14
place
3:15 56:5
plaintiff
1:8 3:3 6:6
plaintiffs
44:15
Plaintiff's
4:9,10,11 14:21 37:6
   41:21
point
15:19 18:21 19:23 45:1
   59:13
policy
35:16
poor
11:11 27:16
position
7:18 8:6 18:18 19:20,22
   20:1 21:1 22:23 24:2,19
   25:7,11 26:8,9,10,15
   27:10,14,20,21 28:2,7,9
   28:15 30:14,17 34:15
   35:2,4,6 39:10,10 42:11
   48:6,7,16 50:18 52:8
   57:8,10,20 58:1
positions
12:22 18:6 28:11 36:14,19
   42:19 48:21 57:5,6
possess
33:1,5 51:19
possible
28:2

possibly
7:2 25:12
post
19:10 30:3,7
posted
25:10 26:7 28:1 39:20
   42:16,19 48:15
posting
28:4,6 30:4 42:6 48:17
   48:19,20 49:8 53:19
   54:5
postings
30:23 35:18,22
practice
16:23
practices
10:2
present
7:14
pretty
22:18
prevented
51:18
previous
5:10
principal
8:14
prior
2:23
Pritchett
1:20 2:7 5:1
probably
10:18 15:18 31:9,11 42:12
   48:18 55:17
problem
34:16
problems
34:19,21,22
Procedure
5:8
proceedings
5:16
process
16:2 17:8 27:5 31:7
   38:22 53:12 59:17,18
product
34:9
products
34:10,18
Professional
1:22 2:8 5:3
program
20:17,17,18 25:19 34:6
   38:18 41:18
provide
16:17 33:8
provided
5:7 15:4 46:7
provides
41:13
providing

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                              http://www.TylerEaton.com

**GLORIA SIMS**
**COOSA COUNTY BOARD OF EDUCATION**

TODD WINGARD
May 21, 2008

16:17
Public
1:23  2:9  5:4  61:22

purpose
16:16,19  17:3

purposes
44:12,22

pursued
41:4

put
35:21

**Q**

qualification
30:4

qualifications
30:10  39:19  42:6,15

qualified
29:14  42:14

question
11:11  15:19  27:16  43:19
  52:14

questions
2:18,19  58:20  61:9

**R**

R
3:1,12  61:1

race
50:12,15,22  57:16,17,18,19
  58:8

races
12:5

read
7:1  34:9,9,14  37:13  42:4
  42:11,13

reading
2:11

really
27:19  32:16

Realtime
1:21  2:8  5:2

reason
25:17  26:7  28:20  29:7,9
  54:3,6,12,13

reasons
34:12

recall
13:8  14:7  26:11,12  27:23

receive
13:15  20:19  23:10,14

received
10:19  11:19  13:5,11  26:10
  41:3

recipe
34:9

recipes
34:17

recommend
53:16

recommendation
17:20  29:12,20  31:8,12

recommendations
53:13

recommended
25:19  28:17  31:16  35:15
  35:16  53:15

record
6:7  45:17,21  46:3  47:18
  59:4,23

records
13:10  45:14

recruitment
12:16

reduced
61:10

referred
59:17

referring
25:7  57:23

regarding
38:20

Registered
1:22  2:8  5:2

regular
19:22

relating
2:15

remarks
58:12

remember
15:10  28:4

remove
24:22

renew
24:10

renewed
24:7

Repeat
43:19

rephrase
27:18  52:14

replaced
51:4

report
12:7

reported
1:20  34:23

Reporter
1:21,23  2:8,9  5:2,3  6:20

represent
6:6,8,11  37:12  59:11

represents
61:12

request
15:3

require
30:12,17  31:1  42:21  57:11
  57:12,12,16

required
22:5  30:5  39:15  42:15

52:19  53:4,6,8  54:2,4
54:12  55:2,19

requirement
21:19  22:7,10  29:22  31:19
  32:3,16  35:7  36:1,3,5
  39:10  42:23  48:12,15,18
  49:5,8,22  51:13  53:19
  55:14  56:5

requirements
19:10  20:19,23  21:2,13
  22:2,3,15,17  28:22  29:2
  40:3,8,12  42:10

requires
20:4  42:18

respective
2:5

responsibility
10:9

result
61:18

retain
12:12,21  40:4

retired
51:5

returned
10:23

review
15:13

Reviewing
42:7  56:3

right
12:20  20:7  23:11,17  24:17
  28:13  40:17  48:11
  52:23  59:6

Road
5:12

Roberson
3:4,6,6  4:3  5:18  6:5,13
  6:22  7:7  14:15,18  26:21
  45:16,20  46:2,4  58:16
  58:23  59:3,22

Rockford
5:12,22

Rose
3:14

rule
35:1

rules
2:14  5:7

run
7:21

**S**

S
2:1  3:1

SAITH
60:6

sample
35:16,18

satellitting

26:2
satisfactorily
32:12

satisfactory
24:6  32:23  33:5

saw
8:1

saying
15:6

school
8:14,21,21,22  9:2,14,23
  15:4  16:10  19:5  25:12
  26:6,13,18  27:4,7  28:7
  29:23  30:2,12,18  31:1
  31:18  32:13  33:1,6,16
  34:3,4,8  35:6,8,14,20
  36:7  40:21  42:22  46:7
  46:11,14,15,18,22  47:14
  47:19  48:12  50:10
  51:14,19  52:11,13,19
  53:3,21  54:8  55:19
  56:6,22  57:3,6  59:16

schools
8:18,20  12:13  47:7  49:10

schoolteacher
33:15

school-aged
18:22

screening
31:15,17  53:12,17

second
42:5,9  58:22  59:5

secret
17:2

secretary
20:22

see
13:10  31:17  42:8

seen
15:1,8  37:18  48:16

sense
18:8  24:14

September
48:23  49:13

sequential
14:16

served
25:22

service
24:14

services
41:16

sets
34:2

seven
8:7  39:6,7,8  40:16  43:4
  47:12  56:4

shift
18:14,17

show
37:9  42:1  47:23

side
44:14

sign
7:1

signature
2:10

signed
14:10  16:6

signs
8:1

similar
28:10

simply
16:1

Sims
1:7  5:23  6:6  14:6,11
  18:13  26:23  28:14,18,20
  34:16  40:19  44:3  46:6
  51:8,20  52:9  55:1

sir
7:11,13,17,20,23  8:4,6
  9:3,8,11,17  10:4,7,12
  11:21  12:6,10,15  13:1
  15:1  17:5,5,9  20:9,11
  25:5  34:1  37:19,21
  38:2  41:14  45:11

situation
20:3  26:1

six-hour
18:14

sorry
47:15  56:1

source
35:7,9

SOUTHERN
1:3

spending
44:1

split
53:1

staff
36:13  46:9,10

staffing
12:13  36:19,23

staggered
9:9,11

state
5:4  6:7  21:23  25:20
  35:17,23  36:2  38:17,20
  42:17,18,21  61:4

stated
42:15

statement
11:16  16:18  18:1  52:21

States
1:1  5:8  6:2  37:16

statistics
12:4  36:22

status
10:17,20,22  11:19  13:6,11
  13:15  38:1

Toll Free 800.458.6031          Tyler Eaton Morgan Nichols & Pritchett, Inc.          http://www.TylerEaton.com

**GLORIA SIMS**
**COOSA COUNTY BOARD OF EDUCATION**

TODD WINGARD
May 21, 2008

stenotypy
61:9
STIPULATED
2:3
stipulation
5:9
stipulations
6:21
straight
43:2
study
41:5
subject
9:22,22 10:1 11:13,20
substitute
19:8,9,11 20:1,5,13,16,18
20:20,21,23 21:20,22
22:4,12,13,16,18 31:11
33:12,15 35:3 48:5
substitutes
19:18 20:8
suggest
49:21
superintendent
7:15 8:12,17 9:2,13 30:8
32:4 35:10 43:5 49:3
50:7 51:12
supervision
61:11
support
15:16 23:12 24:14 27:15
40:9
supposed
36:12,17 51:13
sure
10:19 13:11 15:14 18:20
20:2 22:18 34:11,13
39:18 41:15 53:18
surrounding
41:19
swear
6:14
Sweeney
6:10 16:14,23
sworn
6:17
system
9:14 13:15 34:4
systems
9:23

_____
T
_____
T
2:1,1 61:1,1
take
45:17 54:20
taken
2:6 31:23 61:8
takes
24:18

talk
17:6
talking
44:6
tape
5:18 37:14
teacher
20:17,18,20 21:18,20,22
22:4,13 23:16,21 38:15
teachers
12:18,19 19:20 23:8 33:12
40:8
tell
45:16
Temp
25:9
temporary
25:3,8,9 26:8,10,15 28:2
28:6,9 35:4,5 48:9
ten
58:18
tenure
23:3,10,14 24:12 49:18
tenured
24:11,13
term
19:8
terminology
24:15 35:5
terms
9:9
testified
6:18
testify
14:3
testimony
14:7 15:15
thank
16:8 38:3 59:22
thereto
2:23 61:10
things
11:22 43:15
think
22:4,6,21 23:5,7,12,15
25:15 27:5,6,9 30:19,22
32:8,20 34:2,5 36:2
38:22 41:16 51:8 55:18
57:1,10,15
thinking
48:17
third
23:13
thought
25:11 26:4 29:13 56:1
three
23:18 24:11 47:15 52:12
54:17 56:8,10
three-person
29:11 31:6
three-year

25:2
till
58:18
time
2:21,22 9:10 13:6,8,13
15:15 18:13 25:2 31:4
48:13 49:16 52:18
53:10,20
times
19:4
title
38:10
Today
5:20
Todd
1:16 2:6 5:14,19 6:16
7:12 60:2
top
13:23 46:10
total
47:11
training
38:16 39:12,15
transcript
61:13
transportation
37:2,5
transporting
26:2
trial
2:21
true
61:12
try
27:19
tutoring
41:11
twice
8:9
two
9:20 47:9 49:9
typed
15:12
typewriting
61:11

_____
U
_____
U
2:1
understand
9:21 17:10 27:19 33:20
45:9 51:3 54:23 55:3,7
Understood
59:2
unitary
10:17,20,22 11:19 13:6,11
13:15 38:1
United
1:1 5:8 6:2 37:16
unnecessary

32:17,21
upset
55:7
use
19:8 24:16 35:2,5
Usual
6:20
usually
19:15 30:8

_____
V
_____
valuable
18:5
versus
5:23 37:15
VIDEO
1:14
videotape
5:19
violated
55:15
volunteer
41:16
vs
1:9

_____
W
_____
waive
40:3
waived
2:12 32:4,5,8
waiving
40:8
want
6:23 17:6 20:15 25:1
35:4 37:13 43:2 53:1
59:4
wasn't
17:2 53:4,7 54:2,11
way
15:6 43:14 45:2 48:20
weren't
11:12 36:16
white
3:14 51:2,4
Wingard
1:16 2:6 5:14,20 6:16 7:8
7:12 22:22 37:9 43:4
46:3,5 58:16 59:10,23
60:2
witness
2:11 5:14 6:14 61:14
word
19:14
work
18:23 19:15 20:4 28:14
30:1 34:3
worker
18:4 19:9 20:16,21 22:14
22:19 25:4,8,10 27:13

30:1 34:15 35:6 48:9
48:20 56:23
workers
19:19 35:19 46:18 47:8
working
18:14,18 27:11,12
works
34:6 38:5
wouldn't
32:7 45:10 49:21 57:11

_____
Y
_____
yeah
32:6 56:13,14
year
8:3 10:18 11:4 23:3,9,13
24:3 25:12 26:6 28:7
years
7:22 8:7 23:18 24:7,11
39:7,8 40:16 43:4
Yuengert
3:12 4:4 6:9,10,23 7:3
15:7 16:12 32:18 40:23
43:10,17 44:4 45:4,19
51:21 52:2 55:4,11 58:2
58:21 59:2,6,9,11,20
y'all
9:19 11:4 12:3 13:5 17:3
30:6 36:16 39:22 41:7
43:5,6 44:7 45:14
48:11 49:5 57:5

_____
0
_____
0035
46:6
07-704
6:4

_____
1
_____
1st
49:14
10:50
5:13 6:14
11th
16:7
11:30
45:21,23
11:40
45:23 46:3
11:52
60:3
116
61:23
12
58:18
14
4:9
1819
3:16
1978

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
May 21, 2008

| | | |
|---|---|---|
| 49:14 | 4:3 | |

| 2 | 8 | |
|---|---|---|
| 2:07-CV-704-MEF | 8th | |
| 1:5 | 48:3 | |
| 2:30 | 8:30 | |
| 18:15 | 18:14 | |
| 2001 | | |
| 5:11 | **9** | |
| 2002 | 9th | |
| 50:6 | 49:1 | |
| 2003 | | |
| 49:1 | | |
| 2005 | | |
| 48:3,8 | | |
| 2007 | | |
| 16:7 | | |
| 2008 | | |
| 1:17  5:13  60:4 | | |
| 21 | | |
| 1:17 | | |
| 21st | | |
| 5:12,20  60:3 | | |
| 22nd | | |
| 50:6 | | |

| 3 |
|---|
| 3101-N |
| 37:15 |
| 35203 |
| 3:17 |
| 35238-0487 |
| 3:9 |
| 37 |
| 4:10 |
| 3765 |
| 3:7 |
| 380487 |
| 3:8 |

| 4 |
|---|
| 4 |
| 4:9  14:14,19,22  16:5 |
| 41 |
| 4:11 |

| 5 |
|---|
| 5 |
| 4:10  37:7,10 |
| 53:43 |
| 59:1 |
| 59 |
| 4:4 |

| 6 |
|---|
| 6 |
| 4:11  41:22  42:3 |

| 7 |
|---|
| 7 |

Page 68

In The Matter Of:

## GLORIA SIMS
v.
## COOSA COUNTY BOARD OF EDUCATION

### NO. 2:07-CV-704-MEF

---

### JAN FORBUS
### May 21, 2008

---



## TYLER EATON

TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

## THE HIGHEST QUALITY IN COURT REPORTING

205.252.9152 • Toll-Free 800.458.6031 • Fax 205.252.0196
One Federal Place, Suite 1020 • 1819 Fifth Avenue North • Birmingham, Alabama 35203
———————— www.TylerEaton.com ————————

## Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CIVIL ACTION NO. 2:07-CV-704-MEF

GLORIA SIMS,
    Plaintiff,
vs.
COOSA COUNTY BOARD OF EDUCATION,
    Defendant.

VIDEO DEPOSITION
OF
JAN FORBUS
May 21, 2008

REPORTED BY:  Gail B. Pritchett
    Certified Realtime Reporter,
    Registered Professional
    Reporter and Notary Public

## Page 2

### STIPULATION

IT IS STIPULATED AND AGREED, by and between the parties, through their respective counsel, that the deposition of JAN FORBUS may be taken before Gail B. Pritchett, Commissioner, Certified Realtime Reporter, Registered Professional Reporter and Notary Public;

That the signature to and reading of the deposition by the witness is waived, the deposition to have the same force and effect as if full compliance had been had with all laws and rules of Court relating to the taking of depositions;

That it shall not be necessary for any objections to be made by counsel to any questions, except as to form or leading questions, and that counsel for the parties may make objections and assign grounds at the time of trial, or at the time said deposition is offered in evidence, or prior thereto.

## Page 3

### APPEARANCES

FOR THE PLAINTIFF:
    Mr. Jerry D. Roberson
    Attorney at Law
    Roberson & Roberson
    3765 Kinross Drive
    P. O. Box 380487
    Birmingham, Alabama 35238-0487

FOR THE DEFENDANT:
    Ms. Anne R. Yuengert
    Attorney at Law
    Bradley, Arant, Rose & White, LLP
    One Federal Place
    1819 Fifth Avenue North
    Birmingham, Alabama 35203

OTHERS PRESENT:
    Mr. Todd Wingard

## Page 4

INDEX OF EXAMINATION
                         PAGE:

EXAMINATION BY MR. ROBERSON    7
EXAMINATION BY MS. YUENGERT    59

INDEX OF EXHIBITS
               PAGE:

Plaintiff's Exhibit 1    38
Plaintiff's Exhibit 2    47
Plaintiff's Exhibit 3    55

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                           http://www.TylerEaton.com

GLORIA SIMS                                                        JAN FORBUS
COOSA COUNTY BOARD OF EDUCATION                                    May 21, 2008

Page 5

I, Gail B. Pritchett, a
Certified Realtime Reporter and Registered
Professional Reporter of Birmingham,
Alabama, and a Notary Public for the State
of Alabama at Large, acting as
Commissioner, certify that on this date,
as provided by the Federal Rules of Civil
Procedure of the United States District
Court, and the foregoing stipulation of
counsel, there came before me at the Coosa
County Board of Education, 2001 Nixburg
Road, Rockford, Alabama, on the 21st day
of May, 2008, commencing at 9:34 a.m., JAN
FORBUS, witness in the above cause, for
oral examination, whereupon the following
proceedings were had:

MR. ROBERSON:  All right.
This is the videotape deposition of Ms.
Jan Forbus.  It's being taken today, which
is May 21st, 2008, at the offices of the
Coosa County Board of Education, 201
Nixburg Road, Rockford, Alabama 35136.

Page 6

This case is pending in the
United States District Court for the
Middle District of Alabama, Northern
Division.  Gloria Sims is the plaintiff,
Coosa County Board of Education is the
defendant.  It's CV-07-704.
My name is Jerry Roberson.  I'm
the attorney for the plaintiff, Gloria
Sims.  I would ask all counsel of record
to state their name and the party they
represent.
MS. YUENGERT:  Anne Yuengert,
along with Donald Sweeney.  I represent
the Coosa County Board of Education.
MR. ROBERSON:  Okay.  Ma'am,
would you swear our witness, please?

JAN FORBUS,
having been first duly sworn, was examined
and testified as follows:

THE COURT REPORTER:  Usual
stipulations?

Page 7

MR. ROBERSON:  Yes.
MS. YUENGERT:  Yes.  And she
will tell us whether she wants to read and
sign.

EXAMINATION BY MR. ROBERSON:
Q.    Ms. Forbus, have you ever
given a deposition before?
A.    No, sir.
Q.    Okay.  Well, there are a few
rules that we need to follow today, okay?
A.    Yes, sir.
Q.    And one of the rules is if I
ask you a question, you need to be -- to
understand it.  So if I ask you something
you don't understand, please tell me and I
will try to rephrase it, okay?
A.    Okay, uh-huh.
Q.    If you don't tell me, I will
assume you understood it.  Fair enough?
A.    Yes, sir.
Q.    And the other rule is today
you have to answer out loud, audibly.

Page 8

Normally in conversation we nod our head
or say uh-huh or uh-uh, but we can't do
that today because she has got to take
everything down.
A.    Yes, sir.
Q.    Okay.  And we can't both talk
at the same time.  So if you'll let me
finish my question, I'll try to let you
finish your answer.
A.    Okay.
Q.    All right.  Now, you are Jan
Forbus?
A.    Yes, sir.
Q.    And you are employed with the
Coosa County Board of Education?
A.    I'm retired now.
Q.    Oh, okay.  When did you
retire, ma'am?
A.    In May, last -- whatever.
Q.    2007?
A.    Yes.
Q.    Okay.
A.    2006.  Was it --

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                        http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

Page 9

1  Q.   Well, how long did you work
2  for the --
3  A.   Twenty-six years.
4  Q.   Just can't keep a job, huh?
5  And what was your position at the time you
6  retired?
7  A.   Cafeteria manager.
8  Q.   Which cafeteria?
9  A.   Central High School, Coosa
10  County.
11  Q.   And as the cafeteria manager,
12  who is your supervisor now -- or who was
13  your supervisor?
14  A.   Pam Jones.
15  Q.   What's her position?
16  A.   Child nutrition director.
17  Q.   Does she have an office at the
18  high school?
19  A.   No, sir.
20  Q.   Where is her office located?
21  A.   Here in the central office.
22  Q.   Okay.  Here at the --
23  A.   Board of Education.

Page 10

1  Q.   Okay.  So I take it, then,
2  that Ms. Jones' position, she supervises
3  all of the food programs --
4  A.   Yes, sir.
5  Q.   -- for all of your schools,
6  correct?
7  A.   Yes, sir.
8  Q.   Okay.  Now, at the time you
9  retired, how many workers did you
10  supervise at the Central High School, how
11  many lunchroom workers?
12  A.   Four.
13  Q.   And do you know who they were,
14  ma'am?
15  A.   Margaret Henderson, Barbara
16  Murphy, Sandra Thompson, and at the time
17  Michael Kelley held the position that was
18  being subbed for.
19  Q.   Okay.  Now, of those people
20  you have just identified, how many of them
21  are still there, do you know?
22  A.   Three.
23  Q.   Ms. Henderson?

Page 11

1  A.   Uh-huh.
2  Q.   Is that yes?
3  A.   Yes.  Excuse me.
4  Q.   That's all right.  I will just
5  try to remind you, okay?
6  And Ms. Murphy, is she still
7  there?
8  A.   Yes.
9  Q.   And Sandra Thompson?
10  A.   Yes.
11  Q.   Mr. Kelley is no longer there?
12  A.   No, sir, he is not there no
13  more.
14  Q.   Okay.  Now, is he the person
15  that Ms. Sims was substituting for when
16  she --
17  A.   Yes, sir.
18  Q.   -- worked there?  Okay.
19  Before he left, how long had he worked
20  there in the lunchroom?
21  A.   I don't know, because I wasn't
22  there at the time he was hired.
23  Q.   Okay.  Well, maybe I

Page 12

1  misunderstood, then.
2  You retired with twenty-six
3  years, but how long were you the cafeteria
4  manager at Central High School?
5  A.   Four.  Four years.
6  Q.   Okay.  Before that what were
7  your --
8  A.   I was at Kellyton Elementary
9  School.  And then they closed those
10  schools and I moved to the high school.
11  Q.   Were you the cafeteria manager
12  there?
13  A.   Yes, sir.
14  Q.   Okay.  I see.  And so when you
15  arrived, it would have been 2003,
16  approximately, school year of 2003 at
17  Coosa Valley?
18  A.   At Coosa Central?
19  Q.   Coosa Central.
20  A.   Mr. Wingard is going to have
21  to help me on that, I don't know --when
22  did they -- whenever they closed all of
23  the elementary schools.  I'm not sure,

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

---

Page 13

sir.
Q.   Okay.  That's fine.  Mr.
Kelley was already there, he was
working --
A.   Yes, sir.
Q.   Okay.  Now, who held the
position as cafeteria manager before you
at the high school?
A.   Patty Williams.
Q.   And is she still employed?
A.   No, sir.
Q.   Did she retire?
A.   Yes, sir.
Q.   Now, you've identified four
people, three women, correct?
A.   Yes, sir.
Q.   Are all of those women white?
A.   Yes, sir.
Q.   And Michael Kelley, was he a
black male?
A.   Yes, sir.
Q.   Okay.  Now, this is what I
don't understand, so help me, if you

---

Page 14

would.
In the lunchroom when a
position is vacant, is there a period of
time when one can work as a substitute or
-- substitute lunchroom worker?
A.   I don't understand what you
are saying.
Q.   Okay.  Well, Ms. Sims worked
as a substitute lunchroom worker, is that
right?
A.   Yes, sir.
Q.   Okay.  Are there any job
requirements, any -- any requirements in
order to hold that position as a
substitute lunchroom worker?
A.   Not on a substitute.
Q.   Okay.  Anyone can hold the
position as a substitute, correct?
A.   Yes, sir.
Q.   Okay.  Now --
A.   If the board approves them as
a substitute.
Q.   Okay.  Now, explain to me, the

---

Page 15

position, if it's awarded on a -- is it
awarded on a permanent basis?
A.   No, sir.
Q.   It's awarded on a temporary
basis?
A.   No, sir.
Q.   All right.  Well, for example,
Ms. Murphy who is working there now, do
you know how long she has worked there?
A.   No, sir, I don't.  She was
already employed in the system.
Q.   Okay.  Is she on some kind of
an annual contract or do you know?
A.   I don't know.
Q.   Well, I mean, does she have to
be rehired every year or do you know?
A.   I don't -- I don't know.
Q.   Okay.  Well, have you fired
anybody --
A.   No, sir.
Q.   -- as a cafeteria manager?
A.   No, sir.
Q.   Do you know if you have that

---

Page 16

ability, that authority?
A.   I wouldn't think I did.
Q.   Okay.  Do you evaluate these
employees in any way?
A.   Yeah.
Q.   Do you have a written
evaluation of them?
A.   No.
Q.   Okay.  Well, I'm trying to
understand -- and maybe I need ask some
other people.  I'm trying to understand
how these positions are filled and what it
is to hold one, what it means to hold one.
So do you know if you have a --
if Barbara Murphy has a job, under what
circumstances she can be replaced?  Why
she can be -- her position can be ended?
A.   Could you re -- I mean, I
don't understand what you are trying to
ask me here.
Q.   Well, you know, teachers in
Alabama get tenure after so many years.
A.   Yes, sir.

---

4 (Pages 13 to 16)

Page 17

2     Q.   You understand what that
means?
3     A.   Yes, sir.
4     Q.   Do lunchroom workers ever get
5 tenure?
6     A.   Yes, sir.
7     Q.   Okay. How many years does it
8 take to get tenure?
9     A.   You have to be asked back on
10 your fourth year.
11     Q.   Okay.
12     A.   Three years and asked back.
13     Q.   So is there a distinction
14 between someone who is working in their
15 first three years versus someone who is --
16 I'm going to use the term tenured as a
17 lunchroom worker?
18     A.   As I understood it when I came
19 to work, the three-year period was just a
20 probationary period to see if you
21 qualified for the job. Now, that's just
22 an understanding. No one ever really -- I
23 heard -- was never told that, I have just

Page 18

1 heard that.
2     Q.   Okay. Now, in order -- if the
3 position, a lunchroom --
4     First of all, what time do
5 these people report for work?
6     A.   Well, they have different
7 schedules.
8     Q.   Okay.
9     A.   Different time schedules.
10     Q.   Do y'all -- at the high
11 school, do y'all serve breakfast?
12     A.   We didn't at the time I was
13 there.
14     Q.   Okay.
15     A.   They do now.
16     Q.   They do serve breakfast now?
17     A.   Uh-huh.
18     Q.   Is that yes?
19     A.   Yes.
20     Q.   Okay.
21     A.   Sorry.
22     Q.   And so -- but at the time you
23 were the manager, they were only serving a

Page 19

1 lunchtime meal, is that correct?
2     A.   Yes, sir.
3     Q.   No other meals other than
4 lunch?
5     A.   No, sir.
6     Q.   All right. And the different
7 -- there are four positions there. Do
8 they have different responsibilities?
9     A.   Yes, sir.
10     Q.   Okay. Tell me what Ms.
11 Henderson does -- or did when you were
12 cafeteria manager.
13     A.   Well, they have a rotation
14 schedule. They rotate into what they --
15 one makes bread one time, you know, and --
16 something like that. They didn't have a
17 specific thing to do other than bread
18 rotation. They just worked together on
19 the rest.
20     Q.   Well, the position held by Mr.
21 Kelley --
22     A.   Well, yes, sir.
23     Q.   -- when he was there, did he

Page 20

1 cook?
2     A.   Some, yes.
3     Q.   Okay. And what else did he
4 do? What were his other job activities?
5     A.   He fixed up the snack rack.
6 He cleaned the -- done the -- kept the
7 food on the hot bar during the serving
8 period time. He done the cleaning,
9 mopping and cleaning in the afternoons.
10     Q.   Emptied the trash?
11     A.   Yes, sir.
12     Q.   Anything else? Did he do
13 loading and unloading boxes?
14     A.   Yes, sir. Yes, sir, loading
15 and stocking the -- when the groceries
16 come in, the inventory come in, he stocked
17 it.
18     Q.   Does a truck deliver the
19 groceries?
20     A.   Yes, sir.
21     Q.   Is that -- where is that truck
22 from? Do y'all have a vendor or vendors
23 that --

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031              http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

Page 21

1    A.   Yes, sir, we have vendors.
2    Q.   -- that drop off, say, milk or
3  whatever?
4    A.   Yes, sir.
5    Q.   Now, when Ms. Sims worked
6  there in Mr. Kelley's spot, took his spot,
7  did she do the same things that he did?
8    A.   Yes.
9    MS. YUENGERT:  Object to the
10  form.  You can answer.
11    Q.   I mean, she had the same job
12  activities as he did, correct?
13    MS. YUENGERT:  You can answer.
14    A.   Yes.
15    Q.   Okay.  And she did the
16  cleaning, she did the emptying the trash
17  and she did the loading, and she cooked
18  some and kept up the hot bar, correct?
19    A.   Yes, sir.
20    Q.   Did you -- were you her
21  supervisor?
22    A.   Yes, sir.
23    Q.   Did you observe her job

Page 22

1  performance?
2    A.   Yes, sir.
3    Q.   Was it satisfactory to you?
4    A.   I don't know how to answer
5  that one, because that's not a specific --
6  in the beginning, can I put it that way?
7    Q.   Ma'am, you can put it any way
8  you would like.  I'm just asking you
9  questions about Ms. Sims' job performance.
10    Well, did -- was there ever any
11  time you felt her job performance was
12  deficient?
13    A.   Yes, sir.
14    Q.   Tell me about that.
15    A.   Stocking the groceries,
16  freezer items, she couldn't -- she didn't
17  always get those stocked the way they --
18  on the time limit that we had set for it.
19    Q.   I'm not -- I'm not
20  understanding.  Of course, I have never
21  worked in the lunchroom, so what do you
22  mean by that?
23    A.   Well, because the thing -- the

Page 23

1  groceries had to be stocked when they came
2  in, in the freezer especially, because the
3  ladies -- the job she held, she came in
4  later than the other employees.
5    Q.   What time did she report to
6  work?
7    A.   8:30.
8    Q.   And when did she quit work,
9  what was her --
10    A.   At 2:30.
11    Q.   So it was a six-hour shift?
12    A.   Yes, sir.
13    Q.   And how much was she paid?
14    A.   I didn't deal with the salary.
15  I wasn't on the --
16    Q.   You don't know?
17    A.   No, sir, I do not know.
18    Q.   Do you know how much any of
19  the --
20    A.   No, sir.
21    Q.   -- people there were paid?
22  Okay.
23    All right.  So you -- did you

Page 24

1  ever reprimand Ms. Sims for anything
2  during the time that she worked there?
3    A.   Are you talking about a
4  written recommend -- reprimand?
5    Q.   Written or oral.
6    A.   I don't know how to answer
7  that one, honestly, because -- I just --
8  the freezer doings, I did reprimand her
9  on.
10    Q.   What would you tell her?
11    A.   I asked her that if she could
12  not stay in the afternoons, you know -- if
13  her time limit was going to be limited --
14  she said she had to leave exactly on time,
15  you know, and I understand that.  But we
16  can't work people over, so you have to get
17  your job done in your time frame.  And
18  there was days that she didn't on the
19  freezer items.
20    Q.   Well, did other people leave
21  at 2:30?  Did the entire staff leave at
22  2:30?
23    A.   They got off at 2:00.

6 (Pages 21 to 24)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

Page 25

2    Q.   Anything else that you ever
took exception to her job performance?
3    A.   I don't remember.
4    Q.   Do you know how long she
5  worked?
6    A.   I don't.
7    Q.   Did she keep the cafeteria
8  clean?
9    A.   Yes.
10    Q.   Did she keep the trash empty?
11    A.   No, sir.  She had to have help
12  in the end on that.  She got to getting
13  the students to help her.  It was a --
14  it's a heavy job.
15    Q.   Did she do the mopping
16  satisfactory to you?
17    A.   Yes, sir.
18    Q.   Keep the hot bar in good
19  shape?
20    A.   Yes, sir.
21    Q.   And the snack food rack?
22    A.   Well, she had help with that.
23  The other workers helped her on that.

Page 26

1    Q.   What about her cooking, was
2  she a --
3    A.   Yeah.
4    Q.   -- satisfactory cook?
5    A.   When she participated, yes.
6    Q.   Did she seem to get along with
7  the other workers in the cafeteria?
8    A.   Yes, sir.
9    Q.   I mean, wasn't any friction or
10  unpleasant work situations, were there?
11    A.   No, sir.
12    Q.   All right.  Now, did you ever
13  have any occasion during the time that she
14  worked here to have to give her a written
15  reprimand about her job performance?
16    A.   Sir, we didn't do written
17  reprimands on substitutes, because they
18  are just substitutes.
19    Q.   What does that mean?  I'm
20  sorry, I'm not following you.  You mean
21  you just tell them if they are -- if it
22  requires a written reprimand, you just
23  send them home and get somebody else, is

Page 27

1  that what you --
2    A.   I wouldn't -- that would have
3  been referred to the supervisor.  That
4  wouldn't have been my -- I would have had
5  to went through a supervisor.
6    Q.   Ms. Jones?
7    A.   Yes, sir.
8    Q.   Okay.  Did you ever have any
9  discussions with Ms. Jones about Diane
10  Sims', Gloria Sims', job performance?
11    A.   I don't remember having
12  anything.  I guess -- I would have to say
13  yes, I did talk to her about Ms. Sims.
14    Q.   What did you tell her, do you
15  recall?
16    A.   Well, when we had -- when we
17  had problems about the --
18    Q.   Freezer?
19    A.   Uh-huh.
20    Q.   Do these people punch a time
21  clock?
22    A.   No, sir.
23    Q.   So how does their time get

Page 28

1  reported?  That is --
2    A.   They have a sign-in sheet and
3  a sign-out sheet, but we have no time
4  clock.
5    Q.   I got you.  Well, are you
6  there during their work hours?
7    A.   Yes, sir.
8    Q.   So do you make some notation
9  that they are arriving on time and they
10  are leaving at the scheduled time?
11    A.   Yes, sir.
12    Q.   Do you keep it or does the
13  employee keep it, sign it in?
14    A.   The employee signs it in.
15    Q.   And you have to approve it?
16    A.   Well, I look at -- looked at
17  it, but --
18    Q.   Okay.  And is that turned in
19  to the office or to payroll in some way
20  or --
21    A.   Well, I -- no, sir, that
22  sheet's not.  No, sir.
23    Q.   Is there some document that is

7 (Pages 25 to 28)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

---

Page 29

1 turned in so that they get their pay?
2    A.    Yes, sir.
3    Q.    What is that?
4    A.    It's a payroll sheet, comes
5 from the central office.
6    Q.    Do you fill that out?
7    A.    Yes, sir.
8    Q.    Okay.  And so, for example, if
9 somebody has a personal -- some personal
10 matters to attend to and they are not at
11 work, you know, they let you know, their
12 pay is reduced, right, if they don't work
13 all of their hours?
14    A.    Yes, sir.
15    Q.    Okay.  And that's something
16 they need to get your approval about,
17 correct?
18    A.    Yes, sir.
19    Q.    And what's your policy on,
20 say, personal days?  Do they get so many
21 or --
22    A.    Yes, sir.
23    Q.    What about your tardy policy,

---

Page 30

1 are there any repercussions if they are
2 tardy, if they are late for work?
3    A.    I don't know what the policy
4 would be on that.  I'm not a -- I don't
5 know.  I would dock their time.
6    Q.    Okay.  Did you have occasions
7 where you had to do that to Ms. Sims?
8    A.    No.
9    Q.    Okay.  Did she come to work?
10 Did she have a good attendance record?
11    A.    Yes.
12    Q.    Now, Ms. Forbus, this is a
13 case that Ms. Sims has brought against the
14 -- her employer, the Coosa County Board of
15 Education.  You understand that?
16    A.    Yes, sir.
17    Q.    She didn't get a position that
18 she applied for, and so she has brought a
19 claim against the Board of Education.
20      Now, you were her supervisor.
21 Were you involved in the decision to hire
22 whoever the gentleman was who was hired in
23 this case?  Do you know his name?

---

Page 31

1    A.    Yes, sir.
2    Q.    What is that?
3    A.    Jerry McKinney.
4    Q.    Mr. McKinney.  And Mr.
5 McKinney is a black male, correct?
6    A.    Yes, sir.
7    Q.    Michael Kelley was a black
8 male, correct?
9    A.    Yes, sir.
10    Q.    Diane Gloria Sims is a white
11 female, correct?
12    A.    Yes, sir.
13    Q.    All right.  And she has
14 testified -- she has given a deposition
15 just like you today, and she -- Ms. Sims
16 has testified that you overheard
17 statements that you made during the time
18 that she worked here.  And she says that
19 you told her that this job she was working
20 was a man's job.
21      Do you recall ever making that
22 statement in her presence?
23    A.    No, I don't.

---

Page 32

1    Q.    And do you -- is Pam Jones
2 black?
3    A.    Yes, sir.
4    Q.    Did you -- do you recall her
5 -- you ever making the statement in Ms.
6 Sims' presence that you needed to get some
7 color in the lunchroom?  Did you ever make
8 that statement?
9    A.    Did I make what?
10    Q.    The statement that you needed
11 to get some color in the lunchroom.
12    A.    Did I make that statement?
13    Q.    Yes.
14    A.    No, sir.
15    Q.    Have you ever heard Pam Jones
16 make that statement?
17    A.    No, sir.
18    Q.    Okay.  Have you ever heard
19 anyone in management at the Coosa County
20 Board of Education make that statement?
21    A.    No, sir.
22    Q.    Now, are you aware that until
23 recently, this school board was under a

---

8 (Pages 29 to 32)

Page 33

1  federal decree about minority and minority
2  hiring, staffing, were you aware of that?
3      A.   No, sir.
4      Q.   Are you aware of it today?
5      A.   Well, you just told me.
6      Q.   Well, I know.  I did tell you,
7  but you can't always believe me.
8           Now, when somebody applies for
9  a job here in the lunchroom, are you on a
10  committee that interviews them?
11      A.   I was on this job
12  interviewing.  I haven't been always.
13      Q.   All right.  The position that
14  was filled by Mr. McKinney, you were on
15  the committee?
16      A.   Yes, sir.
17      Q.   Who else was on there?
18      A.   Ms. Jones, Mr. Bullard.
19      Q.   What's his position, Keith
20  Bullard?
21      A.   He's the principal.
22      Q.   At the high school?
23      A.   At the high school.

Page 34

1      Q.   And Mr. Wingard?
2      A.   Uh-huh.
3      Q.   Is that yes?
4      A.   Mr. Wingard wasn't there the
5  day we interviewed.
6      Q.   Okay.  But he was -- he was on
7  the committee --
8      A.   Yes, sir.
9      Q.   -- or he has a vote, so to
10  speak?
11      A.   Yes, sir.
12      Q.   But you three interviewed the
13  applicants, correct?
14      A.   Yes, sir.
15      Q.   And you interviewed Ms. Sims,
16  correct?
17      A.   Yes, sir.
18      Q.   And how many applicants did
19  you have?
20      A.   Sir, I don't --
21      Q.   Several?
22      A.   Several, yes, sir.
23      Q.   Okay.  Do you know a Rebecca

Page 35

1  Beasley?
2      A.   Yes, sir.
3      Q.   She was hired August of 2007.
4  Would that be after you retired?
5      A.   I was out on leave when she
6  was hired.  My doctor had put me on leave.
7      Q.   Okay.  Now, you know Barbara
8  Murphy, you worked with her?
9      A.   Yes, sir.
10      Q.   Is she a good employee?
11      A.   Yes, sir.
12      Q.   And she performed her job
13  duties satisfactorily to you?
14      A.   Yes, sir.
15      Q.   She doesn't have a high school
16  diploma or a GED; did you know that?
17      A.   Not until this took place.  I
18  wasn't in on her hiring.  I wasn't on the
19  committee that hired Barbara Murphy.
20      Q.   I understand that.  But Ms.
21  Murphy has performed the requirements of
22  the job satisfactory to you even though
23  she doesn't have a high school degree or a

Page 36

1  GED, correct?
2      A.   Yes, sir.
3      Q.   Well, does that imply to you
4  that that criteria is not necessary to do
5  the work?
6           MS. YUENGERT:  I'm going to
7  object to the form.  You can answer.
8      A.   I don't guess that it implies
9  that they can't do the work.  I was going
10  by the rules that were set before me on
11  the --
12      Q.   I completely understand what
13  you're saying.  What I'm asking you is,
14  from what you've observed as the manager,
15  Ms. Murphy has done a good job even though
16  she doesn't have a high school degree,
17  right?
18      A.   Yes, sir.
19      Q.   Well -- now, the lunchroom
20  workers, they don't provide any
21  instruction to the students in terms of
22  their academic instructions --
23      A.   No, sir.

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

---

Page 37

2    Q.   -- correct?
        A substitute teacher does
3 provide instruction to the students,
4 correct?
5    A.   I don't know. I would assume.
6    Q.   Well, did you ever have a
7 substitute when you were in school?
8    A.   Oh, yeah, sure.
9    Q.   And of course they provide
10 instruction, correct?
11    A.   Yeah, I would --
12    Q.   All right. Now, is Ms. Murphy
13 an honest woman, in your experience?
14    A.   Yes.
15    Q.   All right. Well, did you know
16 that Ms. Sims filed an EEOC charge in this
17 case; that's a prerequisite to filing a
18 Title VII lawsuit.
19         Were you aware that she had
20 filed a charge of discrimination?
21    A.   On this lawsuit?
22    Q.   Yes.
23    A.   Everybody knows that.

---

Page 38

1    Q.   Okay. And the school has an
2 obligation to investigate her charge of
3 discrimination and file a response. Were
4 you aware of that?
5    A.   No.
6    Q.   And the school has done that.
7 In fact, the school obtained an affidavit
8 -- or their lawyer, I assume, obtained an
9 affidavit of Barbara Murphy.
10         Have you ever seen that
11 document?
12    A.   No, sir.
13         (Whereupon, Plaintiff's
14         Exhibit 1 was marked for
15         identification.)
16    Q.   Well, lucky you, I'm going to
17 show it to you. I have marked it as
18 Exhibit 1 to your deposition. And this is
19 from the EEOC. Would you take a moment
20 and read that?
21    A.   (Reviewing document.)
22    Q.   And if you would, just let me
23 know when you have finished reading it.

---

Page 39

1    A.   (Reviewing document.)
2    Q.   Have you had an opportunity to
3 read that, Ms. Forbus?
4    A.   Uh-huh.
5    Q.   And you understand that an
6 affidavit is a sworn statement given in a
7 case, a lawsuit, a civil case?
8    A.   Yes, sir.
9    Q.   And Ms. Murphy indicates that
10 -- well, let me -- I want to quote her
11 accurately. "I heard Jan Forbus say it
12 was a man's job."
13         You still deny making that
14 statement, ma'am?
15    A.   Sir, I don't ever remember
16 saying it was a man's job. A man had
17 always held that position is what I said.
18    Q.   Okay. "And I heard Jan Forbus
19 say that Pam said she was putting some
20 color in the lunchroom." Did -- you still
21 deny making that statement?
22    A.   I'm not strictly denying. I
23 heard it.

---

Page 40

1    Q.   Okay. You heard Pam make that
2 statement?
3    A.   No, sir, never have I heard
4 Pam make that statement.
5    Q.   Okay. Well --
6    A.   That was a hearsay, a been
7 told thing. Never heard her make that
8 statement.
9    Q.   Okay. Well, I don't --
10 please, I'm not trying to argue with you,
11 I just don't understand the source of what
12 you heard. So could you clarify that?
13 You heard someone else say that Pam said
14 it --
15    A.   Yes, sir.
16    Q.   -- is that what you are
17 telling me?
18    A.   Yes, sis.
19    Q.   Who did you hear say Pam said
20 it?
21    A.   Kim Abrams.
22    Q.   Who is that?
23    A.   She was employed before.

---

10 (Pages 37 to 40)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

Page 41

1    Q.    In the lunchroom?
2    A.    Uh-huh.
3    Q.    Okay.  All right, thank you.
4    You cleared that up for me.
5    A.    Uh-huh.
6    Q.    Is she no longer working for
7    the school?
8    A.    No, sir.
9    Q.    Now, when y'all hire -- make a
10    decision about hiring someone to fill the
11    job -- I'm going to use the term
12    permanently, at least permanently if they
13    keep it three years, okay?
14    A.    Okay.
15    Q.    Like Mr. McKinney, is he still
16    on his three years or is he gone?  Is Mr.
17    McKinney still employed?
18    A.    No, he is still on his three
19    years.
20    Q.    Okay.  And during this period
21    of time, how do you refer to his job
22    position?  Is that a temporary employee in
23    the lunchroom or -- is that what y'all

Page 42

1    refer to him as?
2    A.    Sir, I don't know how he would
3    be referred to there.
4    Q.    Okay.  Well, when y'all are
5    making a hiring decision and you have
6    several candidates, to investigate them,
7    do you check their references, that is,
8    where they have worked before?
9    A.    That's for Mr. Wingard to do.
10    Q.    Do you know if that's done by
11    the school?
12    A.    No, sir, I don't know.
13    Q.    Well, after Ms. Sims didn't
14    get this position, the lunchroom worker
15    job -- and I understand that you were told
16    -- you were instructed that a successful
17    applicant had to have a high school
18    degree, correct?
19    A.    Yes, sir.
20    Q.    And Ms. Sims did not have
21    one --
22    A.    No, sir.
23    Q.    -- correct?

Page 43

1    So she couldn't get the job,
2    from what you understood, correct?
3    A.    Yes, sir.
4    Q.    I'm not quibbling with you
5    about that, all right?
6    Do you know if anybody checked
7    Mr. McKinney's references?
8    A.    I don't know.
9    Q.    Okay.  Do you know what
10    investigation they made into his previous
11    employment?
12    A.    No, sir, I don't know.
13    Q.    Okay.  Now, after Ms. Sims did
14    not get the job at the school --
15    Oh, and that was another thing.
16    Did you tell her that she didn't get the
17    job?  Did y'all have a conversation about
18    that while she was still working here?
19    A.    I really don't remember.
20    Q.    Well, do you recall her
21    getting upset when she found -- when she
22    learned she wasn't getting the permanent
23    position?

Page 44

1    A.    Yes, sir.
2    Q.    Okay.  And could you
3    understand why she would be upset?
4    A.    Yes, sir.
5    Q.    Okay.  I mean, the job she was
6    working, she didn't have -- were you aware
7    that she didn't have benefits?
8    A.    Yes, sir.
9    Q.    Okay.  Because it's a
10    temporary position?
11    A.    Yes, sir.
12    Q.    And if she got the job on a
13    permanent basis, then she would be
14    eligible to get benefits, correct?
15    A.    Yes, sir.
16    Q.    And quite frankly, a cafeteria
17    worker doesn't make a huge amount of
18    money; you agree with that?
19    A.    I agree.
20    Q.    And one of the most important
21    things to most of the people who are
22    employed in that capacity is that they
23    receive benefits, health insurance and

11 (Pages 41 to 44)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

Page 45

1  things like that, correct?
2      A.   Yes, sir.
3      Q.   Are the cafeteria workers, are
4  they in the State Retirement System too --
5      A.   Yes, sir.
6      Q.   -- like a teacher?
7           So that's an additional
8  benefit, correct?
9      A.   Yes, sir.
10     Q.   And they accept, perhaps,
11 lower wages in order to obtain those
12 benefits and that retirement --
13         MS. YUENGERT:  Object to the
14 form.
15     Q.   -- do you agree?  I mean,
16 that's a motivation for most of those
17 workers?
18         MS. YUENGERT:  You can answer.
19 I'm just objecting to the form of his
20 question.
21     A.   I'm sure it would be.
22     Q.   Well, in your own situation,
23 was it?

Page 46

1      A.   Yes, sir.
2      Q.   I mean -- please don't -- Ms.
3  Forbus, when you retired with twenty-six
4  years, you can draw a -- at what age can
5  you start drawing a pension?
6      A.   What do you mean?
7      Q.   Can you draw your pension
8  immediately or do you have to wait until
9  you hit some age?
10     A.   No, sir, you draw immediately.
11     Q.   Okay.  Well, that's a valuable
12 benefit, don't you think?
13     A.   Yes, sir.
14     Q.   And believe me, I think you
15 earned it, okay?  But that's an -- I'm
16 trying to explain why Ms. Sims would be
17 upset that she didn't get the job, okay?
18     A.   Yes, sir.
19     Q.   And you agree with me that
20 that would be a reason?
21     A.   Yes, sir.
22     Q.   Now, after she didn't get that
23 position, she applied for a job at the

Page 47

1  Coosa Valley Medical Center.  Were you
2  aware of that?
3      A.   I knew I received a call.  I
4  didn't know where she was applying for.
5      Q.   Okay.  Someone, and in fact
6  it's a screening service, contacted you
7  because when she applied she listed the
8  school; she was applying for work I
9  believe as a cafeteria worker, and she
10 listed the school as being a job that she
11 had performed in that field, okay?  And
12 you were contacted.  Do you agree with me
13 about that?
14     A.   Yes, sir, I was.
15     Q.   And you provided information
16 to whoever contacted you.  Did they just
17 call you on the phone?
18     A.   Yes, sir.
19          (Whereupon, Plaintiff's
20          Exhibit 2 was marked for
21          identification.)
22     Q.   Okay.  Well, I'm going to show
23 you what I have marked as Exhibit 2 and

Page 48

1  ask you if you've ever seen this document.
2      A.   (Reviewing document.)
3          MS. YUENGERT:  And I'm going
4  to look over your shoulder.
5      A.   No, I did not know what she
6  was looking --
7          MR. ROBERSON:  I sent that to
8  Don --
9          MS. YUENGERT:  Just read the
10 document.  And then, Jerry, I'm going to
11 ask you to answer -- ask your question
12 again when she has read it.
13         MR. ROBERSON:  Sure.
14     A.   (Reviewing document.)
15         MS. YUENGERT:  Have you read
16 it?
17     A.   Yeah.
18         MS. YUENGERT:  Okay.  Jerry,
19 why don't you ask her a question?
20     Q.   (BY MR. ROBERSON:)  All right.
21 Do you recall being contacted -- I think
22 it's -- is that document dated?
23         MS. YUENGERT:  It has a date

12 (Pages 45 to 48)

Page 49

1 ordered and date completed at the top.
2    Q.   (BY MR. ROBERSON:)  Okay.
3 What is the date it was ordered?
4    A.   4/24/07.
5    Q.   Okay.  And you were still
6 working here with Coosa --
7    A.   I was on leave.
8    Q.   Did they contact you at home?
9    A.   Yes, sir, they did.
10    Q.   Okay.  Well, I -- and you
11 spoke with them, correct?
12    A.   Yes, sir.
13    Q.   Okay.  And did you provide
14 this information about Ms. Sims?
15        MS. YUENGERT:  Are you talking
16 about the highlighted portions?
17        MR. ROBERSON:  Yes, what's
18 highlighted there.
19    A.   I don't remember giving a -- I
20 don't remember on the attendance what I
21 said.
22    Q.   (BY MR. ROBERSON:)  What's on
23 that document about her attendance?

Page 50

1    A.   It said attendance poor.
2    Q.   Well, that wouldn't be
3 accurate, would it?
4    A.   That's debatable on the final
5 issues of her work.
6    Q.   Well, her attendance wasn't
7 poor, was it?
8    A.   Well, no, I don't guess you
9 could say it was.  I don't remember what I
10 told those people.  I was upset at that
11 time due to personal tragedies in my home.
12    Q.   Okay.
13    A.   Didn't need to be bothered at
14 that time.
15    Q.   Well, I'm sorry, Ms. Forbus,
16 but these people contacted you, not my
17 client.
18    A.   Yes, sir.
19    Q.   You understand that?
20    A.   Can I ask the lawyer -- my
21 lawyer a question?
22    Q.   Absolutely.
23        MS. YUENGERT:  Can we -- can

Page 51

1 we just go off the record?
2        MR. ROBERSON:  We certainly
3 can.  Let's just do it formally.
4        MS. YUENGERT:  Okay.  Sure.
5        MR. ROBERSON:  We will go off
6 the record at -- at 10:20.
7        (Whereupon, a break was had
8        from 10:20 a.m. until 10:25
9        a.m.)
10        MR. ROBERSON:  We will go back
11 on the record at 10:25.  This is still the
12 first tape of the videotape deposition of
13 Ms. Forbus.
14    Q.   (BY MR. ROBERSON:)  Ms.
15 Forbus, we took a break to let you discuss
16 some things with your attorney.
17        Now, if I may see the document,
18 it says -- and it says start date.  Would
19 that be for Ms. Sims?  Would be April of
20 -- April of '04, and end date is September
21 of '06?  That's not correct, is it?  She
22 just worked less than a year, didn't she?
23    A.   She didn't work but about six

Page 52

1 weeks, I don't think.
2    Q.   Okay.
3    A.   I don't remember exactly how
4 long she worked.
5    Q.   Okay.  But it was only during
6 one school year -- part of one school
7 year, correct?
8    A.   Yes, sir.
9    Q.   And it says, "per cafeteria
10 manager at the number listed."  That would
11 be you, right?
12    A.   Well, they called me at my
13 home, yes.
14    Q.   "Applicant walked off the job.
15 Now, "she was not an employee, but worked
16 as needed," are you referring to her
17 status as a substitute there?
18    A.   Yes, sir.
19    Q.   Okay.  And this "employee
20 walked off the job," are you referring to
21 the incident when she was told she didn't
22 get the permanent position and she was
23 upset and she left work?

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Page 53

1    A.    Yes, sir.
2    Q.    Okay.  Now, did you tell
3  anybody at the hospital or their screening
4  service the circumstances surrounding why
5  she walked off the job?
6    A.    I don't remember.
7    Q.    Well, Ms. Forbus, if you --
8  and it says eligible for rehire, and
9  you've indicated no?
10    MS. YUENGERT:  I'm going to
11  object to the form.  You can answer.
12    A.    No, sir.
13    Q.    I apologize, let me rephrase
14  that.
15    A.    Okay.
16    Q.    Don't answer that question.
17    On this document, it has
18  eligibility for rehire and they have put
19  no.  Is that what you told them?
20    A.    No, sir.
21    Q.    What did you tell them about
22  her eligibility?
23    A.    I told them she wasn't hired

Page 54

1  because she didn't meet the requirements
2  that was put before me for the job.
3    Q.    Okay.  Thank you.  I asked a
4  poor question, I apologize.
5    Now, when they contacted you at
6  home, and I'm sorry about your situation,
7  but did you refer them to Ms. Jones or
8  anyone at the Board of Education and
9  indicate that you really weren't in a
10  position to talk at that time?
11    A.    No, sir, I didn't.
12    Q.    Could you have?
13    A.    I guess I could have.
14    Q.    Well --
15    A.    I was surprised.
16    Q.    In fact, this was after Ms.
17  Jones -- Sims had filed an EEOC charge,
18  correct?
19    A.    I don't know that.
20    Q.    Okay.  Well, let me show you
21  what I'm going to mark as Exhibit 3 to
22  your deposition, ma'am, which is Ms. Sims'
23  charge of discrimination which was state

Page 55

1  stamped November 14th, 2006.  And this
2  document indicates that it was in April of
3  2007.
4    (Whereupon, Plaintiff's
5    Exhibit 3 was marked for
6    identification.)
7    Q.    Have you seen Ms. Sims' charge
8  of discrimination?
9    A.    No, sir.
10    Q.    Did they come and interview
11  you about her charge?
12    A.    I don't remember them doing
13  that.
14    Q.    Okay.  Do you recall when you
15  went off on leave what the date of that
16  was?
17    A.    October the 27th of -- would
18  that be '06 -- '05 or '06, Mr. Wingard?
19    Q.    Well, did anyone at the school
20  make you aware that Ms. Sims had filed a
21  charge of --
22    A.    I don't remember anybody
23  calling me and telling me that, no, sir.

Page 56

1    Q.    Where do you live, Ms. Forbus?
2    A.    Kellyton, Alabama.
3    Q.    How far is that from where we
4  are today?
5    A.    About twelve or fifteen miles.
6    Q.    Do you agree with me that news
7  travels fast in a small town?
8    MS. YUENGERT:  If you can
9  answer, answer.
10    A.    I'm -- yeah.
11    Q.    When did you return back to
12  the school system after your leave?
13    A.    I didn't.  I was on leave
14  until the end of the year, and I retired.
15    Q.    Did Ms. Sims ever tell you
16  that the fact that they hired a black man
17  in the permanent position, that that was
18  discrimination?
19    A.    Would you repeat that?
20    Q.    Yeah.  Do you remember a
21  conversation you had with Ms. Sims where
22  she told you that by putting a black man
23  in that position permanent rather than

14 (Pages 53 to 56)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

Page 57

1 her, that that was discrimination?
2      A.    I don't remember a
3 conversation like that.
4      Q.    Well, did you ever have any
5 conversation with Ms. Sims where she
6 indicated she felt like she was being
7 treated in a discriminatory manner?
8      A.    I don't remember having a
9 conversation with her like that.
10     Q.    Who held the position before
11 -- Mr. Kelley, what did we say his name
12 was, Michael Kelley?
13     A.    I don't -- I do not know.
14     Q.    Do you know if they were male
15 or female?
16     A.    I don't know.
17     Q.    Did you feel like -- whether
18 you said it or not, did you feel like that
19 position was better suited for a male
20 applicant?
21     A.    Yes, sir.
22     Q.    Because of the lifting?
23     A.    Yes, sir.

Page 58

1      Q.    Okay.  And were you under any
2 pressure from any source to put -- to
3 recruit and retain minority applicants,
4 that is, in this instance, a black male?
5      A.    No, sir.
6      Q.    So your sole criteria is
7 whoever is best for the job?
8      A.    Yes, sir.
9      Q.    And it's just a coincidence
10 that a black male held the position before
11 and a black male was awarded the position
12 at this time, is that correct?
13     A.    Yes, sir.
14           MR. ROBERSON:  Okay.  We will
15 go off the record.  I want to talk to my
16 client, and I think I'm about through.  We
17 will go off the record at 10:32.
18           (Whereupon, a break was had
19           from 10:32 a.m. until 10:40
20           a.m.)
21           MR. ROBERSON:  We are back on
22 the record at 10:40.
23           I don't have any further

Page 59

1 questions.  Thank you, Ms. Forbus.
2
3 EXAMINATION BY MS. YUENGERT:
4      Q.    Ms. Forbus, I'm Anne Yuengert,
5 and I represent the Board of Education.
6 You mentioned you --
7           MR. ROBERSON:  Let me just
8 change tapes.
9           MS. YUENGERT:  Oh, okay.
10          MR. ROBERSON:  It's doing
11 something crazy.
12          (Off-the-record discussion.)
13          MR. ROBERSON:  Let me just say
14 we went off the record, and this is tape
15 two of the videotape deposition of Ms.
16 Forbus.  I finished all of my questions on
17 tape one, and this is the beginning of the
18 examination from her lawyer.  Okay.
19     Q.    (BY MS. YUENGERT:)  Ms.
20 Forbus, I'm Anne Yuengert, and I represent
21 the Board of Education.
22           In your discussion with Mr.
23 Roberson, he -- you mentioned Kim Abrams;

Page 60

1 do you remember that?
2      A.    Yes.  Yes, ma'am.
3      Q.    When did -- you said Ms.
4 Abrams no longer works for the Board of
5 Education?
6      A.    That's correct.
7      Q.    When did she leave?
8      A.    She left the first year I was
9 there.
10     Q.    At the high school?
11     A.    Yes, sir -- yes, ma'am.
12 Excuse me.
13     Q.    And then you looked at the
14 sheet from the people checking the
15 references --
16     A.    Yes, ma'am.
17     Q.    -- on Ms. Sims.  There was a
18 portion where it said attendance and they
19 had recorded poor; do you remember that on
20 the sheet?
21     A.    Yes, ma'am.
22     Q.    Did you tell them that her
23 attendance was poor?

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

Page 61

A.   I don't remember telling them that.

Q.   Did you think her attendance was poor?

A.   No, I didn't.

Q.   Okay.

MS. YUENGERT:  That's all I have.

MR. ROBERSON:  Okay.  I don't have any further questions.  And thank you, Ms. Forbus.

Off the record here at 10:42.

(Whereupon, the deposition of Jan Forbus was concluded at 10:42 a.m. on the 21st day of May, 2008.)

FURTHER THE DEPONENT SAITH NOT

Page 62

C E R T I F I C A T E

STATE OF ALABAMA)
JEFFERSON COUNTY)

I hereby certify that the above and foregoing deposition was taken down by me in stenotypy, and the questions and answers thereto were reduced to typewriting under my supervision, and that the foregoing represents a true and correct transcript of the deposition given by said witness upon said hearing.

I further certify that I am neither of counsel nor of kin to the parties to the action, nor am I in anywise interested in the result of said cause.

COMMISSIONER - NOTARY PUBLIC
ACCR LICENSE NO. 116

16 (Pages 61 to 62)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

**A**

ability
16:1
Abrams
40:21 59:23 60:4
Absolutely
50:22
academic
36:22
accept
45:10
ACCR
62:23
accurate
50:3
accurately
39:11
acting
5:5
action
1:5 62:17
activities
20:4 21:12
additional
45:7
affidavit
38:7,9 39:6
afternoons
20:9 24:12
age
46:4,9
agree
44:18,19 45:15 46:19
47:12 56:6
AGREED
2:3
Alabama
1:2 3:9,17 5:4,5,12,23
6:3 16:22 56:2 62:4
amount
44:17
Anne
3:12 6:12 59:4,20
annual
15:13
answer
7:23 8:9 21:10,13 22:4
24:6 36:7 45:18 48:11
53:11,16 56:9,9
answers
62:10
anybody
15:19 43:6 53:3 55:22
anywise
62:17
apologize
53:13 54:4
applicant
42:17 52:14 57:20
applicants

34:13,18 58:3
applied
30:18 46:23 47:7
applies
33:8
applying
47:4,8
approval
29:16
approve
28:15
approves
14:21
approximately
12:16
April
51:19,20 55:2
Arant
3:14
argue
40:10
arrived
12:15
arriving
28:9
asked
17:9,12 24:11 54:3
asking
22:8 36:13
assign
2:20
assume
7:20 37:5 38:8
attend
29:10
attendance
30:10 49:20,23 50:1,6
60:18,23 61:3
attorney
3:5,13 6:8 51:16
audibly
7:23
August
35:3
authority
16:1
Avenue
3:16
awarded
15:1,2,4 58:11
aware
32:22 33:2,4 37:19 38:4
44:6 47:2 55:20
a.m
5:13 51:8,9 58:19,20
61:16

**B**

B
1:20 2:6 5:1

back
17:9,12 51:10 56:11 58:21
bar
20:7 21:18 25:18
Barbara
10:15 16:15 35:7,19 38:9
basis
15:2,5 44:13
Beasley
35:1
beginning
22:6 59:17
believe
33:7 46:14 47:9
benefit
45:8 46:12
benefits
44:7,14,23 45:12
best
58:7
better
57:19
Birmingham
3:9,17 5:3
black
13:20 31:5,7 32:2 56:16
56:22 58:4,10,11
board
1:10 5:11,22 6:5,14 8:15
9:23 14:21 30:14,19
32:20,23 54:8 59:5,21
60:4
bothered
50:13
Box
3:8
boxes
20:13
Bradley
3:14
bread
19:15,17
break
51:7,15 58:18
breakfast
18:11,16
brought
30:13,18
Bullard
33:18,20

**C**

C
3:1 62:1,1
cafeteria
9:7,8,11 12:3,11 13:7
15:21 19:12 25:7 26:7
44:16 45:3 47:9 52:9
call
47:3,17

called
52:12
calling
55:23
candidates
42:6
capacity
44:22
case
6:1 30:13,23 37:17 39:7
39:7
cause
5:14 62:18
Center
47:1
central
9:9,21 10:10 12:4,18,19
29:5
certainly
51:2
Certified
1:21 2:7 5:2
certify
5:6 62:7,15
change
59:8
charge
37:16,20 38:2 54:17,23
55:7,11,21
check
42:7
checked
43:6
checking
60:14
Child
9:16
circumstances
16:16 53:4
civil
1:5 5:7 39:7
claim
30:19
clarify
40:12
clean
25:8
cleaned
20:6
cleaning
20:8,9 21:16
cleared
41:4
client
50:17 58:16
clock
27:21 28:4
closed
12:9,22
coincidence
58:9

color
32:7,11 39:20
come
20:16,16 30:9 55:10
comes
29:4
commencing
5:13
Commissioner
2:7 5:6 62:22
committee
33:10,15 34:7 35:19
completed
49:1
completely
36:12
compliance
2:13
concluded
61:15
contact
49:8
contacted
47:6,12,16 48:21 50:16
54:5
contract
15:13
conversation
8:1 43:17 56:21 57:3,5,9
cook
20:1 26:4
cooked
21:17
cooking
26:1
Coosa
1:10 5:10,22 6:5,14 8:15
9:9 12:17,18,19 30:14
32:19 47:1 49:6
correct
10:6 13:15 14:18 19:1
21:12,18 29:17 31:5,8,11
34:13,16 36:1 37:1,4,10
42:18,23 43:2 44:14
45:1,8 49:11 51:21 52:7
54:18 58:12 60:6 62:13
counsel
2:5,17,19 5:10 6:2 62:16
County
1:10 5:11,22 6:5,14 8:15
9:10 30:14 32:19 62:5
course
22:20 37:9
Court
1:1 2:14 5:9 6:2,22
crazy
59:11
criteria
36:4 58:6
CV-07-704
6:6

Tyler Eaton Morgan Nichols & Pritchett, Inc.
Toll Free 800.458.6031    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

| | | | | |
|---|---|---|---|---|
| **D** | 17:13 | 52:15,19 | federal | 51:3 |
| D | District | employees | 3:15  5:7  33:1 | found |
| 3:4 | 1:1,2  5:8  6:2,3 | 16:4  23:4 | feel | 43:21 |
| date | Division | employer | 57:17,18 | four |
| 5:6  48:23  49:1,3  51:18 | 1:3  6:4 | 30:14 | felt | 10:12  12:5,5  13:14  19:7 |
| 51:20  55:15 | dock | employment | 22:11  57:6 | fourth |
| dated | 30:5 | 43:11 | female | 17:10 |
| 48:22 | doctor | Emptied | 31:11  57:15 | frame |
| day | 35:6 | 20:10 | field | 24:17 |
| 5:12  34:5  61:16 | document | empty | 47:11 | frankly |
| days | 28:23  38:11,21  39:1  48:1 | 25:10 | fifteen | 44:16 |
| 24:18  29:20 | 48:2,10,14,22  49:23 | emptying | 56:5 | freezer |
| deal | 51:17  53:17  55:2 | 21:16 | Fifth | 22:16  23:2  24:8,19  27:18 |
| 23:14 | doing | ended | 3:16 | friction |
| debatable | 55:12  59:10 | 16:17 | file | 26:9 |
| 50:4 | doings | entire | 38:3 | full |
| decision | 24:8 | 24:21 | filed | 2:13 |
| 30:21  41:10  42:5 | Don | especially | 37:16,20  54:17  55:20 | further |
| decree | 48:8 | 23:2 | filing | 58:23  61:10,19  62:15 |
| 33:1 | Donald | evaluate | 37:17 | |
| defendant | 6:13 | 16:3 | fill | **G** |
| 1:11  3:11  6:6 | draw | evaluation | 29:6  41:10 | Gail |
| deficient | 46:4,7,10 | 16:7 | filled | 1:20  2:6  5:1 |
| 22:12 | drawing | Everybody | 16:12  33:14 | GED |
| degree | 46:5 | 37:23 | final | 35:16  36:1 |
| 35:23  36:16  42:18 | Drive | evidence | 50:4 | gentleman |
| deliver | 3:7 | 2:23 | fine | 30:22 |
| 20:18 | drop | exactly | 13:2 | getting |
| deny | 21:2 | 24:14  52:3 | finish | 25:12  43:21,22 |
| 39:13,21 | due | examination | 8:8,9 | give |
| denying | 50:11 | 4:1,3,4  5:15  7:6  59:3,18 | finished | 26:14 |
| 39:22 | duly | examined | 38:23  59:16 | given |
| DEPONENT | 6:19 | 6:19 | fired | 7:8  31:14  39:6  62:13 |
| 61:19 | duties | example | 15:18 | giving |
| deposition | 35:13 | 15:7  29:8 | first | 49:19 |
| 1:14  2:5,11,12,22  5:19  7:8 | | exception | 6:19  17:15  18:4  51:12 | Gloria |
| 31:14  38:18  51:12  54:22 | **E** | 25:2 | 60:8 | 1:7  6:4,8  27:10  31:10 |
| 59:15  61:14  62:8,13 | E | Excuse | fixed | go |
| depositions | 3:1,1  62:1,1 | 11:3  60:12 | 20:5 | 51:1,5,10  58:15,17 |
| 2:15 | earned | Exhibit | follow | going |
| Diane | 46:15 | 4:9,10,11  38:14,18  47:20 | 7:11 | 12:20  17:16  24:13  36:6,9 |
| 27:9  31:10 | Education | 47:23  54:21  55:5 | following | 38:16  41:11  47:22  48:3 |
| different | 1:10  5:11,22  6:5,14  8:15 | EXHIBITS | 5:15  26:20 | 48:10  53:10  54:21 |
| 18:6,9  19:6,8 | 9:23  30:15,19  32:20 | 4:7 | follows | good |
| diploma | 54:8  59:5,21  60:5 | experience | 6:20 | 25:18  30:10  35:10  36:15 |
| 35:16 | EEOC | 37:13 | food | groceries |
| director | 37:16  38:19  54:17 | explain | 10:3  20:7  25:21 | 20:15,19  22:15  23:1 |
| 9:16 | effect | 14:23  46:16 | Forbus | grounds |
| discrimination | 2:13 | | 1:16  2:6  5:14,20  6:18  7:7 | 2:21 |
| 37:20  38:3  54:23  55:8 | elementary | **F** | 8:12  30:2  33:3,11,18 | guess |
| 56:18  57:1 | 12:8,23 | F | 46:3  50:15  51:13,15 | 27:12  36:8  50:8  54:13 |
| discriminatory | eligibility | 62:1 | 53:7  56:1  59:1,4,16,20 | |
| 57:7 | 53:18,22 | fact | 61:11,15 | **H** |
| discuss | eligible | 38:7  47:5  54:16  56:16 | force | head |
| 51:15 | 44:14  53:8 | Fair | 2:13 | 8:1 |
| discussion | employed | 7:20 | foregoing | health |
| 59:12,22 | 8:14  13:10  15:11  40:23 | far | 5:9  62:8,12 | 44:23 |
| discussions | 41:17  44:22 | 56:3 | form | hear |
| 27:9 | employee | fast | 2:18  21:10  36:7  45:14,19 | 40:19 |
| distinction | 28:13,14  35:10  41:22 | 56:7 | 53:11 | heard |
| 123 | | | formally | 42:9 |

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031     http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

JAN FORBUS
May 21, 2008

17:23 18:1 32:15,18
39:11,18,23 40:1,3,7,12
40:13
**hearing**
62:14
**hearsay**
40:6
**heavy**
25:14
**held**
10:17 13:6 19:20 23:3
39:17 57:10 58:10
**help**
12:21 13:23 25:11,13,22
**helped**
25:23
**Henderson**
10:15,23 19:11
**high**
9:9,18 10:10 12:4,10 13:8
18:10 33:22,23 35:15
35:23 36:16 42:17
60:10
**highlighted**
49:16,18
**hire**
30:21 41:9
**hired**
11:22 30:22 35:3,6,19
53:23 56:16
**hiring**
33:2 35:18 41:10 42:5
**hit**
46:9
**hold**
14:14,17 16:13,13
**home**
26:23 49:8 50:11 52:13
54:6
**honest**
37:13
**honestly**
24:7
**hospital**
53:3
**hot**
20:7 21:18 25:18
**hours**
28:6 29:13
**huge**
44:17
**huh**
9:4

**I**

**identification**
38:15 47:21 55:6
**identified**
10:20 13:14
**immediately**

46:8,10
**implies**
36:8
**imply**
36:3
**important**
44:20
**incident**
52:21
**INDEX**
4:1,7
**indicate**
54:9
**indicated**
53:9 57:6
**indicates**
39:9 55:2
**information**
47:15 49:14
**instance**
58:4
**instructed**
42:16
**instruction**
36:21 37:3,10
**instructions**
36:22
**insurance**
44:23
**interested**
62:18
**interview**
55:10
**interviewed**
34:5,12,15
**interviewing**
33:12
**interviews**
33:10
**inventory**
20:16
**investigate**
38:2 42:6
**investigation**
43:10
**involved**
30:21
**issues**
50:5
**items**
22:16 24:19

**J**

**Jan**
1:16 2:6 5:13,20 6:18
8:11 39:11,18 61:15
**JEFFERSON**
62:5
**Jerry**
3:4 6:7 31:3 48:10,18

**job**
9:4 14:12 16:15 17:21
20:4 21:11,23 22:9,11
23:3 24:17 25:2,14
26:15 27:10 31:19,20
33:9,11 35:12,22 36:15
39:12,16 41:11,21 42:15
43:1,14,17 44:5,12
46:17,23 47:10 52:14
52:20 53:5 54:2 58:7
**Jones**
9:14 10:2 27:6,9 32:1,15
33:18 54:7,17

**K**

**keep**
9:4 25:7,10,18 28:12,13
41:13
**Keith**
33:19
**Kelley**
10:17 11:11 13:3,19 19:21
31:7 57:11,12
**Kelley's**
21:6
**Kellyton**
12:8 56:2
**kept**
20:6 21:18
**Kim**
40:21 59:23
**kin**
62:16
**kind**
15:12
**Kinross**
3:7
**knew**
47:3
**know**
10:13,21 11:21 12:21 15:9
15:13,14,16,17,23 16:14
16:21 19:15 22:4 23:16
23:17,18 24:6,12,15
25:4 29:11,11 30:3,5,23
33:6 34:23 35:7,16
37:5,15 38:23 42:2,10
42:12 43:6,8,9,12 47:4
48:5 54:19 57:13,14,16
**knows**
37:23

**L**

**L**
2:1
**ladies**
23:3
**Large**
5:5
**late**

30:2
**Law**
3:5,13
**laws**
2:14
**lawsuit**
37:18,21 39:7
**lawyer**
38:8 50:20,21 59:18
**leading**
2:19
**learned**
43:22
**leave**
24:14,20,21 35:5,6 49:7
55:15 56:12,13 60:7
**leaving**
28:10
**left**
11:19 52:23 60:8
**Let's**
51:3
**LICENSE**
62:23
**lifting**
57:22
**limit**
22:18 24:13
**limited**
24:13
**listed**
47:7,10 52:10
**live**
56:1
**LLP**
3:14
**loading**
20:13,14 21:17
**located**
9:20
**long**
9:1 11:19 12:3 15:9 25:4
52:4
**longer**
11:11 41:6 60:4
**look**
28:16 48:4
**looked**
28:16 60:13
**looking**
48:6
**loud**
7:23
**lower**
45:11
**lucky**
38:16
**lunch**
19:4
**lunchroom**
10:11 11:20 14:2,5,9,15

17:4,17 18:3 22:21 32:7
32:11 33:9 36:19 39:20
41:1,23 42:14
**lunchtime**
19:1

**M**

**making**
31:21 32:5 39:13,21 42:5
**male**
13:20 31:5,8 57:14,19
58:4,10,11
**man**
19:16 56:16,22
**management**
32:19
**manager**
9:7,11 12:4,11 13:7 15:21
18:23 19:12 36:14
52:10
**manner**
57:7
**man's**
31:20 39:12,16
**Margaret**
10:15
**mark**
54:21
**marked**
38:14,17 47:20,23 55:5
**matters**
29:10
**ma'am**
6:15 8:18 10:14 22:7
39:14 54:22 60:2,11,16
60:21
**McKinney**
31:3,4,5 33:14 41:15,17
**McKinney's**
43:7
**meal**
19:1
**meals**
19:3
**mean**
15:15 16:18 21:11 22:22
26:9,19,20 44:5 45:15
46:2,6
**means**
16:13 17:2
**Medical**
47:1
**meet**
54:1
**mentioned**
59:6,23
**Michael**
10:17 13:19 31:7 57:12
**Middle**
6:3

Toll Free 800.458.6031    Tyler Eaton Morgan Nichols & Pritchett, Inc.    http://www.TylerEaton.com

56:5
milk
21:2
minority
33:1,1 58:3
misunderstood
12:1
moment
38:19
money
44:18
mopping
20:9 25:15
motivation
45:16
moved
12:10
Murphy
10:16 11:6 15:8 16:15
35:8,19,21 36:15 37:12
38:9 39:9

**N**

N
2:1 3:1
name
6:7,10 30:23 57:11
necessary
2:16 36:4
need
7:11,14 16:10 29:16 50:13
needed
32:6,10 52:16
neither
62:16
never
17:23 22:20 40:3,7
news
56:6
Nixburg
5:11,23
nod
8:1
Normally
8:1
North
3:16
Northern
1:2 6:3
Notary
1:23 2:9 5:4 62:22
notation
28:8
November
55:1
number
52:10
nutrition
9:16

**O**

O
2:1 3:8
object
21:9 36:7 45:13 53:11
objecting
45:19
objections
2:17,20
obligation
38:2
observe
21:23
observed
36:14
obtain
45:11
obtained
38:7,8
occasion
26:13
occasions
30:6
October
55:17
offered
2:22
office
9:17,20,21 28:19 29:5
offices
5:21
Off-the-record
59:12
Oh
8:17 37:8 43:15 59:9
okay
6:15 7:10,11,17,18 8:6,10
8:17,22 9:22 10:1,8,19
11:5,14,18,23 12:6,14
13:2,6,22 14:8,12,17,20
14:23 15:12,18 16:3,9
17:7,11 18:2,8,14,20
19:10 20:3 21:15 23:22
27:8 28:18 29:8,15
30:6,9 32:18 34:6,23
35:7 38:1 39:18 40:1,5
40:9 41:3,13,14,20 42:4
43:9,13 44:2,5,9 46:11
46:15,17 47:5,11,22
48:18 49:2,5,10,13
50:12 51:4 52:2,5,19
53:2,15 54:3,20 55:14
58:1,14 59:9,18 61:6,9
opportunity
39:2
oral
5:15 24:5
order
14:14 18:2 45:11
ordered

49:1,3
overheard
31:16

**P**

P
2:1 3:1,1,8
PAGE
4:2,8
paid
23:13,21
Pam
9:14 32:1,15 39:19 40:1,4
40:13,19
part
52:6
participated
26:5
parties
2:4,20 62:17
party
6:10
Patty
13:9
pay
29:1,12
payroll
28:19 29:4
pending
6:1
pension
46:5,7
people
10:19 13:15 16:11 18:5
23:21 24:16,20 27:20
44:21 50:10,16 60:14
performance
22:1,9,11 25:2 26:15
27:10
performed
35:12,21 47:11
period
14:3 17:19,20 20:8 41:20
permanent
15:2 43:22 44:13 52:22
56:17,23
permanently
41:12,12
person
11:14
personal
29:9,9,20 50:11
phone
47:17
place
3:15 35:17
plaintiff
1:8 3:3 6:4,8
Plaintiff's
4:9,10,11 38:13 47:19

55:4
please
6:16 7:16 40:10 46:2
policy
29:19,23 30:3
poor
50:1,7 54:4 60:19,23
61:4
portion
60:18
portions
49:16
position
9:5,15 10:2,17 13:7 14:3
14:14,18 15:1 16:17 18:3
19:20 30:17 33:13,19
39:17 41:22 42:14
43:23 44:6 46:23
52:22 54:10 56:17,23
57:10,19 58:10,11
positions
16:12 19:7
prerequisite
37:17
presence
31:22 32:6
PRESENT
3:19
pressure
58:2
previous
43:10
principal
33:21
prior
2:23
Pritchett
1:20 2:7 5:1
probationary
17:20
problems
27:17
Procedure
5:8
proceedings
5:16
Professional
1:22 2:8 5:3
programs
10:3
provide
36:20 37:3,9 49:13
provided
5:7 47:15
Public
1:23 2:9 5:4 62:22
punch
27:20
put
22:6,7 35:6 53:18 54:2
58:2

putting
39:19 56:22

**Q**

qualified
17:21
question
7:14 8:8 45:20 48:11,19
50:21 53:16 54:4
questions
2:18,19 22:9 59:1,16
61:10 62:9
quibbling
43:4
quit
23:8
quite
44:16
quote
39:10

**R**

R
3:1,12 62:1
rack
20:5 25:21
read
7:3 38:20 39:3 48:9,12
48:15
reading
2:11 38:23
really
17:22 43:19 54:9
Realtime
1:21 2:8 5:2
reason
46:20
Rebecca
34:23
recall
27:15 31:21 32:4 43:20
48:21 55:14
receive
44:23
received
47:3
recommend
24:4
record
6:9 30:10 51:1,6,11 58:15
58:17,22 59:14 61:12
recorded
60:19
recruit
58:3
reduced
29:12 62:10
refer
41:21 42:1 54:7
references

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

42:7 43:7 60:15

**referred**
27:3 42:3

**referring**
52:16,20

**Registered**
1:22 2:18 5:2

**rehire**
53:8,18

**rehired**
15:16

**relating**
2:15

**remember**
25:3 27:11 39:15 43:19
49:19,20 50:9 52:3
53:6 55:12,22 56:20
57:2,8 60:1,19 61:1

**remind**
11:5

**repeat**
56:19

**repercussions**
30:1

**rephrase**
7:17 53:13

**replaced**
16:16

**report**
18:5 23:5

**reported**
1:20 28:1

**Reporter**
1:21,23 2:8,9 5:2,3 6:22

**represent**
6:11,13 59:5,20

**represents**
62:12

**reprimand**
24:1,4,8 26:15,22

**reprimands**
26:17

**requirements**
14:13,13 35:21 54:1

**requires**
26:22

**respective**
2:5

**response**
38:3

**responsibilities**
19:8

**rest**
19:19

**result**
62:18

**retain**
58:3

**retire**
8:18 13:12

**retired**

8:16 9:6 10:9 12:2 35:4
46:3 56:14

**retirement**
45:4,12

**return**
56:11

**Reviewing**
38:21 39:1 48:2,14

**right**
5:18 8:11 11:4 14:10 15:7
19:6 23:23 26:12 29:12
31:13 33:13 36:17 37:12
37:15 41:3 43:5 48:20
52:11

**Road**
5:12,23

**Roberson**
3:4,6,6 4:3 5:18 6:7,15
7:1,6 48:7,13,20 49:2
49:17,22 51:2,5,10,14
58:14,21 59:7,10,13,23
61:9

**Rockford**
5:12,23

**Rose**
3:14

**rotate**
19:14

**rotation**
19:13,18

**rule**
7:22

**rules**
2:14 5:7 7:11,13 36:10

---

**S**

**S**
2:1 3:1

**SAITH**
61:19

**salary**
23:14

**Sandra**
10:16 11:9

**satisfactory**
22:3 25:16 26:4 35:13,22

**saying**
14:7 36:13 39:16

**says**
31:18 51:18,18 52:9 53:8

**schedule**
19:14

**scheduled**
28:10

**schedules**
18:7,9

**school**
9:9,18 10:10 12:4,9,10,16
13:8 18:11 32:23 33:22
33:23 35:15,23 36:16

37:7 38:1,6,7 41:7
42:11,17 43:14 47:8,10
52:6,6 55:19 56:12
60:10

**schools**
10:5 12:10,23

**screening**
47:6 53:3

**see**
12:14 17:20 51:17

**seen**
38:10 48:1 55:7

**send**
26:23

**sent**
48:7

**September**
51:20

**serve**
18:11,16

**service**
47:6 53:4

**serving**
18:23 20:7

**set**
22:18 36:10

**shape**
25:19

**sheet**
28:2,3 29:4 60:14,20

**sheet's**
28:22

**shift**
23:11

**shoulder**
48:4

**show**
38:17 47:22 54:20

**sign**
7:4 28:13

**signature**
2:10

**signs**
28:14

**sign-in**
28:2

**sign-out**
28:3

**Sims**
1:7 6:4,9 11:15 14:8 21:5
22:9 24:1 27:10,10,13
30:7,13 31:10,15 32:6
34:15 37:16 42:13,20
43:13 46:16 49:14 51:19
54:17,22 55:7,20 56:15
56:21 57:5 60:17

**sir**
7:9,12,21 8:5,13 9:19
10:4,7 11:12,17 12:13
13:1,5,11,13,16,18,21
14:11,19 15:3,6,10,20,22

16:23 17:3,6 19:2,5,9
19:22 20:11,14,14,20
21:1,4,19,22 22:2,13
23:12,17,20 25:11,17,20
26:8,11,16 27:7,22 28:7
28:11,21,22 29:2,7,14,18
29:22 30:16 31:1,6,9,12
32:3,14,17,21 33:3,16
34:8,11,14,17,20,22
35:2,9,11,14 36:2,18,23
38:12 39:8,15 40:3,15
41:8 42:2,12,19,22 43:3
43:12 44:1,4,8,11,15
45:2,5,9 46:1,10,13,18
46:21 47:14,18 49:9,12
50:18 52:8,18 53:1,12
53:20 54:11 55:9,23
57:21,23 58:5,8,13
60:11

**sis**
40:18

**situation**
45:22 54:6

**situations**
26:10

**six**
51:23

**six-hour**
23:11

**small**
56:7

**snack**
20:5 25:21

**sole**
58:6

**somebody**
26:23 29:9 33:8

**sorry**
18:21 26:20 50:15 54:6

**source**
40:11 58:2

**SOUTHERN**
1:3

**speak**
34:10

**specific**
19:17 22:5

**spoke**
49:11

**spot**
21:6,6

**staff**
24:21

**staffing**
33:2

**stamped**
55:1

**start**
46:5 51:18

**state**
5:4 6:10 45:4 54:23

62:4

**statement**
31:22 32:5,8,10,12,16,20
39:6,14,21 40:2,4,8

**statements**
31:17

**States**
1:1 5:8 6:2

**status**
52:17

**stay**
24:12

**stenotypy**
62:9

**STIPULATED**
2:3

**stipulation**
5:9

**stipulations**
6:23

**stocked**
20:16 22:17 23:1

**stocking**
20:15 22:15

**strictly**
39:22

**students**
25:13 36:21 37:3

**subbed**
10:18

**substitute**
14:4,5,9,15,16,18,22 37:2
37:7 52:17

**substitutes**
26:17,18

**substituting**
11:15

**successful**
42:16

**suited**
57:19

**supervise**
10:10

**supervises**
10:2

**supervision**
62:11

**supervisor**
9:12,13 21:21 27:3,5
30:20

**sure**
12:23 37:8 45:21 48:13
51:4

**surprised**
54:15

**surrounding**
53:4

**swear**
6:16

**Sweeney**
6:13

**Tyler Eaton Morgan Nichols & Pritchett, Inc.**

Toll Free 800.458.6031                    http://www.TylerEaton.com

sworn
6:19 39:6
system
15:11 45:4 56:12

_____ T _____

T
2:1,1 62:1,1
take
8:3 10:1 17:8 38:19
taken
2:6 5:20 62:8
talk
8:6 27:13 54:10 58:15
talking
24:3 49:15
tape
51:12 59:14,17
tapes
59:8
tardy
29:23 30:2
teacher
37:2 45:6
teachers
16:21
tell
7:3,16,19 19:10 22:14
24:10 26:21 27:14 33:6
43:16 53:2,21 56:15
60:22
telling
40:17 55:23 61:1
temporary
15:4 41:22 44:10
tenure
16:22 17:5,8
tenured
17:16
term
17:16 41:11
terms
36:21
testified
6:20 31:14,16
thank
41:3 54:3 59:1 61:10
thereto
2:23 62:10
thing
19:17 22:23 40:7 43:15
things
21:7 44:21 45:1 51:16
think
16:2 46:12,14 48:21 52:1
58:16 61:3
Thompson
10:16 11:9
three
10:22 13:15 17:12,15

34:12 41:13,16,18
three-year
17:19
time
2:21,22 8:7 9:5 10:8,16
11:22 14:4 18:4,9,12,22
19:15 20:8 22:11,18
23:5 24:2,13,14,17
26:13 27:20,23 28:3,9
28:10 30:5 31:17 41:21
50:11,14 54:10 58:12
Title
37:18
today
5:20 7:11,22 8:3 31:15
33:4 56:4
Todd
3:20
told
17:23 31:19 33:5 40:7
42:15 50:10 52:21
53:19,23 56:22
top
49:1
town
56:7
tragedies
50:11
transcript
62:13
trash
20:10 21:16 25:10
travels
56:7
treated
57:7
trial
2:21
truck
20:18,21
true
62:12
try
7:17 8:8 11:5
trying
16:9,11,19 40:10 46:16
turned
28:18 29:1
twelve
56:5
twenty-six
9:3 12:2 46:3
two
59:15
typewriting
62:11

_____ U _____

U
2:1

uh-huh
7:18 8:2 11:1 18:17 27:19
34:2 39:4 41:2,5
uh-uh
8:2
understand
7:15,16 13:23 14:6 16:10
16:11,19 17:1 24:15
30:15 35:20 36:12 39:5
40:11 42:15 44:3 50:19
understanding
17:22 22:20
understood
7:20 17:18 43:2
United
1:1 5:8 6:2
unloading
20:13
unpleasant
26:10
upset
43:21 44:3 46:17 50:10
52:23
use
17:16 41:11
Usual
6:22

_____ V _____

vacant
14:3
Valley
12:17 47:1
valuable
46:11
vendor
20:22
vendors
20:22 21:1
versus
17:15
VIDEO
1:14
videotape
5:19 51:12 59:15
VII
37:18
vote
34:9
vs
1:9

_____ W _____

wages
45:11
wait
46:8
waived
2:12
walked

52:14,20 53:5
want
39:10 58:15
wants
7:3
wasn't
11:21 23:15 26:9 34:4
35:18,18 43:22 50:6
53:23
way
16:4 22:6,7,17 28:19
weeks
52:1
went
27:5 55:15 59:14
weren't
54:9
white
3:14 13:17 31:10
Williams
13:9
Wingard
3:20 12:20 34:1,4 42:9
55:18
witness
2:11 5:14 6:16 62:14
woman
37:13
women
13:15,17
work
9:1 14:4 17:19 18:5 23:6
23:8 24:16 26:10 28:6
29:11,12 30:2,9 36:5,9
47:8 50:5 51:23 52:23
worked
11:18,19 14:8 15:9 19:18
21:5 22:21 24:2 25:5
26:14 31:18 35:8 42:8
51:22 52:4,15
worker
14:5,9,15 17:17 42:14
44:17 47:9
workers
10:9,11 17:4 25:23 26:7
36:20 45:3,17
working
13:4 15:8 17:14 31:19
41:6 43:18 44:6 49:6
works
60:4
wouldn't
16:2 27:2,4 50:2
written
16:6 24:4,5 26:14,16,22

_____ Y _____

yeah
16:5 26:3 37:8,11 48:17
56:10,20

year
12:16 15:16 17:10 51:22
52:6,7 56:14 60:8
years
9:3 12:3,5 16:22 17:7,12
17:15 41:13,16,19 46:4
Yuengert
3:12 4:4 6:12,12 7:2 21:9
21:13 36:6 45:13,18
48:3,9,15,18,23 49:15
50:23 51:4 53:10 56:8
59:3,4,9,19,20 61:7
y'all
18:10,11 20:22 41:9,23
42:4 43:17

_____ 0 _____

04
51:20
05
55:18
06
51:21 55:18,18

_____ 1 _____

1
4:9 38:14,18
10:20
51:6,8
10:25
51:8,11
10:32
58:17,19
10:40
58:19,22
10:42
61:12,16
116
62:23
14th
55:1
1819
3:16

_____ 2 _____

2
4:10 47:20,23
2:00
24:23
2:07-CV-704-MEF
1:5
2:30
23:10 24:21,22
2001
5:11
2003
12:15,16
2006
8:23 55:1
2007

Tyler Eaton Morgan Nichols & Pritchett, Inc.
Toll Free 800.458.6031                    http://www.TylerEaton.com

|  |  |  |  |  |
|---|---|---|---|---|
| 8:20  35:3  55:3 |  |  |  |  |
| 2008 |  |  |  |  |
| 1:17  5:13,21  61:17 |  |  |  |  |
| 201 |  |  |  |  |
| 5:22 |  |  |  |  |
| 21 |  |  |  |  |
| 1:17 |  |  |  |  |
| 21st |  |  |  |  |
| 5:12,21  61:16 |  |  |  |  |
| 27th |  |  |  |  |
| 55:17 |  |  |  |  |

**3**

3
4:11  54:21  55:5
35136
5:23
35203
3:17
35238-0487
3:9
3765
3:7
38
4:9
380487
3:8

**4**

4/24/07
49:4
47
4:10

**5**

55
4:11
59
4:4

**7**

7
4:3

**8**

8:30
23:7

**9**

9:34
5:13

**Tyler Eaton Morgan Nichols & Pritchett, Inc.**

Toll Free 800.458.6031                                    http://www.TylerEaton.com

# FREEDOM COURT REPORTING

Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT FOR THE
 2            MIDDLE  DISTRICT OF ALABAMA,
 3                  NORTHERN DIVISION
 4
 5   GLORIA SIMS,
 6
 7      Plaintiff,
 8
 9   vs.
10
11   COOSA COUNTY
12   BOARD OF EDUCATION,
13
14      Defendant.
15
16   CASE FILE #:
17   2:07-CV-704-MEF
18
19            STIPULATION
20      IT IS STIPULATED AND AGREED by and
21   between the parties throught their
22   respective counsel, that the deposition of
23   GLORIA SIMS may be taken before Meliaha
```

Page 2

```
 1   Cornelius, Commissioner, at the office of
 2   Bradley, Arant, Rose & White, LLP, One
 3   Federal Place, 1819 Fifth Avenue North,
 4   Birmingham, Alabama 35203, on this 15th day
 5   of January, 2008.
 6        IT IS FURTHER STIPULATED AND AGREED
 7   that the signature to and the reading of
 8   the deposition by the witness be waived,
 9   the deposition to have the same force and
10   effect as is full compliance had been had
11   with all laws and rules of Court relating
12   to the taking of depositions.
13        IT IS FURTHER STIPULATED AND AGREED
14   that it shall not be necessary for any
15   objections except as to form or leading
16   questions, and that counsel for the parties
17   may make objections and assign grounds at
18   the time of the trial, or at the time said
19   deposition is offered in evidence or prior
20   thereto.
21        IT IS FURTHER STIPULATED AND AGREED
22   that the notice of filing of the deposition
23   by the Commissioner is waived.
```

Page 3

```
 1
 2                 I N D E X
 3
 4   DIRECT EXAMINATION BY:      PAGE NUMBER:
 5   Mr. Sweeny:
 6
 7   CROSS-EXAMINATION BY:
 8   Mr. Roberson:
 9
10   REDIRECT EXAMINATION BY:
11   Mr. Sweeny:
12
13   DEFENDANT'S EXHIBITS:
14   1 -
15   2 -
16   3 -
17   4 -
18   5 -
19   6 -
20   7 -
21   8 -
22
23
```

Page 4

```
 1        IN THE UNITED STATES DISTRICT COURT FOR THE
 2            MIDDLE  DISTRICT OF ALABAMA,
 3                  NORTHERN DIVISION
 4
 5   GLORIA SIMS,
 6
 7      Plaintiff,
 8
 9   vs.
10
11   COOSA COUNTY
12   BOARD OF EDUCATION,
13
14      Defendant.
15
16   CASE FILE #:
17   2:07-CV-704-MEF
18
19   BEFORE:
20        MELIAHA CORNELIUS, Commissioner
21
22   APPEARANCES:
23        BRADLEY, ARANT, ROSE & WHITE,
```

1 (Pages 1 to 4)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 5

1 LLP, by Mr. Donald Sweeny, One Federal
2 Place, 1819 Fifth Avenue North, Birmingham,
3 Alabama 35203, appearing on behalf of the
4 Defendant: Coosa County Board of
5 Education.
6        JERRY D. ROBERSON, Attorney at
7 Law, 3765 Kinross Drive, Birmingham,
8 Alabama 35238, appearing on behalf of the
9 Plaintiff: Gloria Sims.
10       I, MELIAHA CORNELIUS, a Court
11 Reporter of Birmingham, Alabama, acting as
12 Commissioner, certify that on this date, as
13 provided by the Alabama Rules of Civil
14 Procedure and the foregoing stipulation of
15 counsel, there came before me at the office
16 of Bradley, Arant, Rose & White, LLP, One
17 Federal Place, 1819 Fifth Avenue North,
18 Birmingham, Alabama 35203, beginning at
19 9:00 a.m. GLORIA SIMS, witness in the
20 above cause for oral examination, whereupon
21 the following proceedings were had:
22            GLORIA SIMS,
23         having been duly sworn and

Page 6

1        examined, testified as follows:
2 DIRECT EXAMINATION BY MR. SWEENY:
3    Q.  Are you Gloria Sims?
4    A.  Yes.
5    Q.  Where do you live, Ms. Sims?
6    A.  414 McClellan Lane, Sylacauga,
7 Alabama.
8    Q.  And you're the plaintiff in a
9 lawsuit against the Coosa County Board of
10 Education, Civil Action 207-CV-704-MEF?
11   A.  Yes.
12   Q.  I'm Donald Sweeny, and I represent
13 the Coosa County Board of Education. Have
14 you been deposed before in any manner, a
15 deposition like we're taking this morning?
16   A.  No.
17   Q.  I will be asking you questions,
18 and it's my responsibility to ask clear
19 questions that you understand. If I ask a
20 question that's not clear, will you ask me
21 to clarify it?
22   A.  Yes.
23   Q.  If you answer a question, I will

Page 7

1 assume that you understood the question; is
2 that fair?
3    A.  Yes.
4    Q.  And I'm going to rely on the
5 information you share with me in order to
6 assess the defense of my client in this
7 case, so will you be as complete as
8 possible in sharing information that fits
9 the questions that I ask?
10   A.  Yes.
11   Q.  And if at any time, you remember
12 additional information that you think would
13 be responsive to a question I've asked,
14 will you supplement your answer?
15   A.  Yes.
16   Q.  And at the end of the deposition,
17 I'll ask you if there's anything else that
18 you want to add to any of the questions or
19 information you shared with me. Does that
20 sound fair?
21   A.  Yes.
22   Q.  And when we conclude the
23 deposition, I will assume that you've

Page 8

1 shared the pertinent information that fits
2 the questions that I ask.
3        If at any time you want to take
4 a break, please do so, and if you will, let
5 me finish my questions before you answer so
6 the court reporter will have an easy
7 question and answer script in the
8 deposition.
9        What is your date of birth?
10   A.  September 9th, 1961.
11   Q.  And you've given us your address,
12 are you married?
13   A.  No.
14   Q.  Have you been married?
15   A.  Yes.
16   Q.  What was your husband's name?
17   A.  Glenn Williams.
18   Q.  Does he live in Coosa County?
19   A.  Yes.
20   Q.  Did you have children of that
21 marriage?
22   A.  No.
23   Q.  Have you been previously married?

2 (Pages 5 to 8)

# FREEDOM COURT REPORTING

| Page 9 | Page 11 |
|---|---|
| 1   A. Yes. | 1 those are the relatives that you have that |
| 2   Q. How many times have you been | 2 live in the middle district? |
| 3 married? | 3   A. What's the middle district? |
| 4   A. Three. | 4   Q. The middle district, the area that |
| 5   Q. Three times. You've just given me | 5 we discussed. |
| 6 your most recent husbands. Will you share | 6   A. Yes. |
| 7 the names of your previous husbands? | 7   Q. Okay. Let me show you what I will |
| 8   A. Raymond Carden and Bernie Sims. | 8 mark as Defendant's Exhibit 1, the notice |
| 9   Q. Do all three of those live in | 9 of deposition to this case. Defendant's |
| 10 Coosa County? | 10 Exhibit 1, I request that you bring any |
| 11   A. No. | 11 documents you have that would be supportive |
| 12   Q. Where do the other two live? | 12 of the allegations in your complaint. Have |
| 13   A. Talladega County. | 13 you done so? |
| 14   Q. As a result of these marriages, | 14   MR. ROBERSON: Yeah, that's what |
| 15 did you have children? | 15 those photos are. |
| 16   A. Yes. | 16   MR. SWEENY: Jerry, are these |
| 17   Q. What are names and ages of your | 17 copies? |
| 18 children? | 18   MR. ROBERSON: You can have |
| 19   A. Cheyenne Carden, Shane Carden, | 19 those, yeah. There may be duplicates in |
| 20 they are 21, and Mia Sims, she's 16. | 20 there. |
| 21   Q. Do either of those children still | 21   MR. SWEENY: I want to mark these |
| 22 live with you? | 22 as Defendant's, I want to have them at the |
| 23   A. Mia. | 23 end of my deposition, Defendant's Exhibit |

| Page 10 | Page 12 |
|---|---|
| 1   Q. Where does she attend school? | 1 7. |
| 2   A. CACC. | 2   Q. (By Mr. Sweeny) In order to have |
| 3   Q. This lawsuit has been filed in | 3 an orderly presentation of documents, |
| 4 what we consider the middle district of | 4 Ms. Sims, let me identify documents that |
| 5 Alabama which embraces a territory roughly | 5 I'll go over during the deposition. |
| 6 from between Birmingham and Montgomery | 6 Defendant's Exhibit 1 is the notice of a |
| 7 across the middle section of the state. Do | 7 deposition; Defendant's Exhibit 2 will be |
| 8 you have realatives that live in that area, | 8 your complaint; Defendant's Exhibit 3 will |
| 9 adult relatives that would be potential | 9 be the notice of the temporary vacancy |
| 10 members of the jury in this case? | 10 posting for the position of the six hour |
| 11   A. Are you saying in Montgomery? | 11 temporary lunchroom; Defendant's exhibit 4, |
| 12   Q. Right. Between Birmingham and | 12 I believe, is the application that you |
| 13 Montgomery, do you have relatives other | 13 submitted for that position; Defendant's |
| 14 than your husband, former husbands? | 14 Exhibit 5 is the interview scheduled for |
| 15   A. Yes. | 15 the position that occurred on December 22nd |
| 16   Q. Where do they live? | 16 and 23rd; and Defendant's Exhibit 6 will be |
| 17   A. Shirley Williams lives in Coosa | 17 your EEO complaint; and Defendant's Exhibit |
| 18 County. | 18 7 will be the documents that you just |
| 19   Q. Anyone else? | 19 tendered to us. |
| 20   A. Tammy Robbins lives in Shelby | 20   The documents in Defendant's |
| 21 County, and Teresa DeRotia lives in Shelby | 21 Exhibit 7 include a employment screening |
| 22 County. | 22 service, what is that document, Ms. Sims? |
| 23   Q. To the best of your knowledge, | 23   A. It was a screening that Coosa |

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 13

1 Medical done on me when I applied for a job
2 at their medical hospital.
3    Q.   And why is this relevant to the
4 issues in your complaint?
5    A.   The Board of Education gave me a
6 bad reference.
7    Q.   Okay.  And that appears on Page 3
8 of that of that document?
9    A.   I believe so, yes.
10    Q.   Okay.  You have also included a
11 newspaper article that has the headlines
12 BOE Debates Diploma Qualifications, what is
13 that article?
14    A.   I really don't know.  I think it's
15 where I was fighting them about trying to
16 get the job back in the lunchroom to keep
17 from hiring another, Jerry McKinney.
18    Q.   What newspaper did that appear
19 in?
20    A.   Coosa County's paper.
21    Q.   Okay.  You also included an
22 article, PTO President Takes on Board of
23 Education, a two page article dated August

Page 14

1 4, 2006, what is that article?
2    A.   It was a board meeting where one
3 of the board members said they were hiring
4 according to race and not qualifications.
5    Q.   Okay.  Who was the board member?
6    A.   I really don't know his name.
7    Q.   Okay.  It's set forth in the
8 article.
9         You've also included your
10 complaint, an EEO filing of November 14,
11 2006, an affidavit of Barbra Murphy, an
12 affidavit of Sandra Thompson, and a, it
13 looks like another copy of your charge of
14 discrimination.
15         To the best of your knowledge,
16 Ms. Sims, are those all of the documents
17 that you have in your possession that are
18 pertinent to the allegations of your
19 complaint?
20    A.   Yes.
21    Q.   In the deposition notice, I
22 requested whether you have any tape
23 recordings of any conversations that would

Page 15

1 include matters relevant to your
2 allegations.  Do you have any tape
3 recordings?
4    A.   No.
5    Q.   In preparation for this
6 deposition, other than meeting with your
7 attorney, what did you do to prepare?  What
8 did you review, and what steps did you
9 take?
10    A.   I just called an attorney whenever
11 I didn't, when I seen that I was done
12 unfairly.
13    Q.   Okay.  You are alleging in your
14 complaint, and we'll go over your complaint
15 later, that you were the victim of gender
16 and race discrimination; is that accurate?
17    A.   Yes.
18    Q.   Will you share with me the names
19 of persons you think might have pertinent
20 information in support of your contentions
21 that you're the victim of race or gender
22 discrimination?
23    A.   Barbara Murphy.

Page 16

1    Q.   Let's just list them first, and
2 then I'll come back.  Who else?
3    A.   Sandra Thomas.
4    Q.   Sandra?
5    A.   I think it's Thomas or Thomason.
6    Q.   Okay.
7    A.   I don't know her last name, but
8 her first name is Margaret.
9    Q.   Okay.  Who else?
10    A.   And Becky.
11    Q.   Becky?
12    A.   I really don't know her last
13 name.  We also worked together.
14    Q.   Okay.  Anyone else?
15    A.   Ms. Forbes.
16    Q.   Anyone else?
17    A.   No.
18    Q.   Okay.  Have you talked with any of
19 these people about the contentions in your
20 lawsuit?
21    A.   No.
22    Q.   Who is Barbara Murphy?
23    A.   She is one of the lunchroom

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 17

1  workers.
2  Q.  And what do you believe, what
3  information do you believe that she has
4  that would support your contention that
5  you're the victim of discrimination?
6  A.  She heard the same thing I heard,
7  that it was a man's job, and they had to
8  get some color in there, in the lunchroom.
9  Q.  Do you remember when that
10  conversation took place?
11  A.  During our break when we was
12  having break during lunch, I was sitting at
13  the table.
14  Q.  Was that before you applied for
15  position, the temporary position?
16  A.  Yes.
17  Q.  And who else was there when, let's
18  see, who made the statement?
19  A.  Ms. Forbes.
20  Q.  And who else was in the room
21  besides you and Barbara Murphy?
22  A.  The other women that I've named,
23  Sandra and Ms. Margaret and Becky.

Page 18

1  Q.  And what is it that Ms. Forbes
2  said?
3  A.  She said that it was a man's job,
4  and that Pam Jones said she had to get some
5  color in the lunch room.
6  Q.  Did Ms. Forbes make both of those
7  comments in the same statement?
8  A.  Yes.
9  Q.  At the same time?
10  A.  Yes.
11  Q.  And to the best of your knowledge,
12  Barbara Murphy heard those statements being
13  made?
14  A.  Yes.
15  Q.  In your best recollection of when
16  that took place would be what?
17  A.  Probably around in August, but she
18  made the statement several times.
19  Q.  We will come back to the posting
20  notice.  The posting for the six hour
21  temporary lunch room position was September
22  5, 2006, you believe that these statements
23  were made prior to that?

Page 19

1  A.  Yes.
2  Q.  Some time August of 2006?
3  A.  Yes.
4  Q.  Okay.  Anything else that Barbara
5  Murphy might know pertinent to the
6  complaint?
7  A.  I don't know.
8  Q.  Sandra Thomas?
9  A.  The same thing.
10  Q.  What she would know would be as
11  far as you believe the same things Barbara
12  Murphy would know?
13  A.  Yes.
14  Q.  And that's because she was with
15  you when you heard Ms. Forbes make the
16  statements that you've just shared with
17  me?
18  A.  Yes.
19  Q.  Have you had any discussions with
20  Sandra Thomas or Thompson, which ever one
21  it might be?
22  A.  No.
23  Q.  Margaret whatever her last name is

Page 20

1  would, as far as you know would she have
2  heard the conversations that you just
3  described that Jan Forbes made?
4  A.  Yes.
5  Q.  Have you had any conversations
6  with Margaret about the contentions in your
7  lawsuit?
8  A.  No.
9  Q.  Would she know anything about your
10  allegations of discriminations other than
11  having heard Ms. Forbes make the comments
12  that you've said?
13  A.  No.
14  Q.  Becky, she she's similarly
15  positioned to Margaret?
16  A.  Becky has now got Ms. Forbes' job,
17  she's retired, she's the supervisor over
18  the lunchroom now.
19  Q.  When did she retire?
20  A.  I'm not sure.
21  Q.  Before September 5, 2006?
22  A.  After.
23  Q.  Was Becky present when Ms. Forbes

5  (Pages 17 to 20)

# FREEDOM COURT REPORTING

Page 21

1 made the statements that you've shared with
2 us?
3    A. Yes.
4    Q. Have you had any discussions with
5 Becky?
6    A. No.
7    Q. And Jan Forbes, which she knows
8 whether she made the statements that you've
9 attributed to her?
10    A. Yes.
11    Q. Is there anything else that you
12 believe Ms. Forbes knows that would be
13 relevant to your contentions in the
14 lawsuit?
15    A. I don't know.
16    Q. As far as your educational
17 background, where did you attend high
18 school?
19    A. HL Bourgeois in Homa, Louisiana.
20    Q. I couldn't read the spelling of
21 the high school, would you spell it for me?
22    A. B-O-U-R-G-E-O-I-S.
23    Q. And that's where?

Page 22

1    A. Homa.
2    Q. You attended high school for how
3 many years?
4    A. 11.
5    Q. Through the 11th grade?
6    A. Yes.
7    Q. And that's as far as you completed
8 your education?
9    A. Yes.
10    Q. So you did not get a high school
11 degree?
12    A. No.
13    Q. And you have not gotten a GED; is
14 that correct?
15    A. That's correct.
16    Q. Have you had any other educational
17 training or employment related seminars or
18 special training that would be pertinent to
19 this lawsuit?
20    A. No.
21    Q. As far as your employment
22 background, let me start with when you
23 became employed as a substitute worker for

Page 23

1 the Coosa County Board, was that in August
2 of 2006?
3    A. I got my papers saying I was on
4 the list, calling list, I think it was
5 April of '04.
6    Q. It was what?
7    A. April of '04.
8    Q. Okay. And then when did you
9 actually start working as a substitute for
10 the Coosa County Board?
11    A. The following school semester.
12    Q. So for the, that would be August
13 of '04, '05?
14    A. Yes.
15    Q. How many days did you work as a
16 substitute during that year?
17    A. I don't know.
18    Q. Did you work at more than one
19 school?
20    A. Yes.
21    Q. What schools did you work at?
22    A. I worked for the middle school and
23 elementary school lunchroom for that

Page 24

1 school.
2    Q. And then the next year, the
3 '05-'06 school year, did you continue
4 working as a substitute?
5    A. Yes.
6    Q. What schools did you work at?
7    A. The high school.
8    Q. Exclusively, you didn't continue
9 serving as a substitute at the middle or
10 elementary?
11    A. No.
12    Q. Do you have idea how many days,
13 you worked as a substitute during the
14 '05-'06 school year?
15    A. It was around five to six weeks.
16    Q. Would that have been in one block
17 of time or individual days and their
18 cumulative amount added up to five or six
19 weeks?
20    A. It was all at one time.
21    Q. Okay. Were you substituting for a
22 particular employee at the high school?
23    A. For the lunchroom, Ms. Forbes, for

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 25

1  Michael -- I don't know his name, he quit,
2  and I was filling in on his job.
3      Q.   Okay.  Then in August you applied
4  for the position of temporary six hour
5  lunchroom position?
6      A.   Well, that job wasn't posted until
7  September, I believe.
8      Q.   Did you begin substituting in
9  August of '06?
10     A.   Yes.
11     Q.   Okay.
12     A.   For that job.
13     Q.   And then you applied in some time
14  in September of '06, applied for the
15  temporary position?
16     A.   Right.
17     Q.   Okay.  Now, against that
18  background, prior to your employment as a
19  substitute for the Coosa County Board of
20  Education, would you give me your
21  employment history?
22     A.   I worked at Quincey's.
23     Q.   Whereabouts?

Page 26

1      A.   Sylacauga.
2      Q.   For how long?
3      A.   For three years.
4      Q.   What years?
5      A.   Probably from '80 to '83.
6      Q.   Okay.
7      A.   And then I went straight from
8  there, I left there and went straight to
9  Russell Mills in Sylacauga.
10     Q.   And how long did you work at
11  Russell Mills
12     A.   From '83 to '91.
13     Q.   Okay.  Why did you leave
14  Quincey's?
15     A.   Because I got hired at Russell
16  Mills.
17     Q.   Why did you leave Russell?
18     A.   To stay at home and be a mom with
19  my new baby.
20     Q.   Okay.  What was your next
21  employment after '91?
22     A.   The elastic corporation in
23  Columbiana.

Page 27

1      Q.   I'm sorry, what?
2      A.   It was the ECA in Columbiana.
3      Q.   What did you do there?
4      A.   I was a knitter.
5      Q.   And you worked there for how
6  long?
7      A.   Let me think -- '95 to '98.
8      Q.   What did you do at Russell Mills?
9      A.   A seamer.
10     Q.   And after -- why did you leave the
11  position in Columbiana?
12     A.   It was straight midnights, and I
13  had trouble finding a sitter.
14     Q.   What was your next job?
15     A.   Selco Cleaners.
16     Q.   Where is that located?
17     A.   Chelsea, Alabama.
18     Q.   And what did you do there?
19     A.   I inspected clothes, inspector.
20     Q.   How long were you there?
21     A.   From 2000 to '02.
22     Q.   Your next position?
23     A.   Coosa Central High School.

Page 28

1      Q.   As a substitute?
2      A.   Yes.
3      Q.   Have you ever been terminated from
4  any position of employment?
5      A.   No.
6      Q.   Have you previously filed an EEO
7  complaint against anyone?
8      A.   No.
9      Q.   Any company that you worked for?
10     A.   No
11     Q.   Have you ever been a plaintiff in
12  a lawsuit prior to this litigation?
13     A.   No.
14     Q.   Have you ever been a defendant in
15  a lawsuit?
16     A.   No.
17     Q.   Do you know the superintendent of
18  the Coosa County Board?
19     A.   Yes.
20     Q.   What is his name?
21     A.   Todd Wingard.
22     Q.   How well do you know Mr. Wingard?
23     A.   Just by being at the school, being

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 29

```
 1  superintendent.
 2     Q  Are you contending in this lawsuit
 3  that Todd Wingard has discriminated against
 4  you because of your gender or your race?
 5     A.  Yes.
 6     Q.  On what basis?
 7     A.  Because I'm a white female, and
 8  they hired a black male.
 9     Q.  Has Mr. Wingard ever said anything
10  to you that would indicate a discriminatory
11  animus toward you because of your gender?
12     A.  No.
13     Q.  And as far as conduct, what
14  conduct has Todd Wingard engaged in that
15  serves as the basis for your contention
16  that he's discriminated against you because
17  of your race and gender?
18     A.  They've done the hiring.
19     Q.  But you've never talked to him
20  about the reasons that upon which he based
21  his recommendation that somebody else be
22  hired; is that correct?
23     A.  That's correct.
```

Page 30

```
 1     Q.  Would it be fair and correct to
 2  say that all you know about Todd Wingard is
 3  the fact that he recommended somebody else
 4  to be employed for the position of the six
 5  hour temporary cafeteria worker at Coosa
 6  Central High School?
 7     A.  Yes.
 8     Q.  Do you know what information he
 9  had prior to making the recommendation that
10  he did?
11     A.  No.
12     Q.  Do you know from whom he obtained
13  information about the person that he
14  recommended for the position?
15     A.  No.
16     Q.  So you really don't know any facts
17  about, that served as the basis for Todd
18  Wingard's recommendation?
19     A.  No.
20     Q.  Do you know any of the board
21  members that serve on the Coosa County
22  Board of Education?
23     A.  Not personally.
```

Page 31

```
 1     Q.  Do you know David Edwards?
 2     A.  I know him as a board member.
 3     Q.  Do you know him beyond that?
 4     A.  No.
 5     Q.  Have you ever talked to him about
 6  the contentions in your lawsuit?
 7     A.  Yes.
 8     Q.  When did you have conversations
 9  with him?
10     A.  When I called and asked about my
11  job position, and he told me I needed to
12  come to the board meetings and try to talk
13  to them about trying to get my job back.
14     Q.  Did you have that conversation
15  with him after the decision was made to
16  hire, what is it, Jerry McKnight?
17     A.  McKinney.
18     Q.  Would that be -- let me rephrase
19  that.  You talked to David Edwards at some
20  point about the position that you had
21  applied for with the Coosa County Board,
22  they had hired Jerry McKinney and so you
23  called David Edwards to discuss what?
```

Page 32

```
 1     A.  Discuss what I need to do and I
 2  told him I didn't think it was fair, and he
 3  told me I need to come to the board
 4  meetings and object and try to get my job
 5  back.
 6     Q.  What about the decision did you
 7  think was unfair?
 8     A.  Because I done my job well and I
 9  didn't get it, and I had been working there
10  for a while.
11     Q.  Prior to calling David Edwards,
12  did you know him at all?
13     A.  No.
14     Q.  Why did you call Mr. Edwards?
15     A.  Because he was a board member.
16     Q.  Is he from your district or
17  something?
18     A.  Yes.
19     Q.  Okay.  And you told him that you
20  didn't think the decision was fair?
21     A.  Yes.
22     Q.  Did you tell me that you thought
23  that you had been the victim of
```

8 (Pages 29 to 32)

# FREEDOM COURT REPORTING

Page 33

1  discrimination?
2    A.  Yes.
3    Q.  What do you remember sharing with
4  him?
5    A.  I just told him that I thought I
6  was being discriminated against my sex and
7  race.
8    Q.  Okay.  Did he respond other than
9  suggest you come to the board and discuss
10 that?
11   A.  Yes.
12   Q.  All right.  What else did he say?
13   A.  That was it.
14   Q.  Did you come to the Board of
15 Education and make a statement?
16   A.  Yes.
17   Q.  All right.  Is that the board
18 meeting that's covered in one of the
19 articles in the newspaper that you've
20 shared with us in Defendant's Exhibit 7?
21   A.  Yes.
22   Q.  At the board meeting, what did you
23 share with the members of the board and

Page 34

1  superintendent?
2    A.  I just told them that I thought it
3  was not fair, that when I applied for the
4  job there was no, you didn't have to have a
5  high school diploma or a GED when I filled
6  my application out, and I just thought I
7  was done unfairly and I wanted my job back.
8    Q.  By that time, they had already
9  hired Jerry McKinney?
10   A.  He was subbing at that time.
11   Q.  Okay.  Do you remember what the
12 date was of the board meeting?
13   A.  I'm not for sure.
14   Q.  Okay.  During that board meeting
15 after you made the statement that you just
16 shared with me, did Mr. Wingard respond in
17 any fashion?
18   A.  No.
19   Q.  Did Mr. Edwards respond?
20   A.  No, I think they kind of put it
21 off to the next board meeting to make a
22 decision.
23   Q.  At that meeting, did any of the

Page 35

1  other board members comment in any
2  fashion?
3    A.  A couple of them did.  They said
4  that they didn't see where it said in the
5  guidelines that you had to have a GED or
6  high school diploma to work in the
7  lunchroom.
8    Q.  Do you remember which ones spoke
9  out?  I'll go over the list of them.  If
10 you remember, share with me, if not, we can
11 go over the names.
12   A.  I can't remember.
13   Q.  Okay.  Do you know Larry
14 Goodgain?
15   A.  Yes.
16   Q.  Have you talked to him about
17 contentions in your lawsuit?
18   A.  Yes.
19   Q.  When did you do that?
20   A.  I called him, and he said also
21 that I need to be at the board meetings.
22   Q.  Did you call him about the same
23 time you called David Edwards?

Page 36

1    A.  Yes.
2    Q.  Did he comment in any form or
3  fashion about what you shared with him?
4    A.  I called to ask about the
5  guidelines of being in the lunchroom.
6    Q.  Uh-huh.
7    A.  Because I wasn't for sure and he
8  said he didn't see where you had to have
9  that qualification.
10   Q.  Anything else that you remember
11 Mr. Goodgain sharing with you in the
12 conversation that you had?
13   A.  That's all I can remember.
14   Q.  At the board meeting that we just
15 talked about, did Mr. Goodgain say
16 anything?
17   A.  Yes.
18   Q.  What did she say?
19   A.  He said he did not see in the
20 guidelines where that was a requirement for
21 a lunchroom worker.
22   Q.  Anything else?
23   A.  No.

9  (Pages 33 to 36)

# FREEDOM COURT REPORTING

Page 37

1    Q.  Do you know Randall Hardeman?
2    A.  Yes.
3    Q.  How do you know him?
4    A.  From the board meetings.
5    Q.  Do you attend board meetings from
6    time to time?
7    A.  I went to those because I was
8    trying to get my job back.
9    Q.  Did you call him prior to the
10   board meeting?
11   A.  Yes.
12   Q.  About the same time that you
13   called Mr. Edwards and Mr. Goodgain?
14   A.  Yes.
15   Q.  What do you recall discussing with
16   him?
17   A.  The same thing I discussed with
18   the other -- Larry.
19   Q.  Okay.  And what did he say in
20   response during that telephone
21   conversation?
22   A.  That I needed to also be at the
23   next board meeting.

Page 38

1    Q.  Did Mr. Hardeman say anything at
2    the board meeting that you recall?
3    A.  They were all discussing whether
4    it was a qualification in the lunchroom.
5    Q.  Okay.  But do you remember
6    anything specific that he said?
7    A.  No.
8    Q.  David Tuck, do you know Mr. Tuck?
9    A.  No.
10   Q.  Did you call Mr. Tuck?
11   A.  No.
12   Q.  Was Mr. Tuck at the board meeting
13   when you appeared?
14   A.  I believe so.
15   Q.  Do you remember him saying
16   anything in particular?
17   A.  No.
18   Q.  Charles Frank Ward is a board
19   member, do you know Mr. Ward?
20   A.  No.
21   Q.  Other than what took place at the
22   board meeting that we've been discussing,
23   have you ever talked to Mr. Ward about your

Page 39

1    contentions?
2    A.  No.
3    Q.  Do you remember Mr. Ward saying
4    anything at the board meeting?
5    A.  They were just trying to all
6    decide whether that was in the guidelines
7    or not.
8    Q.  Did superintendent Wingard say
9    anything at that time that board meeting
10   after you made your statements?
11   A.  Yes, but I can't remember exactly
12   what he said.
13   Q.  Do you know Keith Bullard?
14   A.  Yes.
15   Q.  She's he's the principal at Coosa
16   Central High School?
17   A.  Yes.
18   Q.  Are you contending that
19   Mr. Bullard discriminated against you?
20   A.  Well, I believe in -- everybody
21   that had a decision in hiring discriminated
22   against me, and he was one of the ones that
23   interviewed me.

Page 40

1    Q.  Has Mr. Bullard ever said anything
2    to you that you believe indicated a
3    discriminatory attitude because of your
4    gender, that is because you're a female?
5    A.  No.
6    Q.  Has he ever said anything to you
7    that would indicate a discriminatory bias
8    because of your race, that is because
9    you're white?
10   A.  No.
11   Q.  Is Mr. Bullard black or white?
12   A.  He's white.
13   Q.  After the decision was made to --
14   or before the decision was made to
15   recommend Jerry McKinney for the position,
16   did you talk to Mr. Bullard?
17   A.  No.
18   Q.  After the decision was made to
19   hire Jerry McKinney, did you talk to
20   Mr. Bullard?
21   A.  No.
22   Q.  Have you had any conversations
23   with Mr. Bullard about why he did not

10  (Pages 37 to 40)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

**FREEDOM COURT REPORTING**

Page 41

1 recommend you for the position?
2   A.  No.
3   Q.  Have you had any conversations
4 with Mr. Bullard about why he recommended
5 Jerry McKinney?
6   A.  No.
7   Q.  So would it be fair and correct to
8 say that you have no information about why
9 Mr. Bullard recommended somebody else for
10 the position that you applied for rather
11 than you?
12   A.  Just that they made the decision
13 they needed a man.
14   Q.  But based on anything he said or
15 did, would it be fair and correct that you
16 have no basis to assert that Mr. Bullard
17 made his recommendation because of your
18 gender or race?
19   A.  That's right.
20   Q.  Just focusing on Coosa Central
21 High School, when you began substituting at
22 the high school in, let's just start,
23 during the '05-'06 school year for that

Page 42

1 five to six week period who interviewed
2 you?
3   A.  Ms. Forbes called me because Mike
4 quit the day that school began for that
5 session, and she needed somebody, and I
6 went in, and I went straight to work,
7 Ms. Forbes.
8   Q.  Was Ms. Forbes the only one that
9 you really talked to about replacing him on
10 a substitute basis?
11   A.  Yes.
12   Q.  You didn't talk to Mr. Bullard at
13 that time?
14   A.  No.
15   Q.  Or Mr. Wingard?
16   A.  No.
17   Q.  When Ms. Forbes recommended that
18 you serve as the substitute at that time,
19 you were a woman, weren't you?  I just say
20 for that for the record, so that we have
21 that established.
22   A.  Yes.
23   Q.  So she did not discriminate

Page 43

1 against you at that point because of your
2 gender?
3   A.  No.
4   Q.  She recommend that you work as a
5 substitute for the five to six week period
6 even though you were a woman?
7   A.  Right.
8   Q.  And you were white, a Caucasian at
9 that time too, weren't you?
10   A.  Yes.
11   Q.  So for the record, that did not
12 serve at any impediment for her to
13 recommend that you be employed as a
14 substitute at that time?
15   A.  No.
16   Q.  At any point while you served as a
17 substitute, were you actually evaluated by
18 the Coosa County Board?
19   A.  No.
20   Q.  So there's no formal evaluation, a
21 peppy instrument evaluated how you were
22 doing to your knowledge?
23   A.  No.

Page 44

1   Q.  At the high school, was Ms. Forbes
2 your immediate supervisor?
3   A.  Yes.
4   Q.  Were you ever reprimanded by
5 Ms. Forbes or anyone else that was in a
6 supervisory position at Coosa Central High
7 School?
8   A.  No.
9   Q.  Did you ever have any problems or
10 disagreements with any of your supervisors
11 at Coosa Central High School?
12   A.  No.
13   Q.  Or any disagreements or problems
14 with co-employees?
15   A.  No.
16   Q.  At any time, did you walk off the
17 job?
18   A.  Yes.
19   Q.  Tell me about that.
20   A.  It was the day that Ms. Forbes
21 come in and told me that I didn't get the
22 job, and it was right before the lunch, the
23 kids were fixing to come in for lunch, and

11 (Pages 41 to 44)

Page 45

1  she said they hired a male, and she said it
2  was a black male. And I was so upset, I
3  left crying.
4  Q. Okay. And that's the only time
5  you've left the job?
6  A. That's the only time.
7  Q. Did you say anything to Ms. Forbes
8  after she advised you that Jerry McKinney
9  was going to be hired?
10  A. I just told her I thought it was
11  not fair.
12  Q. Did you ask her why the board had
13  voted to employ Mr. McKinney rather than
14  you?
15  A. Yes.
16  Q. What did she say?
17  A. She said it's because he had a
18  GED, I mean, a high school diploma, and I
19  told her, I know I didn't, but when I
20  applied for the job, that wasn't one of the
21  qualifications when I filled my application
22  out.
23  Q. What did she say to that?

Page 46

1  A. I told her I thought I was being
2  done unfairly, and she said, you're right.
3  Q. Ms. Forbes said that you were
4  being treated unfairly?
5  A. Yes.
6  Q. Did she say on the basis that the
7  board couldn't consider you because you did
8  not have a high school diploma or GED?
9  A. She said I just didn't get the job
10  because of that.
11  Q. And your response to that was that
12  was unfair?
13  A. That was unfair.
14  Q. And she said that she thought that
15  it was unfair that there was a requirement
16  that you have a high school diploma or
17  GED?
18  A. No, it's just that because she's
19  made statements saying it was probably
20  going, a man was going to be put in that
21  position and she knew it was going to be a
22  black man.
23  Q. Did she say that on that

Page 47

1  occasion?
2  A. No, she said it several times
3  beforehand.
4  Q. On that occasion --
5  A. On that occasion, she just said,
6  you didn't get the based on, because you
7  didn't have a GED.
8  Q. Okay. You had been working for
9  six weeks or so in the position as a, you
10  call it a lunchroom worker or a cafeteria
11  workers, what's the position?
12  A. Lunchroom worker.
13  Q. The position that was posted, was
14  that for that same position that you had
15  been working as a substitute?
16  A. Yes.
17  Q. Share with me what your duties and
18  responsibilities were in that position.
19  A. It was keeping the buffet bars
20  full of food, taking out the trash and
21  sweeping the and mopping the lunchroom, and
22  stocking the freezers and the coolers.
23  Q. Did you do any cooking or food

Page 48

1  preparation?
2  A. Every now and then if I got caught
3  up, if I had extra time and they were,
4  like, wrapping sandwiches or something, I'd
5  help them wrap sandwiches.
6  Q. Did they have a division of labor
7  so that somebody else did most of the
8  cooking?
9  A. Yes.
10  Q. Who did most of the cooking?
11  A. Barbara and Sandra and
12  Ms. Margaret and Becky.
13  Q. And what was their position?
14  A. They were the lunchroom workers,
15  they were the ones that done the food.
16  Q. So it's the same job
17  classification?
18  A. Yes.
19  Q. But within that classification,
20  some people had other duties and
21  responsibilities?
22  A. Yes.
23  Q. But on occasion, you would be

# FREEDOM COURT REPORTING

Page 49

1  asked to prepare food?
2     A.  Well, they didn't ask me, but I
3  didn't want to stand around doing nothing
4  while they were back there working, so I
5  helped them.
6     Q.  When you prepared food, did you
7  have to follow recipes?
8     A.  No.
9     Q.  Well, when you're preparing food,
10  isn't it a general requirement that you
11  would have to follow some kind of recipe?
12     A.  Well, they would have the recipe,
13  they would already have it mixed up and
14  usually by the time I got back there, they
15  were already getting it ready, and getting
16  it ready to be put out.
17     Q.  But if you have to prepare food,
18  isn't it generally true that you have to
19  read and follow recipes?
20     A.  Yes.
21     Q.  How did you learn that there was
22  going to be an application process for this
23  position?

Page 50

1     A.  Well, I asked Todd Wingard about
2  benefits, I told him I needed benefits, and
3  when was he going to post a job, and he
4  said they were going to post it soon and I
5  told them I was interested in the job and I
6  wanted to put my name on it.
7     Q.  Did he encourage, did Todd Wingard
8  encourage or discourage you from applying?
9     A.  No.
10     Q.  Neither one?
11     A.  Neither.
12     Q.  He just shared the information?
13     A.  Yes.
14     Q.  So based on that conversation, did
15  Mr. Wingard say or do anything that you
16  interpreted as being discriminatory against
17  you?
18     A.  No.
19     Q.  Did you see the posting notice, or
20  did someone give that to you?
21     A.  I seen the posting notice.
22     Q.  Let's go ahead and mark these
23  exhibits in order.  We have marked for

Page 51

1  identification the exhibit's I have
2  previously mentioned, but let's make sure
3  I've got them in sequence, Defendant's 1 is
4  the deposition notice; Defendant's 2 is the
5  complaint that you have filed; Defendant's
6  3 is a temporary vacancy notice;
7  Defendant's 4 is the application;
8  Defendant's 5 is the interview schedule;
9  and Defendant's 6 is the charge of
10  discrimination, and then 7 is the
11  information that you provided.
12     (Whereupon, Defendant's Exhibit
13     No.s 1, 2, 3, 4, 5, 6, and 7
14     have been marked for
15     identification and copy of same
16     is attached hereto.)
17     Let me show you what I have
18  marked as Defendant's Exhibit 3.
19     MR. ROBERSON:  Can I see
20  Defendant's 5?  I don't know that I've seen
21  the interview thing.
22     MR. SWEENY:  That's something we
23  supplied for you.  It's just a schedule.

Page 52

1  That's just multiple copies of the same
2  thing.
3     MR. ROBERSON:  It's nothing but
4  the interview schedule.
5     MR. SWEENY:  That's correct.
6     Q.  Looking at what we've marked as
7  Defendant's Exhibit 3, is this the
8  temporary vacancy posting that you saw in
9  following which you applied for the
10  position?
11     A.  Yes.
12     Q.  The position was a six hour
13  temporary lunchroom worker, heavy lifting
14  involved, what were the qualifications
15  listed in this posting notice?
16     A.  High school diploma or GED.
17     Q.  So when you got the posting
18  notice, you knew that one of the listed
19  qualifications for the position was a high
20  school diploma or GED?
21     A.  Yes.
22     Q.  That was clearly set forth in the
23  posting notice?

13 (Pages 49 to 52)

# FREEDOM COURT REPORTING

Page 53

1      A. Yes. But can I clarify
2  something?
3      Q. Sure, please.
4      A. When I seen that, I figured they
5  probably done that qualifications after I
6  filled my application out because at the
7  time I filled my application out, it wasn't
8  a qualification, so that's why I went ahead
9  and applied for the job.
10     Q. All right. I don't understand
11 your response. When did you apply for a
12 position where there was a not a
13 requirement for a high school diploma or
14 GED?
15     A. When I it went to apply, you have
16 to start like as a sub to get your foot in
17 the door, and when I went and applied for
18 the job, there wasn't no requirement on the
19 application for a high school diploma of
20 GED in the lunchroom, so I thought, you
21 know, since my application was already in
22 there that it wouldn't be, you know, I was
23 already in the door.

Page 54

1      Q. Well, have you ever checked to see
2  if there were other posting notices for
3  hiring a lunchroom worker other than this?
4      A. No.
5      Q. When you were applying for a
6  substitute, you weren't applying because of
7  off some posting notice that you saw, were
8  you?
9      A. No, I knew that they needed help
10 real bad.
11     Q. Okay.
12     A. And I asked a girl that works in
13 the lunchroom, well, do you have a high
14 school diploma or GED because she works
15 there and she said, no, you don't, she
16 said, I don't have one.
17     Q. So when you were coming in to
18 apply for work, you were applying for a
19 substitute position?
20     A. Yes.
21     Q. And you were actually employed as
22 a substitute?
23     A. Yes.

Page 55

1      Q. For that substitute capacity,
2  there was no requirement that you have a
3  high school diploma or GED?
4      A. No.
5      Q. Okay. From 1999 on, did you ever
6  see any actual posting notice for a
7  position of lunchroom worker other than
8  what we've marked as Defendant's Exhibit
9  3?
10     A. No.
11     Q. Do you know if the board has hired
12 any other permanent lunchroom workers since
13 1999?
14     A. Yes.
15     Q. Do you know the names of anyone
16 that's been hired since 1999 as a permanent
17 lunchroom worker?
18     A. That doesn't have a GED or high
19 school diploma?
20     Q. That's right.
21     A. Yes.
22     Q. Who?
23     A. Barbara Murphy, Lisa Cleveland.

Page 56

1      Q. Lisa what?
2      A. Cleveland. Calvin, I don't know
3  his last name and Teresa Mitchell.
4      Q. Do you know when Barbara Murphy
5  was employed?
6      A. She just got tenured probably last
7  year. You go about four years. You have
8  to work like three years as temporary then
9  when you go that fourth year, you get
10 tenure.
11     Q. What about Lisa Cleveland? How
12 long has she been employed?
13     A. She's been there, this is probably
14 going on her third or fourth year. She was
15 working temporary, and she just got a job
16 there this year without a GED or high
17 school diploma.
18     Q. She's at the high school?
19     A. She's at the high school.
20     Q. Where is Lisa Cleveland?
21     A. She's at the elementary lunchroom.
22     Q. And Calvin?
23     A. He's at the elementary lunchroom.

14 (Pages 53 to 56)

# FREEDOM COURT REPORTING

Page 57

1    Q.  How long has he been there?
2    A.  I don't know.  Probably about five
3  or six years.
4    Q.  Teresa Murphy?
5    A.  Mitchell.
6    Q.  Mitchell, where is she employed?
7    A.  She's at the elementary
8  lunchroom.
9    Q.  Do you know how long she's been
10  there?
11    A.  No, I do not.
12    Q.  You have not seen any posting
13  requirement though by the board of
14  education for a lunchroom worker other than
15  what we've marked as Exhibit 3.
16    A.  Well, yes, I've seen a posting in
17  the paper before, and I called Todd Wingard
18  about it, put my name on it.  It was the
19  job Lisa Cleveland now has.
20    Q.  Uh-huh.
21    A.  And he said he would put my name
22  on it, but he informed that there was two
23  people ahead of me, but he'd go ahead and

Page 58

1  put my name on that posting, and Lisa
2  Cleveland got that job.
3    Q.  Do you know who actually crafted
4  or put together this posting notice for
5  Defendant's Exhibit 3?
6    A.  No, I do not.
7    Q.  Do you know who's idea it was to
8  include a qualification of a high school
9  diploma or GED?
10    A.  No, I did not.
11    Q.  Do you have any basis to contend
12  that the author of this posting with the
13  requirement of high school diploma or GED
14  included that qualification specifically to
15  discriminate against you?
16    A.  I have no idea.
17    Q.  Just so the record's clear, as far
18  as you know in general terms, is it as easy
19  for a woman to get a high school diploma or
20  GED as a man?
21    A.  Yes.
22    Q.  So having a high school diploma of
23  GED is not inherently discriminatory

Page 59

1  against women, is it?
2    A.  No.
3    Q.  Is there anything inherently
4  discriminating against white people for, to
5  have a requirement of high school diploma
6  or GED?
7    A.  Not that I know of.
8    Q.  So the terms of that qualification
9  as it would apply across the board, there's
10  nothing on the face of a requirement for
11  high school diploma or GED that's
12  discriminatory against someone because of
13  their gender or their race, is there?
14    A.  No.
15    Q.  Have you ever discussed with
16  Todd Wingard or anyone else at the board
17  why they included this qualification of
18  high school diploma on the posting for
19  September 5, 2006?
20    A.  I tried to discuss it with
21  Pam Jones but she just kind of just --
22    Q.  With who?
23    A.  Pam Jones.

Page 60

1    Q.  Uh-huh.
2    A.  The child nutritionist.
3    Q.  Uh-huh.
4    A.  And she really, really just kind
5  of blew me off to tell you the truth.
6    Q.  What did she say?
7    A.  She just kind throwed (sic) her
8  hand up and said you have to talk to Todd
9  is what she said.
10    Q.  Okay.  Did you do that?
11    A.  No, I couldn't ever get a hold to
12  him until we went to the board meeting.
13    Q.  Prior to the decision to employ
14  Jerry McKinney, did anybody tell that you
15  the requirement of a high school diploma or
16  GED would be ignored or not be required?
17    A.  No.
18    Q.  Do you know if the State Board of
19  Education recommended that people working
20  in the lunchroom have a high school degree
21  or GED?
22    A.  To my knowledge, they didn't
23  require it.

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 61

1    Q.  My question is:  Do you know if
2  the State Board of Education recommend that
3  there be that requirement?
4    A.  No.
5    Q.  So you saw the posting and then
6  you, did you fill out an application for
7  the position after seeing this posting
8  notice?
9    A.  I had Pam Jones and Todd Wingard,
10  I told them both to put my name down on it
11  and they did.
12    Q.  Okay.  Let me show you what I've
13  marked as Defendant's Exhibit 4 and ask you
14  if that's your application for the
15  position.
16    A.  Yes.
17    Q.  This was dated August 20, 2004,
18  I'm just seeing that.  Was this something
19  that was already on file with the board?
20  Do you see in the left hand column,
21  Ms. Sims?
22    A.  Yes.
23    Q.  Is all of this in your handwriting

Page 62

1  except for Mr. Bullard's signature at the
2  bottom?
3    A.  Yes.
4    Q.  When this position came open in
5  September of 2006, was there anything that
6  had changed in the application that we're
7  now looking at that's been marked as
8  Defendant's Exhibit 4?
9    A.  No.
10    Q.  In this application, it says name
11  of high school graduated and you put down
12  high school, but that's where you attend
13  rather than graduated; correct?
14    A.  Right.
15    Q.  And was your last year of
16  attending that high school 1980?
17    A.  Yes.
18    Q.  And that's when you finished the
19  11th grade?
20    A.  Yes.
21    Q.  Are all of these references that
22  you've listed people that live in Coosa
23  County?

Page 63

1    A.  All but one.
2    Q.  Which one is not?
3    A.  Pam Looney.
4    Q.  And she lives where?
5    A.  Talladega County.
6    Q.  Okay.  I really can't read Page 2,
7  but apparently that sets forth some
8  information about the position.  Can you
9  read that information?
10    A.  No.
11    Q.  Okay.  Do you know how many people
12  applied for this position that we're
13  talking about?
14    A.  No.
15    Q.  Did you ever ask Keith Bullard or
16  Todd Wingard or any members of the board
17  how many people applied?
18    A.  No.
19    Q.  Have you gone to the board records
20  and reviewed the qualifications of the
21  other people that applied?
22    A.  No.
23    Q.  So I'm clear:  Would you know how

Page 64

1  many woman applied for the job?
2    A.  No.
3    Q.  Do you know how many woman applied
4  that had a high school degree?
5    A.  No.
6    Q.  Do you know how many white
7  applicants there were?
8    A.  No.
9    Q.  Do you know how many men applied
10  for the job?
11    A.  No.
12    Q.  Do you know how many black
13  applicant males applied for the position?
14    A.  No.
15    Q.  Do you know how many of those had
16  high school degrees?
17    A.  No.
18    Q.  Do you know if there were other
19  applicants for the position that did not
20  have a high school degree or diploma that
21  also were not considered?
22    A.  I don't know.
23    Q.  Did you ever discuss with

16 (Pages 61 to 64)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

Page 65

1  Keith Bullard or Todd Wingard or any other
2  board member whether there were, in fact,
3  other applicants for the position who did
4  not have a degree, a high school degree who
5  were not considered because of that?
6     A.  No.
7     Q.  Let me show you what we've marked
8  as Defendant's Exhibit 5.  This is a
9  document from the board of education files
10 that list interviews for the position that
11 occurred that is shown on Page 1 of
12 September 22nd and on Page 2, the 25th.  It
13 list as the fourth person down Diane Sims,
14 is that you?
15    A.  Yes.
16    Q.  You're often referred to as Diane
17 Sims?
18    A.  Yes.
19    Q.  Okay.  And were you interviewed on
20 September 22nd, 2006?
21    A.  Yes.
22    Q.  If I ask you if you know whether
23 Gladice Harris was a white female with a

Page 66

1  high school diploma, would you know?
2     A.  No.
3     Q.  If I ask you about each of these
4  applicants that appeared on page 1 and 2 of
5  this exhibit, would you know whether they
6  had a high school diploma?
7     A.  No.
8     Q.  Or what kind experience they might
9  have had that was pertinent to the position
10 which was being considered?
11    A.  No.
12    Q.  If it turns out that a number of
13 these, or do you have any reason to dispute
14 my representation that a number of these
15 people that applied and were interviewed
16 had a high school diploma?
17    A.  No.
18    Q.  Assume that the Court determines
19 that the requirement of a high school
20 diploma is a legitimate, nondiscriminatory
21 business criteria -- just assume that for
22 purposes of my question -- would you agree
23 that if someone applied for this position

Page 67

1  where there's a requirement of a high
2  school diploma that had the diploma and you
3  applied where you do not have a diploma
4  that they would be better qualified on that
5  criteria alone?
6     A.  If that's what they were going by,
7  yes.
8     Q.  So let me restructure it.  The job
9  notice required a high school diploma or
10 GED, you applied, and you did not have a
11 high school diploma or GED; is that
12 correct?
13    A.  That's correct.
14    Q.  Assuming that there were a number
15 of these applicants that had a high school
16 diploma or GED, based on that criteria,
17 they would be better qualified for the
18 position as it was posted?
19    A.  Yes.
20    Q.  Who interviewed you on September
21 22nd?
22    A.  Jan Forbes, Pam Jones, and
23 Keith Bullard.

Page 68

1     Q.  I'm sorry, Jan Forbes and who?
2     A.  Pam Jones and Keith Bullard.
3     Q.  During that interview process, did
4  anything come up about whether you had a
5  high school diploma?
6     A.  Yes.
7     Q.  So you had an application that
8  we've previously marked and that indicated
9  that you graduated from high school.
10    A.  But during the interview, I told
11 them I didn't, I couldn't --
12    Q.  I'm not equivocating that.  Let me
13 just establish that point.  You had an
14 application that indicated that you had
15 graduated from high school.
16    A.  Yes.
17    Q.  Did they have that application
18 before them as they were talking to you as
19 far as you know?
20    A.  Not that I know of.
21    Q.  Okay.  But when they were
22 interviewing, did they ask you if you were
23 a high school graduate?

# FREEDOM COURT REPORTING

Page 69

1    A. I don't remember.
2    Q. But that subject came up in some
3  fashion?
4    A. I think I did it, and I told them
5  I finished in the 11th grade.
6    Q. Okay. And when you told them
7  that, what did they say?
8    A. Nothing.
9    Q. Did anybody say during that
10 interview that they could not consider you
11 because you were not a high school
12 graduate?
13   A. No.
14   Q. When did that come up?
15   A. Just when we were sitting there
16 discussing that.
17   Q. I'm sorry?
18   A. When we were sitting there talking
19 about. Ms. Forbes knew, I told her
20 earlier, you know, but I said, when I
21 filled my application out that wasn't a
22 requirement because one of the employees
23 that worked there told me it wasn't a

Page 70

1  requirement.
2    Q. Okay. But you knew from the
3  application that it was posted with that
4  requirement?
5    A. Right.
6    Q. So you were interviewed and then
7  you were still talking with Jan Forbes, Pam
8  Jones, and Keith Bullard.
9    A. Yes.
10   Q. And the subject of whether you
11 were qualified came up in terms of the
12 diploma?
13   A. They just knew that I didn't have
14 a high school diploma.
15   Q. And what did they say about that?
16   A. Nothing.
17   Q. How do you know that they knew
18 that you didn't have that?
19   A. Because I already told Ms. Forbes.
20   Q. And did she share that with the
21 others while y'all were sitting there
22 talking?
23   A. I have no idea.

Page 71

1    Q. Well you said that y'all were
2  sitting around talking, what were you
3  talking about?
4    A. About -- I can't remember exact
5  words, but I know we was talking about the
6  job and Ms. Forbes told them, you know, I
7  had been doing a good job and that there
8  was one qualification, that I didn't have a
9  high school diploma.
10   Q. Okay.
11   A. But that was it, that was the end
12 of the conversation.
13   Q. Based on that comment which is
14 when you, you know, you were being
15 interviewed, Ms. Forbes didn't say anything
16 discriminatory against you because of your
17 gender, did she?
18   A. Of course not, no.
19   Q. And she didn't say anything
20 discriminatory about you because of your
21 race?
22   A. No.
23   Q. What she said was that you had

Page 72

1  done a good job?
2    A. Yes, she said that I was a good
3  employee.
4    Q. Okay. So just based on that
5  conversation and what she said, there was
6  no evidence that she was discriminating
7  against you because of your race or your
8  gender.
9    A. Not in that interview.
10   Q. Okay. Let me count up with you
11 Ms. Sims on Page 1, there were six
12 applicants that were interviewed and four
13 on Page 2, for a total of ten applicants.
14 You're asking the Court to put you in the
15 position now held by Jerry McKinney;
16 correct?
17   A. Yes.
18   Q. Are you contending that if
19 Jerry McKinney had not gotten the position
20 that you would have been the next best
21 qualified?
22       MR. ROBERSON: Object to the
23 form, you can answer.

18 (Pages 69 to 72)

Page 73

1    Q.  Let me rephrase that.  Are you
2  contending that you would have been, but
3  for your gender or race, are you contending
4  that you were better qualified than all of
5  the other applicants?
6    A.  Well, I think I was.  I was doing
7  such a good job.  I was getting
8  complimented on how well I was doing.
9    Q.  Do you know if the members of the
10  committee rated you as the second or third
11  or fourth or fifth or tenth person that was
12  interviewed?
13    A.  I don't know.
14    Q.  Would it be fair then to say,
15  Ms. Sims, that you don't know whether,
16  let's assume that Jerry McKinney did not
17  apply for the position, you don't know
18  whether you would have been the next person
19  selected or not, do you?
20    A.  Well, I don't know really know.  I
21  just been told that it was probably going
22  to be filled by a man.
23    Q.  Okay.  But in terms of whether you

Page 74

1  were better qualified than other white
2  females or other applicants that applied,
3  you don't know because you didn't look at
4  any of their credentials?
5    A.  No.
6    Q.  So would I be fair and correct to
7  say:  You have no basis to represent that
8  you were the best qualified person of the
9  applicants that applied?
10      MR. ROBERSON:  Object to the
11  form, you can answer.
12    Q.  Do you have any basis to make that
13  assertion?
14    A.  No.
15    Q.  As far as the process goes,
16  Ms. Sims, what is the employment process
17  that's followed when someone is hired by
18  the Coosa County Board?  Do you know the
19  steps that are required?
20    A.  No.
21    Q.  In this case, do you know if
22  Keith Bullard recommended that
23  Jerry McKinney be hired?

Page 75

1    A.  Yes.
2    Q.  Okay.  But you haven't discussed
3  with him why he made that recommendation?
4    A.  No.
5    Q.  Did he make that recommendation to
6  the superintendent?
7    A.  Yes.
8    Q.  And that's Todd Wingard?
9    A.  Right.
10    Q.  If I represented to you, Ms. Sims,
11  that under Alabama law the only way a
12  person can be hired for a permanent
13  position is for the superintendent to
14  recommend employment to the board, would
15  you have any reason to dispute that
16  assertion?
17    A.  No.
18    Q.  So assuming that's correct and I
19  think your attorney can verify that, the
20  superintendent then has to make a written
21  recommendation to the board to employ a
22  person on a permanent basis.
23    A.  Yes.

Page 76

1    Q.  As far as you know, did
2  Todd Wingard at a board meeting recommend
3  that Jerry McKinney be employed?
4    A.  Yes.
5    Q.  Do you know of, I've asked this
6  before but let me make sure it's clear on
7  the record:  Do you know the basis for
8  Mr. Wingard's recommendation that
9  Jerry McKinney be employed?
10    A.  No.
11    Q.  Do you know what information he
12  received from Keith Bullard?
13    A.  No.
14    Q.  Do you know if Keith Bullard ever
15  said anything to Mr. Wingard when he was
16  recommending that Jerry McKinney be hired
17  that he be hired because he's a male?
18    A.  No.
19    Q.  Do you have any basis to assert
20  that Mr. Bullard recommended to Mr. Wingard
21  that Jerry McKinney be hired because he's
22  black?
23    A.  No.

19  (Pages 73 to 76)

# FREEDOM COURT REPORTING

Page 77

1    Q.  Do you have any basis to assert
2  that the reason Todd Wingard made his
3  recommendation for Jerry McKinney was
4  solely because he is a male?
5    A.  No.
6    Q.  Or solely because he was black?
7    A.  No.
8    Q.  Do you have any basis to assert
9  that the reason the board members voted to
10  hire Jerry McKinney was because he was a
11  male?
12    A.  Say that again.
13    Q.  Sure.  After Todd Wingard made the
14  recommendation that Jerry McKinney be
15  employed, is it correct that the board
16  members have to vote on that
17  recommendation?
18    A.  Yes.
19    Q.  To your knowledge, did the board
20  vote unanimously to hire Jerry McKinney?
21    A.  Yes.
22    Q.  Do you know if when Todd Wingard
23  made the recommendation he said anything to

Page 78

1  the board that he was recommending
2  Jerry McKinney because he was a male?
3    A.  No, not that I know of.
4    Q.  Or because he was black?
5    A.  No.
6    Q.  Do you know from anything that any
7  board member said when they voted to hire
8  Jerry McKinney that they were doing so
9  because he was black or because he was a
10  male?
11    A.  No.
12    Q.  Did you, have you worked at all
13  with Jerry McKinney?
14    A.  No.
15    Q.  Do you know him?
16    A.  No.
17    Q.  And you weren't there when he was
18  interviewed by the three members that did
19  the interviews, do you?
20    A.  No.
21    Q.  So you don't know what kind of
22  interview or impression he made?
23    A.  No.

Page 79

1    Q.  Do you have any reason to assert
2  that Jerry McKinney was unqualified for the
3  position?
4    A.  No.
5    Q.  As far as you know, did he have a
6  high school diploma?
7    A.  I didn't know.
8    Q.  As far as you know, was he able to
9  discharge the duties and responsibilities
10  of the position?
11    A.  I did not know.
12    Q.  Let me rephrase a question I
13  previously asked.  If there were ten other
14  applicants -- well, let's say:  If there
15  were a number of other applicants with a
16  high school degree, are you contending that
17  you would have gotten the job if
18  Jerry McKinney had not been hired?
19    A.  I would like to think so.
20    Q.  Do you have any basis for that
21  assertion from any conversation you had
22  with Todd Wingard?
23    A.  No.

Page 80

1    Q.  Or any board member?
2    A.  No.
3    Q.  Or Jan Forbes?
4    A.  No.
5    Q.  Or Pam Jones?
6    A.  No.
7    Q.  Or Keith Bullard?
8    A.  No.
9    Q.  Ms. Sims, let me show you what
10  we've marked as Defendant's Exhibit 6, your
11  EEO complaint.  Did anyone assist you in
12  preparing this complaint?
13    A.  My attorney.
14    Q.  Okay.  Appendix A, do you set
15  forth the basis for your belief that you've
16  been the victim of discrimination?
17    A.  Yes.
18    Q.  Do you see on Appendix A, the
19  second page of that exhibit?
20    A.  Yes.
21    Q.  In Paragraph 2, you indicate:  I
22  perform my duties in an exemplarily
23  manner.  Who was your supervisor when you

20  (Pages 77 to 80)

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 81

```
 1   were a substitute worker at the high
 2   school?
 3       A.   Jan Forbes.
 4       Q.   Did she ever use that term,
 5   exemplarily?
 6       A.   She said I done a very good job.
 7       Q.   But that's not her language, is
 8   it, exemplarily manner?
 9       A.   No.
10       Q.   When did she say that you had done
11   a good job?
12       A.   She told me all the time that I,
13   you know, I done a good job.
14       Q.   Did Ms. Forbes ever say anything
15   to you that indicated that she was bias
16   against you because of your gender?
17       A.   She would make the comment that it
18   was a man's position, a man's job.
19       Q.   When you say in Paragraph 3
20   my position was previously held by a black
21   male, the position we're talking about is a
22   position of employment at the Coosa Central
23   High School; correct?
```

Page 82

```
 1       A.   Yes.
 2       Q.   And that's the position you had
 3   been working in as a substitute?
 4       A.   Yes.
 5       Q.   You mentioned that you were paid
 6   as a substitute only a minimum wage, is
 7   that what substitutes are paid in Coosa
 8   County?
 9       A.   To my knowledge, they were paid
10   minimum wage.  I think it $6.50.
11       Q.   But you weren't paid less as a
12   substitute employee than any other
13   substitute, were you, to your knowledge?
14       A.   I don't know to my knowledge, I
15   don't know what the other subs made.
16       Q.   Well, when you would be called to
17   work as a substitute, wouldn't they tell
18   what you the pay was?
19       A.   They told me it was minimum wage.
20       Q.   Okay.  And as far as you know,
21   were there substitute employees paid
22   minimum wage?
23       A.   I assume that.
```

Page 83

```
 1       Q.   Okay.  You're not contending that
 2   you were paid minimum wage as a substitute
 3   because of your gender or race, are you?
 4       A.   No.
 5       Q.   Okay.  In Paragraph 4, you
 6   attribute the statements to Jan Forbes and
 7   Pam Jones.  To whom did you say that those
 8   comments were discriminatory?  Do you see
 9   that?  I told her that was discriminatory.
10       A.   To Ms. Forbes.
11       Q.   Okay.  At the time she made the
12   statements?
13       A.   Yes.
14       Q.   Now, Ms. Forbes didn't make the
15   determination of who would get the
16   position, did she?
17       A.   She was there, she done the
18   interview.
19       Q.   She was on the interview?
20       A.   Yes.
21       Q.   But it wasn't ultimately her final
22   responsibility to determine who would get
23   the job.
```

Page 84

```
 1       A.   I guess everybody that was
 2   interviewed, they made the final decision
 3   and turned it over to Todd Wingard.
 4       Q.   Okay.  If Jan Forbes stated that
 5   she did not consider you as an applicant
 6   because you did not have a high school
 7   diploma, do you have any reason to dispute
 8   that?
 9       A.   No, I believe she wanted a man,
10   they wanted a man, and she wanted a man
11   there in them.
12       Q.   Okay.  But back to my question:
13   Do you have, do you believe that Jan Forbes
14   is an honest person?
15       A.   No.
16       Q.   Well, if she said or states that
17   she did not consider you because you didn't
18   meet the qualifications for the job, do you
19   have any reason to dispute that?
20       A.   I thought I had the
21   qualifications, I was doing the job.
22       Q.   Well, let's go back to the
23   posting.  When they interviewed you, they
```

21 (Pages 81 to 84)

# FREEDOM COURT REPORTING

Page 85

1  were interviewing you for a position that
2  required a high school diploma for its
3  equivalent?
4      A.  Right.
5      Q.  If Jan Forbes said because of that
6  qualification that was posted as a matter
7  of state law citing the qualifications that
8  she didn't think that she could consider
9  you, do you have any reason to dispute
10  that?
11          MR. ROBERSON:  Object to the
12  form.  The posting may be required as a
13  matter of state law, but I object to your
14  implication that a high school diploma is
15  required.
16          MR. SWEENY:  That's well taken.
17  Let me rephrase that.
18      Q.  Are you aware that by state law
19  boards of education must post positions of
20  employment?
21      A.  No.
22      Q.  Do you know if a board post a
23  position of requirement, post a position of

Page 86

1  employment that think must cite the
2  qualifications that they are going to use
3  in making the determination?
4      A.  Yes.
5      Q.  In this regard, they posted the
6  requirement of a high school diploma?
7      A.  Yes.
8      Q.  And based on that, if Ms. Forbes
9  says she didn't consider you for
10  employment, has she ever said anything to
11  you that would make you disbelieve that
12  that's what she did with regard to your
13  application?
14      A.  Well, I don't think I was really
15  ever considered.
16      Q.  Because you didn't have a high
17  school diploma?
18      A.  No, because of my sex and race.
19      Q.  That's just your assumption, isn't
20  it?
21      A.  Yes.
22      Q.  Now, if Pam Jones, if Pam Jones
23  said she didn't consider you because you

Page 87

1  didn't have a high school diploma, do you
2  have any reason to dispute that?
3      A.  Well, she didn't say that, but
4  Ms. Forbes said she heard her say she had
5  to get color in the lunchroom.
6      Q.  If Keith Bullard said that he
7  didn't think they could consider you
8  because you didn't have the qualifications
9  posted, do you have any reason to dispute
10  that?
11      A.  I don't know about Keith.
12      Q.  Do you think Keith is an honest
13  person?
14      A.  I really don't know.
15      Q.  Do you have any reason to assert
16  that he's a dishonest person?
17      A.  Not really, I don't really know
18  him.
19      Q.  In the interview committee in
20  discussing all of the applicants came to
21  the conclusion that they could not consider
22  someone that did not have a high school
23  diploma, do you have any basis to challenge

Page 88

1  that representation, that is if
2  Mr. Bullard, Ms. Forbes, and Ms. Jones
3  testified under oath that at the end of the
4  interview process they decided that they
5  could not consider you or any other
6  applicant who did not have a high school
7  diploma, do you have any reason to dispute
8  that they came to that conclusion?
9      A.  I don't guess.
10      Q.  Let's look for a minute at
11  Defendant's Exhibit 2, which is the
12  complaint in this lawsuit.
13          MR. ROBERSON:  Artfully crafted,
14  no doubt?
15          MR. SWEENY:  What?
16          MR. ROBERSON:  Artfully crafted,
17  no doubt.
18          MR. SWEENY:  Let's go off the
19  record.
20          (Whereupon, a discussion
21          was held off the record.)
22          MR. SWEENY:  Let's go back.
23      Q.  (By Mr. Sweeny) With regard to the

22  (Pages 85 to 88)

# FREEDOM COURT REPORTING

Page 89

1  complaint, Paragraph 7 you attribute the
2  statements to Jan Forbes and Pam Jones that
3  we previously discussed?
4      A.  Yes.
5      Q.  All right.  And it's those
6  statements, statements that you attribute
7  to Jan Forbes and Pam Jones that serve as
8  the basis for your contention that you were
9  discriminated against because of your
10  gender and race?
11     A.  Yes.
12     Q.  That you're attributing the
13  discrimination to Jan Forbes and Pam Jones
14  rather than to Keith Bullard or
15  Todd Wingard or the members of the board?
16         MR. ROBERSON:  Object to the
17  form, you can answer.
18     A.  I believe they make a decision on
19  that.
20     Q.  Okay.  But not based on anything
21  they said or have written or have told
22  you; correct?
23     A.  Yes.

Page 90

1      Q.  So wouldn't it be fair and correct
2  to say, when you say you think you were
3  discriminated against, it's because of what
4  you heard Jan Forbes and, or Pam Jones
5  say?
6      A.  Yes.
7      Q.  And page, on Paragraph 9 you said
8  that you've applied for other positions
9  with the Coosa County Board?
10     A.  Other positions?  I applied for
11  another job.
12     Q.  Other jobs.
13     A.  At Coosa Medical.
14     Q.  Have you applied for any other
15  position of employment with the Coosa
16  County Board other than this position?
17     A.  No.
18     Q.  Have you been employed since
19  November of 2006?
20     A.  No.
21     Q.  So you're unemployed right now?
22     A.  Yes.
23     Q.  What other positions have you

Page 91

1  applied for?
2      A.  I applied at Coosa Medical.
3      Q.  Were you interviewed?
4      A.  Yes.
5      Q.  Do you know why you did not get
6  that position?
7      A.  Yes.
8      Q.  Why?
9      A.  I got a poor report from the Board
10  of Education, Jan Forbes.
11     Q.  And that's.  The basis for that is
12  what's in the exhibit that we've marked as
13  Defendant's Exhibit 7?
14     A.  Yes.
15     Q.  From ESS?
16     A.  Uh-huh, the screening.
17     Q.  What other position did you?
18     A.  Wal-Mart.
19     Q.  Where did you apply at Wal-Mart?
20     A.  In Alex City and Sylacauga.
21     Q.  Do you know why you did not get
22  positions there?
23     A.  It was second shift, and I can't

Page 92

1  work second shift, I'm raising a three-
2  year-old.
3      Q.  You're raising a three-year-old?
4      A.  Yeah, my grand baby.
5         MR. SWEENY:  Let's go off the
6  record.
7         (Whereupon, a discussion
8         was held off the record.)
9      Q.  Any other positions that you've
10  applied for other than the hospital or
11  Wal-Mart?
12     A.  That's all I can think of -- Home
13  Depot, I applied on the Internet, but I
14  haven't heard nothing from them.
15     Q.  You've got an application pending
16  there?
17     A.  Yes.
18     Q.  After you did not get the position
19  at the hospital, did you call and ask why
20  they had hired somebody else?
21     A.  I called and asked why I didn't
22  get the job because the interview went
23  well, and she said that I had a bad

23 (Pages 89 to 92)

# FREEDOM COURT REPORTING

Page 93

1  reference, and I asked from who, and she
2  said it was from Coosa Central High School.
3      Q.  In 10, you allege in legal terms
4  that the reason why a black male was hired
5  is pretectal, is it your assertion that the
6  requirement for a high school diploma was a
7  pretext in order for Jerry McKinney to be
8  hired rather than you?
9      A.  I have no idea, I believe so.
10     Q.  In Paragraph 11, you state that
11 defendant retaliated against you because of
12 your complaints of race discrimination.
13 Who is it that retaliated against you, and
14 how did they do that?
15     A.  Ms. Forbes kept saying that it was
16 a man's job, and I kept telling her it
17 wasn't.  Obviously, I was doing a good job
18 at it, and she said in her office and she
19 made statements several times that it was a
20 man's job, and then she said she heard Pam
21 Jones say that she had to get some color in
22 here.
23     Q.  But in this assertion for

Page 94

1  retaliation, is the basis for your claim of
2  retaliation what was reported to you by the
3  hospital?
4      A.  Yes.
5      Q.  Okay.  Any other retaliation that
6  comes to mind?
7      A.  No.
8      Q.  Section 4, gender discrimination,
9  have you shared -- let me go back.  Count 3
10 of this complaint in Paragraph's 5 through
11 13 relate to race discrimination and
12 retaliation, have you shared the basis for
13 those assertions in answering my previous
14 question?
15     A.  Yes.
16     Q.  Why you believe the you're the
17 victim of race and retaliation
18     A.  Yes.
19     Q.  Okay.  Count 4, Paragraphs 14
20 through 19 relate to gender discrimination
21 that you believe that you were a victim of
22 discrimination because of your gender.
23 Have you shared with me all of the basis

Page 95

1  that comes to mind why you think you've
2  been victimized because you're a female?
3      A.  Well, I just -- I believe that
4  they knew all along that they were going to
5  get a male in there, and they needed a
6  black in there because it was all whites at
7  that time.
8      Q.  Since August of 2007, have you
9  had, have you been treated by any doctor?
10     A.  I went and seen a doctor.  I was
11 having trouble sleeping.
12     Q.  What doctor did you?
13     A.  I seen Dr. Gurley.
14     Q.  Who?
15     A.  My gynecologist, I went and seen
16 him about not sleeping.
17     Q.  Where is he?
18     A.  He's out of Talladega.
19     Q.  What is his full name?
20     A.  Jerry Gurley.
21     Q.  Did he prescribe any medication
22 for you?
23     A.  He gave me something to help me

Page 96

1  sleep.
2      Q.  For how long did you take that?
3      A.  I' still taking it off and on.  I
4  don't take it like I should, but I still
5  take them.
6      Q.  Have you been to any other
7  physicians since August of 2006?
8      A.  Yes.
9      Q.  Who?
10     A.  Fazel Raheim, neurologist for
11 headaches.
12     Q.  Okay.  Was any medicine prescribed
13 for you?
14     A.  Yes.
15     Q.  What was prescribed?
16     A.  Amitriptyline and Keppra.
17     Q.  Are you still taking that
18 medication?
19     A.  Yes.
20     Q.  Have you seen any other doctor?
21     A.  No.
22     Q.  But you've attributing the need to
23 go see those two doctors based on what

24  (Pages 93 to 96)

# FREEDOM COURT REPORTING

Page 97

1   Coosa County did?
2      A.  Well, at the time I got fired I
3   was having, I was so upset that I was
4   having trouble sleeping.  I was having
5   stomach problems.
6      Q.  Now, when were you fired?
7      A.  Well, I wasn't fired at the time.
8   I left when they told me that I didn't have
9   the job, I was so upset.
10     Q.  Have you seen any psychiatrist or
11  psychologist since August of 2006?
12     A.  No.
13     Q.  Have you had any other expenses
14  that you're claiming other than attorney
15  fees to date?
16     A.  No.
17     Q.  Have you paid any attorney fees to
18  date?
19     A.  No.
20     Q.  And what you're asking the Court
21  to do is to put you in the, among other
22  things, is to put you in the position of
23  lunchroom worker at Coosa Central?

Page 98

1      A.  I would like my job back.
2      Q.  All right.  As I indicated at the
3   start of this deposition, Ms. Sims, I would
4   give you an opportunity to add any other
5   information you wanted to any question I've
6   asked.  Is there anything else that you
7   want to share with me?
8      A.  Well, you know, I would like my
9   job back, and, you know, the back pay and
10  the benefits and stuff like that, and, you
11  know, compensatory and punitive damages
12  because, you know, I suffered, and I was
13  really, you know, stressed over it.  But as
14  far as, you know, Ms. Forbes did, you know,
15  every other day she would say it's a man's
16  job, and it's probably going to be filled
17  by a black male because they had to have a
18  black in the lunchroom.  And I told
19  Ms. Forbes, you know, I said, that's
20  discrimination and she said, you're right,
21  it is.  And I said, I need to talk to a
22  lawyer, and she said, I don't blame you,
23  Ms. Forbes, that was her exact words in her

Page 99

1   office.
2      Q.  Did Ms. Forbes ever say that she
3   was going to base her recommendation for
4   the person to be employed, that is
5   Ms. Forbes is going to base her
6   recommendation, on the basis of race?
7      A.  She didn't never say that.
8      Q.  Did she ever say that she was
9   going to make her recommendation based on
10  the gender of the person?
11     A.  She wouldn't tell me that.
12     Q.  When Ms. Forbes said she believed
13  other people might make a decision based on
14  gender or race?
15     A.  She wanted a male in there.
16     Q.  Based on what she said?
17     A.  Based on what she said because she
18  said it was heavy lifting in which I was
19  doing fine with the heavy lifting, I had no
20  problem with it, but she said that it's a
21  male's job, and they needed a male in
22  there.
23     Q.  What medical expenses have you

Page 100

1   entailed?  Have you itemized those?
2      A.  No, I'm not worried that.
3         MR. ROBERSON:  Like I said, we're
4   not making a claim for reimbursement for
5   medical expenses, but if you get farther
6   down the road and you think that we need
7   to, we'll provide you his bills, but we are
8   only making a claim for garden variety
9   emotional distress.  We're not claiming,
10  although it may be, but we're not claiming
11  in this lawsuit that she incurred or
12  sustained this treatment because of
13  discrimination, do you understand my
14  distinction?
15        MR. SWEENY:  Okay.  I accept that
16  stipulation.
17        MR. ROBERSON:  Okay.  Now that
18  doesn't mean we won't claim bills because
19  if she had had the position, she would have
20  benefits that would have been provided but
21  with that distinction.
22        MR. SWEENY:  That's clear and
23  that's helpful.

25  (Pages 97 to 100)

# FREEDOM COURT REPORTING

Page 101

1    Q.  (By Mr. Sweeny) Anything else that
2  you want to share with me, Ms. Sims?
3    A.  No, I just thought I was done
4  unfairly.  I done a good job.
5        MR. ROBERSON:  I do have a few
6  questions, if I may.
7  CROSS-EXAMINATION BY MR. ROBERSON:
8    Q.  Ms. Sims, when you went to work
9  there initially as a substitute, were you
10  ever advised that to be a permanent
11  employee you would have to have a high
12  school education?
13    A.  No.
14    Q.  Could you have obtained a GED if
15  you had ever been told that that was a
16  requirement?
17    A.  Yes.
18    Q.  Now, the person that you, in 2006
19  the person that quit and you took, you
20  started subbing every day for his position,
21  what was the race and gender of that
22  person?
23    A.  A black male.

Page 102

1    Q.  Do you remember his name?
2    A.  I think it was Michael Billingsly.
3    Q.  Okay.  And he was a black male and
4  for the record you're a white
5  female; correct?
6    A.  Yes.
7    Q.  Now, from the time that that
8  school year began until some time in
9  September when this posting occurred, did
10  you perform the job?
11    A.  Yes, I did.
12    Q.  Did you work for Ms. Forbes?
13    A.  Yes.
14    Q.  She was your supervisor?
15    A.  Yes.
16    Q.  Was your, did you have any
17  problems about coming to work?  That is,
18  was your attendance poor?
19    A.  No, I was there every day.
20    Q.  Were you ever criticized for any
21  aspect of your job performance?
22    A.  No.
23    Q.  In fact, were you told you were

Page 103

1  doing a good job?
2    A.  Yes.
3    Q.  And Ms. Forbes told you that?
4    A.  Yes.
5    Q.  When you went for the interview,
6  did she again complement you on the job
7  that you had been doing?
8    A.  Yes.
9    Q.  When you did that job, did you
10  have an 11th grade education?
11    A.  Yes.
12    Q.  Was there anything about that job
13  that you couldn't do, couldn't perform
14  because of your limited education?
15    A.  No.
16    Q.  Can you read?
17    A.  Yes.
18    Q.  In fact, you've mentioned that a
19  number of the workers in the high school
20  cafeteria, or in the school system
21  cafeterias do not have a high school
22  education; correct?
23        MR. SWEENY:  Object to form.

Page 104

1    A.  Correct.
2    Q.  They told you that.
3    A.  Yes.
4    Q.  Does Barbara Murphy have a high
5  school education?
6    A.  No.
7    Q.  And she cooks; right?
8    A.  Yes.
9    Q.  Are you aware of any difficulty
10  she has --
11        MR. SWEENY:  Object to the form.
12    Q.  -- in doing her job?
13    A.  No.
14    Q.  Do you know any reason why a
15  cafeteria worker should be required to have
16  a high school education?
17        MR. SWEENY:  Object to the form.
18    Q.  You can answer if you know of a
19  reason.
20    A.  I don't know of any reason.
21    Q.  Can you perform all aspects of the
22  job without a high school degree or a GED?
23    A.  Yes.

26 (Pages 101 to 104)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 105

1  Q.  And did you?
2  A.  Yes.
3  Q.  And did others?
4  A.  Yes.
5  Q.  In fact, this Lisa Cleveland, did
6  you work with her?
7  A.  I have.
8  Q.  When you worked at the elementary
9  school?
10  A.  Yes, I subbed at both schools.
11  Q.  Did you she tell you she didn't
12  have a high school degree?
13  A.  Yes.
14  Q.  Now, that was back when you worked
15  with her?
16  A.  Yes.
17  Q.  I don't know if she's got a GED or
18  not, do you?
19  A.  No.
20  Q.  But she's recently been hired in
21  this permanent position?
22  A.  Yes.
23  Q.  Okay.  Now, while you worked at

Page 106

1  the high school under supervision of
2  Ms. Forbes, did she make numerous
3  statements to you about who would fill that
4  position?
5  A.  Yes.
6  Q.  What did she say?
7  A.  It was going to be a male and
8  probably a black male.
9  Q.  Did she tell you that this was
10  indeed, quote, a man's job?
11  A.  Yes.
12  Q.  Did you perform it?
13  A.  Yes.
14  Q.  Okay.  At the time you worked
15  there, was every employee in the cafeteria
16  white?
17  A.  Yes.
18  Q.  Did she say that Ms. Jones, is
19  Ms. Jones white or black?
20  A.  She's black.
21  Q.  And she's the child nutritionist;
22  is that correct?
23  A.  Yes.

Page 107

1  Q.  She, Ms. Forbes told you that
2  Ms. Jones had indicated to her that, quote,
3  she needed to get some color in the
4  lunchroom?
5  A.  Yes.
6  Q.  What did you take that to mean?
7  MR. SWEENY:  Object to the form.
8  A.  That she wanted a black male.
9  Q.  Okay.  Now -- and after Ms. Forbes
10  made those statements, did you tell her
11  that she could not do that because that was
12  discrimination?
13  A.  Yes.
14  Q.  That is, you protested that that
15  was unfair; correct?
16  A.  Yes, correct.
17  Q.  And, in fact, Ms. Forbes agreed
18  with you, didn't she?
19  A.  She did.
20  Q.  And after that protest, they
21  filled the job with a black male; correct?
22  A.  Correct.
23  Q.  And when you found out when they

Page 108

1  told you that Jerry McKinney was getting
2  the job, that's the day that you were upset
3  and you left work early before your shift
4  ended; correct?
5  A.  Correct.
6  Q.  Is that the only time you ever had
7  any difficulty at work?
8  A.  That's the only time.
9  Q.  Now --
10  MR. ROBERSON:  Don, do you have
11  that exhibit with the -- yeah.
12  MR. SWEENY:  Yes.
13  Q.  Now, after this decision, you went
14  to some board meetings; correct?
15  A.  Yes.
16  Q.  And at those board meetings, you
17  heard board members make the statements
18  that they were making hiring decisions
19  based on race; is that correct?
20  A.  That's correct.
21  Q.  You also heard them make
22  statements that they filled some positions
23  with minorities when the minorities did not

27 (Pages 105 to 108)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 109

1  have all the qualifications required;
2  correct?
3   A.  Correct.
4   Q.  In other words, they filled the
5  position and allowed the minority to
6  candidate, to obtain to further their
7  education or whatever qualification they
8  didn't have.  They gave them a period of
9  time to obtain that; correct?
10     MR. SWEENY:  Object to the form.
11  A.  Correct.
12  Q.  That's what they said; right?
13     MR. SWEENY:  Object to the form.
14  A.  Yes.
15  Q.  Now, I'm going to show you , this
16  is one of the exhibit's that Don marked as
17  Defendant's Exhibit 7.  This is the
18  employment screening service at Coosa
19  Valley Medical Center, and this is just a
20  document I actually obtained in response to
21  a subpoena.  And I want to know show you on
22  Page 3 of this document, I'll ask you:
23  They say source contacted and it says Jan

Page 110

1  cafeteria manager, who are they talking
2  about?
3     MR. SWEENY:  Object to the form.
4   A.  My supervisor.
5   Q.  Jan Forbes?
6   A.  Jan Forbes.
7   Q.  Okay.  And they say start date,
8  and what does it say?
9   A.  April of '04.
10  Q.  End date?
11  A.  September of '06.
12  Q.  Okay.  Answers to standard
13  questions, it says, attendance and what did
14  Ms. Forbes indicate?
15  A.  That it was poor.
16  Q.  Is that true?
17  A.  No, it's not.
18  Q.  And this is the date ordered is
19  April 24th 2007; correct?
20  A.  Correct.
21  Q.  And the date completed is the same
22  date?
23  A.  Correct.  I have to stop for a

Page 111

1  minute.
2     MR. SWEENY:  Let's wait just a
3  minute.
4   Q.  Do you need to take a break?
5   A.  Probably.
6     MR. ROBERSON:  Okay.  Let's take
7  a break.
8     (Short recess)
9     MR. ROBERSON:  Let's go back on
10  the record.
11  Q.  Ms. Sims, on Exhibit 7, on Page 3
12  it says, eligibility for rehire and what
13  did Ms. Forbes indicate?
14     MR. SWEENY:  Object to the form.
15  A.  No.
16  Q.  All right.  Do you know any reason
17  why you would not be eligible for rehire
18  based on anything that occurred?
19  A.  No.
20  Q.  And it says, additional comments,
21  per cafeteria manager at the number listed,
22  applicant walked off the job.  Now, that's
23  the day that she told you they hired Mr. --

Page 112

1     MR. SWEENY:  Object to the form.
2   A.  Correct.
3   Q.  You have admitted that you had
4  became you upset and left the
5  work; correct?
6   A.  Correct.
7   Q.  This information doesn't say why
8  you walked off the job, does it?
9   A.  No.
10  Q.  She was not an employee but worked
11  as needed, that's what it says; correct?
12  A.  Correct.
13  Q.  Now, this is in April of '07 which
14  is after your EEOC charge alleging
15  discrimination that was filed in November
16  of '06; correct?
17  A.  Correct.
18  Q.  That's also a document in here;
19  correct?  What date is that?
20  A.  The 11-14 of '06.
21  Q.  Okay.  And that's your charge of
22  discrimination which was forwarded to the
23  school shortly after that date; correct?

## 367 VALLEY AVENUE
### (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 113

1    A.  Correct.
2    Q.  And this was certainly after you
3  had made the complaint to Ms. Forbes that
4  what she, what the school board was doing
5  was discriminatory; correct?
6    A.  Correct.
7    Q.  Okay.  Now, in this position you
8  performed all responsibilities for
9  approximately six weeks; correct?
10    A.  Correct.
11    Q.  Never had any criticism of your
12  job performance; correct?
13    A.  Correct.
14    Q.  To your knowledge, had Jerry
15  McKinney ever worked in the lunchroom
16  before?
17    A.  No.
18    Q.  So if you had done the job for six
19  weeks without any criticism, you were more
20  qualified than Jerry McKinney, weren't
21  you?
22        MR. SWEENY:  Object to the form.
23    A.  Correct.

Page 114

1    Q.  Okay.  So when Mr. Sweeny ask you
2  if there's any basis, that's a basis for
3  your complaint, isn't it?
4        MR. SWEENY:  Object to the form.
5    A.  Yes.
6    Q.  Now, I want to show you this.
7  This is also part of Exhibit 7.  This is
8  the affidavit of Barbara Murphy, and I
9  would ask you to read the last, this was
10  provided to us when we obtained a copy of
11  the EEOC file.  This is actually an
12  affidavit that someone acting on behalf of
13  Coosa County obtained, not me.  Okay?  Read
14  what it says in the last paragraph of
15  Ms. Murphy's affidavit on the last page.
16    A.  I heard Jan Forbes say it was a
17  man's job, and I heard Jan Forbes say that
18  Pam said she was putting some color in the
19  lunchroom.
20    Q.  Is that exactly what you said in
21  this deposition today?
22    A.  Correct.
23    Q.  So Ms. Murphy has told Coosa

Page 115

1  County that she heard Pam make those
2  statements, she's sworn under oath that she
3  heard that; correct?
4    A.  Correct.
5    Q.  This is Sandra Thompson, her
6  affidavit, what does she say here in
7  Paragraph 4?
8    A.  Jan thought the board might have
9  hired an African American for the position
10  that Gloria Sims applied for, she didn't
11  know for sure.  Some of us were talking
12  among ourselves while working, and we all
13  thought that an African American may be
14  hired, but that was only what we thought.
15    Q.  So Ms. Thompson has sworn under
16  oath that Jan thought the board might have
17  to hire an African American, a black;
18  correct?
19    A.  Correct.
20    Q.  She doesn't come out and say
21  that's what Jan said, but that's what Jan
22  thought; correct?  That's what she says Jan
23  thought.

Page 116

1        MR. SWEENY:  Object to the form.
2    A.  Correct.
3    Q.  You heard Ms. Forbes make those
4  statements; correct?
5    A.  Correct.
6    Q.  Is Ms. Thompson a friend of
7  Jan Forbes?
8        MR. SWEENY:  Object to the form.
9    A.  Yes, she is.
10    Q.  Okay.  Now, Ms. Forbes has
11  retired; is that correct?
12    A.  Correct.
13    Q.  And Becky, I'm not sure if you
14  ever indicated her last name, Becky who was
15  a lunch room worker is now in the position
16  of the manager; correct?
17    A.  Correct.
18    Q.  And you say Becky also heard these
19  statements that Jan made?
20        MR. SWEENY:  Object to the form.
21    A.  Correct.
22    Q.  I mean, she was present.  I
23  shouldn't say she heard them, but she was

29  (Pages 113 to 116)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 117

1  present when the statements were made, is
2  that a fair statement?
3      A.  Yes.
4      Q.  Okay.  So obviously, if these
5  statements were made, you had a good faith
6  basis for making a complaint that that was
7  discrimination, didn't you?
8      A.  Yes.
9      Q.  And did you make a complaint;
10  correct?
11     A.  Correct.
12     Q.  Then later after they awarded the
13  position, you filed an EEOC
14  charge; correct?
15     A.  Correct.
16     Q.  And now you filed this lawsuit;
17  correct?
18     A.  Correct.
19     Q.  Okay.  Now, you didn't get the job
20  at Coosa High School, but you had, you
21  applied for a position, was it a cafeteria
22  worker at the hospital?
23     A.  Correct.

Page 118

1      Q.  The hospital doesn't have anything
2  to do with the high school, does it?  I
3  mean, they are not connected or related,
4  are they?
5      A.  No, they are not.
6      Q.  Did it hurt you that when you
7  obtained this information that Ms. Forbes
8  indicated that you were not a good
9  employee, did that hurt?
10     A.  Yes, and it still does.
11     Q.  Was that vindictive in your mind?
12        MR. SWEENY:  Object to the form.
13     A.  Yes.
14     Q.  Okay.  I don't have any further
15  questions.
16  REDIRECT EXAMINATION BY MR. SWEENY:
17     Q.  Ms. Sims, may I ask you a couple
18  of more questions?
19     A.  Yes.
20     Q.  Your counsel just referred to an
21  affidavit of Barbara Murphy.  On Page 2 of
22  that affidavit, would you read the
23  paragraph at the top for the record?

Page 119

1      A.  After the decision was made to
2  offer Jerry McKinney the position, I heard
3  Jan Forbes say that Gloria Sims was not
4  considered because she did not have a high
5  school diploma.
6      Q.  Let me show you the affidavit of
7  Sandra Thompson.  On Page 2 of that, there
8  is a paragraph, would you read that for
9  us?
10     A.  Paragraph 2?  I know the position
11  was advertised to require a high school
12  diploma.
13     Q.  Your attorney made reference to
14  the employment screening service report
15  where they attribute a statement to the
16  cafeteria manager, and they say source
17  contact, Jan.  Do you have any reason to
18  assert that Keith Bullard knew what
19  Jan Forbes was saying to the ESS people?
20     A.  I have no idea.
21     Q.  Or Todd Wingard?
22     A.  I have no idea.
23     Q.  Or the board members?

Page 120

1      A.  I have no idea.
2      Q.  Do you know if she had any
3  authority to speak on behalf of the board
4  in answering the questions that were
5  presented to her by ESS?
6      A.  I figured she did.
7      Q.  You figured that she did, but do
8  you have any basis for that belief?
9      A.  I guess because she was
10  supervisor.
11     Q.  That was her individual opinion if
12  she said that; correct?
13     A.  Correct.
14     Q.  When the notice was posted for the
15  position that included a requirement for
16  high school diploma, do you know if the
17  board knew who was going to apply for the
18  position other than you?
19     A.  I believe so, yes.
20     Q.  What other applicants do you know
21  that they had information from in advance
22  of the posting other than you?
23     A.  I remember one day at work

30  (Pages 117 to 120)

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 121

1  Ms. Forbes said Jerry, she did say
2  Jerry McKinney called her asking about the
3  job.
4      Q.  Anybody else?
5      A.  That's all that I knew.
6      Q.  Do you know whether the people
7  that put together the posting requirements
8  knew in advance of that requirement that
9  Jerry McKinney or any other black male
10 might apply for the job?
11     A.  I don't know.
12     Q.  Thank you very much.
13
14
15
16         FURTHER DEPONENT SAITH NOT
17
18
19
20
21
22
23

Page 122

1
2              C E R T I F I C A T E
3
4  STATE OF ALABAMA  )
5  JEFFERSON COUNTY  )
6
7      I HEREBY CERTIFY that the above and
8  foregoing transcript was taken down by me
9  in stenotype, and the questions and answers
10 thereto were transcribed by means of
11 computer-aided transcription, and that the
12 foregoing represents a true and correct
13 transcript of the testimony given by said
14 witness.
15     I FURTHER CERTIFY that I am neither
16 of counsel, nor of any relation to the
17 parties to the action, nor am I anywise
18 interested in the result of said cause.
19
20
21     MELIAHA CORNELIUS
22     T-2004
23

31 (Pages 121 to 122)

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 123

| A | | | |
|---|---|---|---|
| **able** 79:8 | **allege** 93:3 | 51:7 53:6,7,19 | 92:21 93:1 |
| **accept** 100:15 | **alleging** 15:13 | 53:21 61:6,14 | 98:6 |
| **accurate** 15:16 | 112:14 | 62:6,10 68:7 | **asking** 6:17 |
| **acting** 5:11 | **allowed** 109:5 | 68:14,17 69:21 | 72:14 97:20 |
| 114:12 | **American** 115:9 | 70:3 86:13 | 121:2 |
| **action** 6:10 | 115:13,17 | 92:15 | **aspect** 102:21 |
| 122:17 | **Amitriptyline** | **applied** 13:1 | **aspects** 104:21 |
| **actual** 55:6 | 96:16 | 17:14 25:3,13 | **assert** 41:16 |
| **add** 7:18 98:4 | **amount** 24:18 | 25:14 31:21 | 76:19 77:1,8 |
| **added** 24:18 | **animus** 29:11 | 34:3 41:10 | 79:1 87:15 |
| **additional** 7:12 | **answer** 6:23 | 45:20 52:9 | 119:18 |
| 111:20 | 7:14 8:5,7 | 53:9,17 63:12 | **assertion** 74:13 |
| **address** 8:11 | 72:23 74:11 | 63:17,21 64:1 | 75:16 79:21 |
| **admitted** 112:3 | 89:17 104:18 | 64:3,9,13 | 93:5,23 |
| **adult** 10:9 | **answering** 94:13 | 66:15,23 67:3 | **assertions** 94:13 |
| **advance** 120:21 | 120:4 | 67:10 74:2,9 | **assess** 7:6 |
| 121:8 | **answers** 110:12 | 90:8,10,14 | **assign** 2:17 |
| **advertised** | 122:9 | 91:1,2 92:10 | **assist** 80:11 |
| 119:11 | **anybody** 60:14 | 92:13 115:10 | **assume** 7:1,23 |
| **advised** 45:8 | 69:9 121:4 | 117:21 | 66:18,21 73:16 |
| 101:10 | **anywise** 122:17 | **apply** 53:11,15 | 82:23 |
| **affidavit** 14:11 | **apparently** 63:7 | 54:18 59:9 | **assuming** 67:14 |
| 14:12 114:8,12 | **appear** 13:18 | 73:17 91:19 | 75:18 |
| 114:15 115:6 | **APPEARAN...** | 120:17 121:10 | **assumption** |
| 118:21,22 | 4:22 | **applying** 50:8 | 86:19 |
| 119:6 | **appeared** 38:13 | 54:5,6,18 | **attached** 51:16 |
| **African** 115:9 | 66:4 | **approximately** | **attend** 10:1 |
| 115:13,17 | **appearing** 5:3,8 | 113:9 | 21:17 37:5 |
| **ages** 9:17 | **appears** 13:7 | **April** 23:5,7 | 62:12 |
| **agree** 66:22 | **Appendix** 80:14 | 110:9,19 | **attendance** |
| **agreed** 1:20 2:6 | 80:18 | 112:13 | 102:18 110:13 |
| 2:13,21 107:17 | **applicant** 64:13 | **Arant** 2:2 4:23 | **attended** 22:2 |
| **ahead** 50:22 | 84:5 88:6 | 5:16 | **attending** 62:16 |
| 53:8 57:23,23 | 111:22 | **area** 10:8 11:4 | **attitude** 40:3 |
| **Alabama** 1:2 2:4 | **applicants** 64:7 | **Artfully** 88:13 | **attorney** 5:6 |
| 4:2 5:3,8,11,13 | 64:19 65:3 | 88:16 | 15:7,10 75:19 |
| 5:18 6:7 10:5 | 66:4 67:15 | **article** 13:11,13 | 80:13 97:14,17 |
| 27:17 75:11 | 72:12,13 73:5 | 13:22,23 14:1 | 119:13 |
| 122:4 | 74:2,9 79:14 | 14:8 | **attribute** 83:6 |
| **Alex** 91:20 | 79:15 87:20 | **articles** 33:19 | 89:1,6 119:15 |
| **allegations** | 120:20 | **asked** 7:13 | **attributed** 21:9 |
| 11:12 14:18 | **application** | 31:10 49:1 | **attributing** |
| 15:2 20:10 | 12:12 34:6 | 50:1 54:12 | 89:12 96:22 |
| | 45:21 49:22 | 76:5 79:13 | **August** 13:23 |

| | B |
|---|---|
| 18:17 19:2 | |
| 23:1,12 25:3,9 | |
| 61:17 95:8 | |
| 96:7 97:11 | |
| **author** 58:12 | |
| **authority** 120:3 | |
| **Avenue** 2:3 5:2 | |
| 5:17 | |
| **awarded** 117:12 | |
| **aware** 85:18 | |
| 104:9 | |
| **a.m** 5:19 | |

| B | |
|---|---|
| **baby** 26:19 92:4 | |
| **back** 13:16 16:2 | |
| 18:19 31:13 | |
| 32:5 34:7 37:8 | |
| 49:4,14 84:12 | |
| 84:22 88:22 | |
| 94:9 98:1,9,9 | |
| 105:14 111:9 | |
| **background** | |
| 21:17 22:22 | |
| 25:18 | |
| **bad** 13:6 54:10 | |
| 92:23 | |
| **Barbara** 15:23 | |
| 16:22 17:21 | |
| 18:12 19:4,11 | |
| 48:11 55:23 | |
| 56:4 104:4 | |
| 114:8 118:21 | |
| **Barbra** 14:11 | |
| **bars** 47:19 | |
| **base** 99:3,5 | |
| **based** 29:20 | |
| 41:14 47:6 | |
| 50:14 67:16 | |
| 71:13 72:4 | |
| 86:8 89:20 | |
| 96:23 99:9,13 | |
| 99:16,17 | |
| 108:19 111:18 | |

# FREEDOM COURT REPORTING

**basis** 29:6,15
30:17 41:16
42:10 46:6
58:11 74:7,12
75:22 76:7,19
77:1,8 79:20
80:15 87:23
89:8 91:11
94:1,12,23
99:6 114:2,2
117:6 120:8
**Becky** 16:10,11
17:23 20:14,16
20:23 21:5
48:12 116:13
116:14,18
**began** 41:21
42:4 102:8
**beginning** 5:18
**behalf** 5:3,8
114:12 120:3
**belief** 80:15
120:8
**believe** 12:12
13:9 17:2,3
18:22 19:11
21:12 25:7
38:14 39:20
40:2 84:9,13
89:18 93:9
94:16,21 95:3
120:19
**believed** 99:12
**benefits** 50:2,2
98:10 100:20
**Bernie** 9:8
**best** 10:23 14:15
18:11,15 72:20
74:8
**better** 67:4,17
73:4 74:1
**beyond** 31:3
**bias** 40:7 81:15
**Billingsly** 102:2

**bills** 100:7,18
**Birmingham** 2:4
5:2,7,11,18
10:6,12
**birth** 8:9
**black** 29:8 40:11
45:2 46:22
64:12 76:22
77:6 78:4,9
81:20 93:4
95:6 98:17,18
101:23 102:3
106:8,19,20
107:8,21
115:17 121:9
**blame** 98:22
**blew** 60:5
**block** 24:16
**board** 1:12 4:12
5:4 6:9,13 13:5
13:22 14:2,3,5
23:1,10 25:19
28:18 30:20,22
31:2,12,21
32:3,15 33:9
33:14,17,22,23
34:12,14,21
35:1,21 36:14
37:4,5,10,23
38:2,12,18,22
39:4,9 43:18
45:12 46:7
55:11 57:13
59:9,16 60:12
60:18 61:2,19
63:16,19 65:2
65:9 74:18
75:14,21 76:2
77:9,15,19
78:1,7 80:1
85:22 89:15
90:9,16 91:9
108:14,16,17
113:4 115:8,16

119:23 120:3
120:17
**boards** 85:19
**BOE** 13:12
**bottom** 62:2
**Bourgeois** 21:19
**Bradley** 2:2 4:23
5:16
**break** 8:4 17:11
17:12 111:4,7
**bring** 11:10
**buffet** 47:19
**Bullard** 39:13
39:19 40:1,11
40:16,20,23
41:4,9,16
42:12 63:15
65:1 67:23
68:2 70:8
74:22 76:12,14
76:20 80:7
87:6 88:2
89:14 119:18
**Bullard's** 62:1
**business** 66:21
**B-O-U-R-G-E...**
21:22

_____
## C
_____

**C** 122:2,2
**CACC** 10:2
**cafeteria** 30:5
47:10 103:20
104:15 106:15
110:1 111:21
117:21 119:16
**cafeterias**
103:21
**call** 32:14 35:22
37:9 38:10
47:10 92:19
**called** 15:10
31:10,23 35:20
35:23 36:4

37:13 42:3
57:17 82:16
92:21 121:2
**calling** 23:4
32:11
**Calvin** 56:2,22
**candidate** 109:6
**capacity** 55:1
**Carden** 9:8,19
9:19
**case** 1:16 4:16
7:7 10:10 11:9
74:21
**Caucasian** 43:8
**caught** 48:2
**cause** 5:20
122:18
**Center** 109:19
**Central** 27:23
30:6 39:16
41:20 44:6,11
81:22 93:2
97:23
**certainly** 113:2
**certify** 5:12
122:7,15
**challenge** 87:23
**changed** 62:6
**charge** 14:13
51:9 112:14,21
117:14
**Charles** 38:18
**checked** 54:1
**Chelsea** 27:17
**Cheyenne** 9:19
**child** 60:2
106:21
**children** 8:20
9:15,18,21
**cite** 86:1
**citing** 85:7
**City** 91:20
**Civil** 5:13 6:10
**claim** 94:1 100:4

100:8,18
**claiming** 97:14
100:9,10
**clarify** 6:21 53:1
**classification**
48:17,19
**Cleaners** 27:15
**clear** 6:18,20
58:17 63:23
76:6 100:22
**clearly** 52:22
**Cleveland** 55:23
56:2,11,20
57:19 58:2
105:5
**client** 7:6
**clothes** 27:19
**color** 17:8 18:5
87:5 93:21
107:3 114:18
**Columbiana**
26:23 27:2,11
**column** 61:20
**come** 16:2 18:19
31:12 32:3
33:9,14 44:21
44:23 68:4
69:14 115:20
**comes** 94:6 95:1
**coming** 54:17
102:17
**comment** 35:1
36:2 71:13
81:17
**comments** 18:7
20:11 83:8
111:20
**Commissioner**
2:1,23 4:20
5:12
**committee** 73:10
87:19
**company** 28:9
**compensatory**

98:11
**complaint** 11:12
12:8,17 13:4
14:10,19 15:14
15:14 19:6
28:7 51:5
80:11,12 88:12
89:1 94:10
113:3 114:3
117:6,9
**complaints**
93:12
**complement**
103:6
**complete** 7:7
**completed** 22:7
110:21
**compliance** 2:10
**complimented**
73:8
**computer-aided**
122:11
**conclude** 7:22
**conclusion**
87:21 88:8
**conduct** 29:13
29:14
**connected** 118:3
**consider** 10:4
46:7 69:10
84:5,17 85:8
86:9,23 87:7
87:21 88:5
**considered**
64:21 65:5
66:10 86:15
119:4
**contact** 119:17
**contacted**
109:23
**contend** 58:11
**contending** 29:2
39:18 72:18
73:2,3 79:16

83:1
**contention** 17:4
29:15 89:8
**contentions**
15:20 16:19
20:6 21:13
31:6 35:17
39:1
**continue** 24:3,8
**conversation**
17:10 31:14
36:12 37:21
50:14 71:12
72:5 79:21
**conversations**
14:23 20:2,5
31:8 40:22
41:3
**cooking** 47:23
48:8,10
**cooks** 104:7
**coolers** 47:22
**Coosa** 1:11 4:11
5:4 6:9,13 8:18
9:10 10:17
12:23 13:20
23:1,10 25:19
27:23 28:18
30:5,21 31:21
39:15 41:20
43:18 44:6,11
62:22 74:18
81:22 82:7
90:9,13,15
91:2 93:2 97:1
97:23 109:18
114:13,23
117:20
**copies** 11:17
52:1
**copy** 14:13
51:15 114:10
**Cornelius** 2:1
4:20 5:10

122:21
**corporation**
26:22
**correct** 22:14,15
29:22,23 30:1
41:7,15 52:5
62:13 67:12,13
72:16 74:6
75:18 77:15
81:23 89:22
90:1 102:5
103:22 104:1
106:22 107:15
107:16,21,22
108:4,5,14,19
108:20 109:2,3
109:9,11
110:19,20,23
112:2,5,6,11
112:12,16,17
112:19,23
113:1,5,6,9,10
113:12,13,23
114:22 115:3,4
115:18,19,22
116:2,4,5,11
116:12,16,17
116:21 117:10
117:11,14,15
117:17,18,23
120:12,13
122:12
**counsel** 1:22
2:16 5:15
118:20 122:16
**count** 72:10 94:9
94:19
**County** 1:11
4:11 5:4 6:9,13
8:18 9:10,13
10:18,21,22
23:1,10 25:19
28:18 30:21
31:21 43:18

62:23 63:5
74:18 82:8
90:9,16 97:1
114:13 115:1
122:5
**County's** 13:20
**couple** 35:3
118:17
**course** 71:18
**court** 1:1 2:11
4:1 5:10 8:6
66:18 72:14
97:20
**covered** 33:18
**co-employees**
44:14
**crafted** 58:3
88:13,16
**credentials** 74:4
**criteria** 66:21
67:5,16
**criticism** 113:11
113:19
**criticized** 102:20
**CROSS-EXA...**
3:7 101:7
**crying** 45:3
**cumulative**
24:18

_____
**D**
**D** 3:2 5:6
**damages** 98:11
**date** 5:12 8:9
34:12 97:15,18
110:7,10,18,21
110:22 112:19
112:23
**dated** 13:23
61:17
**David** 31:1,19
31:23 32:11
35:23 38:8
**day** 2:4 42:4

44:20 98:15
101:20 102:19
108:2 111:23
120:23
**days** 23:15
24:12,17
**Debates** 13:12
**December** 12:15
**decide** 39:6
**decided** 88:4
**decision** 31:15
32:6,20 34:22
39:21 40:13,14
40:18 41:12
60:13 84:2
89:18 99:13
108:13 119:1
**decisions** 108:18
**defendant** 1:14
4:14 5:4 28:14
93:11
**Defendant's**
3:13 11:8,9,22
11:23 12:6,7,8
12:11,13,16,17
12:20 33:20
51:3,4,5,7,8,9
51:12,18,20
52:7 55:8 58:5
61:13 62:8
65:8 80:10
88:11 91:13
109:17
**defense** 7:6
**degree** 22:11
60:20 64:4,20
65:4,4 79:16
104:22 105:12
**degrees** 64:16
**DEPONENT**
121:16
**deposed** 6:14
**deposition** 1:22
2:8,9,19,22

# FREEDOM COURT REPORTING

8:8 11:9,23
12:5,7 14:21
15:6 51:4 98:3
114:21
**depositions** 2:12
**Depot** 92:13
**DeRotia** 10:21
**described** 20:3
**determination**
83:15 86:3
**determine** 83:22
**determines**
66:18
**Diane** 65:13,16
**difficulty** 104:9
108:7
**diploma** 13:12
34:5 35:6
45:18 46:8,16
52:16,20 53:13
53:19 54:14
55:3,19 56:17
58:9,13,19,22
59:5,11,18
60:15 64:20
66:1,6,16,20
67:2,2,3,9,11
67:16 68:5
70:12,14 71:9
79:6 84:7 85:2
85:14 86:6,17
87:1,23 88:7
93:6 119:5,12
120:16
**DIRECT** 3:4 6:2
**disagreements**
44:10,13
**disbelieve** 86:11
**discharge** 79:9
**discourage** 50:8
**discriminate**
42:23 58:15
**discriminated**
29:3,16 33:6

39:19,21 89:9
90:3
**discriminating**
59:4 72:6
**discrimination**
14:14 15:16,22
17:5 33:1
51:10 80:16
89:13 93:12
94:8,11,20,22
98:20 100:13
107:12 112:15
112:22 117:7
**discriminations**
20:10
**discriminatory**
29:10 40:3,7
50:16 58:23
59:12 71:16,20
83:8,9 113:5
**discuss** 31:23
32:1 33:9
59:20 64:23
**discussed** 11:5
37:17 59:15
75:2 89:3
**discussing** 37:15
38:3,22 69:16
87:20
**discussion** 88:20
92:7
**discussions**
19:19 21:4
**dishonest** 87:16
**dispute** 66:13
75:15 84:7,19
85:9 87:2,9
88:7
**distinction**
100:14,21
**distress** 100:9
**district** 1:1,2 4:1
4:2 10:4 11:2,3
11:4 32:16

**division** 1:3 4:3
48:6
**doctor** 95:9,10
95:12 96:20
**doctors** 96:23
**document** 12:22
13:8 65:9
109:20,22
112:18
**documents**
11:11 12:3,4
12:18,20 14:16
**doing** 43:22 49:3
71:7 73:6,8
78:8 84:21
93:17 99:19
103:1,7 104:12
113:4
**Don** 108:10
109:16
**Donald** 5:1 6:12
**door** 53:17,23
**doubt** 88:14,17
**Dr** 95:13
**Drive** 5:7
**duly** 5:23
**duplicates** 11:19
**duties** 47:17
48:20 79:9
80:22

_____
**E**
**E** 3:2 122:2,2
**earlier** 69:20
**early** 108:3
**easy** 8:6 58:18
**ECA** 27:2
**education** 1:12
4:12 5:5 6:10
6:13 13:5,23
22:8 25:20
30:22 33:15
57:14 60:19
61:2 65:9

85:19 91:10
101:12 103:10
103:14,22
104:5,16 109:7
**educational**
21:16 22:16
**Edwards** 31:1
31:19,23 32:11
32:14 34:19
35:23 37:13
**EEO** 12:17
14:10 28:6
80:11
**EEOC** 112:14
114:11 117:13
**effect** 2:10
**either** 9:21
**elastic** 26:22
**elementary**
23:23 24:10
56:21,23 57:7
105:8
**eligibility**
111:12
**eligible** 111:17
**embraces** 10:5
**emotional** 100:9
**employ** 45:13
60:13 75:21
**employed** 22:23
30:4 43:13
54:21 56:5,12
57:6 76:3,9
77:15 90:18
99:4
**employee** 24:22
72:3 82:12
101:11 106:15
112:10 118:9
**employees** 69:22
82:21
**employment**
12:21 22:17,21
25:18,21 26:21

28:4 74:16
75:14 81:22
85:20 86:1,10
90:15 109:18
119:14
**encourage** 50:7
50:8
**ended** 108:4
**engaged** 29:14
**entailed** 100:1
**equivalent** 85:3
**equivocating**
68:12
**ESS** 91:15
119:19 120:5
**establish** 68:13
**established**
42:21
**evaluated** 43:17
43:21
**evaluation** 43:20
**everybody** 39:20
84:1
**evidence** 2:19
72:6
**exact** 71:4 98:23
**exactly** 39:11
114:20
**examination** 3:4
3:10 5:20 6:2
118:16
**examined** 6:1
**Exclusively** 24:8
**exemplarily**
80:22 81:5,8
**exhibit** 11:8,10
11:23 12:6,7,8
12:11,14,16,17
12:21 33:20
51:12,18 52:7
55:8 57:15
58:5 61:13
62:8 65:8 66:5
80:10,19 88:11

91:12,13
108:11 109:17
111:11 114:7
**exhibits** 3:13
50:23
**exhibit's** 51:1
109:16
**expenses** 97:13
99:23 100:5
**experience** 66:8
**extra** 48:3

---

**F**

**F** 122:2
**face** 59:10
**fact** 30:3 65:2
102:23 103:18
105:5 107:17
**facts** 30:16
**fair** 7:2,20 30:1
32:2,20 34:3
41:7,15 45:11
73:14 74:6
90:1 117:2
**faith** 117:5
**far** 19:11 20:1
21:16 22:7,21
29:13 58:17
68:19 74:15
76:1 79:5,8
82:20 98:14
**farther** 100:5
**fashion** 34:17
35:2 36:3 69:3
**Fazel** 96:10
**Federal** 2:3 5:1
5:17
**fees** 97:15,17
**female** 29:7 40:4
65:23 95:2
102:5
**females** 74:2
**fifth** 2:3 5:2,17
73:11

**fighting** 13:15
**figured** 53:4
120:6,7
**file** 1:16 4:16
61:19 114:11
**filed** 10:3 28:6
51:5 112:15
117:13,16
**files** 65:9
**filing** 2:22 14:10
**fill** 61:6 106:3
**filled** 34:5 45:21
53:6,7 69:21
73:22 98:16
107:21 108:22
109:4
**filling** 25:2
**final** 83:21 84:2
**finding** 27:13
**fine** 99:19
**finish** 8:5
**finished** 62:18
69:5
**fired** 97:2,6,7
**first** 16:1,8
**fits** 7:8 8:1
**five** 24:15,18
42:1 43:5 57:2
**fixing** 44:23
**focusing** 41:20
**follow** 49:7,11
49:19
**followed** 74:17
**following** 5:21
23:11 52:9
**follows** 6:1
**food** 47:20,23
48:15 49:1,6,9
49:17
**foot** 53:16
**Forbes** 16:15
17:19 18:1,6
19:15 20:3,11
20:16,23 21:7

21:12 24:23
42:3,7,8,17
44:1,5,20 45:7
46:3 67:22
68:1 69:19
70:7,19 71:6
71:15 80:3
81:3,14 83:6
83:10,14 84:4
84:13 85:5
86:8 87:4 88:2
89:2,7,13 90:4
91:10 93:15
98:14,19,23
99:2,5,12
102:12 103:3
106:2 107:1,9
107:17 110:5,6
110:14 111:13
113:3 114:16
114:17 116:3,7
116:10 118:7
119:3,19 121:1
**force** 2:9
**foregoing** 5:14
122:8,12
**form** 2:15 36:2
72:23 74:11
85:12 89:17
103:23 104:11
104:17 107:7
109:10,13
110:3 111:14
112:1 113:22
114:4 116:1,8
116:20 118:12
**formal** 43:20
**former** 10:14
**forth** 14:7 52:22
63:7 80:15
**forwarded**
112:22
**found** 107:23
**four** 56:7 72:12

**fourth** 56:9,14
65:13 73:11
**Frank** 38:18
**freezers** 47:22
**friend** 116:6
**full** 2:10 47:20
95:19
**further** 2:6,13
2:21 109:6
118:14 121:16
122:15

---

**G**

**garden** 100:8
**GED** 22:13 34:5
35:5 45:18
46:8,17 47:7
52:16,20 53:14
53:20 54:14
55:3,18 56:16
58:9,13,20,23
59:6,11 60:16
60:21 67:10,11
67:16 101:14
104:22 105:17
**gender** 15:15,21
29:4,11,17
40:4 41:18
43:2 59:13
71:17 72:8
73:3 81:16
83:3 89:10
94:8,20,22
99:10,14
101:21
**general** 49:10
58:18
**generally** 49:18
**getting** 49:15,15
73:7 108:1
**girl** 54:12
**give** 25:20 50:20
98:4
**given** 8:11 9:5

122:13
**Gladice** 65:23
**Glenn** 8:17
**Gloria** 1:5,23
4:5 5:9,19,22
6:3 115:10
119:3
**go** 12:5 15:14
35:9,11 50:22
56:7,9 57:23
84:22 88:18,22
92:5 94:9
96:23 111:9
**goes** 74:15
**going** 7:4 45:9
46:20,20,21
49:22 50:3,4
56:14 67:6
73:21 86:2
95:4 98:16
99:3,5,9 106:7
109:15 120:17
**good** 71:7 72:1,2
73:7 81:6,11
81:13 93:17
101:4 103:1
117:5 118:8
**Goodgain** 35:14
36:11,15 37:13
**gotten** 22:13
72:19 79:17
**grade** 22:5
62:19 69:5
103:10
**graduate** 68:23
69:12
**graduated** 62:11
62:13 68:9,15
**grand** 92:4
**grounds** 2:17
**guess** 84:1 88:9
120:9
**guidelines** 35:5
36:5,20 39:6

# FREEDOM COURT REPORTING

**Gurley** 95:13,20
**gynecologist**
95:15

## H

**hand** 60:8 61:20
**handwriting**
61:23
**Hardeman** 37:1
38:1
**Harris** 65:23
**headaches** 96:11
**headlines** 13:11
**heard** 17:6,6
18:12 19:15
20:2,11 87:4
90:4 92:14
93:20 108:17
108:21 114:16
114:17 115:1,3
116:3,18,23
119:2
**heavy** 52:13
99:18,19
**held** 72:15 81:20
88:21 92:8
**help** 48:5 54:9
95:23
**helped** 49:5
**helpful** 100:23
**hereto** 51:16
**high** 21:17,21
22:2,10 24:7
24:22 27:23
30:6 34:5 35:6
39:16 41:21,22
44:1,6,11
45:18 46:8,16
52:16,19 53:13
53:19 54:13
55:3,18 56:16
56:18,19 58:8
58:13,19,22
59:5,11,18

60:15,20 62:11
62:12,16 64:4
64:16,20 65:4
66:1,6,16,19
67:1,9,11,15
68:5,9,15,23
69:11 70:14
71:9 79:6,16
81:1,23 84:6
85:2,14 86:6
86:16 87:1,22
88:6 93:2,6
101:11 103:19
103:21 104:4
104:16,22
105:12 106:1
117:20 118:2
119:4,11
120:16
**hire** 31:16 40:19
77:10,20 78:7
115:17
**hired** 26:15 29:8
29:22 31:22
34:9 45:1,9
55:11,16 74:17
74:23 75:12
76:16,17,21
79:18 92:20
93:4,8 105:20
111:23 115:9
115:14
**hiring** 13:17
14:3 29:18
39:21 54:3
108:18
**history** 25:21
**HL** 21:19
**hold** 60:11
**Homa** 21:19
22:1
**home** 26:18
92:12
**honest** 84:14

87:12
**hospital** 13:2
92:10,19 94:3
117:22 118:1
**hour** 12:10
18:20 25:4
30:5 52:12
**hurt** 118:6,9
**husband** 10:14
**husbands** 9:6,7
10:14
**husband's** 8:16

## I

**idea** 24:12 58:7
58:16 70:23
93:9 119:20,22
120:1
**identification**
51:1,15
**identify** 12:4
**ignored** 60:16
**immediate** 44:2
**impediment**
43:12
**implication**
85:14
**impression**
78:22
**include** 12:21
15:1 58:8
**included** 13:10
13:21 14:9
58:14 59:17
120:15
**incurred** 100:11
**indicate** 29:10
40:7 80:21
110:14 111:13
**indicated** 40:2
68:8,14 81:15
98:2 107:2
116:14 118:8
**individual** 24:17

120:11
**information** 7:5
7:8,12,19 8:1
15:20 17:3
30:8,13 41:8
50:12 51:11
63:8,9 76:11
98:5 112:7
118:7 120:21
**informed** 57:22
**inherently** 58:23
59:3
**initially** 101:9
**inspected** 27:19
**inspector** 27:19
**instrument**
43:21
**interested** 50:5
122:18
**Internet** 92:13
**interpreted**
50:16
**interview** 12:14
51:8,21 52:4
68:3,10 69:10
72:9 78:22
83:18,19 87:19
88:4 92:22
103:5
**interviewed**
39:23 42:1
65:19 66:15
67:20 70:6
71:15 72:12
73:12 78:18
84:2,23 91:3
**interviewing**
68:22 85:1
**interviews** 65:10
78:19
**involved** 52:14
**issues** 13:4
**itemized** 100:1

## J

**Jan** 20:3 21:7
67:22 68:1
70:7 80:3 81:3
83:6 84:4,13
85:5 89:2,7,13
90:4 91:10
109:23 110:5,6
114:16,17
115:8,16,21,21
115:22 116:7
116:19 119:3
119:17,19
**January** 2:5
**JEFFERSON**
122:5
**Jerry** 5:6 11:16
13:17 31:16,22
34:9 40:15,19
41:5 45:8
60:14 72:15,19
73:16 74:23
76:3,9,16,21
77:3,10,14,20
78:2,8,13 79:2
79:18 93:7
95:20 108:1
113:14,20
119:2 121:1,2
121:9
**job** 13:1,16 17:7
18:3 20:16
25:2,6,12
27:14 31:11,13
32:4,8 34:4,7
37:8 44:17,22
45:5,20 46:9
48:16 50:3,5
53:9,18 56:15
57:19 58:2
64:1,10 67:8
71:6,7 72:1
73:7 79:17
81:6,11,13,18

# FREEDOM COURT REPORTING

83:23 84:18,21
90:11 92:22
93:16,17,20
97:9 98:1,9,16
99:21 101:4
102:10,21
103:1,6,9,12
104:12,22
106:10 107:21
108:2 111:22
112:8 113:12
113:18 114:17
117:19 121:3
121:10
**jobs** 90:12
**Jones** 18:4 59:21
59:23 61:9
67:22 68:2
70:8 80:5 83:7
86:22,22 88:2
89:2,7,13 90:4
93:21 106:18
106:19 107:2
**jury** 10:10

### K

**keep** 13:16
**keeping** 47:19
**Keith** 39:13
63:15 65:1
67:23 68:2
70:8 74:22
76:12,14 80:7
87:6,11,12
89:14 119:18
**Keppra** 96:16
**kept** 93:15,16
**kids** 44:23
**kind** 34:20
49:11 59:21
60:4,7 66:8
78:21
**Kinross** 5:7
**knew** 46:21

52:18 54:9
69:19 70:2,13
70:17 95:4
119:18 120:17
121:5,8
**knitter** 27:4
**know** 13:14 14:6
16:7,12 19:5,7
19:10,12 20:1
20:9 21:15
23:17 25:1
28:17,22 30:2
30:8,12,16,20
31:1,2,3 32:12
35:13 37:1,3
38:8,19 39:13
45:19 51:20
53:21,22 55:11
55:15 56:2,4
57:2,9 58:3,7
58:18 59:7
60:18 61:1
63:11,23 64:3
64:6,9,12,15
64:18,22 65:22
66:1,5 68:19
68:20 69:20
70:17 71:5,6
71:14 73:9,13
73:15,17,20,20
74:3,18,21
76:1,5,7,11,14
77:22 78:3,6
78:15,21 79:5
79:7,8,11
81:13 82:14,15
82:20 85:22
87:11,14,17
91:5,21 98:8,9
98:11,12,13,14
98:14,19
104:14,18,20
105:17 109:21
111:16 115:11

119:10 120:2
120:16,20
121:6,11
**knowledge**
10:23 14:15
18:11 43:22
60:22 77:19
82:9,13,14
113:14
**knows** 21:7,12

### L

**L** 1:19
**labor** 48:6
**Lane** 6:6
**language** 81:7
**Larry** 35:13
37:18
**law** 5:7 75:11
85:7,13,18
**laws** 2:11
**lawsuit** 6:9 10:3
16:20 20:7
21:14 22:19
28:12,15 29:2
31:6 35:17
88:12 100:11
117:16
**lawyer** 98:22
**leading** 2:15
**learn** 49:21
**leave** 26:13,17
27:10
**left** 26:8 45:3,5
61:20 97:8
108:3 112:4
**legal** 93:3
**legitimate** 66:20
**let's** 16:1 17:17
41:22 50:22
51:2 73:16
79:14 84:22
88:10,18,22
92:5 111:2,6,9

**lifting** 52:13
99:18,19
**limited** 103:14
**Lisa** 55:23 56:1
56:11,20 57:19
58:1 105:5
**list** 16:1 23:4,4
35:9 65:10,13
**listed** 52:15,18
62:22 111:21
**litigation** 28:12
**live** 6:5 8:18 9:9
9:12,22 10:8
10:16 11:2
62:22
**lives** 10:17,20,21
63:4
**LLP** 2:2 5:1,16
**located** 27:16
**long** 26:2,10
27:6,20 56:12
57:1,9 96:2
**look** 74:3 88:10
**looking** 52:6
62:7
**looks** 14:13
**Looney** 63:3
**Louisiana** 21:19
**lunch** 17:12 18:5
18:21 44:22,23
116:15
**lunchroom**
12:11 13:16
16:23 17:8
20:18 23:23
24:23 25:5
35:7 36:5,21
38:4 47:10,12
47:21 48:14
52:13 53:20
54:3,13 55:7
55:12,17 56:21
56:23 57:8,14
60:20 87:5

97:23 98:18
107:4 113:15
114:19

### M

**making** 30:9
86:3 100:4,8
108:18 117:6
**male** 29:8 45:1,2
76:17 77:4,11
78:2,10 81:21
93:4 95:5
98:17 99:15,21
101:23 102:3
106:7,8 107:8
107:21 121:9
**males** 64:13
**male's** 99:21
**man** 41:13 46:20
46:22 58:20
73:22 84:9,10
84:10
**manager** 110:1
111:21 116:16
119:16
**manner** 6:14
80:23 81:8
**man's** 17:7 18:3
81:18,18 93:16
93:20 98:15
106:10 114:17
**Margaret** 16:8
17:23 19:23
20:6,15 48:12
**mark** 11:8,21
50:22
**marked** 50:23
51:14,18 52:6
55:8 57:15
61:13 62:7
65:7 68:8
80:10 91:12
109:16
**marriage** 8:21

# FREEDOM COURT REPORTING

Page 130

marriages 9:14
married 8:12,14
  8:23 9:3
matter 85:6,13
matters 15:1
McClellan 6:6
McKinney
  13:17 31:17,22
  34:9 40:15,19
  41:5 45:8,13
  60:14 72:15,19
  73:16 74:23
  76:3,9,16,21
  77:3,10,14,20
  78:2,8,13 79:2
  79:18 93:7
  108:1 113:15
  113:20 119:2
  121:2,9
McKnight 31:16
mean 45:18
  100:18 107:6
  116:22 118:3
means 122:10
medical 13:1,2
  90:13 91:2
  99:23 100:5
  109:19
medication
  95:21 96:18
medicine 96:12
meet 84:18
meeting 14:2
  15:6 33:18,22
  34:12,14,21,23
  36:14 37:10,23
  38:2,12,22
  39:4,9 60:12
  76:2
meetings 31:12
  32:4 35:21
  37:4,5 108:14
  108:16
Meliaha 1:23

4:20 5:10
  122:21
member 14:5
  31:2 32:15
  38:19 65:2
  78:7 80:1
members 10:10
  14:3 30:21
  33:23 35:1
  63:16 73:9
  77:9,16 78:18
  89:15 108:17
  119:23
men 64:9
mentioned 51:2
  82:5 103:18
Mia 9:20,23
Michael 25:1
  102:2
middle 1:2 4:2
  10:4,7 11:2,3,4
  23:22 24:9
midnights 27:12
Mike 42:3
Mills 26:9,11,16
  27:8
mind 94:6 95:1
  118:11
minimum 82:6
  82:10,19,22
  83:2
minorities
  108:23,23
minority 109:5
minute 88:10
  111:1,3
Mitchell 56:3
  57:5,6
mixed 49:13
mom 26:18
Montgomery
  10:6,11,13
mopping 47:21
morning 6:15

multiple 52:1
Murphy 14:11
  15:23 16:22
  17:21 18:12
  19:5,12 55:23
  56:4 57:4
  104:4 114:8,23
  118:21
Murphy's
  114:15

### N

N 1:19 3:2
name 8:16 14:6
  16:7,8,13
  19:23 25:1
  28:20 50:6
  56:3 57:18,21
  58:1 61:10
  62:10 95:19
  102:1 116:14
named 17:22
names 9:7,17
  15:18 35:11
  55:15
necessary 2:14
need 32:1,3
  35:21 96:22
  98:21 100:6
  111:4
needed 31:11
  37:22 41:13
  42:5 50:2 54:9
  95:5 99:21
  107:3 112:11
neither 50:10,11
  122:15
neurologist
  96:10
never 29:19 99:7
  113:11
new 26:19
newspaper
  13:11,18 33:19

nondiscrimin...
  66:20
North 2:3 5:2,17
NORTHERN
  1:3 4:3
notice 2:22 11:8
  12:6,9 14:21
  18:20 50:19,21
  51:4,6 52:15
  52:18,23 54:7
  55:6 58:4 61:8
  67:9 120:14
notices 54:2
November 14:10
  90:19 112:15
No.s 51:13
number 3:4
  66:12,14 67:14
  79:15 103:19
  111:21
numerous 106:2
nutritionist 60:2
  106:21

### O

O 1:19
oath 88:3 115:2
  115:16
object 32:4
  72:22 74:10
  85:11,13 89:16
  103:23 104:11
  104:17 107:7
  109:10,13
  110:3 111:14
  112:1 113:22
  114:4 116:1,8
  116:20 118:12
objections 2:15
  2:17
obtain 109:6,9
obtained 30:12
  101:14 109:20
  114:10,13

118:7
obviously 93:17
  117:4
occasion 47:1,4
  47:5 48:23
occurred 12:15
  65:11 102:9
  111:18
offer 119:2
offered 2:19
office 2:1 5:15
  93:18 99:1
Okay 11:7 13:7
  13:10,21 14:5
  14:7 15:13
  16:6,9,14,18
  19:4 23:8
  24:21 25:3,11
  25:17 26:6,13
  26:20 32:19
  33:8 34:11,14
  35:13 37:19
  38:5 45:4 47:8
  54:11 55:5
  60:10 61:12
  63:6,11 65:19
  68:21 69:6
  70:2 71:10
  72:4,10 73:23
  75:2 80:14
  81:19 82:20
  83:1,5,11 84:4
  84:12 89:20
  94:5,19 96:12
  100:15,17
  102:3 105:23
  106:14 107:9
  110:7,12 111:6
  112:21 113:7
  114:1,13
  116:10 117:4
  117:19 118:14
ones 35:8 39:22
  48:15

# FREEDOM COURT REPORTING

open 62:4
opinion 120:11
opportunity
98:4
oral 5:20
order 7:5 12:2
50:23 93:7
ordered 110:18
orderly 12:3

___

**P**

P 1:19
page 3:4 13:7,23
63:6 65:11,12
66:4 72:11,13
80:19 90:7
109:22 111:11
114:15 118:21
119:7
paid 82:5,7,9,11
82:21 83:2
97:17
Pam 18:4 59:21
59:23 61:9
63:3 67:22
68:2 70:7 80:5
83:7 86:22,22
89:2,7,13 90:4
93:20 114:18
115:1
paper 13:20
57:17
papers 23:3
paragraph
80:21 81:19
83:5 89:1 90:7
93:10 114:14
115:7 118:23
119:8,10
Paragraphs
94:19
Paragraph's
94:10
part 114:7

particular 24:22
38:16
parties 1:21
2:16 122:17
pay 82:18 98:9
pending 92:15
people 16:19
48:20 57:23
59:4 60:19
62:22 63:11,17
63:21 66:15
99:13 119:19
121:6
peppy 43:21
perform 80:22
102:10 103:13
104:21 106:12
performance
102:21 113:12
performed
113:8
period 42:1 43:5
109:8
permanent
55:12,16 75:12
75:22 101:10
105:21
person 30:13
65:13 73:11,18
74:8 75:12,22
84:14 87:13,16
99:4,10 101:18
101:19,22
personally 30:23
persons 15:19
pertinent 8:1
14:18 15:19
19:5 22:18
66:9
photos 11:15
physicians 96:7
place 2:3 5:2,17
17:10 18:16
38:21

plaintiff 1:7 4:7
5:9 6:8 28:11
please 8:4 53:3
point 31:20 43:1
43:16 68:13
poor 91:9
102:18 110:15
position 12:10
12:13,15 17:15
17:15 18:21
25:4,5,15
27:11,22 28:4
30:4,14 31:11
31:20 40:15
41:1,10 44:6
46:21 47:9,11
47:13,14,18
48:13 49:23
52:10,12,19
53:12 54:19
55:7 61:7,15
62:4 63:8,12
64:13,19 65:3
65:10 66:9,23
67:18 72:15,19
73:17 75:13
79:3,10 81:18
81:20,21,22
82:2 83:16
85:1,23,23
90:15,16 91:6
91:17 92:18
97:22 100:19
101:20 105:21
106:4 109:5
113:7 115:9
116:15 117:13
117:21 119:2
119:10 120:15
120:18
positioned 20:15
positions 85:19
90:8,10,23
91:22 92:9

108:22
possession 14:17
possible 7:8
post 50:3,4
85:19,22,23
posted 25:6
47:13 67:18
70:3 85:6 86:5
87:9 120:14
posting 12:10
18:19,20 50:19
50:21 52:8,15
52:17,23 54:2
54:7 55:6
57:12,16 58:1
58:4,12 59:18
61:5,7 84:23
85:12 102:9
120:22 121:7
potential 10:9
preparation
15:5 48:1
prepare 15:7
49:1,17
prepared 49:6
preparing 49:9
80:12
prescribe 95:21
prescribed
96:12,15
present 20:23
116:22 117:1
presentation
12:3
presented 120:5
President 13:22
pretectal 93:5
pretext 93:7
previous 9:7
94:13
previously 8:23
28:6 51:2 68:8
79:13 81:20
89:3

principal 39:15
prior 2:19 18:23
25:18 28:12
30:9 32:11
37:9 60:13
probably 18:17
26:5 46:19
53:5 56:6,13
57:2 73:21
98:16 106:8
111:5
problem 99:20
problems 44:9
44:13 97:5
102:17
Procedure 5:14
proceedings
5:21
process 49:22
68:3 74:15,16
88:4
protest 107:20
protested
107:14
provide 100:7
provided 5:13
51:11 100:20
114:10
psychiatrist
97:10
psychologist
97:11
PTO 13:22
punitive 98:11
purposes 66:22
put 34:20 46:20
49:16 50:6
57:18,21 58:1
58:4 61:10
62:11 72:14
97:21,22 121:7
putting 114:18

___

**Q**

# FREEDOM COURT REPORTING

Page 132

| | | | | |
|---|---|---|---|---|
| **qualification** 36:9 38:4 53:8 58:8,14 59:8 59:17 71:8 85:6 109:7 | 99:6,14 101:21 108:19 **Raheim** 96:10 **raising** 92:1,3 **Randall** 37:1 **rated** 73:10 | 41:17 75:3,5 75:21 76:8 77:3,14,17,23 99:3,6,9 **recommended** 30:3,14 41:4,9 | 35:12 36:10,13 38:5,15 39:3 39:11 69:1 71:4 102:1 120:23 **rephrase** 31:18 | 121:7 **respective** 1:22 **respond** 33:8 34:16,19 **response** 37:20 46:11 53:11 |
| **qualifications** 13:12 14:4 45:21 52:14,19 53:5 63:20 84:18,21 85:7 86:2 87:8 109:1 | **Raymond** 9:8 **read** 21:20 49:19 63:6,9 103:16 114:9 114:13 118:22 119:8 | 42:17 60:19 74:22 76:20 **recommending** 76:16 78:1 **record** 42:20 43:11 76:7 | 73:1 79:12 85:17 **replacing** 42:9 **report** 91:9 119:14 **reported** 94:2 | 109:20 **responsibilities** 47:18 48:21 79:9 113:8 **responsibility** 6:18 83:22 |
| **qualified** 67:4 67:17 70:11 72:21 73:4 74:1,8 113:20 | **reading** 2:7 **ready** 49:15,16 **real** 54:10 **realatives** 10:8 | 88:19,21 92:6 92:8 102:4 111:10 118:23 **recordings** | **reporter** 5:11 8:6 **represent** 6:12 74:7 | **responsive** 7:13 **restructure** 67:8 **result** 9:14 122:18 |
| **question** 6:20,23 7:1,13 8:7 61:1 66:22 79:12 84:12 94:14 98:5 | **really** 13:14 14:6 16:12 30:16 42:9 60:4,4 63:6 73:20 86:14 | 14:23 15:3 **records** 63:19 **record's** 58:17 **REDIRECT** 3:10 118:16 | **representation** 66:14 88:1 **represented** 75:10 **represents** | **retaliated** 93:11 93:13 **retaliation** 94:1 94:2,5,12,17 **retire** 20:19 |
| **questions** 2:16 6:17,19 7:9,18 8:2,5 101:6 110:13 118:15 118:18 120:4 122:9 | 87:14,17,17 98:13 **reason** 66:13 75:15 77:2,9 79:1 84:7,19 85:9 87:2,9,15 | **reference** 13:6 93:1 119:13 **references** 62:21 **referred** 65:16 118:20 | 122:12 **reprimanded** 44:4 **request** 11:10 **requested** 14:22 **require** 60:23 | **retired** 20:17 116:11 **review** 15:8 **reviewed** 63:20 **right** 10:12 25:16 33:12,17 |
| **Quincey's** 25:22 26:14 **quit** 25:1 42:4 101:19 **quote** 106:10 107:2 | 88:7 93:4 104:14,19,20 111:16 119:17 **reasons** 29:20 **recall** 37:15 38:2 **received** 76:12 | **regard** 86:5,12 88:23 **rehire** 111:12,17 **reimbursement** 100:4 **relate** 94:11,20 | 119:11 **required** 60:16 67:9 74:19 85:2,12,15 104:15 109:1 | 41:19 43:7 44:22 46:2 53:10 55:20 62:14 70:5 75:9 85:4 89:5 90:21 98:2,20 |
| | **recess** 111:8 **recipe** 49:11,12 **recipes** 49:7,19 | **related** 22:17 118:3 **relating** 2:11 | **requirement** 36:20 46:15 49:10 53:13,18 | 104:7 109:12 111:16 **road** 100:6 |
| **R** | **recollection** 18:15 **recommend** | **relation** 122:16 **relatives** 10:9,13 11:1 | 55:2 57:13 58:13 59:5,10 60:15 61:3 | **Robbins** 10:20 **Roberson** 3:8 5:6 11:14,18 |
| **R** 122:2 **race** 14:4 15:16 15:21 29:4,17 33:7 40:8 41:18 59:13 71:21 72:7 73:3 83:3 86:18 89:10 93:12 94:11,17 | 40:15 41:1 43:4,13 61:2 75:14 76:2 **recommendati...** 29:21 30:9,18 | **relevant** 13:3 15:1 21:13 **rely** 7:4 **remember** 7:11 17:9 33:3 34:11 35:8,10 | 66:19 67:1 69:22 70:1,4 85:23 86:6 93:6 101:16 120:15 121:8 **requirements** | 51:19 52:3 72:22 74:10 85:11 88:13,16 89:16 100:3,17 101:5,7 108:10 |

111:6,9
room 17:20 18:5
  18:21 116:15
Rose 2:2 4:23
  5:16
roughly 10:5
rules 2:11 5:13
Russell 26:9,11
  26:15,17 27:8

_____

S

S 1:19
SAITH 121:16
Sandra 14:12
  16:3,4 17:23
  19:8,20 48:11
  115:5 119:7
sandwiches 48:4
  48:5
saw 52:8 54:7
  61:5
saying 10:11
  23:3 38:15
  39:3 46:19
  93:15 119:19
says 62:10 86:9
  109:23 110:13
  111:12,20
  112:11 114:14
  115:22
schedule 51:8,23
  52:4
scheduled 12:14
school 10:1
  21:18,21 22:2
  22:10 23:11,19
  23:22,23 24:1
  24:3,7,14,22
  27:23 28:23
  30:6 34:5 35:6
  39:16 41:21,22
  41:23 42:4
  44:1,7,11
  45:18 46:8,16

52:16,20 53:13
53:19 54:14
55:3,19 56:17
56:18,19 58:8
58:13,19,22
59:5,11,18
60:15,20 62:11
62:12,16 64:4
64:16,20 65:4
66:1,6,16,19
67:2,9,11,15
68:5,9,15,23
69:11 70:14
71:9 79:6,16
81:2,23 84:6
85:2,14 86:6
86:17 87:1,22
88:6 93:2,6
101:12 102:8
103:19,20,21
104:5,16,22
105:9,12 106:1
112:23 113:4
117:20 118:2
119:5,11
120:16
schools 23:21
  24:6 105:10
screening 12:1
  12:23 91:16
  109:18 119:14
script 8:7
seamer 27:9
second 73:10
  80:19 91:23
  92:1
section 10:7
  94:8
see 17:18 35:4
  36:8,19 50:19
  51:19 54:1
  55:6 61:20
  80:18 83:8
  96:23

seeing 61:7,18
seen 15:11 50:21
  51:20 53:4
  57:12,16 95:10
  95:13,15 96:20
  97:10
Selco 27:15
selected 73:19
semester 23:11
seminars 22:17
September 8:10
  18:21 20:21
  25:7,14 59:19
  62:5 65:12,20
  67:20 102:9
  110:11
sequence 51:3
serve 30:21
  42:18 43:12
  89:7
served 30:17
  43:16
serves 29:15
service 12:22
  109:18 119:14
serving 24:9
session 42:5
set 14:7 52:22
  80:14
sets 63:7
sex 33:6 86:18
Shane 9:19
share 7:5 9:6
  15:18 33:23
  35:10 47:17
  70:20 98:7
  101:2
shared 7:19 8:1
  19:16 21:1
  33:20 34:16
  36:3 50:12
  94:9,12,23
sharing 7:8 33:3
  36:11

Shelby 10:20,21
shift 91:23 92:1
  108:3
Shirley 10:17
Short 111:8
shortly 112:23
show 11:7 51:17
  61:12 65:7
  80:9 109:15,21
  114:6 119:6
shown 65:11
sic 60:7
signature 2:7
  62:1
similarly 20:14
Sims 1:5,23 4:5
  5:9,19,22 6:3,5
  9:8,20 12:4,22
  14:16 61:21
  65:13,17 72:11
  73:15 74:16
  75:10 80:9
  98:3 101:2,8
  111:11 115:10
  118:17 119:3
sitter 27:13
sitting 17:12
  69:15,18 70:21
  71:2
six 12:10 18:20
  24:15,18 25:4
  30:4 42:1 43:5
  47:9 52:12
  57:3 72:11
  113:9,18
sleep 96:1
sleeping 95:11
  95:16 97:4
solely 77:4,6
somebody 29:21
  30:3 41:9 42:5
  48:7 92:20
soon 50:4
sorry 27:1 68:1

69:17
sound 7:20
source 109:23
  119:16
speak 120:3
special 22:18
specific 38:6
specifically
  58:14
spell 21:21
spelling 21:20
spoke 35:8
stand 49:3
standard 110:12
start 22:22 23:9
  41:22 53:16
  98:3 110:7
started 101:20
state 10:7 60:18
  61:2 85:7,13
  85:18 93:10
  122:4
stated 84:4
statement 17:18
  18:7,18 33:15
  34:15 117:2
  119:15
statements
  18:12,22 19:16
  21:1,8 39:10
  46:19 83:6,12
  89:2,6,6 93:19
  106:3 107:10
  108:17,22
  115:2 116:4,19
  117:1,5
states 1:1 4:1
  84:16
stay 26:18
stenotype 122:9
steps 15:8 74:19
STIPULATED
  1:20 2:6,13,21
stipulation 5:14

# FREEDOM COURT REPORTING

100:16
stocking 47:22
stomach 97:5
stop 110:23
straight 26:7,8
  27:12 42:6
stressed 98:13
stuff 98:10
sub 53:16
subbed 105:10
subbing 34:10
  101:20
subject 69:2
  70:10
submitted 12:13
subpoena
  109:21
subs 82:15
substitute 22:23
  23:9,16 24:4,9
  24:13 25:19
  28:1 42:10,18
  43:5,14,17
  47:15 54:6,19
  54:22 55:1
  81:1 82:3,6,12
  82:13,17,21
  83:2 101:9
substitutes 82:7
substituting
  24:21 25:8
  41:21
suffered 98:12
suggest 33:9
superintendent
  28:17 29:1
  34:1 39:8 75:6
  75:13,20
supervision
  106:1
supervisor
  20:17 44:2
  80:23 102:14
  110:4 120:10

supervisors
  44:10
supervisory
  44:6
supplement 7:14
supplied 51:23
support 15:20
  17:4
supportive
  11:11
sure 20:20 34:13
  36:7 51:2 53:3
  76:6 77:13
  115:11 116:13
sustained
  100:12
Sweeny 3:5,11
  5:1 6:2,12
  11:16,21 12:2
  51:22 52:5
  85:16 88:15,18
  88:22,23 92:5
  100:15,22
  101:1 103:23
  104:11,17
  107:7 108:12
  109:10,13
  110:3 111:2,14
  112:1 113:22
  114:1,4 116:1
  116:8,20
  118:12,16
sweeping 47:21
sworn 5:23
  115:2,15
Sylacauga 6:6
  26:1,9 91:20
system 103:20

## T

T 1:19,19 122:2
  122:2
table 17:13
take 8:3 15:9

96:2,4,5 107:6
  111:4,6
taken 1:23 85:16
  122:8
Takes 13:22
talk 31:12 40:16
  40:19 42:12
  60:8 98:21
talked 16:18
  29:19 31:5,19
  35:16 36:15
  38:23 42:9
talking 63:13
  68:18 69:18
  70:7,22 71:2,3
  71:5 81:21
  110:1 115:11
Talladega 9:13
  63:5 95:18
Tammy 10:20
tape 14:22 15:2
telephone 37:20
tell 32:22 44:19
  60:5,14 82:17
  99:11 105:11
  106:9 107:10
telling 93:16
temporary 12:9
  12:11 17:15
  18:21 25:4,15
  30:5 51:6 52:8
  52:13 56:8,15
ten 72:13 79:13
tendered 12:19
tenth 73:11
tenure 56:10
tenured 56:6
Teresa 10:21
  56:3 57:4
term 81:4
terminated 28:3
terms 58:18 59:8
  70:11 73:23
  93:3

territory 10:5
testified 6:1 88:3
testimony
  122:13
Thank 121:12
thereto 2:20
  122:10
thing 17:6 19:9
  37:17 51:21
  52:2
things 19:11
  97:22
think 7:12 13:14
  15:19 16:5
  23:4 27:7 32:2
  32:7,20 34:20
  69:4 73:6
  75:19 79:19
  82:10 85:8
  86:1,14 87:7
  87:12 90:2
  92:12 95:1
  100:6 102:2
third 56:14
  73:10
Thomas 16:3,5
  19:8,20
Thomason 16:5
Thompson
  14:12 19:20
  115:5,15 116:6
  119:7
thought 32:22
  33:5 34:2,6
  45:10 46:1,14
  53:20 84:20
  101:3 115:8,13
  115:14,16,22
  115:23
three 9:4,5,9
  26:3 56:8
  78:18 92:1
three-year-old
  92:3

throught 1:21
throwed 60:7
time 2:18,18
  7:11 8:3 18:9
  19:2 24:17,20
  25:13 34:8,10
  35:23 37:6,6
  37:12 39:9
  42:13,18 43:9
  43:14 44:16
  45:4,6 48:3
  49:14 53:7
  81:12 83:11
  95:7 97:2,7
  102:7,8 106:14
  108:6,8 109:9
times 9:2,5
  18:18 47:2
  93:19
today 114:21
Todd 28:21 29:3
  29:14 30:2,17
  50:1,7 57:17
  59:16 60:8
  61:9 63:16
  65:1 75:8 76:2
  77:2,13,22
  79:22 84:3
  89:15 119:21
told 31:11 32:2,3
  32:19 33:5
  34:2 44:21
  45:10,19 46:1
  50:2,5 61:10
  68:10 69:4,6
  69:19,23 70:19
  71:6 73:21
  81:12 82:19
  83:9 89:21
  97:8 98:18
  101:15 102:23
  103:3 104:2
  107:1 108:1
  111:23 114:23

# FREEDOM COURT REPORTING

**top** 118:23
**total** 72:13
**training** 22:17
  22:18
**transcribed**
  122:10
**transcript** 122:8
  122:13
**transcription**
  122:11
**trash** 47:20
**treated** 46:4
  95:9
**treatment**
  100:12
**trial** 2:18
**tried** 59:20
**trouble** 27:13
  95:11 97:4
**true** 49:18
  110:16 122:12
**truth** 60:5
**try** 31:12 32:4
**trying** 13:15
  31:13 37:8
  39:5
**Tuck** 38:8,8,10
  38:12
**turned** 84:3
**turns** 66:12
**two** 9:12 13:23
  57:22 96:23
**T-2004** 122:22

---
**U**
---
**U** 1:19
**Uh-huh** 36:6
  57:20 60:1,3
  91:16
**ultimately** 83:21
**unanimously**
  77:20
**understand** 6:19
  53:10 100:13

**understood** 7:1
**unemployed**
  90:21
**unfair** 32:7
  46:12,13,15
  107:15
**unfairly** 15:12
  34:7 46:2,4
  101:4
**UNITED** 1:1 4:1
**unqualified** 79:2
**upset** 45:2 97:3
  97:9 108:2
  112:4
**use** 81:4 86:2
**usually** 49:14

---
**V**
---
**vacancy** 12:9
  51:6 52:8
**Valley** 109:19
**variety** 100:8
**verify** 75:19
**victim** 15:15,21
  17:5 32:23
  80:16 94:17,21
**victimized** 95:2
**vindictive**
  118:11
**vote** 77:16,20
**voted** 45:13 77:9
  78:7
**vs** 1:9 4:9

---
**W**
---
**wage** 82:6,10,19
  82:22 83:2
**wait** 111:2
**waived** 2:8,23
**walk** 44:16
**walked** 111:22
  112:8
**Wal-Mart** 91:18
  91:19 92:11
**want** 7:18 8:3

11:21,22 49:3
  98:7 101:2
  109:21 114:6
**wanted** 34:7
  50:6 84:9,10
  84:10 98:5
  99:15 107:8
**Ward** 38:18,19
  38:23 39:3
**wasn't** 25:6 36:7
  45:20 53:7,18
  69:21,23 83:21
  93:17 97:7
**way** 75:11
**week** 42:1 43:5
**weeks** 24:15,19
  47:9 113:9,19
**went** 26:7,8 37:7
  42:6,6 53:8,15
  53:17 60:12
  92:22 95:10,15
  101:8 103:5
  108:13
**weren't** 42:19
  43:9 54:6
  78:17 82:11
  113:20
**we'll** 15:14
  100:7
**we're** 6:15 62:6
  63:12 81:21
  100:3,9,10
**we've** 38:22 52:6
  55:8 57:15
  65:7 68:8
  80:10 91:12
**Whereabouts**
  25:23
**white** 2:2 4:23
  5:16 29:7 40:9
  40:11,12 43:8
  59:4 64:6
  65:23 74:1
  106:16,19

**whites** 95:6
**Williams** 8:17
  10:17
**Wingard** 28:21
  28:22 29:3,9
  29:14 30:2
  34:16 39:8
  42:15 50:1,7
  50:15 57:17
  59:16 61:9
  63:16 65:1
  75:8 76:2,15
  76:20 77:2,13
  77:22 79:22
  84:3 89:15
  119:21
**Wingard's**
  30:18 76:8
**witness** 2:8 5:19
  122:14
**woman** 42:19
  43:6 58:19
  64:1,3
**women** 17:22
  59:1
**words** 71:5
  98:23 109:4
**work** 23:15,18
  23:21 24:6
  26:10 35:6
  42:6 43:4
  54:18 56:8
  82:17 92:1
  101:8 102:12
  102:17 105:6
  108:3,7 112:5
  120:23
**worked** 16:13
  23:22 24:13
  25:22 27:5
  28:9 69:23
  78:12 105:8,14
  105:23 106:14
  112:10 113:15

**worker** 22:23
  30:5 36:21
  47:10,12 52:13
  54:3 55:7,17
  57:14 81:1
  97:23 104:15
  116:15 117:22
**workers** 17:1
  47:11 48:14
  55:12 103:19
**working** 23:9
  24:4 32:9 47:8
  47:15 49:4
  56:15 60:19
  82:3 115:12
**works** 54:12,14
**worried** 100:2
**wouldn't** 53:22
  82:17 90:1
  99:11
**wrap** 48:5
**wrapping** 48:4
**written** 75:20
  89:21

---
**X**
---
**X** 3:2

---
**Y**
---
**yeah** 11:14,19
  92:4 108:11
**year** 23:16 24:2
  24:3,14 41:23
  56:7,9,14,16
  62:15 102:8
**years** 22:3 26:3
  26:4 56:7,8
  57:3
**year-old** 92:2
**y'all** 70:21 71:1

---
**$**
---
**$6.50** 82:10

---
**0**
---

# FREEDOM COURT REPORTING

**02** 27:21
**04** 23:5,7,13
   110:9
**05** 23:13 24:3,14
   41:23
**06** 24:3,14 25:9
   25:14 41:23
   110:11 112:16
   112:20
**07** 112:13

---
**1**
---
**1** 3:14 11:8,10
   12:6 51:3,13
   65:11 66:4
   72:11
**10** 93:3
**11** 22:4 93:10
**11th** 22:5 62:19
   69:5 103:10
**11-14** 112:20
**13** 94:11
**14** 14:10 94:19
**15th** 2:4
**16** 9:20
**18 19** 2:3 5:2,17
**19** 94:20
**1961** 8:10
**1980** 62:16
**1999** 55:5,13,16

---
**2**
---
**2** 3:15 12:7 51:4
   51:13 63:6
   65:12 66:4
   72:13 80:21
   88:11 118:21
   119:7,10
**2:07-CV-704-...**
   1:17 4:17
**20** 61:17
**2000** 27:21
**2004** 61:17
**2006** 14:1,11
   18:22 19:2

20:21 23:2
59:19 62:5
65:20 90:19
96:7 97:11
101:18
**2007** 95:8
   110:19
**2008** 2:5
**207-CV-704-...**
   6:10
**21** 9:20
**22nd** 12:15
   65:12,20 67:21
**23rd** 12:16
**24th** 110:19
**25th** 65:12

---
**3**
---
**3** 3:16 12:8 13:7
   51:6,13,18
   52:7 55:9
   57:15 58:5
   81:19 94:9
   109:22 111:11
**35203** 2:4 5:3,18
**35238** 5:8
**3765** 5:7

---
**4**
---
**4** 3:17 12:11
   14:1 51:7,13
   61:13 62:8
   83:5 94:8,19
   115:7
**414** 6:6

---
**5**
---
**5** 3:18 12:14
   18:22 20:21
   51:8,13,20
   59:19 65:8
   94:10

---
**6**
---
**6** 3:19 12:16

51:9,13 80:10

---
**7**
---
**7** 3:20 12:1,18
   12:21 33:20
   51:10,13 89:1
   91:13 109:17
   111:11 114:7

---
**8**
---
**8** 3:21
**80** 26:5
**83** 26:5,12

---
**9**
---
**9** 90:7
**9th** 8:10
**9:00** 5:19
**91** 26:12,21
**95** 27:7
**98** 27:7

---

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

In The Matter Of:

## GLORIA SIMS
v.
## COOSA COUNTY BOARD OF EDUCATION

## NO. 2:07-CV-704-MEF

---

## PAM JONES
## May 21, 2008

---



**TYLER EATON**

TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

## THE HIGHEST QUALITY IN COURT REPORTING

205.252.9152 • Toll-Free 800.458.6031 • Fax 205.252.0196
One Federal Place, Suite 1020 • 1819 Fifth Avenue North • Birmingham, Alabama 35203
————— www.TylerEaton.com —————

## Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CIVIL ACTION NO. 2:07-CV-704-MEF

GLORIA SIMS,
        Plaintiff,
vs.
COOSA COUNTY BOARD OF EDUCATION,
        Defendant.


DEPOSITION
OF
PAM JONES
May 21, 2008


REPORTED BY:  Gail B. Pritchett
        Certified Realtime Reporter,
        Registered Professional
        Reporter and Notary Public

## Page 2

### S T I P U L A T I O N

        IT IS STIPULATED AND AGREED,
by and between the parties, through their
respective counsel, that the deposition of
PAM JONES may be taken before Gail B.
Pritchett, Commissioner, Certified
Realtime Reporter, Registered Professional
Reporter and Notary Public;
        That the signature to and
reading of the deposition by the witness
is waived, the deposition to have the same
force and effect as if full compliance had
been had with all laws and rules of Court
relating to the taking of depositions;
        That it shall not be necessary
for any objections to be made by counsel
to any questions, except as to form or
leading questions, and that counsel for
the parties may make objections and assign
grounds at the time of trial, or at the
time said deposition is offered in
evidence, or prior thereto.

## Page 3

### A P P E A R A N C E S

FOR THE PLAINTIFF:
    Mr. Jerry D. Roberson
    Attorney at Law
    Roberson & Roberson
    3765 Kinross Drive
    P. O. Box 380487
    Birmingham, Alabama 35238-0487

FOR THE DEFENDANT:
    Ms. Anne R. Yuengert
    Attorney at Law
    Bradley, Arant, Rose & White, LLP
    One Federal Place
    1819 Fifth Avenue North
    Birmingham, Alabama 35203


OTHERS PRESENT:
    Mr. Todd Wingard

## Page 4

INDEX OF EXAMINATION
PAGE:
EXAMINATION BY MR. ROBERSON        7
EXAMINATION BY MS. YUENGERT        34
REEXAMINATION BY MR. ROBERSON        36


INDEX OF EXHIBITS
PAGE:
Plaintiff's Exhibit 7        18

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                        http://www.TylerEaton.com

GLORIA SIMS                                                          PAM JONES
COOSA COUNTY BOARD OF EDUCATION                                     May 21, 2008

Page 5

1       I, Gail B. Pritchett, a
2  Certified Realtime Reporter and Registered
3  Professional Reporter of Birmingham,
4  Alabama, and a Notary Public for the State
5  of Alabama at Large, acting as
6  Commissioner, certify that on this date,
7  as provided by the Federal Rules of Civil
8  Procedure of the United States District
9  Court, and the foregoing stipulation of
10 counsel, there came before me at the Coosa
11 County Board of Education, 2001 Nixburg
12 Road, Rockford, Alabama, on the 21st day
13 of May, 2008, commencing at 12:08 p.m.,
14 PAM JONES, witness in the above cause, for
15 oral examination, whereupon the following
16 proceedings were had:
17
18      MR. ROBERSON:  All right.
19 This is the videotape deposition of Ms.
20 Pam Jones.  Today is May 21st, 2008.  We
21 are at the Coosa County Board of Education
22 offices in Rockford, Alabama.  My name is
23 Jerry Roberson.  I'm the attorney for the

Page 6

1  plaintiff, Gloria Sims, and I'm also
2  operating the video camera.
3       This case is pending in the
4  United States District Court for the
5  Middle District of Alabama, Northern
6  Division, CV 07-704.  It's styled Gloria
7  Sims, plaintiff, versus Coosa County Board
8  of Education, defendant.
9       I would ask all counsel to
10 state their name and the party they
11 represent.
12      MS. YUENGERT:  I'm Anne
13 Yuengert.  And along with Donald Sweeney,
14 I represent the Coosa County Board of
15 Education.
16      MR. ROBERSON:  Would you
17 please swear our witness, ma'am?
18
19      PAM JONES,
20 having been first duly sworn, was examined
21 and testified as follows:
22
23      THE COURT REPORTER:  Usual

Page 7

1  stipulations?
2       MR. ROBERSON:  Yes.
3       MS. YUENGERT:  Yes.  Ms. Jones
4  will let us know whether she wants to read
5  and sign.
6       MR. ROBERSON:  Okay.
7
8  EXAMINATION BY MR. ROBERSON:
9       Q.   Would you state your full
10 name, please?
11      A.   Pamela Patrice Jones.
12      Q.   And are you presently employed
13 with the Coosa County Board of Education?
14      A.   I am.
15      Q.   How long have you been
16 employed with them?
17      A.   Since 1994.
18      Q.   What is your position, ma'am?
19      A.   Child nutrition, general fund
20 secretary.
21      Q.   And have you been in that
22 position the whole time?
23      A.   Yes -- no, not child

Page 8

1  nutrition, I have not.  I have been child
2  nutrition director for eight years.
3       Q.   Okay.  What position did you
4  hold previously?
5       A.   I was general fund, child
6  nutrition secretary.
7       Q.   Who did you work under?
8       A.   William Campbell.
9       Q.   Is he still --
10      A.   No, he passed away.
11      Q.   Oh, I'm sorry.
12      Now, could you tell me about
13 your education and background?
14      A.   Presently I hold a BS degree
15 in elementary education.  I have an
16 associate's degree in elementary
17 education.  Working on my certification
18 for child nutrition director.
19      Q.   Okay.  And have you been
20 working for the last eight years on that
21 certification?
22      A.   No.  I just started working on
23 my certification.

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Page 9

1    Q.    Okay.  Is that a requirement
2    for the position you hold?
3    A.    Yes.
4    Q.    Okay.  And was it a
5    requirement at the time you were awarded
6    the position?
7    A.    Was it a requirement.  Yes.
8    Q.    And so they hired you with the
9    understanding that you were going to work
10   toward this degree?
11   A.    Correct.
12   Q.    Okay.  And that's what you are
13   doing?
14   A.    That's correct.
15   Q.    Okay.  Now, as part of your
16   job, do you oversee the lunchroom programs
17   at all of the schools in Coosa County?
18   A.    Yes.
19   Q.    And so in the chain of
20   command, so to speak --
21   A.    Yes.
22   Q.    -- are you over all of the
23   cafeteria managers and lunchroom workers?

Page 10

1    A.    Correct.
2    Q.    Do you know how many,
3    approximately, employees there are that
4    you supervise?
5    A.    Approximately seventeen.
6    Q.    Okay.  At four schools?
7    A.    Three.
8    Q.    Three schools.  High school --
9    A.    Central Elementary, Middle and
10   High School.
11   Q.    Okay.  And those are -- when
12   we say schools, those are different
13   facilities, that is, structures,
14   buildings, correct?
15   A.    Correct.
16   Q.    Okay.  And each one of them
17   has a cafeteria?
18   A.    No.
19   Q.    No?
20   A.    Central Elementary and Middle
21   has one kitchen.  The high school has one
22   kitchen.
23   Q.    Okay.  So that's why they

Page 11

1    lumped all of the people together?
2    A.    Right.
3    Q.    Okay.  I'm with you now.
4          And I understand, Ms. Jones,
5    that you were one of the members of a
6    three-person committee that interviewed
7    the applicants when the lunchroom worker
8    position was awarded to Mr. McKinney --
9    A.    Correct.
10   Q.    -- is that correct?  You
11   interviewed him along with Ms. Forbus and
12   the principal, Mr. Bullard?
13   A.    Correct.
14   Q.    And based on your interview
15   and the other applicants you interviewed,
16   you made the decision to hire him,
17   correct?
18   A.    I made a recommendation.
19   Q.    Okay.  You made the
20   recommendation that he was the best
21   candidate?
22   A.    Correct.
23   Q.    Okay.  And then I assume Mr.

Page 12

1    Bullard -- I mean, not Mr. Bullard, Mr. --
2    was it unanimous?  I mean, all three of
3    y'all had the same recommendation?
4    A.    Was it a unanimous decision.
5    I took into consideration that Mr. Bullard
6    and Ms. Forbus would be working directly
7    with Mr. McKinney, and not me myself.
8    Q.    Correct.
9    A.    So whatever decision they
10   made, I went along with it.
11   Q.    Okay.  Whose decision was it?
12   A.    Final?  Final decision or --
13   Q.    No.
14   A.    -- initial decision?
15   Q.    Initial.
16   A.    Mr. Bullard and Ms. Forbus.
17   Q.    Okay.  So they recommended Mr.
18   McKinney --
19   A.    Correct.
20   Q.    -- and you agreed?
21   A.    Correct.
22   Q.    And then Mr. Wingard has to
23   approve it?

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

PAM JONES
May 21, 2008

---

Page 13

1    A.   Correct.
2    Q.   Does the Board have to approve
3 it?
4    A.   Yes.
5    Q.   Okay.  So they said grace over
6 it, they -- they approved him?
7    A.   Yes.
8    Q.   Okay.  What was important to
9 you in terms of Mr. McKinney's
10 qualifications?  And what I'm asking is
11 why was he awarded the position?  Why did
12 you feel he was the best candidate?
13    A.   He met all qualifications that
14 we were asking for.
15    Q.   And what were those
16 qualifications?
17    A.   We had a list -- we gave them
18 a -- we had a list of questions.  And the
19 questions that were on the list, he met
20 all of those requirements.
21    Q.   He had a high school
22 education?
23    A.   He said he did.

---

Page 14

1    Q.   Did you confirm that in some
2 way?
3    A.   I did not.
4    Q.   Do you know if anybody did?
5    A.   I do not know that.
6    Q.   Did you contact any of his
7 previous employers?
8    A.   I did not.
9    Q.   Did anyone?
10    A.   Not of my knowing.
11    Q.   What was the race of the
12 person who -- whose position -- who had
13 held that position previous to this?
14    A.   Black.
15    Q.   And who was that individual?
16    A.   Michael Kelley.
17    Q.   Is he a black male?
18    A.   Yes.
19    Q.   And is the person that was
20 selected for the position a black male,
21 Mr. McKinney?
22    A.   Yes.
23    Q.   And was he the only black who

---

Page 15

1 at the time of his hiring was working as a
2 lunchroom worker at the high school?  That
3 is, were all of the other cafeteria
4 workers white?
5    A.   Can you repeat that?
6    Q.   Sure.  Were all of the other
7 cafeteria workers white?
8    MS. YUENGERT:  At the high
9 school?
10    Q.   At the high school, yes,
11 ma'am.
12    A.   That were working --
13    Q.   At the time he was hired.
14    A.   Yes.
15    Q.   So he was replacing a black
16 who was the only black, and then he became
17 the only black, correct?
18    A.   Yes.
19    Q.   Now -- and he was replacing
20 the only male, and he became the only male
21 at the high school, correct?
22    A.   Yes.
23    Q.   Okay.  Was any of that

---

Page 16

1 important to you in making your decision?
2    A.   No.
3    Q.   So --
4    A.   Because we had other people
5 that were in consideration for that
6 position, and they were not male and they
7 were not black.
8    Q.   So to your way of thinking, it
9 would have been perfectly appropriate to
10 hire a woman in that position if you felt
11 she was the best candidate?
12    A.   Yes.
13    Q.   And it would have been
14 perfectly appropriate to hire a white
15 person, male or female, in that position
16 if you felt they were the best candidate?
17    A.   Yes.
18    Q.   Now, Ms. Jones, have you ever
19 in the presence of Ms. Forbus made the
20 statement that you wanted to get some
21 color in the lunchroom?
22    A.   No.
23    Q.   Have you ever made the

---

4 (Pages 13 to 16)

GLORIA SIMS                                                          PAM JONES
COOSA COUNTY BOARD OF EDUCATION                                    May 21, 2008

---

Page 17

1  statement that that position now occupied
2  by Mr. McKinney was a man's position or a
3  man's job?
4      A.   No.
5      Q.   Have you ever made that
6  statement anytime to anybody?
7      A.   No.
8      Q.   Either of those statements?
9      A.   No.
10     Q.   Now, you are aware that you
11  presently have three -- you have been
12  child nutrition director since 2000 --
13     A.   1.
14     Q.   -- 1. That since you have
15  been hired, you -- as child nutrition
16  director, you have hired three cafeteria
17  workers who do not have a high school
18  education?
19     A.   I was made aware of that when
20  this lawsuit came about.
21     Q.   Well, I'm glad to have
22  educated you, ma'am.
23     A.   Thank you.

---

Page 18

1      Q.   To your knowledge, was it a
2  requirement in 2003 when Ms. Murphy was
3  hired?
4      A.   Yes.
5      Q.   To your knowledge, was it a
6  requirement in 2002 when Calvin Owens was
7  hired?
8      A.   Yes.
9      Q.   And was it a requirement in
10  2005 when Lisa Cleveland was hired?
11     A.   Yes.
12     Q.   And you agree with me that all
13  three of those individuals do not possess
14  a high school diploma or a GED, correct?
15     A.   That I have not checked to
16  see.
17     Q.   Okay.
18     A.   I was not in on that interview
19  process, so --
20          (Whereupon, Plaintiff's
21          Exhibit 7 was marked for
22          identification.)
23     Q.   Let me show you what I have

---

Page 19

1  marked as Exhibit 7 to your deposition.
2  And this is a multipage document which
3  includes things that were produced to me
4  today at my request; I asked for these
5  documents, concerning that information.
6  And if you would on -- it's on the page
7  0035, it has a list of the staff at the
8  schools. Do you see that, ma'am?
9      A.   Yes.
10     Q.   And it has a category with
11  their name, the date they were hired and
12  their educational status. Do you see
13  that?
14     A.   Yes.
15     Q.   And do you agree with me that
16  the people I identified do not possess
17  those educational requirements?
18     A.   (Reviewing document.) I have
19  not checked to see if they do, but
20  according to this they don't.
21     Q.   That's what --
22     A.   Yes.
23     Q.   I don't have any information

---

Page 20

1  other than this document.
2      A.   Right.
3      Q.   Okay. But according to this
4  document, they do not possess that?
5      A.   That's correct.
6      Q.   And you don't know any reason
7  why your lawyers would provide me with a
8  document that would be inaccurate?
9      A.   No, they should not.
10     Q.   Okay. Now, I'm going to show
11  you what's marked as -- also a document
12  out of Exhibit 7, 0037, and it looks like
13  it's just a statement or memo from you to
14  Todd Wingard. Have you seen that document
15  before?
16     A.   Yes.
17     Q.   What is that document, 0037?
18     A.   It's a recommendation for
19  Terry Chambers and Lisa Cleveland for a
20  temporary lunchroom position.
21     Q.   Okay. And you recommended
22  them?
23     A.   That's correct.

---

5 (Pages 17 to 20)

Page 21

2 Q. Well, you are aware of this
requirement, right?
3 A. Yes.
4 Q. Why did you recommend Lisa
5 Chambers when she doesn't possess a high
6 school education?
7 A. Lisa Cleveland?
8 Q. I'm sorry, Lisa Cleveland.
9 Excuse me, I apologize.
10 A. Repeat that question.
11 Q. Why did you recommend Lisa
12 Cleveland for a job for which, according
13 to your testimony, she is not qualified?
14 A. Because whoever interviewed
15 her recommended her to me, and I
16 recommended them to Mr. Wingard for the
17 Board to approve.
18 Q. Well, who recommended her to
19 you?
20 A. Whoever did the interview
21 process. And it wasn't me.
22 Q. Who was it?
23 A. I do not know. As of right

Page 22

1 now, whenever we did the interview for Mr.
2 McKinney, we were more structured then; we
3 had more people; we sat down like a
4 roundtable discussion, like you sitting
5 there and we'd ask him questions. And at
6 that time it was not like that. Doing a
7 better job of the hiring process.
8 Q. All right. Page 0038, can you
9 tell me what that document is?
10 A. That's a letter of
11 understanding concerning temporary
12 employment for Lisa Cleveland.
13 Q. Is that the job that she got
14 in the lunchroom?
15 A. Yes, temporary position.
16 Q. And what about that hiring --
17 what would be considered the exigent
18 circumstances that necessitated her
19 hiring, do you know?
20 A. Exigent?
21 Q. Yes.
22 A. Explain that to me.
23 Q. The first paragraph, "I

Page 23

1 understand a determination has been made
2 by this school system that due to exigent
3 circumstances." You don't -- do you know
4 what that means?
5 A. I'm assuming it means that she
6 may or may not be here permanently.
7 Q. Well, exigent circumstances
8 normally mean time is of the essence --
9 A. Okay.
10 Q. -- that due to -- we are under
11 some time constraint --
12 A. Okay.
13 Q. -- or something is requiring
14 us to take action immediately.
15 A. Okay.
16 Q. "The position of a six-hour
17 lunchroom worker must be filled on a
18 temporary basis." Do you know anything
19 that caused her position to be filled on
20 such a basis?
21 A. On a temporary basis?
22 Q. On --
23 A. Because at that time we did

Page 24

1 not have a lunchroom. And the only reason
2 she would be temporary is because once we
3 filled -- once we got our prep kitchen,
4 which is up there now, we may or may not
5 need her as a worker.
6 Q. Okay. She is still working,
7 though, isn't she?
8 A. Yes.
9 Q. Even though you have got your
10 kitchen completed now, right?
11 A. Yes. It is still because of
12 the way we are having to do things. And
13 that's just a prep kitchen; it's not a
14 cafeteria.
15 Q. You see what has been marked
16 as Exhibit -- or 0045, that page out of
17 Exhibit 7, this new hire checklist, Ms.
18 Cleveland?
19 A. Yes.
20 Q. Is there any requirement about
21 a high school education on there?
22 A. You are asking me do I see
23 that?

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

PAM JONES
May 21, 2008

---

Page 25

Q.    Yes, ma'am.
A.    No, I don't.
Q.    Thank you.  And Ms. Cleveland has been rehired, that is, a lunchroom worker works on a year contract, correct?
A.    Correct.
Q.    And then they are renewed or not renewed every year?
A.    Correct.
Q.    And then after three years, they are considered permanent or --
A.    No.
Q.    No?
A.    She has to be hired back for the fourth year.
Q.    Oh, okay.  So she doesn't receive what I'm going to call tenure --
A.    Correct.
Q.    -- until the fourth year of employment?
A.    That's correct.
Q.    Okay.  So is Ms. Cleveland -- she will have to be hired back next year

Page 26

in order to have tenure --
A.    That is correct.
Q.    -- is that correct?
A.    That's correct.
Q.    She has worked -- this is her third year?
A.    But she is still in a temporary position.
Q.    Does that matter?  I mean, what I'm saying is does it matter -- doesn't it count toward her tenure?
A.    That's not my part of my job. I have no clue how that -- how that works.
Q.    Okay.  All right.  Now, Ms. Jones, you are a minority, correct?
A.    Yes.
Q.    And you ought to be especially sensitive to a case like this, correct?
A.    Correct.
Q.    I mean, in fact, this -- the state school system, but Coosa County as well, has been in a lawsuit for a long time about minority practices, hiring

Page 27

practices.  Were you aware of that?
A.    That Coosa County Board?
Q.    Yes --
A.    No.
Q.    -- school board.  That they just recently came out from under --
A.    Oh, are you talking about Lee versus Macon?
Q.    Yes, ma'am, I am.
A.    Oh, yes, I'm aware of that.
Q.    And the school has made efforts to attract and retain minority candidates; do you agree with that?
A.    Like I said, I've only been in this hiring process thing for the last two or three years.  I have never just sat down and just interviewed someone to hire, so I have not been involved in that.
Q.    Well, do you agree with me that all positions should be open to candidates of either sex, either gender?
A.    Yes.
Q.    I mean, a principal could be a

Page 28

female, couldn't it?
A.    Yes.
Q.    A cafeteria worker could be a male or a female, right?
A.    Yes.
Q.    And every position can be filled by a black or a white; do you agree with that?
A.    Every position here at Coosa County?
Q.    Yes.
A.    Yes.
Q.    I mean, you are not disqualified from holding a position because of your gender or your race?
A.    That's correct.
Q.    Okay.  And it would be illegal to do that, wouldn't it?
A.    On that basis?
Q.    Absolutely.  And you agree with me that an employer who intentionally violates that law should be punished, you would agree with that, wouldn't you?

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                          http://www.TylerEaton.com

Page 29

MS. YUENGERT: I'm going to
object to the form to the extent it
requires some kind of legal conclusion,
but you can answer it.
    A.    You said what now? What did
you say?
    MS. YUENGERT: I made an
objection for the record.
    A.    Okay.
    MS. YUENGERT: And I told you
that to the extent you understand it, his
question, go ahead and answer it.
    A.    To the extent that I
understand it. Say that again, then.
    Q.    (BY MR. ROBERSON:) Let me try
it a different way.
    A.    Yes, please.
    Q.    You understand that the law
requires that employers do not
discriminate when they make hiring
decisions or other employment decisions,
you understand that?
    A.    I understand that we cannot

Page 30

discriminate, yes.
    Q.    And it is unlawful to
discriminate based on race or gender; do
you agree that that's the law?
    A.    Yes.
    Q.    And you agree that if an
employer violates that law, just like if
you violate the law, they should be
punished, correct?
    MS. YUENGERT: And I'm going
to object to the form. You can answer.
    A.    I don't know what kind of
answer I'm supposed to be giving you for
that.
    Q.    Well, ma'am --
    A.    You are asking me to prosecute
someone for doing it?
    Q.    I am not. I'm saying if you
violate the law, you expect to be
punished?
    A.    If I violate the law.
    Q.    If you run a stop sign and the
police see you, you expect to get a

Page 31

ticket, don't you?
    A.    Yes.
    Q.    If you write a bad check
knowingly, you expect to get -- you expect
to have charges brought against you, don't
you?
    A.    Yes.
    Q.    Okay. Same thing for an
employer; if they knowingly violate a law,
you would expect them to be punished for
it, correct?
    MS. YUENGERT: Objection to
the form. You can answer if you can.
    A.    I do not know what kind of
answer to give to that kind of question,
so --
    Q.    A truthful one.
    A.    I'm not a lawyer, so I don't
know.
    Q.    Okay.
    A.    I'm not going to do anything
knowingly -- me personally, I'm not going
to do anything knowingly.

Page 32

    Q.    When Ms. Sims worked here as a
substitute --
    A.    Yes.
    Q.    -- cafeteria worker, did you
have -- I know your office is located
here --
    A.    Right.
    Q.    -- and you are not at the high
school on a day-to-day basis, correct?
    A.    That's correct.
    Q.    But did you have opportunities
to observe her work performance?
    A.    Very little, but I would go in
and watch.
    Q.    Did you take any exception to
how she did her job?
    A.    I just watched.
    Q.    Did you ever reprimand her or
take any disciplinary action against her?
    A.    I did not.
    Q.    Did you have discussions with
Ms. Forbus about Ms. Sims' job
performance?

8 (Pages 29 to 32)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

PAM JONES
May 21, 2008

Page 33

A.   I did.
Q.   What did Ms. Forbus tell you about her job performance?
A.   On a couple of occasions, Ms. Forbus told me she was doing a good job. Is that enough?
Q.   Did she tell you anything negative about her job performance?
A.   Maybe on the day that she left, she walked off the job, she was upset that day.
Q.   And would that be the day that she found out she didn't get awarded the permanent position or the position that Mr. McKinney got the position for?
A.   No, it was not that day.
Q.   Do you know when it was or why she walked off the job?
A.   I can't recall what happened that day, but it was not the day that Mr. McKinney got the position.
Q.   Now, I think I'm near through, if you would give me just one moment to

Page 34

talk to Ms. Sims.
MS. YUENGERT:  Do you want us to step out?
MR. ROBERSON:  Let's go off the record and -- we'll go off the record at 12:35.
(Whereupon, a break was had from 12:35 p.m. until 12:40 p.m.)
MR. ROBERSON:  We are back on the record at 12:40.
Ms. Jones, I don't have any further questions.  Thank you, ma'am.
A.   Thank you.

EXAMINATION BY MS. YUENGERT:
Q.   Ms. Jones, I'm Anne Yuengert, and I represent the Board of Education. And I just have a couple of follow-up questions.
In your testimony about your recommendation for the hiring of Terry Chambers and Lisa Cleveland, you were

Page 35

asked why did you recommend Ms. Cleveland for the job when you knew she wasn't qualified.
When you made the recommendation that the Board hire Ms. Cleveland, did you know that she didn't have a high school diploma?
A.   I did not.
Q.   Did you know that she didn't have a GED?
A.   I did not.
Q.   And when did you learn that she didn't?
A.   Whenever this -- whenever this lawsuit came about.
Q.   Okay.  And you also testified about some conversations you had with Ms. Forbus about Ms. Sims' job performance. And you said that on a couple of occasions, Ms. Forbus told you that Ms. Sims was doing a good job and that Ms. Forbus also talked to you about the day that Ms. Sims walked off the job.  Were

Page 36

there any other things that you talked with Ms. Forbus about regarding Ms. Sims' performance?
A.   Ms. Forbus told me on a couple of occasions that Ms. Sims were letting the high school boys take her -- carry the trash to the garbage can and when she had heavy lifting to do that she would let the young guys do the lifting.
Q.   Anything else?
A.   That's all I can recall right now that Ms. Forbus came to me about with Ms. Sims.
MS. YUENGERT:  Okay.  That's all I have.

REEXAMINATION BY MR. ROBERSON:
Q.   Ms. Jones, is there any writing that reflects anything that Ms. Forbus told you about Ms. Sims?
A.   Do you mean any documentation?
Q.   Yes, ma'am, that's exactly what I mean.

9 (Pages 33 to 36)

GLORIA SIMS

COOSA COUNTY BOARD OF EDUCATION

PAM JONES

May 21, 2008

---

Page 37

1     A.    Yes.
2     Q.    Where is it?
3     A.    In a folder in my office.
4     Q.    Is it part of her personnel
5 file?
6     A.    No.
7     Q.    Do you keep folders on the
8 other employees?
9     A.    Yes.
10     Q.    All of the cafeteria people?
11     A.    Yes.
12     Q.    Have you shared the contents
13 of that folder with the attorneys for the
14 school?
15     A.    This has been an ongoing -- I
16 do not remember whether they were or not.
17     Q.    Did you share it with the EEOC
18 who was investigating her complaint?
19     A.    I don't remember that either.
20     Q.    Well --
21     A.    It has been going on for a
22 while. I have had to come up with a lot
23 of stuff since then, I --

Page 38

1     Q.    When did you make -- did you
2 create the documents?
3     A.    Yes.
4     Q.    When?
5     A.    The days that it happened.
6     Q.    Is it a notebook, just a scrap
7 paper?
8     A.    No, it's a folder that has got
9 notes in it.
10     Q.    Well, do you keep notes on all
11 of the employees or is it -- are these
12 notes only about Ms. Sims?
13     A.    No, I keep notes on -- when
14 there is an issue or a problem, I keep
15 notes.
16     Q.    Okay. So --
17     A.    I document.
18     Q.    For all of the employees, it's
19 in the same notebook?
20     A.    No. They're -- it's not a
21 notebook. It's their folders.
22     Q.    Oh. You tear it out of your
23 notebook and put it in their folder?

Page 39

1     A.    I type it and put it in a
2 folder.
3     Q.    And so how many pages are
4 there for Ms. Sims?
5     A.    I do not know.
6     Q.    Have you reviewed that folder
7 recently?
8     A.    I have not.
9     Q.    Does it still exist?
10     A.    I hope so.
11     Q.    Can you provide it to your
12 attorneys?
13     A.    If they ask for it, yes.
14     Q.    Well, what if I ask for it,
15 can you provide it to your attorneys?
16     A.    If she asks for it, she can
17 have it.
18     Q.    Are they school board records
19 or are they your records?
20     A.    They are mine.
21     Q.    Do you have these notes for
22 all your cafeteria workers?
23     A.    If there was an issue, I do.

Page 40

1     MR. ROBERSON: All right.
2 Thank you, ma'am. I don't have anything
3 else.
4     A.    You are welcome.
5     MS. YUENGERT: I don't have
6 anything else. Thank you.
7     MR. ROBERSON: We will go off
8 the record at 12:45.
9
10
11     (Whereupon, the deposition of
12 Pam Jones was concluded at
13 12:45 p.m. on the 21st day of
14 May, 2008.)
15
16     FURTHER THE DEPONENT SAITH NOT
17
18
19
20
21
22
23

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Page 41

C E R T I F I C A T E

STATE OF ALABAMA)
JEFFERSON COUNTY)

    I hereby certify that the
above and foregoing deposition was taken
down by me in stenotypy, and the questions
and answers thereto were reduced to
typewriting under my supervision, and that
the foregoing represents a true and
correct transcript of the deposition given
by said witness upon said hearing.
    I further certify that I am
neither of counsel nor of kin to the
parties to the action, nor am I in anywise
interested in the result of said cause.


COMMISSIONER - NOTARY PUBLIC
ACCR LICENSE NO. 116

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

PAM JONES
May 21, 2008

## A

Absolutely
 28:20
ACCR
 41:23
acting
 5:5
action
 1:5  23:14  32:19  41:17
agree
 18:12  19:15  27:13,19  28:7
  28:20,23  30:4,6
agreed
 2:3  12:20
ahead
 29:12
Alabama
 1:2  3:9,17  5:4,5,12,22
  6:5  41:4
Anne
 3:12  6:12  34:17
answer
 29:4,12  30:11,13  31:13,15
answers
 41:10
anybody
 14:4  17:6
anytime
 17:6
anywise
 41:17
apologize
 21:9
applicants
 11:7,15
appropriate
 16:9,14
approve
 12:23  13:2  21:17
approved
 13:6
approximately
 10:3,5
Arant
 3:14
asked
 19:4  35:1
asking
 13:10,14  24:22  30:16
asks
 39:16
assign
 2:20
associate's
 8:16
assume
 11:23
assuming
 23:5
attorney

3:5,13  5:23
attorneys
 37:13  39:12,15
attract
 27:12
Avenue
 3:16
awarded
 9:5  11:8  13:11  33:13
aware
 17:10,19  21:1  27:1,10

## B

B
 1:20  2:6  5:1
back
 25:14,23  34:10
background
 8:13
bad
 31:3
based
 11:14  30:3
basis
 23:18,20,21  28:19  32:9
best
 11:20  13:12  16:11,16
better
 22:7
Birmingham
 3:9,17  5:3
black
 14:14,17,20,23  15:15,16,17
  16:7  28:7
board
 1:10  5:11,21  6:7,14  7:13
  13:2  21:17  27:2,5  34:18
  35:5  39:18
Box
 3:8
boys
 36:6
Bradley
 3:14
break
 34:7
brought
 31:5
BS
 8:14
buildings
 10:14
Bullard
 11:12  12:1,1,5,16

## C

C
 3:1  41:1,1
cafeteria
 9:23  10:17  15:3,7  17:16

24:14  28:3  32:4  37:10
  39:22
call
 25:17
Calvin
 18:6
camera
 6:2
Campbell
 8:8
candidate
 11:21  13:12  16:11,16
candidates
 27:13,21
carry
 36:6
case
 6:3  26:18
category
 19:10
cause
 5:14  41:18
caused
 23:19
Central
 10:9,20
certification
 8:17,21,23
Certified
 1:21  2:7  5:2
certify
 5:6  41:7,15
chain
 9:19
Chambers
 20:19  21:5  34:23
charges
 31:5
check
 31:3
checked
 18:15  19:19
checklist
 24:17
child
 7:19,23  8:1,5,18  17:12,15
circumstances
 22:18  23:3,7
Civil
 1:5  5:7
Cleveland
 18:10  20:19  21:7,8,12
  22:12  24:18  25:3,22
  34:23  35:1,6
clue
 26:13
color
 16:21
come
 37:22
command

9:20
commencing
 5:13
Commissioner
 2:7  5:6  41:22
committee
 11:6
complaint
 37:18
completed
 24:10
compliance
 2:13
concerning
 19:5  22:11
concluded
 40:12
conclusion
 29:3
confirm
 14:1
consideration
 12:5  16:5
considered
 22:17  25:11
constraint
 23:11
contact
 14:6
contents
 37:12
contract
 25:5
conversations
 35:17
Coosa
 1:10  5:10,21  6:7,14  7:13
  9:17  26:21  27:2  28:9
correct
 9:11,14  10:1,14,15  11:9,10
  11:13,17,22  12:8,19,21
  13:1  15:17,21  18:14
  20:5,23  25:5,6,9,18,21
  26:2,3,4,15,18,19  28:16
  30:9  31:11  32:9,10
  41:13
counsel
 2:5,17,19  5:10  6:9  41:16
count
 26:11
County
 1:10  5:11,21  6:7,14  7:13
  9:17  26:21  27:2  28:10
  41:5
couple
 33:4  34:19  35:19  36:4
Court
 1:1  2:14  5:9  6:4,23
create
 38:2
CV

6:6

## D

D
 3:4
date
 5:6  19:11
day
 5:12  33:9,11,12,16,20,20
  35:22  40:13
days
 38:5
day-to-day
 32:9
decision
 11:16  12:4,9,11,12,14  16:1
decisions
 29:21,21
defendant
 1:11  3:11  6:8
degree
 8:14,16  9:10
DEPONENT
 40:16
deposition
 1:14  2:5,11,12,22  5:19
  19:1  40:11  41:8,13
depositions
 2:15
determination
 23:1
different
 10:12  29:16
diploma
 18:14  35:7
directly
 12:6
director
 8:2,18  17:12,16
disciplinary
 32:19
discriminate
 29:20  30:1,3
discussion
 22:4
discussions
 32:21
disqualified
 28:14
District
 1:1,2  5:8  6:4,5
Division
 1:3  6:6
document
 19:2,18  20:1,4,8,11,14,17
  22:9  38:17
documentation
 36:21
documents
 19:5  38:2

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

PAM JONES
May 21, 2008

doing
9:13 22:6 30:17 33:5
35:21
Donald
6:13
Drive
3:7
due
23:2,10
duly
6:20

E

E
3:1,1 41:1,1
educated
17:22
education
1:10 5:11,21 6:8,15 7:13
8:13,15,17 13:22 17:18
21:6 24:21 34:18
educational
19:12,17
EEOC
37:17
effect
2:13
efforts
27:12
eight
8:2,20
either
17:8 27:21,21 37:19
elementary
8:15,16 10:9,20
employed
7:12,16
employees
10:3 37:8 38:11,18
employer
28:21 30:7 31:9
employers
14:7 29:19
employment
22:12 25:20 29:21
especially
26:17
essence
23:8
evidence
2:23
exactly
36:22
examination
4:1,3,4 5:15 7:8 34:16
examined
6:20
exception
32:15
Excuse

21:9
Exhibit
4:10 18:21 19:1 20:12
24:16,17
EXHIBITS
4:8
exigent
22:17,20 23:2,7
exist
39:9
expect
30:19,23 31:4,4,10
Explain
22:22
extent
29:2,11,13

F

F
41:1
facilities
10:13
fact
26:20
Federal
3:15 5:7
feel
13:12
felt
16:10,16
female
16:15 28:1,4
Fifth
3:16
file
37:5
filled
23:17,19 24:3 28:7
Final
12:12,12
first
6:20 22:23
folder
37:3,13 38:8,23 39:2,6
folders
37:7 38:21
following
5:15
follows
6:21
follow-up
34:19
Forbus
11:11 12:6,16 16:19 32:22
33:2,5 35:18,20,22
36:2,4,12,20
force
2:13
foregoing
5:9 41:8,12

form
2:18 29:2 30:11 31:13
found
33:13
four
10:6
fourth
25:15,19
full
2:13 7:9
fund
7:19 8:5
further
34:13 40:16 41:15

G

Gail
1:20 2:6 5:1
garbage
36:7
GED
18:14 35:10
gender
27:21 28:15 30:3
general
7:19 8:5
give
31:15 33:23
given
41:13
giving
30:13
glad
17:21
Gloria
1:7 6:1,6
go
29:12 32:13 34:4,5 40:7
going
9:9 20:10 25:17 29:1
30:10 31:21,22 37:21
good
33:5 35:21
grace
13:5
grounds
2:21
guys
36:9

H

happened
33:19 38:5
hearing
41:14
heavy
36:8
held
14:13
high

10:8,10,21 13:21 15:2,8,10
15:21 17:17 18:14 21:5
24:21 32:8 35:7 36:6
hire
11:16 16:10,14 24:17
27:17 35:5
hired
9:8 15:13 17:15,16 18:3,7
18:10 19:11 25:14,23
hiring
15:1 22:7,16,19 26:23
27:15 29:20 34:22
hold
8:4,14 9:2
holding
28:14
hope
39:10

I

identification
18:22
identified
19:16
illegal
28:17
immediately
23:14
important
13:8 16:1
inaccurate
20:8
includes
19:3
INDEX
4:1,8
individual
14:15
individuals
18:13
information
19:5,23
initial
12:14,15
intentionally
28:21
interested
41:18
interview
11:14 18:18 21:20 22:1
interviewed
11:6,11,15 21:14 27:17
investigating
37:18
involved
27:18
issue
38:14 39:23

J

JEFFERSON
41:5
Jerry
3:4 5:23
job
9:16 17:3 21:12 22:7,13
26:12 32:6,12 33:3,5,8
33:10,18 35:2,18,21,23
Jones
1:16 2:6 5:14,20 6:19 7:3
7:11 11:4 16:18 26:15
34:12,17 36:18 40:12

K

keep
37:7 38:10,13,14
Kelley
14:16
kin
41:16
kind
29:3 30:12 31:14,15
Kinross
3:7
kitchen
10:21,22 24:3,10,13
knew
35:2
know
7:4 10:2 14:4,5 20:6
21:23 22:19 23:3,18
30:12 31:14,19 32:5
33:17 35:6,9 39:5
knowing
14:10
knowingly
31:4,9,22,23
knowledge
18:1,5

L

L
2:1
Large
5:5
law
3:5,13 28:22 29:18 30:4
30:7,8,19,21 31:9
laws
2:14
lawsuit
17:20 26:22 35:15
lawyer
31:18
lawyers
20:7
leading
2:19
learn
35:12

Tyler Eaton Morgan Nichols & Pritchett, Inc.
Toll Free 800.458.6031                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

PAM JONES
May 21, 2008

Lee
27:7
left
33:10
legal
29:3
letter
22:10
letting
36:5
Let's
34:4
LICENSE
41:23
lifting
36:8,9
Lisa
18:10 20:19 21:4,7,8,11
22:12 34:23
list
13:17,18,19 19:7
little
32:13
LLP
3:14
located
32:5
long
7:15 26:22
looks
20:12
lot
37:22
lumped
11:1
lunchroom
9:16,23 11:7 15:2 16:21
20:20 22:14 23:17 24:1
25:4

**M**

Macon
27:8
making
16:1
male
14:17,20 15:20,20 16:6,15
28:4
managers
9:23
man's
17:2,3
marked
18:21 19:1 20:11 24:15
matter
26:9,10
ma'am
6:17 7:18 15:11 17:22
19:8 25:1 27:9 30:15
34:13 36:22 40:2

McKinney
11:8 12:7,18 14:21 17:2
22:2 33:15,21
McKinney's
13:9
mean
12:1,2 23:8 26:9,20
27:23 28:13 36:21,23
means
23:4,5
members
11:5
memo
20:13
met
13:13,19
Michael
14:16
Middle
6:5 10:9,20
mine
39:20
minority
26:15,23 27:12
moment
33:23
multipage
19:2
Murphy
18:2

**N**

N
2:1 3:1
name
5:22 6:10 7:10 19:11
near
33:22
necessary
2:16
necessitated
22:18
need
24:5
negative
33:8
neither
41:16
never
27:16
new
24:17
Nixburg
5:11
normally
23:8
North
3:16
Northern
1:2 6:5

Notary
1:23 2:9 5:4 41:22
notebook
38:6,19,21,23
notes
38:9,10,12,13,15 39:21
nutrition
7:19 8:1,2,6,18 17:12,15

**O**

O
2:1 3:8
object
29:2 30:11
objection
29:8 31:12
objections
2:17,20
observe
32:12
occasions
33:4 35:20 36:5
occupied
17:1
offered
2:22
office
32:5 37:3
offices
5:22
Oh
8:11 25:16 27:7,10 38:22
okay
7:6 8:3,19 9:1,4,12,15
10:6,11,16,23 11:3,19,23
12:11,17 13:5,8 15:23
18:17 20:3,10,21 23:9
23:12,15 24:6 25:16,22
26:14 28:17 29:9 31:8
31:20 35:16 36:14
38:16
once
24:2,3
ongoing
37:15
open
27:20
operating
6:2
opportunities
32:11
oral
5:15
order
26:1
ought
26:17
oversee
9:16
Owens

18:6

**P**

P
2:1 3:1,1,8
page
4:2,9 19:6 22:8 24:16
pages
39:3
Pam
1:16 2:6 5:14,20 6:19
40:12
Pamela
7:11
paper
38:7
paragraph
22:23
part
9:15 26:12 37:4
parties
2:4,20 41:17
party
6:10
passed
8:10
Patrice
7:11
pending
6:9
people
11:1 16:4 19:16 22:3
37:10
perfectly
16:9,14
performance
32:12,23 33:3,8 35:18
36:3
permanent
25:11 33:14
permanently
23:6
person
14:12,19 16:15
personally
31:22
personnel
37:4
Place
3:15
plaintiff
1:8 3:3 6:1,7
Plaintiff's
4:10 18:20
please
6:17 7:10 29:17
police
30:23
position
7:18,22 8:3 9:2,6 11:8

13:11 14:12,13,20 16:6
16:10,15 17:1,2 20:20
22:15 23:16,19 26:8
28:6,9,14 33:14,15,21
positions
27:20
possess
18:13 19:16 20:4 21:5
practices
26:23 27:1
prep
24:3,13
presence
16:19
PRESENT
3:20
presently
7:12 8:14 17:11
previous
14:7,13
previously
8:4
principal
11:12 27:23
prior
2:23
Pritchett
1:20 2:7 5:1
problem
38:14
Procedure
5:8
proceedings
5:16
process
18:19 21:21 22:7 27:15
produced
19:3
Professional
1:22 2:8 5:3
programs
9:16
prosecute
30:16
provide
20:7 39:11,15
provided
5:7
Public
1:23 2:9 5:4 41:22
punished
28:22 30:9,20 31:10
put
38:23 39:1
p.m
5:13 34:8,9 40:13

**Q**

qualifications
13:10,13,16

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION

PAM JONES
May 21, 2008

qualified
21:13 35:3
question
21:10 29:12 31:15
questions
2:18,19 13:18,19 22:5
34:13,20 41:9

**R**

R
3:1,12 41:1
race
14:11 28:15 30:3
read
7:4
reading
2:11
Realtime
1:21 2:8 5:2
reason
20:6 24:1
recall
33:19 36:11
receive
25:17
recommend
21:4,11 35:1
recommendation
11:18,20 12:3 20:18 34:22
35:5
recommended
12:17 20:21 21:15,16,18
record
29:8 34:5,5,11 40:8
records
39:18,19
reduced
41:10
REEXAMINATION
4:5 36:17
reflects
36:19
regarding
36:2
Registered
1:22 2:8 5:2
rehired
25:4
relating
2:15
remember
37:16,19
renewed
25:7,8
repeat
15:5 21:10
replacing
15:15,19
REPORTED
1:20

Reporter
1:21,23 2:8,9 5:2,3 6:23
represent
6:11,14 34:18
represents
41:12
reprimand
32:18
request
19:4
requirement
9:1,5,7 18:2,6,9 21:2
24:20
requirements
13:20 19:17
requires
29:3,19
requiring
23:13
respective
2:5
result
41:18
retain
27:12
reviewed
39:6
Reviewing
19:18
right
5:18 11:2 20:2 21:2,23
22:8 24:10 26:14 28:4
32:7 36:11 40:1
Road
5:12
Roberson
3:4,6,6 4:3,5 5:18,23
6:16 7:2,6,8 29:15
34:4,10 36:17 40:1,7
Rockford
5:12,22
Rose
3:14
roundtable
22:4
rules
2:14 5:7
run
30:22

**S**

S
2:1 3:1
SAITH
40:16
sat
22:3 27:16
saying
26:10 30:18
school

10:8,10,21 13:21 15:2,9,10
15:21 17:17 18:14 21:6
23:2 24:21 26:21 27:5
27:11 32:9 35:7 36:6
37:14 39:18
schools
9:17 10:6,8,12 19:8
scrap
38:6
secretary
7:20 8:6
see
18:16 19:8,12,19 24:15,22
30:23
seen
20:14
selected
14:20
sensitive
26:18
seventeen
10:5
sex
27:21
share
37:17
shared
37:12
show
18:23 20:10
sign
7:5 30:22
signature
2:10
Sims
1:7 6:1,7 32:1,22 34:1
35:18,21,23 36:2,5,13
36:20 38:12 39:4
sitting
22:4
six-hour
23:16
sorry
8:11 21:8
SOUTHERN
1:3
speak
9:20
staff
19:7
started
8:22
state
5:4 6:10 7:9 26:21 41:4
statement
16:20 17:1,6 20:13
statements
17:8
States
1:1 5:8 6:4
status

19:12
stenotypy
41:9
step
34:3
STIPULATED
2:3
stipulation
5:9
stipulations
7:1
stop
30:22
structured
22:2
structures
10:13
stuff
37:23
styled
6:6
substitute
32:2
supervise
10:4
supervision
41:11
supposed
30:13
Sure
15:6
swear
6:17
Sweeney
6:13
sworn
6:20
system
23:2 26:21

**T**

T
2:1,1 41:1,1
take
23:14 32:15,19 36:6
taken
2:6 41:8
talk
34:1
talked
35:22 36:1
talking
27:7
tear
38:22
tell
8:12 22:9 33:2,7
temporary
20:20 22:11,15 23:18,21
24:2 26:8

tenure
25:17 26:1,11
terms
13:9
Terry
20:19 34:22
testified
6:21 35:16
testimony
21:13 34:21
Thank
17:23 25:3 34:13,14 40:2
40:6
thereto
2:23 41:10
thing
27:15 31:8
things
19:3 24:12 36:1
think
33:22
thinking
16:8
third
26:6
three
10:7,8 12:2 17:11,16 18:13
25:10 27:16
three-person
11:6
ticket
31:1
time
2:21,22 7:22 9:5 15:1,13
22:6 23:8,11,23 26:23
today
5:20 19:4
Todd
3:21 20:14
told
29:10 33:5 35:20 36:4
36:20
transcript
41:13
trash
36:7
trial
2:21
true
41:12
truthful
31:17
try
29:15
two
27:15
type
39:1
typewriting
41:11

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031

http://www.TylerEaton.com

**GLORIA SIMS**
**COOSA COUNTY BOARD OF EDUCATION**

PAM JONES
May 21, 2008

| U | | |
|---|---|---|
| **U** | | |
| 2:1 | | |
| **unanimous** | | |
| 12:2,4 | | |
| **understand** | | |
| 11:4  23:1  29:11,14,18,22 | | |
| 29:23 | | |
| **understanding** | | |
| 9:9  22:11 | | |
| **United** | | |
| 1:1  5:8  6:4 | | |
| **unlawful** | | |
| 30:2 | | |
| **upset** | | |
| 33:11 | | |
| **Usual** | | |
| 6:23 | | |

| V | | |
|---|---|---|
| **versus** | | |
| 6:7  27:8 | | |
| **video** | | |
| 6:2 | | |
| **videotape** | | |
| 5:19 | | |
| **violate** | | |
| 30:8,19,21  31:9 | | |
| **violates** | | |
| 28:22  30:7 | | |
| **vs** | | |
| 1:9 | | |

| W | | |
|---|---|---|
| **waived** | | |
| 2:12 | | |
| **walked** | | |
| 33:10,18  35:23 | | |
| **want** | | |
| 34:2 | | |
| **wanted** | | |
| 16:20 | | |
| **wants** | | |
| 7:4 | | |
| **wasn't** | | |
| 21:21  35:2 | | |
| **watch** | | |
| 32:14 | | |
| **watched** | | |
| 32:17 | | |
| **way** | | |
| 14:2  16:8  24:12  29:16 | | |
| **welcome** | | |
| 40:4 | | |
| **went** | | |
| 12:10 | | |
| **we'll** | | |
| 34:5 | | |
| **white** | | |
| 3:14  15:4,7  16:14  28:7 | | |

**William**
8:8
**Wingard**
3:21  12:22  20:14  21:16
**witness**
2:11  5:14  6:17  41:14
**woman**
16:10
**work**
8:7  9:9  32:12
**worked**
26:5  32:1
**worker**
11:7  15:2  23:17  24:5
25:5  28:3  32:4
**workers**
9:23  15:4,7  17:17  39:22
**working**
8:17,20,22  12:6  15:1,12
24:6
**works**
25:5  26:13
**wouldn't**
28:18,23
**write**
31:3
**writing**
36:19

| Y | | |
|---|---|---|
| **year** | | |
| 25:5,8,15,19,23  26:6 | | |
| **years** | | |
| 8:2,20  25:10  27:16 | | |
| **young** | | |
| 36:9 | | |
| **Yuengert** | | |
| 3:12  4:4  6:12,13  7:3  15:8 | | |
| 29:1,7,10  30:10  31:12 | | |
| 34:2,16,17  36:14  40:5 | | |
| **y'all** | | |
| 12:3 | | |

| 0 | | |
|---|---|---|
| **0035** | | |
| 19:7 | | |
| **0037** | | |
| 20:12,17 | | |
| **0038** | | |
| 22:8 | | |
| **0045** | | |
| 24:16 | | |
| **07-704** | | |
| 6:6 | | |

| 1 | | |
|---|---|---|
| **1** | | |
| 17:13,14 | | |
| **116** | | |
| 41:23 | | |

**12:08**
5:13
**12:35**
34:6,8
**12:40**
34:8,11
**12:45**
40:8,13
**18**
4:10
**1819**
3:16
**1994**
7:17

| 2 | | |
|---|---|---|
| **2:07-CV-704-MEF** | | |
| 1:5 | | |
| **2000** | | |
| 17:12 | | |
| **2001** | | |
| 5:11 | | |
| **2002** | | |
| 18:6 | | |
| **2003** | | |
| 18:2 | | |
| **2005** | | |
| 18:10 | | |
| **2008** | | |
| 1:17  5:13,20  40:14 | | |
| **21** | | |
| 1:17 | | |
| **21st** | | |
| 5:12,20  40:13 | | |

| 3 | | |
|---|---|---|
| **34** | | |
| 4:4 | | |
| **35203** | | |
| 3:17 | | |
| **35238-0487** | | |
| 3:9 | | |
| **36** | | |
| 4:5 | | |
| **3765** | | |
| 3:7 | | |
| **380487** | | |
| 3:8 | | |

| 7 | | |
|---|---|---|
| **7** | | |
| 4:3,10  18:21  19:1  20:12 | | |
| 24:17 | | |

Page 46

**Tyler Eaton Morgan Nichols & Pritchett, Inc.**

Toll Free 800.458.6031

http://www.TylerEaton.com

# COOSA COUNTY BOARD OF EDUCATION

**TODD WINGARD**
*Superintendent*

(256) 377-4913
Fax: (256) 377-2385
boe@coosaschools.k12.al.us

P.O. Box 37
Rockford, AL 35136

## TEMPORARY VACANCY POSTING

Posting Date:  September 5, 2006

The Coosa County Board of Education in Rockford, Alabama has the following vacancy:

### 1 –  6-Hour Temporary Lunchroom Worker (Heavy lifting involved).

QUALIFICATIONS: High School Diploma or GED

SALARY:          Based upon the Coosa County Board of Education Support
                 Personnel Salary Schedule

POSTING TIME:    Minimum of Seven (7) Days

APPLICATION PROCEDURE:     Obtain an application from the Superintendent's
                           Office, P. O. Box 37, Rockford, Alabama  35136,
                           2001 Nixburg Road – (256-377-4913)

CONTACT:                   Todd Wingard, Superintendent or
                           Pamela Jones, Child Nutrition Director
                           Coosa County Board of Education
                           P. O. Box 37
                           Rockford, AL  35136
                           256-377-4913

It is the policy of the Coosa County Board of Education that no person shall, on the grounds of race, color, disability, sex, religion, national origin, or age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program, activity, or employment.

△ – 3



**ESS**

*A Hire Rate of Success*

# Employment Screening Services

http://www.es2.com

1401 Providence Park Birmingham, AL 35242

Phone: 205-879-0143

Fax: 205-380-7548

Email: results@es2.com

**Coosa Valley Medical Center**

Attn: Human Resources 315 West Hickory Street
Sylacauga, AL 35150

## Profile Information

**Name: gloria sims**
**DOB:** 06/06/****

**The following are included in this report:**

| Search Type | Detail | Status |
|---|---|---|
| Social Security Report | | Complete |
| Statewide Criminal | Alabama | Complete - No Record |
| Past Employment Verification | chs | Complete |

## Social Security Report

| | |
|---|---|
| **Social Security Number** | 434-39-**** |
| **Name** | gloria sims |
| **DOB** | 06/06/**** |
| **Search ID** | 596129 |
| **Date Ordered** | 04/24/2007 |
| **Date Completed** | 04/24/2007 |

**Results**

| Valid SSN | yes |
|---|---|
| State Issued | Louisiana |
| Date Issued | 1980 |

| D CARDEN, GLORIA (DOB: September, ****) (SSN: 43439xxxx) | |
|---|---|
| **Address 1**<br>153 HWY 231 N<br>HARPERSVILLE AL 35078<br>County: SHELBY AL<br>Date first reported: September, 1996<br>Date last reported: June, 2001 | **Address 2**<br>6935 OLD SYL HWY<br>CHILDERSBURG AL 35044<br>County: TALLADEGA AL<br>Date first reported:<br>Date last reported: |
| **Address 3**<br>RR 1 | |

Gloria Sims

0013

| | |
|---|---|
| CHILDERSBURG AL 35044 -9801<br>County: TALLADEGA AL<br>Date first reported:<br>Date last reported: | |

**CARDEN, GLORIA D** (DOB: September, ****) (SSN: 43439xxxx)

| **Address 1**<br>6935 OLD SYLACAUGA HWY<br>CHILDERSBURG AL 35044 -8811<br>County: TALLADEGA AL<br>Date first reported:<br>Date last reported: | **Address 2**<br>RR 1 BOX 310<br>CHILDERSBURG AL 35044 -9801<br>County: TALLADEGA AL<br>Date first reported:<br>Date last reported: |
|---|---|
| **Address 3**<br>153 HWY 231 N<br>HARPERSVILLE AL 35078<br>County: SHELBY AL<br>Date first reported:<br>Date last reported: | **Address 4**<br>11A MAIN ST APT A<br>BIRMINGHAM AL 35213 -3727<br>County: JEFFERSON AL<br>Date first reported:<br>Date last reported: |

**SIMS, GLORIA D** (DOB: September, ****) (SSN: 43439xxxx)

| **Address 1**<br>153 HWY 231 N<br>HARPERSVILLE AL 35078<br>County: SHELBY AL<br>Date first reported: September, 1996<br>Date last reported: April, 2006 | **Address 2**<br>RR 1 BOX 310<br>CHILDERSBURG AL 35044 -9801<br>County: TALLADEGA AL<br>Date first reported:<br>Date last reported: |
|---|---|

**Other Names Found**

**CARDEN, RAYMOND** (DOB: ) (SSN: 43439xxxx)

| **Address 1**<br>506 WOODLAWN AVE<br>SYLACAUGA AL 35150 -1970<br>County: TALLADEGA AL<br>Date first reported:<br>Date last reported: |
|---|

## Statewide Criminal

| | |
|---|---|
| **Jurisdiction Searched** | Alabama |
| **Name Searched** | gloria sims |
| **DOB Searched** | 06/06/**** |
| **SSN Searched** | 434-39-**** |
| **Search ID** | 596130 |
| **Date Ordered** | 04/24/2007 |
| **Date Completed** | 04/24/2007 |
| **Records Searched** | Felony and Misdemeanor |
| **Status** | No Records Found |

## Past Employment Verification

| | |
|---|---|
| **Name Searched** | gloria sims |
| **DOB** | 06/06/**** |
| **SSN** | 434-39-**** |
| **Search ID** | 596131 |

Gloria Sims

0014

**Date Ordered**        04/24/2007
**Date Completed**      04/24/2007

**Information Provided**                    **Information Searched**

Company        chs                          Company          CENTRAL HIGH SCHOOL

Company Phone  (256) 329-9437               Company Phone    (256) 329-9437

Company Location  alexander city           Company Location  COOSA COUNTY, AL

Position Held  sub teacher                  Position Verified  GENERAL CLEANING - SUBSTITUTE

Start Date     04/04

End Date       9/06                         End Date         2006

                                            Source Contacted  JAN (CAFETERIA MANAGER)

Answers to Standard Questions
  Attendance          Poor
  Eligibility for Rehire No

Additional Comments
PER CAFETERIA MANAGER AT THE NUMBER LISTED, APPLICANT WALKED OFF THE JOB. SHE WAS NOT AN
EMPLOYEE BUT WORKED AS NEEDED.

---

Employment Screening Services, Inc. (ESS) does not make any representation, guarantee or warranty as to
the accuracy of the information provided to Client. Information provided to Client will be obtained from
various sources and accurately transcribed in all material respects; however, neither ESS can guarantee the
reliability of any informing source. Please note: The information In this report is derived from records in
accordance with the Fair Credit Reporting Act (FCRA, U.S.C.§1681). This Information may only be used to
verify statements made by an individual for employment purposes or in connection with other legitimate
business needs. The depth of information available varies. Although every effort has been made to insure
accuracy or completeness, final verification of an individual's identity and proper uses of report contents are
the user's responsibility.

Gloria Sims

0015

# COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD                          (256) 377-4913                          P.O. Box 37
*Superintendent*                      Fax: (256) 377-2385                      Rockford, AL 35136
                                      bne@coosaschools.k12.al.us

STATE OF ALABAMA          )
COOSA COUNTY              )

## AFFIDAVIT
## OF
## BARBARA MURPHY

Before me, the undersigned Notary Public, in and for said county and said state, personally appeared Barbara Murphy, who being by me first duly sworn, deposes and says as follows:

My name is Barbara Murphy. I am an adult, over the age of 21 years of age and with no impediments, physical or otherwise, that would impair me from truthfully stating facts known to me.

I am employed by the Coosa County Board of Education as a lunchroom worker at Coosa County Central High School.

I am aware of the statements that Gloria Sims makes in her complaint to the EEOC.

As part of the operation of the lunchroom, there is a lot of heavy lifting that must be done. I have heard Jan Forbus say something like it was a man's job.

I heard Jan Forbus say it was a man's job and I heard Jan Forbus say that Pam said that she was putting some color in the lunchroom.

**Sims v. CCBE**
Produced to EEOC
**No. 0007**

After the decision was made to offer Jerry McKinney the position, I heard Jan Forbus say that Gloria Sims was not considered because she did not have a high school diploma.

*Barbara Murphy*

Barbara Murphy

Sworn to and subscribed before me this the _17_ day of April, 2007.

*Rebecca Dee Beasley*

Notary Public

My Commission expires: *September 27, 2008*

(Seal)

**Sims v. CCBE**
Produced to EEOC
No. 0008

# COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD
*Superintendent*

(256) 377-4913
Fax: (256) 377-2385
boc@coosaschools.k12.al.us

P.O. Box 37
Rockford, AL 35136

STATE OF ALABAMA )
COOSA COUNTY )

## AFFIDAVIT
## OF
## JAN FORBUS

Before me, the undersigned Notary Public, in and for said county and said state, personally appeared Jan Forbus, who being by me first duly sworn, deposes and says as follows:

My name is Jan Forbus. I am an adult, over the age of 21 years of age and with no impediments, physical or otherwise, that would impair me from truthfully stating facts known to me.

I am employed by the Coosa County Board of Education as the supervisor of the lunchroom at Coosa County Central High School.

In this position, I know Gloria Sims, who was a substitute worker in our lunchroom.

I have read Ms. Sims' complaint to the EEOC. In that complaint, she says that I, Jan Forbus, told her that we needed to "get some color in the lunchroom."

I deny making such a statement.

It is true that the vacancy created in the lunchroom was previously held by a black male. It is also true that we have a number of heavy lifting jobs that must be done as part of our routine operation – lifting groceries and supplies, moving objects, taking

1/1567249.1

**Sims v. CCBE**
Produced to EEOC
**No. 0011**

Sims v. CCBE
Produced to EEOC
No. 0012

11/92749(1)

out garbage. It was helpful to have a man among our team, but it was not ever said that the position had to be filled by a man or a black man.

It is also true that Coosa County Board operated under a federal desegregation order. The order required that the Board take affirmative action to seek qualified African-Americans to be employed with the Coosa County Board of Education. The order did not require the Board to show preferential treatment to African-Americans, but to be sure that they were treated fairly.

Gloria Sims, a white female, applied for a lunchroom position. The position required a high school diploma or its equivalent.

I participated in the interview process. One of the first questions asked was whether she had a high school diploma or its equivalent. She did not have a high school diploma or its equivalent. For that reason alone, she was not considered further. Stated otherwise, Gloria Sims was not considered for the position she applied for because of her qualifications. The fact that she was a woman had nothing to do with the decision not to consider her. The fact that she was white had nothing to do with the decision.

The person that was hired, Jerry McKinney, was a black male. But he was not hired because he was black. He was not hired because he was a male. He was hired because he was qualified. He had a high school diploma or its equivalent and he had extensive experience.

As I said, I was part of the interview team that made the recommendation to hire Jerry McKinney. I know that Gloria Sims' gender or race had nothing to do with the decision not to employ her in the position for which she applied.

_Jan Ferrpus_

Jan Ferrpus

Sworn to and subscribed before me this the 11ᵗʰ day of April, 2007.

Notary Public

My Commission expires:
(Seal)

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 28, 2008
BONDED THRU NOTARY PUBLIC UNDERWRITERS

**Sims v. CCBE**
Produced to EEOC
No. 0013

1/1567219.1

+ added to
Subst Janitor List    } 5-9-05         Mailed form
                                        4-25-05
Called Harris + Forbes
+ added to Sub d'room

## COOSA COUNTY SCHOOLS SUBSTITUTE APPLICATION

### CHECK POSITION DESISRED

LUNCHROOM ✓ , JANITOR ✓ , TEACHER/AIDE ____

DATE _August 20 2004_

Name _Gloria Sims_ Soc. Sec. # ___ Redacted

Address: _225 Farr Ln Syl. 35151_ Phone: _245-2167 (256)_
                                            _249-2167_

Name of Spouse: _____ Employed By: _____

Name of High School Graduated _N. L. Bourgeois_ Date: _1980_

College Training: _____
    (Name of College)    (Major)    (Minor)

Teaching Experience: _____

Have you ever been convicted of a crime? _NO_ Explain: _____

References: **(No Relatives)**

| NAME | ADDRESS | OCCUPATION | PHONE |
|------|---------|------------|-------|
| Todd Adams | | Road Comm. | 249-3055 |
| Dennis Farr | | Fair Motel | 249-2167 |
| Terry Mitchell | | Probate Judge | 377-4919 |
| Pam Croney | | Paralegal | 249-4908 |

Are you willing to comply with all policies and procedures set by the Coosa County
Board of Education and its agents? _Yes_

Signature _Gloria D. Sims_

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

I recommend the above person as a substitute teacher for the Coosa County School
System.

Signature _Keith Bull_

Title _Principal_

Approved _Joe Wright_
4-25-2005

**Sims v. CCBE**
Produced to EEOC
No. 0048

4-04

To:     GLORIA     SIMS                              August 1, 2006

From:   Todd Wingard
        Superintendent of Education

You have completed all of the requirements and are eligible to
substitute with the Coosa County School system for the 2006-07 school
year in the following checked capacity/capacities:

_____     Substitute Teacher/Aide at $5.25 per hour
            Will increase to $6.50 per hour at 10-1-06

   ✓        Substitute Lunchroom Worker at $5.25 per hour
            Will increase to $6.50 per hour at 10-1-06

   ✓        Substitute Janitor at $5.25 per hour
            Will increase to $6.50 per hour at 10-1-06

_____     Substitute Bus Driver at $35.00 per day
            Will increase to $45.00 per day at 10-1-06

Your name is on the call-list at each of our schools.  The number
we have listed for you is 249-2167    .  If this number is not
correct or if you wish to have your name removed from the list,
please contact the Superintendent's office.

Thank you for your interest in working as a substitute in our schools.

TW:jd

pc: file

Sims v. CCBE
Produced to EEOC
No. 0049

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

and EEOC

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Gloria Sims | (256) 208-0600 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 414 McClellan Lane | Sylacauga, Al. 35151 | 09/09/1961 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Coosa County Board of Education | Over 15 | (256) 377-4913 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| P.O. Box 37 Rockford, Al. 35136 | | Coosa |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| ☒ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ AGE |
|---|---|---|---|---|
| ☒ RETALIATION | ☐ NATIONAL ORIGIN | ☐ DISABILITY | ☐ OTHER (Specify) | |

| DATE DISCRIMINATION TOOK PLACE |
|---|
| EARLIEST (ADEA/EPA)    LATEST (ALL) |
| Position filled October 2006 |
| ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**See Attachment A**

RECEIVED EEOC
NOV 1 4 2006
BIRMINGHAM DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| *Gloria D. Sims* | *Gloria D. Sims* |
| Date 11/14/06    Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 11/14/06 |

EEOC FORM 5 (10/94)

**Gloria Sims v. Coosa County Board of Education**
**Attachment A**

I was hired as a substitute worker to work in the lunch room at the Coosa County Central High School in August 2006. I worked in the lunchroom performing the duties of what was posted as a six hour temporary lunchroom worker. I enclose a copy of that posting as Exhibit A.

I performed my duties in an exemplary manner. I received numerous compliments on the way the lunchroom was kept clean and on how well I performed my job.

My position was previously held by a black male. During the course of my performing the job, I was told the position would be posted permanently. I was only paid minimum wage to work the job. The position, if permanent, would pay $11.25 per hour and would have benefits.

I applied for the temporary position. When I applied, I was told by Jan Forbus, my supervisor, that this was a "man's position". Jan Forbus also told me that Pam Jones, a black female who works as a child nutritionist, and Forbus' supervisor, told her that she needed to "get some color in the lunchroom". I told her that was discrimination. She agreed. After the black man quit this job, the lunchroom was comprised of an all white staff. I took this statement to mean that they preferred to hire a black in the position.

My coworkers, Barbara Murphy and Sandra allegedly heard Jan Forbus make the statement that Pam made that statement.

I believe that I have been discriminated against in the terms and condition of my employment. My employer has violated Title VII by discriminating against me on the basis of my gender, female, as well as my race, white. The person hired into the permanent position is a black male. The Defendant has violated Title VII by retaliating against me for opposing its unlawful hiring practices.

RECEIVED
EEOC

NOV 1 4 2006

BIRMINGHAM DISTRICT OFFICE

# COOSA COUNTY BOARD OF EDUCATION

TODD WINGARD                        (256) 377-4913                          P.O. Box 37
*Superintendent*                    Fax: (256) 377-2385                     Rockford, AL 35136
                                    toe@coosaschools.k12.al.us

## TEMPORARY VACANCY POSTING

Posting Date: September 5, 2006

The Coosa County Board of Education in Rockford, Alabama has the following vacancy:

### 1 – 6-Hour Temporary Lunchroom Worker (Heavy lifting involved).

QUALIFICATIONS: High School Diploma or GED

SALARY:            Based upon the Coosa County Board of Education Support
                   Personnel Salary Schedule

POSTING TIME:      Minimum of Seven (7) Days

APPLICATION PROCEDURE:    Obtain an application from the Superintendent's
                          Office, P. O. Box 37, Rockford, Alabama 35136,
                          2001 Nixburg Road – (256-377-4913)

CONTACT:                  Todd Wingard, Superintendent or
                          Pamela Jones, Child Nutrition Director
                          Coosa County Board of Education
                          P. O. Box 37
                          Rockford, AL 35136
                          256-377-4913

It is the policy of the Coosa County Board of Education that no person shall, on the grounds of race, color, disability, sex, religion, national origin, or age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program, activity, or employment.

RECEIVED
EEOC

NOV 1 4 2006

BIRMINGHAM DISTRICT OFFICE

In The Matter Of:

## GLORIA SIMS
v.
## COOSA COUNTY BOARD OF EDUCATION, ET AL.

## NO. 2:07-CV-704-MEF

---

## BARBARA MURPHY
## June 12, 2008

---



**TYLER EATON MORGAN NICHOLS & PRITCHETT INC.**

## THE HIGHEST QUALITY IN COURT REPORTING

**205.252.9152 • Toll-Free 800.458.6031 • Fax 205.252.0196**
**One Federal Place, Suite 1020 • 1819 Fifth Avenue North • Birmingham, Alabama 35203**
——————— www.TylerEaton.com ———————

---

Page 1

1  IN THE UNITED STATES DISTRICT COURT
2         MIDDLE DISTRICT OF ALABAMA
3             NORTHERN DIVISION
4
5  CIVIL ACTION NO. 2:07-CV-704-MEF
6
7  GLORIA SIMS, an individual,
       Plaintiff,
8  vs.
9  COOSA COUNTY BOARD OF EDUCATION, et al.,
       Defendants.
10
11
12
13         VIDEOTAPE DEPOSITION
14                OF
15         BARBARA MURPHY
16          June 12, 2008
17
18  REPORTED BY: Eleanor S. Pickett
19         Certified Shorthand Reporter
20         and Notary Public
21
22
23

---

Page 2

1        S T I P U L A T I O N
2
3        IT IS STIPULATED AND AGREED,
4  by and between the parties, through their
5  respective counsel, that the deposition of
6  BARBARA MURPHY may be taken before Eleanor
7  S. Pickett, Commissioner, Certified
8  Shorthand Reporter and Notary Public;
9        That the signature to and
10 reading of the deposition by the witness
11 is waived, the deposition to have the same
12 force and effect as if full compliance had
13 been had with all laws and rules of Court
14 relating to the taking of depositions;
15        That it shall not be necessary
16 for any objections to be made by counsel
17 to any questions, except as to form or
18 leading questions, and that counsel for
19 the parties may make objections and assign
20 grounds at the time of trial, or at the
21 time said deposition is offered in
22 evidence, or prior thereto.
23

---

Page 3

1        A P P E A R A N C E S
2
3  FOR THE PLAINTIFF:
4     Mr. Jerry D. Roberson
5     Attorney at Law
6     Roberson & Roberson
7     P.O. Box 380487
8     Birmingham, Alabama 35238
9
10 FOR THE DEFENDANT:
11    Ms. Anne Yuengert
12    Attorney at Law
13    Bradley, Arant, Rose & White, LLP
14    One Federal Place
15    1819 Fifth Avenue North
16    Birmingham, Alabama 35203
17
18 OTHERS PRESENT:
19    Mr. Todd Wingard
20
21
22
23

---

Page 4

1        INDEX OF EXAMINATION
2                  PAGE:
3  EXAMINATION BY MR. ROBERSON        7
4  EXAMINATION BY MS. YUENGERT       28
5  REEXAMINATION BY MR. ROBERSON      32
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

---

1 (Pages 1 to 4)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

BARBARA MURPHY
June 12, 2008

## Page 5

1  I, Eleanor S. Pickett, a
2  Certified Shorthand Reporter of
3  Birmingham, Alabama, and a Notary Public
4  for the State of Alabama at Large, acting
5  as Commissioner, certify that on this
6  date, as provided by the Federal Rules of
7  Civil Procedure of the United States
8  District Court, and the foregoing
9  stipulation of counsel, there came before
10 me at 2001 Nixburg Road, Rockford,
11 Alabama, on June 12, 2008, commencing at
12 10:05 a.m., BARBARA MURPHY, witness in the
13 above cause, for oral examination,
14 whereupon the following proceedings were
15 had:
16
17      MR. ROBERSON:  Okay.  This is
18 the videotape deposition of Barbara
19 Murphy.  We are taking it at the Coosa
20 County Board of Education offices in
21 Rockford, Alabama.  Today is June 12th.
22 It's 10:05.  My name is Jerry Roberson.
23 I'm the attorney for the plaintiff, Gloria

## Page 6

1  Sims, in this case of Gloria Sims,
2  plaintiff, versus Coosa County Board of
3  Education, defendant.  It's in the United
4  States District Court for the Middle
5  District of Alabama, Northern Division, CV
6  number 07-704.
7      I would ask all counsel of
8  record to state their name and the party
9  they represent.
10     MS. YUENGERT:  I'm Anne
11 Yuengert.  I represent the Coosa County
12 Board of Education.
13     MR. ROBERSON:  Okay.  Would
14 you swear our witness, please, ma'am?
15
16     BARBARA MURPHY,
17 having been first duly sworn, was examined
18 and testified as follows:
19
20     THE REPORTER:  Usual
21 stipulations?
22     MS. YUENGERT:  Yes.
23     MR. ROBERSON:  Yes.

## Page 7

1  EXAMINATION BY MR. ROBERSON:
2      Q.   Ms. Murphy, my name is Jerry
3  Roberson.  I represent Gloria Sims, and
4  she has filed a lawsuit claiming that she
5  didn't get the job as a lunchroom worker
6  for Coosa County.  And she's alleged that
7  the reason she didn't get it was
8  discrimination.
9      Do you know Gloria Sims?
10     A.   Yes.
11     Q.   How do you know her?
12     A.   I worked with her at the high
13 school.
14     Q.   Okay.  She was a substitute
15 lunchroom worker; is that correct?
16     A.   Yes.
17     Q.   Okay.  And you worked with
18 her?
19     A.   Yes.
20     Q.   And were -- who was your
21 supervisor during that period of time?
22     A.   Jan Forbus.
23     Q.   Okay.  Now, when did you begin

## Page 8

1  working at Coosa County High School?
2      A.   (No response.)
3      Q.   I'm told it was 2003 you were
4  hired.  Does that sound about right?
5      A.   Yes, yes.
6      Q.   Were you a substitute
7  lunchroom worker before you became a
8  permanent?
9      A.   Yes.
10     Q.   So you subbed intermittently
11 before you accepted a full-time position?
12     A.   Yes.
13     Q.   Okay.  Now, I'm not asking you
14 this, Ms. Murphy, to embarrass you, but my
15 client does not have a high school
16 education, and the school board says that
17 is why she did not get the job.  Do you
18 have a high school education?
19     A.   No.
20     Q.   How far did you go in school?
21     A.   I finished the ninth and went
22 a half year in the tenth.
23     Q.   Okay.  And had you worked

2 (Pages 5 to 8)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

BARBARA MURPHY
June 12, 2008

---

Page 9

1 somewhere else before you began your
2 employment with the county?
3     A.   Yes.
4     Q.   Where did you work?  Where was
5 the last place you worked before you
6 became --
7     A.   Coosa Sportswear.
8     Q.   Okay.  What did you do there?
9     A.   I run a layup buggy.
10     Q.   Is that a sewing plant?
11     A.   Yes.
12     Q.   Okay.  And I assume that the
13 sewing work has gone away?
14     A.   Yeah.
15     Q.   Okay.  So you tried to land
16 another job?
17     A.   Right.
18     Q.   Now, how did you find out
19 about a position being available to work
20 as a substitute lunchroom worker
21 initially?
22     A.   My sister-in-law.
23     Q.   Who is that?

Page 10

1     A.   Teresa Plyar.
2     Q.   Does she work for the county?
3     A.   Yes.
4     Q.   Where does she work?
5     A.   At the high school.
6     Q.   Okay.  And so you applied to
7 work in the lunchroom?
8     A.   Yes.
9     Q.   And you became a substitute
10 first?
11     A.   Yes.
12     Q.   And then how did you find out
13 that there was a permanent position?
14     A.   Teresa.
15     Q.   Okay.  Now, when you applied
16 sometime I'm assuming around the year
17 2003, was there a written job posted for
18 this position?
19     A.   Yes, it was on the board.
20     Q.   Where was it on the board?
21     A.   Out here.
22     Q.   At the high school?
23     A.   No, here (indicating).

Page 11

1     Q.   At the County Board of
2 Education?
3     A.   This is where I seen it.
4     Q.   Okay.  You saw it -- they have
5 a board out here in the hallway or
6 something?
7     A.   Yes.
8     Q.   And they post positions?
9     A.   Yes.
10     Q.   And you came by and observed
11 it?
12     A.   Yes.
13     Q.   When you observed the posting
14 for the position you applied for, was
15 there any mention of an educational
16 requirement?
17     A.   No.
18     Q.   There was no requirement?
19     A.   No.  The application didn't
20 have it on it either.
21     Q.   Okay.  Did you complete a
22 written job application?
23     A.   Yes.

Page 12

1     Q.   And did you hand that in?
2     A.   Yes.
3     Q.   Do you know if there was more
4 than one applicant for the job, or do you
5 know?
6     A.   We both got jobs.
7     Q.   Who is "we"?
8     A.   Sandra Thompson.
9     Q.   Sandra Thompson was hired at
10 the same time as you?
11     A.   Yes.
12     Q.   Is she also a white female?
13     A.   Yes.
14     Q.   Okay.  Now -- and Ms. Thompson
15 does have a high school education?
16     A.   Yes.
17     Q.   Okay.  She's still working at
18 the high school?
19     A.   Yes.
20     Q.   All right.  Did you interview
21 with someone?
22     A.   Yes.
23     Q.   Who did you interview with?

3 (Pages 9 to 12)

Page 13

1      A.    Pam Jones.
2      Q.    The child nutrition director?
3      A.    Yes.
4      Q.    Okay.  Was anyone else there
5  for your interview?
6      A.    No.
7      Q.    Okay.  And did Ms. -- is it
8  Thompson?
9      A.    Yes.
10     Q.    -- did she also interview with
11 Ms. Jones?
12     A.    I'm not sure, now.  I wasn't
13 here when she was interviewed.
14     Q.    Okay.  Were you asked any
15 questions about your education in the
16 interview?
17     A.    No.
18     Q.    But you completed a written
19 job application?
20     A.    Yes.
21     Q.    And you listed on that
22 application that you'd only completed the
23 ninth grade and part of the tenth?

Page 14

1      A.    Yes.
2      Q.    That is, you made them aware
3  that you did not have a high school
4  degree?
5      A.    Yes.
6      Q.    Did anyone mention to you that
7  that would be a problem?
8      A.    No.
9      Q.    Has anyone ever mentioned that
10 to you?
11     A.    No.
12     Q.    Were you aware before Ms.
13 Sims' lawsuit that there was any
14 educational requirement?
15     A.    I think I knew then when they
16 was talking about it.
17     Q.    Okay.  Now, Ms. Sims has given
18 a deposition just like you're doing today,
19 and she indicated at her deposition that
20 you told her that she ought to apply, that
21 there was a possibility she could get a
22 job in the lunchroom.  Did you tell her
23 that?

Page 15

1      A.    We needed subs.
2      Q.    Right.
3      A.    And I told her to come down
4  and put her application in and she could
5  work.
6          (Brief interruption.)
7      Q.    I'm sorry.
8          MS. YUENGERT:  Do you want to
9  turn off -- oh.
10     Q.    Now, so you advised her that
11 y'all needed some substitutes?
12     A.    Subs.
13     Q.    And this was back in '04 when
14 she started, correct?
15     A.    Yes.
16     Q.    And she applied and she got on
17 this list for substitutes?
18     A.    Right.
19     Q.    And you worked with her from
20 time to time?
21     A.    Yes.
22     Q.    And then I think in the start
23 of the school year of 2005, August of

Page 16

1  2005 -- I may have my years mixed up.
2          MS. YUENGERT:  I think it's
3  2006.
4      Q.    2006, August of 2006, someone
5  left the employment of the Coosa County
6  Board, is it Jerry Kelly?
7      A.    Michael.
8      Q.    Michael Kelly.  Do you recall
9  that?
10     A.    Yes.
11     Q.    Michael worked -- he was a
12 black male, correct?
13     A.    Yes.
14     Q.    And he did the job that Gloria
15 filled as a substitute, that is, he held
16 the position before she worked it,
17 correct?
18     A.    Yes.
19     Q.    Okay.  Did you work with
20 Michael?
21     A.    Yes.
22     Q.    Okay.  And did you work with
23 Gloria?

4 (Pages 13 to 16)

GLORIA SIMS                                                    BARBARA MURPHY
COOSA COUNTY BOARD OF EDUCATION, ET AL.                         June 12, 2008

---

Page 17

1      A.    Yes.
2      Q.    Did you have an opportunity to
3  observe her job performance?
4      A.    Yeah.
5      Q.    How was her job performance as
6  compared to Michael's?
7      A.    It was fine.
8      Q.    Did she actually do a better
9  job than Michael?
10      A.    Yeah.
11      Q.    Okay.  And I'm not criticizing
12  Michael.  I'm just saying that her job
13  performance was actually better than his,
14  wasn't it?
15      A.    Yes.
16      Q.    Did you have occasions to be
17  around Ms. Forbus and Ms. Sims?
18      A.    Yes.
19      Q.    I mean, Jan Forbus, does she
20  work there every day, she goes to that
21  cafeteria?
22      A.    Then.
23      Q.    Then, yes, ma'am.

---

Page 18

1      A.    Yes.
2      Q.    Okay.  So she was always
3  there, correct?
4      A.    Yes.
5      Q.    And during that period of
6  time, did you ever hear Ms. Forbus
7  indicate that this position that was held
8  by Michael was I'm going to say, quote,
9  it's a man's job, did you ever hear her
10  refer to it in that fashion?
11      A.    Yes.
12      Q.    You did hear that, correct?
13      A.    Yes.
14      Q.    Did you also hear that Ms.
15  Forbus, not that she heard Ms. Jones say,
16  but that she heard someone say that Ms.
17  Jones said that they needed to get some
18  color in the lunchroom?
19      A.    Yes.
20      Q.    Okay.  You were present when
21  that statement was made?
22      A.    Yes.
23      Q.    Okay.  What did you take that

---

Page 19

1  to mean, Ms. --
2      A.    They wanted color in the
3  lunchroom.
4      Q.    They wanted to hire a black
5  for that position; is that correct?
6          MS. YUENGERT:  Object to the
7  form.  You can answer.
8      A.    (Witness nods head
9  affirmatively.)
10      Q.    You have to answer out.
11      A.    Yes.
12      Q.    I mean, that's what it
13  indicated to you or what you understood it
14  to mean, correct?
15      A.    Yes.
16      Q.    Okay.  Then was Ms. Sims, did
17  she work every day as the substitute?
18      A.    Yes.
19      Q.    Was she there every day?
20      A.    Yes.
21      Q.    Did she miss work or was late
22  for work?
23      A.    I don't think she was.

---

Page 20

1      Q.    Okay.  Well, if you had to
2  characterize her job performance during
3  the six weeks or so that she worked as a
4  substitute, how would you -- what kind of
5  job would you say she did?
6      A.    She done a good job.
7      Q.    Okay.  Did you have any
8  criticism of her?
9      A.    No.
10      Q.    Did she help y'all in the
11  lunchroom?
12      A.    Yes.
13      Q.    I mean, whenever you needed
14  help?
15      A.    Yes.
16      Q.    Now, Ms. Murphy, do you
17  prepare food?
18      A.    Yes.
19      Q.    You're one of the cooks, I
20  take it?
21      A.    Yes.
22      Q.    Has Ms. Forbus and other
23  people indicated that you're doing a

---

5 (Pages 17 to 20)

GLORIA SIMS                                                                                    BARBARA MURPHY
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                      June 12, 2008

---

Page 21

1    satisfactory job as a cook?
2        A.    I really hadn't heard her say.
3        Q.    Okay.  Well, have you ever had
4    a written reprimand while you've worked
5    there?
6        A.    No.
7        Q.    And now you're tenured, that
8    is, you worked for more than three years
9    as a lunchroom worker, correct?
10       A.    Yes.
11       Q.    You have -- when you become a
12   full-time worker, you get benefits like
13   health insurance and a retirement, things
14   like that, correct?
15       A.    Yes.
16       Q.    So how much do you earn an
17   hour as a full-time worker?  Do you know
18   what your salary is or wages are?
19       A.    No, I don't.
20       Q.    Is it -- do you know if it's
21   over ten dollars an hour?
22       A.    Probably.
23       Q.    Okay.  Plus do you know if you

Page 22

1    have a state retirement, that is, you're
2    in the state retirement program, are you
3    aware of that?
4        A.    I think so.
5        Q.    And do you -- does Coosa
6    County provide you with health insurance?
7        A.    Well, I don't have their
8    insurance, but it's provided if I wanted
9    it.
10       Q.    Okay.  I assume you don't need
11   it then; is that correct?
12       A.    Right.
13       Q.    Are you married?
14       A.    Yes.
15       Q.    So your husband has health
16   insurance that you use?
17       A.    Yes.
18       Q.    Okay.  But they would provide
19   it --
20       A.    Yes.
21       Q.    -- if you needed it, correct?
22   Now, were you there the last day that
23   Gloria Sims worked when they told her that

Page 23

1    she didn't get the job, Ms. Forbus told
2    her?
3        A.    Yes.
4        Q.    And did she leave the job
5    upset and crying that day?
6        A.    Yes.
7        Q.    Okay.  Other than that day,
8    were you aware of any difficulties she had
9    performing the job?
10       A.    No.
11       Q.    Now, Ms. Murphy, do you recall
12   any conversation you had with Ms. Sims
13   about the fact that you don't have a high
14   school education and that she doesn't?  Do
15   you recall that?
16       A.    No.
17       Q.    Okay.  Now, in terms of the
18   workforce of the lunchroom, there's you,
19   you're a white female, correct?
20       A.    Yes.
21       Q.    Sandra Thompson, she's a white
22   female, correct?
23       A.    Yes.

Page 24

1        Q.    Who else works in the
2    lunchroom now?
3        A.    Margaret Henderson.
4        Q.    Was she there when Ms. Sims
5    worked there?
6        A.    Yes.
7        Q.    Is she a white female?
8        A.    Yes.
9        Q.    Okay.  Anybody else?  Mr.
10   McKinney is working there now?
11       A.    Yes.
12       Q.    He's a black male, correct?
13       A.    Yes.
14       Q.    And he replaced Michael who
15   was a black male, correct?
16       A.    Yes.
17       Q.    All right.
18       A.    We had a sub there too, Becky
19   Beasley.
20       Q.    Becky Beasley worked there
21   sometimes?
22       A.    Yeah.  Well, she was subbing.
23       Q.    What the sub does, if anybody

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Page 25

1  has an absence for any reason, then she
2  would fill their slot?
3      A.  Yes.
4      Q.  Okay.  And when do you work,
5  what are your hours of work?  When do you
6  report to work?
7      A.  This last year, it was two
8  days a week it was 7:30 to 1:30, three
9  days it's 8:00 to 2:00.
10     Q.  Okay.  When you report to work
11 at 7:30, are you responsible for preparing
12 breakfast?
13     A.  No.
14     Q.  Do y'all serve breakfast at
15 the high school?
16     A.  Yes, but Margaret does that.
17     Q.  Okay.  Ms. Beasley does that?
18     A.  Well, Margaret and Ms.
19 Beasley.
20     Q.  Okay.  At the time that Ms.
21 Sims was working, they weren't serving
22 breakfast, were they?
23     A.  No.

Page 26

1      Q.  Okay.  So there has been an
2  addition of the breakfast, correct?
3      A.  Yes.
4      Q.  All right.  And that -- does
5  the breakfast require more hours, that is,
6  more labor?
7      A.  No.
8      Q.  Okay.
9          MR. ROBERSON:  Let's go off
10 the record for just one second.  We'll go
11 off the record at 10:20.
12         (Whereupon, a break was had
13         from 10:20 a.m. until 10:24
14         a.m.)
15         MR. ROBERSON:  All right.
16 We'll go back on the record at 10:23.
17     Q.  Ms. Murphy, have you ever
18 given a deposition before?
19     A.  No.
20     Q.  Okay.  Well, this is a Title 7
21 case, and that's a federal law that
22 prohibits discrimination.  Are you aware
23 that it's illegal to discriminate against

Page 27

1  someone because of their gender, because
2  they're a female, or because of their
3  race, they're black or white, either one?
4      A.  Yes.
5      Q.  Are you aware of that?  You
6  know that, correct?
7      A.  Yes.
8      Q.  And do you agree with me,
9  ma'am, that people that do discriminate
10 against someone because of their race or
11 gender, which is illegal, that if
12 they're -- if it's proven that that's what
13 they did, that they should be punished; do
14 you agree with that?  Do you think it's
15 wrong to discriminate?
16     A.  Yes, it's wrong.
17     Q.  Okay.
18         MR. ROBERSON:  I don't have
19 anything further for Ms. Murphy.
20         MS. YUENGERT:  I have a couple
21 questions.
22         MR. ROBERSON:  Okay.
23

Page 28

1  EXAMINATION BY MS. YUENGERT:
2      Q.  Ms. Murphy, when you -- you
3  said that you had subbed before you became
4  a regular full-time employee?
5      A.  Yes.
6      Q.  About how long did you sub?
7      A.  A year, maybe a little over a
8  year.
9      Q.  Okay.  So was that before you
10 were actually hired in 2003, or was
11 that --
12     A.  That was before.
13     Q.  Okay.  And did you work at
14 more than one location as a sub?
15     A.  Yes.
16     Q.  Okay.  Did you have a
17 long-term assignment as a sub?  Did you
18 work for any particular lunchroom?
19     A.  No.
20     Q.  Okay.  When you were hired as
21 a sub, did you talk -- who did you talk to
22 about it?  Did you interview with anybody
23 or talk to anybody about it?

7 (Pages 25 to 28)

GLORIA SIMS                                                                                  BARBARA MURPHY
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                                      June 12, 2008

---

Page 29

1       A.   Let's see.  I think I just
2    come down here and signed up and got all
3    the things I was supposed to have,
4    fingerprints, TB, everything.
5       Q.   And then you just got called
6    for assignments?
7       A.   Yes.  Well, I knew Jean Hamm.
8       Q.   Oh, okay.  How did you know
9    Ms. Hamm?
10      A.   I've been knowing her -- I'm
11   from Weogufka, and Jean lives up the road
12   from me.  And Patty Plyar or Patty
13   Williams, I worked for her.  She's my
14   first cousin.
15      Q.   And what was Ms. Williams'
16   job?
17      A.   Manager.
18      Q.   Of one of the lunchrooms?
19      A.   High school.
20      Q.   And Jean Hamm, what was Jean's
21   job?
22      A.   Manager.
23      Q.   Of the one of the lunchrooms?

---

Page 30

1       A.   Weogufka.  Worked at
2    Goodwater, but I forgot what her name was.
3       Q.   Okay.  On the posting for the
4    job that you applied for, the regular job,
5    not the substitute job, did you have a
6    copy of that?
7       A.   No.
8       Q.   Okay.  Other than seeing it --
9    did you see it more than once, or did you
10   see it that one time when you came and saw
11   it posted?
12      A.   Just when I come down here to
13   sign up.
14      Q.   Okay.  Do you know who made
15   the decision to hire you as a regular
16   employee?
17      A.   No.
18      Q.   Okay.  When you worked with
19   Ms. Sims as -- when Ms. Sims was a
20   substitute, about how long did you work
21   with her total?
22      A.   Well, the six weeks she was up
23   there, I worked with her then; and she

---

Page 31

1    subbed here and there.
2       Q.   Here and there?
3       A.   Yeah.
4       Q.   Did she have any other
5    long-term period --
6       A.   No.
7       Q.   -- that she had worked with
8    you?
9       A.   No.
10      Q.   Okay.  And you said that you
11   heard Ms. Forbus say that Michael Kelly's
12   job was a man's job.  Did she ever make
13   that comment about anybody else's
14   position?
15      A.   No.
16      Q.   Did she say -- ever say it
17   about her own position?
18      A.   No.
19      Q.   Did she ever say it about
20   yours?
21      A.   No.
22           MS. YUENGERT:  Okay.  That's
23   all I have.

---

Page 32

1    REEXAMINATION BY MR. ROBERSON:
2       Q.   Ms. Murphy, the way I
3    understand it is that when you are offered
4    the position as a lunchroom worker, that
5    they give you a one-year contract; is that
6    correct, initially?
7       A.   I'm not sure how they do that.
8       Q.   Okay.  And that until you work
9    three years as a lunchroom worker, you
10   don't have tenure.  Are you aware of that?
11      A.   Yes, I was told that.
12      Q.   Okay.  You have worked more
13   than three years, correct?
14      A.   Yes.
15      Q.   And every year, as I
16   understand it, you get a one-year
17   contract; and every year for the first
18   three years, they have the option to renew
19   you for an additional year or not renew
20   you.  Do you understand that?
21      A.   I guess you are talking about
22   pink slip?
23      Q.   I don't know what a pink slip

---

8 (Pages 29 to 32)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

BARBARA MURPHY
June 12, 2008

Page 33

1   is.
2       A.   I guess that's what it is.
3       Q.   Okay.  In other words, they
4   can fire you and not give you a reason up
5   until you've got three years, is that what
6   you understand?
7       A.   Yeah.
8       Q.   Okay.  So obviously you were
9   doing a satisfactory job for those three
10  years, correct?
11      MS. YUENGERT:  Object to the
12  form.  You can answer.
13      Q.   I mean, that makes common
14  sense, doesn't it?
15      A.   I don't know.
16      Q.   Well, why would they keep you
17  if you weren't?  You don't have pictures
18  of Mr. Wingard here with anything, do you,
19  anybody?
20      A.   No.
21      MS. YUENGERT:  Object to the
22  form.
23      Q.   All right.  And while you

Page 34

1   worked with Gloria Sims and Ms. Forbus,
2   did you ever hear Ms. Forbus tell Gloria
3   Sims that she was doing a good job?
4       A.   I think that Jan did make a
5   statement she was doing a better job than
6   Michael.
7       MR. ROBERSON:  Okay.  I don't
8   have anything further.  Thank you, ma'am.
9       MS. YUENGERT:  I don't either.
10      MR. ROBERSON:  Okay.  We'll go
11  off the record then at 10:30.  Thank you,
12  Ms. Murphy.
13
14      FURTHER THE DEPONENT SAITH NOT
15
16
17
18
19
20
21
22
23

Page 35

1           C E R T I F I C A T E
2
3   STATE OF ALABAMA)
4   JEFFERSON COUNTY)
5
6
7       I hereby certify that the
8   above and foregoing deposition was taken
9   down by me in stenotypy, and the questions
10  and answers thereto were reduced to
11  typewriting under my supervision, and that
12  the foregoing represents a true and
13  correct transcript of the deposition given
14  by said witness upon said hearing.
15      I further certify that I am
16  neither of counsel nor of kin to the
17  parties to the action, nor am I in anywise
18  interested in the result of said cause.
19
20
21
22
23      COMMISSIONER - NOTARY PUBLIC
    ACCR LICENSE NO. 278

9 (Pages 33 to 35)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

BARBARA MURPHY
June 12, 2008

**A**

absence
 25:1
accepted
 8:11
ACCR
 35:23
acting
 5:4
action
 1:5  35:17
addition
 26:2
additional
 32:19
advised
 15:10
affirmatively
 19:9
agree
 27:8,14
AGREED
 2:3
al
 1:10
Alabama
 1:2  3:8,16  5:3,4,11,21  6:5
 35:4
alleged
 7:6
Anne
 3:11  6:10
answer
 19:7,10  33:12
answers
 35:10
anybody
 24:9,23  28:22,23  31:13
 33:19
anywise
 35:17
applicant
 12:4
application
 11:19,22  13:19,22  15:4
applied
 10:6,15  11:14  15:16  30:4
apply
 14:20
Arant
 3:13
asked
 13:14
asking
 8:13
assign
 2:19
assignment
 28:17
assignments

29:6
assume
 9:12  22:10
assuming
 10:16
attorney
 3:5,12  5:23
August
 15:23  16:4
available
 9:19
Avenue
 3:15
aware
 14:2,12  22:3  23:8  26:22
 27:5  32:10
a.m
 5:12  26:13,14

**B**

back
 15:13  26:16
Barbara
 1:17  2:6  5:12,18  6:16
Beasley
 24:19,20  25:17,19
Becky
 24:18,20
began
 9:1
benefits
 21:12
better
 17:8,13  34:5
Birmingham
 3:8,16  5:3
black
 16:12  19:4  24:12,15  27:3
board
 1:10  5:20  6:2,12  8:16
 10:19,20  11:1,5  16:6
Box
 3:7
Bradley
 3:13
break
 26:12
breakfast
 25:12,14,22  26:2,5
Brief
 15:6
buggy
 9:9

**C**

C
 3:1  35:1,1
cafeteria
 17:21
called

29:5
case
 6:1  26:21
cause
 5:13  35:18
Certified
 1:22  2:7  5:2
certify
 5:5  35:7,15
characterize
 20:2
child
 13:2
Civil
 1:5  5:7
claiming
 7:4
client
 8:15
color
 18:18  19:2
come
 15:3  29:2  30:12
commencing
 5:11
comment
 31:13
Commissioner
 2:7  5:5  35:22
common
 33:13
compared
 17:6
complete
 11:21
completed
 13:18,22
compliance
 2:12
contract
 32:5,17
conversation
 23:12
cook
 21:1
cooks
 20:19
Coosa
 1:10  5:19  6:2,11  7:6  8:1
 9:7  16:5  22:5
copy
 30:6
correct
 7:15  15:14  16:12,17  18:3
 18:12  19:5,14  21:9,14
 22:11,21  23:19,22  24:12
 24:15  26:2  27:6  32:6
 32:13  33:10  35:13
counsel
 2:5,16,18  5:9  6:7  35:16
county

1:10  5:20  6:2,11  7:6  8:1
 9:2  10:12  11:1  16:5  22:6
 35:5
couple
 27:20
Court
 1:1  2:13  5:8  6:4
cousin
 29:14
criticism
 20:8
criticizing
 17:11
crying
 23:5
CV
 6:5

**D**

D
 3:4
date
 5:6
day
 17:20  19:17,19  22:22
 23:5,7
days
 25:8,9
decision
 30:15
defendant
 3:10  6:3
Defendants
 1:11
degree
 14:4
DEPONENT
 34:14
deposition
 1:15  2:5,10,11,21  5:18
 14:18,19  26:18  35:8,13
depositions
 2:14
difficulties
 23:8
director
 13:2
discriminate
 26:23  27:9,15
discrimination
 7:8  26:22
District
 1:1,2  5:8  6:4,5
Division
 1:3  6:5
doing
 14:18  20:23  33:9  34:3,5
dollars
 21:21
duly

6:17

**E**

E
 3:1,1  35:1,1
earn
 21:16
education
 1:10  5:20  6:3,12  8:16,18
 11:2  12:15  13:15  23:14
educational
 11:15  14:14
effect
 2:12
either
 11:20  27:3  34:9
Eleanor
 1:21  2:6  5:1
else's
 31:13
embarrass
 8:14
employee
 28:4  30:16
employment
 9:2  16:5
et
 1:10
evidence
 2:22
examination
 4:1,3,4  5:13  7:1  28:1
examined
 6:17

**F**

F
 35:1
fact
 23:13
far
 8:20
fashion
 18:10
federal
 3:14  5:6  26:21
female
 12:12  23:19,22  24:7  27:2
Fifth
 3:15
filed
 7:4
fill
 25:2
filled
 16:15
find
 9:18  10:12
fine
 17:7

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

BARBARA MURPHY
June 12, 2008

fingerprints
29:4
finished
8:21
fire
33:4
first
6:17 10:10 29:14 32:17
following
5:14
follows
6:18
food
20:17
Forbus
7:22 17:17,19 18:6,15
20:22 23:1 31:11 34:1,2
force
2:12
foregoing
5:8 35:8,12
forgot
30:2
form
2:17 19:7 33:12,22
full
2:12
full-time
8:11 21:12,17 28:4
further
27:19 34:8,14 35:15

G

gender
27:1,11
give
32:5 33:4
given
14:17 26:18 35:13
Gloria
1:7 5:23 6:1 7:3,9 16:14
16:23 22:23 34:1,2
go
8:20 26:9,10,16 34:10
goes
17:20
going
18:8
good
20:6 34:3
Goodwater
30:2
grade
13:23
grounds
2:20
guess
32:21 33:2

H

half
8:22
hallway
11:5
Hamm
29:7,9,20
hand
12:1
head
19:8
health
21:13 22:6,15
hear
18:6,9,12,14 34:2
heard
18:15,16 21:2 31:11
hearing
35:14
held
16:15 18:7
help
20:10,14
Henderson
24:3
high
7:12 8:1,15,18 10:5,22
12:15,18 14:3 23:13
25:15 29:19
hire
19:4 30:15
hired
8:4 12:9 28:10,20
hour
21:17,21
hours
25:5 26:5
husband
22:15

I

illegal
26:23 27:11
INDEX
4:1
indicate
18:7
indicated
14:19 19:13 20:23
indicating
10:23
individual
1:7
initially
9:21 32:6
insurance
21:13 22:6,8,16
interested
35:18
intermittently
8:10

interruption
15:6
interview
12:20,23 13:5,10,16 28:22
interviewed
13:13

J

Jan
7:22 17:19 34:4
Jean
29:7,11,20
Jean's
29:20
JEFFERSON
35:5
Jerry
3:4 5:22 7:2 16:6
job
7:5 8:17 9:16 10:17 11:22
12:4 13:19 14:22 16:14
17:3,5,9,12 18:9 20:2,5
20:6 21:1 23:1,4,9
29:16,21 30:4,4,5 31:12
31:12 33:9 34:3,5
jobs
12:6
Jones
13:1,11 18:15,17
June
1:18 5:11,21

K

keep
33:16
Kelly
16:6,8
Kelly's
31:11
kin
35:16
kind
20:4
knew
14:15 29:7
know
7:9,11 12:3,5 21:17,20,23
27:6 29:8 30:14 32:23
33:15
knowing
29:10

L

L
2:1
labor
26:6
land
9:15
Large

5:4
late
19:21
law
3:5,12 26:21
laws
2:13
lawsuit
7:4 14:13
layup
9:9
leading
2:18
leave
23:4
left
16:5
Let's
26:9 29:1
LICENSE
35:23
list
15:17
listed
13:21
little
28:7
lives
29:11
LLP
3:13
location
28:14
long
28:6 30:20
long-term
28:17 31:5
lunchroom
7:5,15 8:7 9:20 10:7
14:22 18:18 19:3 20:11
21:9 23:18 24:2 28:18
32:4,9
lunchrooms
29:18,23

M

male
16:12 24:12,15
Manager
29:17,22
man's
18:9 33:12
Margaret
24:3 25:16,18
married
22:13
ma'am
6:14 17:23 27:9 34:8
McKinney
24:10

mean
17:19 19:1,12,14 20:13
33:13
mention
11:15 14:6
mentioned
14:9
Michael
16:7,8,11,20 17:9,12 18:8
24:14 31:11 34:6
Michael's
17:6
Middle
1:2 6:4
mixed
16:1
Murphy
1:17 2:6 5:12,19 6:16 7:2
8:14 20:16 23:11 26:17
27:19 28:2 32:2 34:12

N

N
2:1 3:1
name
5:22 6:8 7:2 30:2
necessary
2:15
need
22:10
needed
15:1,11 18:17 20:13 22:21
neither
35:16
ninth
8:21 13:23
Nixburg
5:10
nods
19:8
North
3:15
Northern
1:3 6:5
Notary
1:23 2:8 5:3 35:22
number
6:6
nutrition
13:2

O

O
2:1
Object
19:6 33:11,21
objections
2:16,19
observe
17:3

Tyler Eaton Morgan Nichols & Pritchett, Inc.
Toll Free 800.458.6031                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

BARBARA MURPHY
June 12, 2008

observed
11:10,13
obviously
33:8
occasions
17:16
offered
2:21 32:3
offices
5:20
oh
15:9 29:8
okay
5:17 6:13 7:14,17,23 8:13
  8:23 9:8,12,15 10:6,15
  11:4,21 12:14,17 13:4,7
  13:14 14:17 16:19,22
  17:11 18:2,20,23 19:16
  20:1,7 21:3,23 22:10,18
  23:7,17 24:9 25:4,10,17
  25:20 26:1,8,20 27:17
  27:22 28:9,13,16,20
  29:8 30:3,8,14,18 31:10
  31:22 32:8,12 33:3,8
  34:7,10
once
30:9
one-year
32:5,16
opportunity
17:2
option
32:18
oral
5:13
ought
14:20

**P**

P
2:1 3:1,1
PAGE
4:2
Pam
13:1
part
13:23
particular
28:18
parties
2:4,19 35:17
party
6:8
Patty
29:12,12
people
20:23 27:9
performance
17:3,5,13 20:2
performing

23:9
period
7:21 18:5 31:5
permanent
8:8 10:13
Pickett
1:21 2:7 5:1
pictures
33:17
pink
32:22,23
place
3:14 9:5
plaintiff
1:8 3:3 5:23 6:2
plant
9:10
please
6:14
Plus
21:23
Plyar
10:1 29:12
position
8:11 9:19 10:13,18 11:14
  16:16 18:7 19:5 31:14
  31:17 32:4
positions
11:8
possibility
14:21
post
11:8
posted
10:17 30:11
posting
11:13 30:3
prepare
20:17
preparing
25:11
present
3:18 18:20
prior
2:22
Probably
21:22
problem
14:7
Procedure
5:7
proceedings
5:14
program
22:2
prohibits
26:22
proven
27:12
provide
22:6,18

provided
5:6 22:8
Public
1:23 2:8 5:3 35:22
punished
27:13
put
15:4
P.O
3:7

**Q**

questions
2:17,18 13:15 27:21 35:9
quote
18:8

**R**

R
3:1 35:1
race
27:3,10
reading
2:10
really
21:2
reason
7:7 25:1 33:4
recall
16:8 23:11,15
record
6:8 26:10,11,16 34:11
reduced
35:10
REEXAMINATION
4:5 32:1
refer
18:10
regular
28:4 30:4,15
relating
2:14
renew
32:18,19
replaced
24:14
report
25:6,10
REPORTED
1:21
Reporter
1:22 2:8 5:2 6:20
represent
6:9,11 7:3
represents
35:12
reprimand
21:4
require
26:5

requirement
11:16,18 14:14
respective
2:5
response
8:2
responsible
25:11
result
35:18
retirement
21:13 22:1,2
right
8:4 9:17 12:20 15:2,18
  22:12 24:17 26:4,15
  33:23
road
5:10 29:11
Roberson
3:4,6,6 4:3,5 5:17,22
  6:13,23 7:1,3 26:9,15
  27:18,22 32:1 34:7,10
Rockford
5:10,21
Rose
3:13
rules
2:13 5:6
run
9:9

**S**

S
1:21 2:1,7 3:1 5:1
SAITH
34:14
salary
21:18
Sandra
12:8,9 23:21
satisfactory
21:1 33:9
saw
11:4 30:10
saying
17:12
says
8:16
school
7:13 8:1,15,16,18,20 10:5
  10:22 12:15,18 14:3
  15:23 23:14 25:15
  29:19
second
26:10
see
29:1 30:9,10
seeing
30:8
seen

11:3
sense
33:14
serve
25:14
serving
25:21
sewing
9:10,13
Shorthand
1:22 2:8 5:2
sign
30:13
signature
2:9
signed
29:2
Sims
1:7 6:1,1 7:3,9 14:13,17
  17:17 19:16 22:23 23:12
  24:4 25:21 30:19,19
  34:1,3
sister-in-law
9:22
six
20:3 30:22
slip
32:22,23
slot
25:2
sorry
15:7
sound
8:4
Sportswear
9:7
start
15:22
started
15:14
state
5:4 6:8 22:1,2 35:4
statement
18:21 34:5
States
1:1 5:7 6:4
stenotypy
35:9
STIPULATED
2:3
stipulation
5:9
stipulations
6:21
sub
24:18,23 28:6,14,17,21
subbed
8:10 28:3 31:1
subbing
24:22
subs

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031

http://www.TylerEaton.com

**GLORIA SIMS**
**COOSA COUNTY BOARD OF EDUCATION, ET AL.**

**BARBARA MURPHY**
**June 12, 2008**

15:1,12
substitute
7:14 8:6 9:20 10:9 16:15
19:17 20:4 30:5,20
substitutes
15:11,17
supervision
35:11
supervisor
7:21
supposed
29:3
sure
13:12 32:7
swear
6:14
sworn
6:17

---
**T**
---

T
2:1,1 35:1,1
take
18:23 20:20
taken
2:6 35:8
talk
28:21,21,23
talking
14:16 32:21
TB
29:4
tell
14:22 34:2
ten
21:21
tenth
8:22 13:23
tenure
32:10
tenured
21:7
Teresa
10:1,14
terms
23:17
testified
6:18
Thank
34:8,11
thereto
2:22 35:10
things
21:13 29:3
think
14:15 15:22 16:2 19:23
22:4 27:14 29:1 34:4
Thompson
12:8,9,14 13:8 23:21
three

21:8 25:8 32:9,13,18
33:5,9
time
2:20,21 7:21 12:10 15:20
15:20 18:6 25:20 30:10
Title
26:20
today
5:21 14:18
Todd
3:19
told
8:3 14:20 15:3 22:23
23:1 32:11
total
30:21
transcript
35:13
trial
2:20
tried
9:15
true
35:12
turn
15:9
two
25:7
typewriting
35:11

---
**U**
---

U
2:1
understand
32:3,16,20 33:6
understood
19:13
United
1:1 5:7 6:3
upset
23:5
use
22:16
Usual
6:20

---
**V**
---

versus
6:2
videotape
1:15 5:18
vs
1:9

---
**W**
---

wages
21:18
waived
2:11

want
15:8
wanted
19:2,4 22:8
wasn't
13:12 17:14
way
32:2
week
25:8
weeks
20:3 30:22
went
8:21
Weogufka
29:11 30:1
weren't
25:21 33:17
We'll
26:10,16 34:10
white
3:13 12:12 23:19,21 24:7
27:3
Williams
29:13,15
Wingard
3:19 33:18
witness
2:10 5:12 6:14 19:8
35:14
words
33:3
work
9:4,13,19 10:2,4,7 15:5
16:19,22 17:20 19:17,21
19:22 25:4,5,6,10 28:13
28:18 30:20 32:8
worked
7:12,17 8:23 9:5 15:19
16:11,16 20:3 21:4,8
22:23 24:5,20 29:13
30:1,18,23 31:7 32:12
34:1
worker
7:5,15 8:7 9:20 21:9,12
21:17 32:4,9
workforce
23:18
working
8:1 12:17 24:10 25:21
works
24:1
written
10:17 11:22 13:18 21:4
wrong
27:15,16

---
**Y**
---

Yeah
9:14 17:4,10 24:22 31:3

33:7
year
8:22 10:16 15:23 25:7
28:7,8 32:15,17,19
years
16:1 21:8 32:9,13,18 33:5
33:10
Yuengert
3:11 4:4 6:10,11,22 15:8
16:2 19:6 27:20 28:1
31:22 33:11,21 34:9
y'all
15:11 20:10 25:14

---
**0**
---

04
15:13
07-704
6:6

---
**1**
---

1:30
25:8
10:05
5:12,22
10:20
26:11,13
10:23
26:16
10:24
26:13
10:30
34:11
12
1:18 5:11
12th
5:21
1819
3:15

---
**2**
---

2:00
25:9
2:07-CV-704-MEF
1:5
2001
5:10
2003
8:3 10:17 28:10
2005
15:23 16:1
2006
16:3,4,4
2008
1:18 5:11
278
35:23
28
4:4

---
**3**
---

32
4:5
35203
3:16
35238
3:8
380487
3:7

---
**7**
---

7
4:3 26:20
7:30
25:8,11

---
**8**
---

8:00
25:9

In The Matter Of:

**GLORIA SIMS**
v.
**COOSA COUNTY BOARD OF EDUCATION, ET AL.**

**NO. 2:07-CV-704-MEF**

---

**LISA CLEVELAND**
**June 12, 2008**

---



**TYLER EATON**

TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

THE HIGHEST QUALITY IN COURT REPORTING

205.252.9152 • Toll-Free 800.458.6031 • Fax 205.252.0196
One Federal Place, Suite 1020 • 1819 Fifth Avenue North • Birmingham, Alabama 35203
——————— www.TylerEaton.com ———————

Page 1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CIVIL ACTION NO. 2:07-CV-704-MEF

GLORIA SIMS, an individual,
        Plaintiff,
vs.
COOSA COUNTY BOARD OF EDUCATION, et al.,
        Defendants.

VIDEOTAPE DEPOSITION
OF
LISA CLEVELAND
June 12, 2008

REPORTED BY:  Eleanor S. Pickett
              Certified Shorthand Reporter
              and Notary Public

---

Page 2

S T I P U L A T I O N

        IT IS STIPULATED AND AGREED,
by and between the parties, through their
respective counsel, that the deposition of
LISA CLEVELAND may be taken before Eleanor
S. Pickett, Commissioner, Certified
Shorthand Reporter and Notary Public;
        That the signature to and
reading of the deposition by the witness
is waived, the deposition to have the same
force and effect as if full compliance had
been had with all laws and rules of Court
relating to the taking of depositions;
        That it shall not be necessary
for any objections to be made by counsel
to any questions, except as to form or
leading questions, and that counsel for
the parties may make objections and assign
grounds at the time of trial, or at the
time said deposition is offered in
evidence, or prior thereto.

---

Page 3

A P P E A R A N C E S

FOR THE PLAINTIFF:
    Mr. Jerry D. Roberson
    Attorney at Law
    Roberson & Roberson
    P.O. Box 380487
    Birmingham, Alabama 35238

FOR THE DEFENDANT:
    Ms. Anne Yuengert
    Attorney at Law
    Bradley, Arant, Rose & White, LLP
    One Federal Place
    1819 Fifth Avenue North
    Birmingham, Alabama 35203

OTHERS PRESENT:
    Mr. Todd Wingard

---

Page 4

INDEX OF EXAMINATION
                                    PAGE:
EXAMINATION BY MR. ROBERSON          7
EXAMINATION BY MS. YUENGERT         23

---

1 (Pages 1 to 4)

Page 5

1    I, Eleanor S. Pickett, a
2 Certified Shorthand Reporter of
3 Birmingham, Alabama, and a Notary Public
4 for the State of Alabama at Large, acting
5 as Commissioner, certify that on this
6 date, as provided by the Federal Rules of
7 Civil Procedure of the United States
8 District Court, and the foregoing
9 stipulation of counsel, there came before
10 me at 2001 Nixburg Road, Rockford,
11 Alabama, on June 12, 2008, commencing at
12 10:35 a.m., LISA CLEVELAND, witness in the
13 above cause, for oral examination,
14 whereupon the following proceedings were
15 had:
16
17    MR. ROBERSON:  Okay.  This is
18 the videotape deposition of Ms. Lisa
19 Cleveland.  It's 10:33.  Today is June
20 12th.  We're at the offices of the Coosa
21 County Board of Education in Rockford,
22 Alabama.  My name is Jerry Roberson.  I'm
23 an attorney for the plaintiff, Gloria

Page 6

1 Sims.  This case is styled Gloria Sims,
2 plaintiff, versus Coosa County Board of
3 Education, defendant.  It's pending in the
4 United States District Court for the
5 Middle District of Alabama, Northern
6 Division, CV number is 07-704.  I would
7 ask all counsel of record to state their
8 name and the party they represent.
9    MS. YUENGERT:  Anne Yuengert.
10 I represent the Coosa County Board of
11 Education.
12    MR. ROBERSON:  Would you swear
13 our witness, please, ma'am?
14
15    LISA CLEVELAND,
16 having been first duly sworn, was examined
17 and testified as follows:
18
19    THE REPORTER:  Usual
20 stipulations?
21    MS. YUENGERT:  Yes.
22    MR. ROBERSON:  Yes.
23

Page 7

1 EXAMINATION BY MR. ROBERSON:
2    Q.   Ms. Cleveland, my name is
3 Jerry Roberson, and I represent Gloria
4 Sims.  Do you know Gloria?
5    A.   I do.
6    Q.   Okay.  Just -- she's an
7 acquaintance that you've met because you
8 work --
9    A.   Just through work.
10    Q.   Sure.  And where do you work,
11 ma'am?
12    A.   I work at the middle school,
13 Central Elementary Middle School.
14    Q.   Here at Coosa County?
15    A.   Yes.
16    Q.   How long have you been working
17 at the middle school?
18    A.   Since 2005.
19    Q.   And you work in the lunchroom
20 there?
21    A.   Yes.
22    Q.   Are you tenured?
23    A.   No.

Page 8

1    Q.   Okay.  Did you substitute
2 before you became a lunchroom worker?  Did
3 you substitute in the lunchroom?
4    A.   Well, I -- honestly, I don't
5 know.  I thought I was hired temporary.
6 You know, I was hired temporary, I
7 thought.  And, then, you know, every year
8 I got rehired as -- you know.
9    Q.   Okay.  Well --
10    A.   I mean, I don't know.  I might
11 have been hired sub, but I --
12    Q.   Okay.  Maybe I'm not making
13 myself clear.  But Ms. Sims began her
14 employment here as a substitute lunchroom
15 worker, that is, she didn't have a regular
16 position that she filled every day.
17    A.   I was a regular position.
18    Q.   When you came in, you were
19 hired into a regular position?
20    A.   Yes.
21    Q.   Okay.  And that was in 2005?
22    A.   Yes.
23    Q.   Correct?

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

LISA CLEVELAND
June 12, 2008

Page 9

1    A.    Uh-huh.
2    Q.    Now -- so you never worked as
3  a substitute lunchroom worker?
4    A.    No.
5    Q.    Okay.  When you were hired in
6  2005, did you interview for the job?
7    A.    I did.
8    Q.    Okay.  Did you provide a
9  written job application?
10    A.    Uh-huh.
11    Q.    Is that yes?
12    A.    Yes.
13    Q.    And I'm sorry --
14    A.    I'm sorry.
15    Q.    -- today I need you to answer
16  out loud audibly.
17    A.    Okay.
18    Q.    When we are just conversing,
19  you can nod your head or say uh-huh or
20  huh-uh, but today we are trying to make a
21  record.
22    A.    Okay.
23    Q.    So I will try to remind you.

Page 10

1    A.    Okay.
2    Q.    Have you ever given a
3  deposition before?
4    A.    No.
5    Q.    Okay.  Well, now, who -- I'm
6  not asking you to embarrass you, Ms.
7  Cleveland, but my client, Ms. Sims, does
8  not have a high school degree and she
9  doesn't have a GED.  Do you possess either
10  of those?
11    A.    No.
12    Q.    Okay.  When you filled out
13  your written job application, did you
14  indicate the extent of your education on
15  there?
16    A.    I really can't remember.  I
17  don't feel like -- what I remember, I
18  don't think there was -- I mean, I'm sure
19  there was, but I just don't really
20  remember the extent of the -- you know,
21  where -- you know, about the schooling.
22    Q.    What you had to tell them?
23    A.    Right.

Page 11

1    Q.    Okay.  Well, let me ask you a
2  different way.  You never indicated to
3  anyone that you did have a high school
4  degree or GED; is that a fair statement?
5    A.    I never indicated that I did
6  have one?
7    Q.    Right.
8    A.    No.  And I didn't ever say I
9  didn't have one.
10    Q.    Okay.  Well --
11    A.    Okay.
12    Q.    When you applied -- how did
13  you find out that there was an opening?
14    A.    Through a friend and then I
15  had seen a thing in the newspaper.
16    Q.    They posted it in the
17  newspaper, the position; is that correct?
18    A.    Yes.
19    Q.    Was there any educational
20  requirement in the job posting in the
21  newspaper?
22    A.    I can't remember.  I really
23  can't remember that.

Page 12

1    Q.    Okay.  Well, when you applied,
2  did you interview with someone?
3    A.    I did.
4    Q.    Okay.  Who was that?
5    A.    Ms. Hamm and then Ms. Pam --
6  Ms. Jones.
7    Q.    I'm sorry, do you know Ms.
8  Hamm's first name?
9    A.    Jean.
10    Q.    Jean Hamm, was she the manager
11  at the middle school?
12    A.    Yes.
13    Q.    Okay.  The cafeteria manager,
14  correct?
15    A.    Right.
16    Q.    Is she black or white?
17    A.    White.
18    Q.    And Pam Jones, the director of
19  nutrition, correct?
20    A.    Right.
21    Q.    And she's a black female,
22  correct?
23    A.    Yes.

3 (Pages 9 to 12)

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Page 13

1       Q.    Okay.  Was there anybody else?
2   The principal, you didn't meet with him?
3       A.    No.
4       Q.    Okay.  And this -- would this
5   have been at the start of the school year
6   in 2005, in August of 2005, or do you
7   recall?
8       A.    I really -- I mean, it was
9   before I started with the new year.  So it
10  was sometime --
11      Q.    Did you start at the beginning
12  of a school year then?
13      A.    I did.
14      Q.    Okay.  Do they start school
15  here in August?
16      A.    Yes.
17      Q.    So this would have been in the
18  summer sometime?
19      A.    Yes.
20      Q.    Before the school year?
21      A.    Yes.
22      Q.    Of 2005, correct?
23      A.    Right.

Page 14

1       Q.    Okay.  And so you met with
2   these two ladies.  Did either of them
3   while you interviewed ask you if you had a
4   high school degree?
5       A.    I can't remember.  I mean, we
6   talked about a lot, and I really can't
7   remember that conversation.  I really
8   can't remember.  I remember what we did
9   talk about, and it was the -- you know,
10  just the job position itself and the wait.
11  I remember us discussing that.  But other
12  than that, I really can't --
13      Q.    Okay.  Would it be fair to say
14  that you never advised Ms. Hamm or Ms.
15  Jones that you did have a high school
16  degree?
17      A.    No.
18      Q.    You didn't mislead them,
19  correct?
20      A.    No, no.
21      Q.    Did either of those ladies
22  ever indicate to you that you weren't
23  eligible for the position because you

Page 15

1   didn't meet their educational requirement?
2       A.    No.
3       Q.    Do you know if there were
4   other candidates, other job applicants for
5   the position?
6       A.    No, I don't know that.
7       Q.    Okay.  They didn't tell you,
8   and you don't know --
9       A.    No.
10      Q.    -- if anybody else applied?
11      A.    I mean, I come for the
12  interview and I was interviewed and then I
13  was called later.
14      Q.    Who called you later?
15      A.    Ms. Jones.
16      Q.    Pam Jones told you that you
17  had been selected; is that correct?
18      A.    Yes.
19      Q.    Okay.  And you began your
20  employment, correct?
21      A.    Right.
22      Q.    And this was sometime before
23  the school year in August of 2005,

Page 16

1   correct?
2       A.    Right, yes.
3       Q.    Did she explain to you that
4   you would have a one-year contract, or did
5   you get some correspondence from them
6   about a one-year contract?
7       A.    I really -- I'm -- I honestly
8   can't remember.  I mean, I'm sure I had to
9   sign every year.
10      Q.    You had to sign a contract
11  every year?
12      A.    Every year, right.
13      Q.    That's correct?
14      A.    But I don't know if she
15  explained it to me at that point.
16      Q.    Okay.
17      A.    I can't really remember.  But,
18  yes, I did sign contracts every year.
19      Q.    Okay.  And did you work in the
20  summer?
21      A.    No.
22      Q.    Okay.  So you had a nine-month
23  contract every year?

4 (Pages 13 to 16)

GLORIA SIMS                                              LISA CLEVELAND
COOSA COUNTY BOARD OF EDUCATION, ET AL.                  June 12, 2008

---

Page 17

1    A.   Yes.
2    Q.   That is, you worked during the
3  school year, correct?
4    A.   Right.
5    Q.   Do they have school in the
6  summertime here, summer school, do you
7  know?
8    A.   I -- well, not -- no, I don't
9  really know.
10   Q.   Okay.
11   A.   I don't know if we do or not.
12   Q.   Do you have some employment
13 during the summer, ma'am?
14   A.   No.
15   Q.   Okay.  Now, is your pay -- do
16 they pay you over the whole year, even
17 though you only work nine months?
18   A.   Yes.
19   Q.   Is that the way you've got it
20 set up?
21   A.   Yes.
22   Q.   Okay.  So you get paid in the
23 summer even when you're not working?

---

Page 18

1    A.   Correct.
2    Q.   Okay.  And you have health
3  insurance?
4    A.   I do.
5    Q.   Are you married?
6    A.   Yes.
7    Q.   Okay.  You have a state
8  retirement?
9    A.   Yes.
10   Q.   Do you know that?  And do you
11 have children?
12   A.   Yes.
13   Q.   Are they on your husband's
14 insurance or on yours?
15   A.   On my husband's.
16   Q.   Okay.  Now, you worked the
17 school year from 2005 until 2006, correct?
18   A.   Yes.
19   Q.   Then in the school year that
20 began in 2006, in the fall of 2006 to
21 2007, you got renewed, correct?
22   A.   Correct.
23   Q.   Okay.  And now you've been

---

Page 19

1  renewed again from 2007 to 2008?
2    A.   I don't know yet.
3    Q.   Or you haven't yet?
4    A.   I don't know that yet.
5    Q.   Okay.  Well, has -- do you
6  still work for Ms. Hamm?
7    A.   No.  We've got a new manager
8  now.
9    Q.   Okay.  Well, who is that?
10   A.   Diane Rayfield.
11   Q.   How long have you worked for
12 Ms. Rayfield?
13   A.   This school term.  She's a new
14 manager.  She just come in this past --
15   Q.   Okay.  So you haven't worked
16 for her, is that --
17   A.   I have.  I mean, she started
18 last year, her position.
19   Q.   You worked for her for a year
20 then?
21   A.   Uh-huh, right.
22   Q.   Has she indicated you're doing
23 a satisfactory job?

---

Page 20

1    A.   Yes.
2    Q.   Okay.  I mean, you don't have
3  any reason based on your performance to
4  think that you won't be renewed, correct?
5    A.   Correct.
6    Q.   Okay.  No one has indicated
7  that you're not doing the job?
8    A.   Right.
9    Q.   Okay.  Now, tell me about the
10 staff there at the middle school, the
11 lunchroom staff.  You've got now Ms.
12 Rayfield.  Is she a white female?
13   A.   She is.
14   Q.   And you work there?
15   A.   Uh-huh.
16   Q.   Who else works there, ma'am?
17   A.   We have Teresa Mitchell.
18   Q.   And is -- what is her race?
19   A.   White.
20   Q.   Anyone else?
21   A.   Brenda Sayers.
22   Q.   And her race?
23   A.   White.

---

5 (Pages 17 to 20)

GLORIA SIMS                                                    LISA CLEVELAND
COOSA COUNTY BOARD OF EDUCATION, ET AL.                       June 12, 2008

---

Page 21

```
1     Q.   Okay.  Anyone else?
2     A.   Gwen Chapman.
3     Q.   Gwen?
4     A.   Gwen.
5     Q.   And her race?
6     A.   Black.
7     Q.   Okay.  Anyone else?
8     A.   Essie Moon.
9     Q.   And her race?
10    A.   Black.
11    Q.   Okay.
12    A.   Michael Billingsly.
13    Q.   And his race?
14    A.   Black.
15    Q.   Okay.  Is that it, is that the
16  entire staff?
17    A.   And then we got Calvin Owens,
18  he's with us too.
19    Q.   The -- Calvin Owens?
20    A.   Uh-huh.
21    Q.   He's a black male?
22    A.   Yes.
23    Q.   Okay.  Is he on the staff
```

Page 22

```
1   there?
2     A.   Yes.
3     Q.   Okay.  How long has he worked
4   there?
5     A.   He was there before I.
6     Q.   He arrived before you began
7   your employment?
8     A.   Yes.
9     Q.   Okay.  All right.  Now, you've
10  never worked with Ms. Sims, correct?
11    A.   Well, she subbed while we
12  were --
13    Q.   That's right.  She worked
14  as --
15    A.   Subbing.
16    Q.   -- as a substitute --
17    A.   She come in --
18    Q.   -- in your lunchroom, correct?
19    A.   Right, while we were still in
20  the -- at the Rockford kitchen, yes.
21    Q.   Okay.
22    A.   I did work with her then.
23    Q.   Did you get along with her?
```

Page 23

```
1     A.   Yes.
2     Q.   Okay.  Did she seem to be
3   interested in doing the job?
4     A.   Yes.
5     Q.   And you understood that she's
6   not married, correct?
7     A.   Yes.
8     Q.   And so she needed a job that
9   had benefits, would you agree with that?
10    A.   Yes.
11    Q.   Okay.  And so did you have any
12  criticism of Ms. Sims' job performance
13  when she worked with you as a substitute?
14    A.   No.
15         MR. ROBERSON:  Okay.  I don't
16  have anything further, Ms. Cleveland, but
17  she may have some questions for you.
18
19  EXAMINATION BY MS. YUENGERT:
20    Q.   Ms. Cleveland, when you
21  interviewed for the position, you said you
22  talked with Ms. Hamm and Ms. Jones.  Was
23  that the same conversation, or did you
```

Page 24

```
1   talk with Ms. Hamm and then with Ms.
2   Jones?
3     A.   I really can't remember.  But,
4   I mean, I know that I was talking with Ms.
5   Hamm to begin with, and she came in.  And
6   I don't know if it was over -- you know,
7   like come down here and applied and then
8   come back and was interviewed by them.
9     Q.   You just remember talking to
10  both of them?
11    A.   Right.
12         MS. YUENGERT:  Okay.  That's
13  all I have.
14         MR. ROBERSON:  All right.
15  Let's go off the record.  It's 10:45.  And
16  I want to thank you, Ms. Cleveland.
17    A.   Thank you.
18
19         FURTHER THE DEPONENT SAITH NOT
20
21
22
23
```

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                              http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

LISA CLEVELAND
June 12, 2008

Page 25

1       C E R T I F I C A T E
2
3
4       STATE OF ALABAMA)
5       JEFFERSON COUNTY)
6
7            I hereby certify that the
8       above and foregoing deposition was taken
9       down by me in stenotypy, and the questions
10      and answers thereto were reduced to
11      typewriting under my supervision, and that
12      the foregoing represents a true and
13      correct transcript of the deposition given
14      by said witness upon said hearing.
15           I further certify that I am
16      neither of counsel nor of kin to the
17      parties to the action, nor am I in anywise
18      interested in the result of said cause.
19
20
21
22
            COMMISSIONER - NOTARY PUBLIC
23      ACCR LICENSE NO. 278

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                          http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

LISA CLEVELAND
June 12, 2008

**A**

ACCR
25:23
acquaintance
7:7
acting
5:4
action
1:5 25:17
advised
14:14
agree
23:9
AGREED
2:3
al
1:10
Alabama
1:2 3:8,16 5:3,4,11,22
6:5 25:4
Anne
3:11 6:9
answer
9:15
answers
25:10
anybody
13:1 15:10
anywise
25:17
applicants
15:4
application
9:9 10:13
applied
11:12 12:1 15:10 24:7
Arant
3:13
arrived
22:6
asking
10:6
assign
2:19
attorney
3:5,12 5:23
audibly
9:16
August
13:6,15 15:23
Avenue
3:15
a.m
5:12

**B**

back
24:8
based
20:3

began
8:13 15:19 18:20 22:6
beginning
13:11
benefits
23:9
Billingsly
21:12
Birmingham
3:8,16 5:3
black
12:16,21 21:6,10,14,21
Board
1:10 5:21 6:2,10
Box
3:7
Bradley
3:13
Brenda
20:21

**C**

C
3:1 25:1,1
cafeteria
12:13
called
15:13,14
Calvin
21:17,19
candidates
15:4
case
6:1
cause
5:13 25:18
Central
7:13
Certified
1:22 2:7 5:2
certify
5:5 25:7,15
Chapman
21:2
children
18:11
Civil
1:5 5:7
clear
8:13
Cleveland
1:17 2:6 5:12,19 6:15 7:2
10:7 23:16,20 24:16
client
10:7
come
15:11 19:14 22:17 24:7,8
commencing
5:11
Commissioner

2:7 5:5 25:22
compliance
2:12
contract
16:4,6,10,23
contracts
16:18
conversation
14:7 23:23
conversing
9:18
Coosa
1:10 5:20 6:2,10 7:14
correct
8:23 11:17 12:14,19,22
13:22 14:19 15:17,20
16:1,13 17:3 18:1,17,21
18:22 20:4,5 22:10,18
23:6 25:13
correspondence
16:5
counsel
2:5,16,18 5:9 6:7 25:16
County
1:10 5:21 6:2,10 7:14
25:5
Court
1:1 2:13 5:8 6:4
criticism
23:12
CV
6:6

**D**

D
3:4
date
5:6
day
8:16
defendant
3:10 16:3
Defendants
1:11
degree
10:8 11:4 14:4,16
DEPONENT
24:19
deposition
1:15 2:5,10,11,21 5:18
10:3 25:8,13
depositions
2:14
Diane
19:10
different
11:2
director
12:18
discussing

14:11
District
1:1,2 5:8 6:4,5
Division
1:3 6:6
doing
19:22 20:7 23:3
duly
6:16

**E**

E
3:1,1 25:1,1
education
1:10 5:21 6:3,11 10:14
educational
11:19 15:1
effect
2:12
either
10:9 14:2,21
Eleanor
1:21 2:6 5:1
Elementary
7:13
eligible
14:23
embarrass
10:6
employment
8:14 15:20 17:12 22:7
entire
21:16
Essie
21:8
et
1:10
evidence
2:22
examination
4:1,3,4 5:13 7:1 23:19
examined
6:16
explain
16:3
explained
16:15
extent
10:14,20

**F**

F
25:1
fair
11:4 14:13
fall
18:20
Federal
3:14 5:6
feel

10:17
female
12:21 20:12
Fifth
3:15
filled
8:16 10:12
find
11:13
first
6:16 12:8
following
5:14
follows
6:17
force
2:12
foregoing
5:8 25:8,12
form
2:17
friend
11:14
full
2:12
further
23:16 24:19 25:15

**G**

GED
10:9 11:4
given
10:2 25:13
Gloria
1:7 5:23 6:1 7:3,4
go
24:15
grounds
2:20
Gwen
21:2,3,4

**H**

Hamm
12:5,10 14:14 19:6 23:22
24:1,5
Hamm's
12:8
head
9:19
health
18:2
hearing
25:14
high
10:8 11:3 14:4,15
hired
8:5,6,11,19 9:5
honestly
8:4 16:7

Page 26

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

LISA CLEVELAND
June 12, 2008

huh-uh
9:20
husband's
18:13,15

**I**

INDEX
4:1
indicate
10:14 14:22
indicated
11:2,5 19:22 20:6
individual
1:7
insurance
18:3,14
interested
23:3 25:18
interview
9:6 12:2 15:12
interviewed
14:3 15:12 23:21 24:8

**J**

Jean
12:9,10
JEFFERSON
25:5
Jerry
3:4 5:22 7:3
job
9:6,9 10:13 11:20 14:10
  15:4 19:23 20:7 23:3,8
  23:12
Jones
12:6,18 14:15 15:15,16
  23:22 24:2
June
1:18 5:11,19

**K**

kin
25:16
kitchen
22:20
know
7:4 8:5,6,7,8,10 10:20,21
  12:7 14:9 15:3,6,8
  16:14 17:7,9,11 18:10
  19:2,4 24:4,6,6

**L**

L
2:1
ladies
14:2,21
Large
5:4
Law
3:5,12

laws
2:13
leading
2:18
Let's
24:15
LICENSE
25:23
Lisa
1:17 2:6 5:12,18 6:15
LLP
3:13
long
7:16 19:11 22:3
lot
14:6
loud
9:16
lunchroom
7:19 8:2,3,14 9:3 20:11
  22:18

**M**

making
8:12
male
21:21
manager
12:10,13 19:7,14
married
18:5 23:6
ma'am
6:13 7:11 17:13 20:16
mean
8:10 10:18 13:8 14:5
  15:11 16:8 19:17 20:2
  24:4
meet
13:2 15:1
met
7:7 14:1
Michael
21:12
middle
1:2 6:5 7:12,13,17 12:11
  20:10
mislead
14:18
Mitchell
20:17
months
17:17
Moon
21:8

**N**

N
2:1 3:1
name
5:22 6:8 7:2 12:8

necessary
2:15
need
9:15
needed
23:8
neither
25:16
never
9:2 11:2,5 14:14 22:10
new
3:9 19:7,13
newspaper
11:15,17,21
nine
17:17
nine-month
16:22
Nixburg
5:10
nod
9:19
North
3:15
Northern
1:3 6:5
Notary
1:23 2:8 5:3 25:22
number
6:6
nutrition
12:19

**O**

O
2:1
objections
2:16,19
offered
2:21
offices
5:20
Okay
5:17 7:6 8:1,9,12,21 9:5
  9:8,17,22 10:1,5,12 11:1
  11:10,11 12:1,4,13 13:1,4
  13:14 14:1,13 15:7,19
  16:16,19,22 17:10,15,22
  18:2,7,16,23 19:5,9,15
  20:2,6,9 21:1,7,11,15,23
  22:3,9,21 23:2,11,15
  24:12
one-year
16:4,6
opening
11:13
oral
5:13
Owens
21:17,19

**P**

P
2:1 3:1,1
PAGE
4:2
paid
17:22
Pam
12:5,18 15:16
parties
2:4,19 25:17
party
6:8
pay
17:15,16
pending
6:3
performance
20:3 23:12
Pickett
1:21 2:7 5:1
Place
3:14
plaintiff
1:8 3:3 5:23 6:2
please
6:13
point
16:15
position
8:16,17,19 11:17 14:10,23
  15:5 19:18 23:21
possess
10:9
posted
11:16
posting
11:20
PRESENT
3:18
principal
13:2
prior
2:22
Procedure
5:7
proceedings
5:14
provide
9:8
provided
5:6
Public
1:23 2:8 5:3 25:22
P.O
3:7

**Q**

questions
2:17,18 23:17 25:9

**R**

R
3:1 25:1
race
20:18,22 21:5,9,13
Rayfield
19:10,12 20:12
reading
2:10
really
10:16,19 11:22 13:8 14:6
  14:7,12 16:7,17 17:9
  24:3
reason
20:3
recall
13:7
record
6:7 9:21 24:15
reduced
25:10
regular
8:15,17,19
rehired
8:8
relating
2:14
remember
10:16,17,20 11:22,23 14:5
  14:7,8,8,11 16:8,17 24:3
  24:9
remind
9:23
renewed
18:21 19:1 20:4
REPORTED
1:21
Reporter
1:22 2:8 5:2 6:19
represent
6:8,10 7:3
represents
25:12
requirement
11:20 15:1
respective
2:5
result
25:18
retirement
18:8
right
10:23 11:7 12:15,20 13:23
  15:21 16:2,12 17:4
  19:21 20:8 22:9,13,19
  24:11,14
Road
5:10
Roberson
3:4,6,6 4:3 5:17,22 6:12

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031          http://www.TylerEaton.com

GLORIA SIMS                                                                    LISA CLEVELAND
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                        June 12, 2008

6:22 7:1,3 23:15 24:14
Rockford
5:10,21 22:20
Rose
3:13
rules
2:13 5:6

_____ S _____

S
1:21 2:1,7 3:1 5:1
SAITH
24:19
satisfactory
19:23
Sayers
20:21
school
7:12,13,17 10:8 11:3 12:11
    13:5,12,14,20 14:4,15
    15:23 17:3,5,6 18:17,19
    19:13 20:10
schooling
10:21
seen
11:15
selected
15:17
set
17:20
Shorthand
1:22 2:8 5:2
sign
16:9,10,18
signature
2:9
Sims
1:7 6:1,1 7:4 8:13 10:7
    22:10 23:12
sorry
9:13,14 12:7
staff
20:10,11 21:16,23
start
13:5,11,14
started
13:9 19:17
state
5:4 6:7 18:7 25:4
statement
11:4
States
1:1 5:7 6:4
stenotypy
25:9
STIPULATED
2:3
stipulation
5:9
stipulations

6:20
styled
6:1
sub
8:11
subbed
22:11
Subbing
22:15
substitute
8:1,3,14 9:3 22:16 23:11
summer
13:18 16:20 17:6,13,23
summertime
17:6
supervision
25:11
sure
7:10 10:18 16:8
swear
6:12
sworn
6:16

_____ T _____

T
2:1,1 25:1,1
taken
2:6 25:8
talk
14:9 24:1
talked
14:6 23:22
talking
24:4,9
tell
10:22 15:7 20:9
temporary
8:5,6
tenured
7:22
Teresa
20:17
term
19:13
testified
6:17
thank
24:16,17
thereto
2:22 25:10
thing
11:15
think
10:18 20:4
thought
8:5,7
time
2:20,21
today

5:19 9:15,20
Todd
3:19
told
15:16
transcript
25:13
trial
2:20
true
25:12
try
9:23
trying
9:20
two
14:2
typewriting
25:11

_____ U _____

U
2:1
uh-huh
9:1,10,19 19:21 20:15
    21:20
understood
23:5
United
1:1 5:7 6:4
Usual
6:19

_____ V _____

versus
6:2
videotape
1:15 5:18
vs
1:9

_____ W _____

wait
14:10
waived
2:11
want
24:16
way
11:2 17:19
weren't
14:22
We're
5:20
We've
19:7
white
3:13 12:16,17 20:12,19,23
Wingard
3:19

witness
2:10 5:12 6:13 25:14
work
7:8,9,10,12,19 16:19 17:17
    19:6 20:14 22:22
worked
9:2 17:2 18:16 19:11,15,19
    22:3,10,13 23:13
worker
8:2,15 9:3
working
7:16 17:23
works
20:16
written
9:9 10:13

_____ Y _____

year
8:7 13:5,9,12,20 15:23
    16:9,11,12,18,23 17:3,16
    18:17,19 19:18,19
Yuengert
3:11 4:4 6:9,9,21 23:19
    24:12

_____ 0 _____

07-704
6:6

_____ 1 _____

10:33
5:19
10:35
5:12
10:45
24:15
12
1:18 5:11
12th
5:20
1819
3:15

_____ 2 _____

2:07-CV-704-MEF
1:5
2001
5:10
2005
7:18 8:21 9:6 13:6,6,22
    15:23 18:17
2006
18:17,20,20
2007
18:21 19:1
2008
1:18 5:11 19:1
23
4:4

278
25:23

_____ 3 _____

35203
3:16
35238
3:8
380487
3:7

_____ 7 _____

7
4:3

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031          http://www.TylerEaton.com

In The Matter Of:

## GLORIA SIMS
v.
## COOSA COUNTY BOARD OF EDUCATION, ET AL.

## NO. 2:07-CV-704-MEF

---

## CALVIN OWENS
## June 12, 2008

---



TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

## THE HIGHEST QUALITY IN COURT REPORTING

205.252.9152 • Toll-Free 800.458.6031 • Fax 205.252.0196
One Federal Place, Suite 1020 • 1819 Fifth Avenue North • Birmingham, Alabama 35203
———————— www.TylerEaton.com ————————

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CIVIL ACTION NO. 2:07-CV-704-MEF

GLORIA SIMS, an individual,
    Plaintiff,
vs.
COOSA COUNTY BOARD OF EDUCATION, et al.,
    Defendants.

VIDEOTAPE DEPOSITION
OF
CALVIN OWENS
June 12, 2008

REPORTED BY:  Eleanor S. Pickett
    Certified Shorthand Reporter
    and Notary Public

---

**Page 3**

A P P E A R A N C E S

FOR THE PLAINTIFF:
    Mr. Jerry D. Roberson
    Attorney at Law
    Roberson & Roberson
    P.O. Box 380487
    Birmingham, Alabama 35238

FOR THE DEFENDANT:
    Ms. Anne Yuengert
    Attorney at Law
    Bradley, Arant, Rose & White, LLP
    One Federal Place
    1819 Fifth Avenue North
    Birmingham, Alabama 35203

OTHERS PRESENT:
    Mr. Todd Wingard
    Ms. Gloria Sims

---

**Page 2**

1    S T I P U L A T I O N

2

3    IT IS STIPULATED AND AGREED,

4  by and between the parties, through their

5  respective counsel, that the deposition of

6  CALVIN OWENS may be taken before Eleanor

7  S. Pickett, Commissioner, Certified

8  Shorthand Reporter and Notary Public;

9    That the signature to and

10  reading of the deposition by the witness

11  is waived, the deposition to have the same

12  force and effect as if full compliance had

13  been had with all laws and rules of Court

14  relating to the taking of depositions;

15    That it shall not be necessary

16  for any objections to be made by counsel

17  to any questions, except as to form or

18  leading questions, and that counsel for

19  the parties may make objections and assign

20  grounds at the time of trial, or at the

21  time said deposition is offered in

22  evidence, or prior thereto.

23

---

**Page 4**

INDEX OF EXAMINATION
PAGE:
EXAMINATION BY MR. ROBERSON    7
EXAMINATION BY MS. YUENGERT    26

---

1 (Pages 1 to 4)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

CALVIN OWENS
June 12, 2008

Page 5

1    I, Eleanor S. Pickett, a
2    Certified Shorthand Reporter of
3    Birmingham, Alabama, and a Notary Public
4    for the State of Alabama at Large, acting
5    as Commissioner, certify that on this
6    date, as provided by the Federal Rules of
7    Civil Procedure of the United States
8    District Court, and the foregoing
9    stipulation of counsel, there came before
10   me at 2001 Nixburg Road, Rockford,
11   Alabama, on June 12, 2008, commencing at
12   10:50 a.m., CALVIN OWENS, witness in the
13   above cause, for oral examination,
14   whereupon the following proceedings were
15   had:
16
17       MR. ROBERSON:  This is the
18   videotape deposition of Mr. Calvin Owens.
19   It's being taken on June 12th at the
20   offices of the Coosa County Board of
21   Education in Rockford, Alabama.  It's
22   10:50 on June 12th.  My name is Jerry
23   Roberson.  I'm the attorney for the

Page 6

1    plaintiff, Gloria Sims.  This case is
2    styled Gloria Sims versus Coosa County
3    Board of Education.  It's pending in the
4    Middle District of Alabama, Northern
5    Division, United States District Court.
6    It's CV 07-704.  My name is Jerry
7    Roberson.  I'm the attorney for the
8    plaintiff, Gloria Sims.  I would ask all
9    counsel of record to state their name and
10   the party they represent.
11       MS. YUENGERT:  I'm Anne
12   Yuengert, and I represent the Coosa County
13   Board of Education.
14       MR. ROBERSON:  Ms. Court
15   Reporter, would you swear our witness?
16
17       CALVIN OWENS,
18   having been first duly sworn, was examined
19   and testified as follows:
20
21       THE REPORTER:  Usual
22   stipulations?
23       MS. YUENGERT:  Yes.

Page 7

1        MR. ROBERSON:  Yes.
2
3    EXAMINATION BY MR. ROBERSON:
4        Q.    Mr. Owens, my name is Jerry
5    Roberson.  I represent Gloria Sims.  She
6    applied for a job at the Coosa -- with the
7    Coosa County Board of Educations and she
8    didn't receive it.  She has filed a
9    lawsuit.  I want to ask you some questions
10   today.  Do you work -- what's your name
11   first?
12       A.    Calvin Owens.
13       Q.    Mr. Owens, do you work for the
14   Coosa County Board of Education?
15       A.    Yes, sir, I do.
16       Q.    Do you know how long you've
17   worked for them?
18       A.    Six years.
19       Q.    So this is 2008, do you know
20   when you were hired?
21       A.    Oh, when -- six years ago when
22   the school started.
23       Q.    Okay.  At the beginning of the

Page 8

1    school year for 2002?
2        A.    The beginning, the beginning
3    of the school year.
4        Q.    All right.  At the time you
5    were hired, was Todd Wingard the
6    superintendent?
7        A.    Yes, he was.
8        Q.    Okay.  And you were hired to
9    work in the lunchroom?
10       A.    Yes, I was hired to work in
11   the lunchroom.
12       Q.    At the middle school; is that
13   correct?
14       A.    Well, I started -- I started
15   at Goodwater, I worked Goodwater, Kellyton
16   and come to Rockford.
17       Q.    So you actually started at
18   another school?
19       A.    Actually, yes, started at --
20       Q.    Goodwater?
21       A.    Goodwater.
22       Q.    Is that -- what school is
23   that?  Is that a high school, elementary

2 (Pages 5 to 8)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

CALVIN OWENS
June 12, 2008

---

Page 9

1  school?
2      A.   Well, it was -- it used to be
3  a high school, but it was an elementary
4  school.
5      Q.   Okay.
6      A.   And I worked at Kellyton three
7  hours.
8      Q.   And after you worked at
9  Goodwater, you --
10      A.   And Kellyton, and then I began
11  to work out here.
12      Q.   You worked at Kellyton.  What
13  kind of school was that?
14      A.   That was -- well, it was -- I
15  think it went from -- at first -- it was a
16  middle school.  It went from --
17      Q.   At Goodwater School, did you
18  work in the lunchroom?
19      A.   In the lunchroom, yes, sir.
20      Q.   Okay.  And at Kellyton Middle
21  School, did you work in the lunchroom?
22      A.   I worked in the lunchroom.
23      Q.   Okay.  And then what year did

---

Page 10

1  you begin working at the middle school
2  here in Rockford?  Do you know when that
3  was?
4      A.   Let me see.  I don't quite --
5  I don't know if it was the second year or
6  the third year.
7      Q.   Did they close those schools,
8  those earlier schools?  Is that why you
9  left?
10      A.   They closed, they closed the
11  schools.
12      Q.   So when they closed them --
13      A.   Closed the school, I came to
14  Rockford.
15      Q.   -- you came to Rockford?
16      A.   Came to Rockford and worked in
17  the lunchroom.
18      Q.   Okay.  All right.  So you've
19  been here at the middle school in Rockford
20  since they closed those schools?
21      A.   Right, right.
22      Q.   Okay.  What do you do in the
23  lunchroom, Mr. Owens?

---

Page 11

1      A.   Actually, I'm -- I mostly
2  clean up, get up all the trash and stuff
3  and just help do what come to hand.
4      Q.   Okay.  Do you mop the floors?
5      A.   I mop the floors and things.
6      Q.   You take out the trash?
7      A.   Take out the trash, yes, sir.
8      Q.   Okay.  And you load and unload
9  the trucks?
10      A.   Yes, sir.
11      Q.   The groceries that they bring?
12      A.   Yes, sir.
13      Q.   Put them in the freezer?
14      A.   Yeah, we put them in -- yeah,
15  put them in the freezer.
16      Q.   Okay.  But you also, I assume,
17  have some responsibility for keeping the
18  bars, the hot bars and snack trays filled.
19  Do you have --
20      A.   Well, actually, no, I didn't
21  do too much of that.  Most I done the
22  other work.
23      Q.   I got you.  Okay.  All right.

---

Page 12

1  And when do you report to work at the
2  middle school, what time of day?
3      A.   8:00.
4      Q.   And how long do you work
5  until?
6      A.   1:00.
7      Q.   Okay.  So is that a five-hour
8  position?
9      A.   Six hours.
10      Q.   Six hours.  From 8:00 to 1:00
11  is six hours?
12      A.   From 8:00 to 2:00.  I mean
13  2:00, from 8:00 to 2:00.
14      Q.   All right.  Well, I thought
15  maybe my math was off.
16      A.   You were right.  I missed an
17  hour.
18      Q.   Okay.  All right.  Now, do
19  they feed you?  Can you eat in the
20  lunchroom?
21      A.   Yeah, I eat in the lunchroom.
22      Q.   Okay.  And you got a state
23  retirement, right?

---

3 (Pages 9 to 12)

GLORIA SIMS                                                                CALVIN OWENS
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                     June 12, 2008

|  | Page 13 |
|---|---|
| 1 | A. Got a what? |
| 2 | Q. You have a state retirement, |
| 3 | you're in that system, right? |
| 4 | A. Yes. |
| 5 | Q. You make contributions towards |
| 6 | the state retirement system? |
| 7 | A. Yes, sir, yes, sir. |
| 8 | Q. You got health insurance |
| 9 | provided to you? |
| 10 | A. Yes, sir. |
| 11 | Q. Do you have a 401-K? Do you |
| 12 | know what that is? |
| 13 | THE DEPONENT: Is that a |
| 14 | 401-K, what we have? |
| 15 | Q. You can't get any help from |
| 16 | the studio audience. |
| 17 | A. Okay. As far as -- I don't |
| 18 | think -- |
| 19 | Q. Do they take money out of |
| 20 | your -- |
| 21 | A. They take money out -- |
| 22 | Q. -- for your own investment, so |
| 23 | to speak? |

|  | Page 15 |
|---|---|
| 1 | your middle school on a few occasions back |
| 2 | in 2004 before she worked at the high |
| 3 | school. Do you recall her from working |
| 4 | then? |
| 5 | A. I don't -- I don't know too |
| 6 | much about that. I don't want to tell |
| 7 | nothing wrong. I don't -- I just don't |
| 8 | know her. |
| 9 | Q. Okay. Now, Mr. Owens, she -- |
| 10 | Ms. Sims does not have a high school |
| 11 | education. She didn't graduate from high |
| 12 | school and she doesn't have a GED. |
| 13 | A. Uh-huh. |
| 14 | Q. What is the extent of your |
| 15 | education? |
| 16 | A. What you mean about that? I |
| 17 | don't have -- |
| 18 | Q. How far did you go in school? |
| 19 | A. The eleventh grade. |
| 20 | Q. Okay. Where did you go to |
| 21 | school? |
| 22 | A. A place called Cottage Grove. |
| 23 | Q. Where is that, sir? |

|  | Page 14 |
|---|---|
| 1 | A. Yeah, they will take -- they |
| 2 | make money out for -- after you be here so |
| 3 | long, you can draw it. |
| 4 | Q. Okay. And, Mr. Owens, do you |
| 5 | have tenure now as a lunchroom worker, |
| 6 | that is -- do you know what that is? |
| 7 | A. That's before they hire you, |
| 8 | you have tenure? |
| 9 | Q. No. After they hire you -- |
| 10 | A. After they hire me. |
| 11 | Q. -- after you work for three |
| 12 | years, then you tenure? |
| 13 | A. Yes, I have that. |
| 14 | Q. So you have that now; is that |
| 15 | correct? |
| 16 | A. Yes, sir. Yes, sir. |
| 17 | Q. Now, do you know Ms. Sims, |
| 18 | Gloria Sims? She just walked in, do you |
| 19 | know her? |
| 20 | A. Actually I -- I haven't been |
| 21 | around her long, but I know she worked |
| 22 | here a few times. |
| 23 | Q. I think she substituted at |

|  | Page 16 |
|---|---|
| 1 | A. About eight miles up the road |
| 2 | here. |
| 3 | Q. In Coosa County? |
| 4 | A. In Coosa County. |
| 5 | Q. Okay. You didn't finish high |
| 6 | school? |
| 7 | A. I didn't finish high school. |
| 8 | Q. Did you ever get your GED? |
| 9 | A. No, I lacked -- I lacked |
| 10 | nearly a half a subject of English to |
| 11 | finishing it. |
| 12 | Q. Lacked half a subject of |
| 13 | English? |
| 14 | A. To finishing it. |
| 15 | Q. All right. Well, when you |
| 16 | interviewed to get your job in the |
| 17 | lunchroom, and first this was at |
| 18 | Goodwater, who did you interview with? |
| 19 | A. You know, I -- I really don't |
| 20 | know. I done forgot who interviewed me. |
| 21 | I -- |
| 22 | Q. Well, did you have an |
| 23 | interview? |

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                          http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

CALVIN OWENS
June 12, 2008

Page 17

1     A.   I had an interview, but --
2     Q.   Did you have to fill out an
3 application?
4     A.   Yes, sir. Yes, sir.
5     Q.   Did you list on your
6 application how far you went in school?
7     A.   Yes, I did.
8     Q.   So you told them that you only
9 finished the eleventh grade?
10     A.   Yes, I did. I put that on my
11 application.
12     Q.   Okay. You never have told
13 anybody that you have a high school
14 degree?
15     A.   No, I haven't.
16     Q.   You wouldn't do that, would
17 you?
18     A.   No, I wouldn't.
19     Q.   Okay. Then did you have --
20 how did you find out about the job, that
21 is, that the position was open?
22     A.   Well, because application was
23 posted on the board, application, after I

Page 18

1 retired from Madix.
2     Q.   I'm sorry, you worked
3 somewhere else before?
4     A.   Yeah, I worked for somebody
5 else.
6     Q.   Where did you work?
7     A.   Madix.
8     Q.   What is that business?
9     A.   That's where they make shelves
10 and checkout counters where they stack
11 things, them things that is rolled in
12 stores.
13     Q.   Fixtures?
14     A.   Fixtures, yeah.
15     Q.   They go in stores?
16     A.   In stores and stack food.
17     Q.   What is the name? How do you
18 spell it?
19     A.   Madix, M-a-d-i-x.
20     Q.   M-a-d-i-x?
21     A.   I-x, Madix.
22     Q.   I got you. Okay. You worked
23 there -- how long did you work there?

Page 19

1     A.   Eighteen years.
2     Q.   Okay. And you retired from
3 there?
4     A.   I retired from there.
5     Q.   Okay. And then how old were
6 you when you retired?
7     A.   I retired at sixty-two.
8     Q.   In '62?
9     A.   Uh-huh.
10     Q.   Okay. And then what did you
11 do?
12     A.   Then I worked for myself. I
13 had a business of my own. I worked for
14 myself until I find out the job. I was
15 searching for a part-time work.
16     Q.   I got you.
17     A.   And I found out the job. See,
18 I got a niece that works for the
19 schoolhouse, worked in the lunchroom.
20     Q.   Who is your niece?
21     A.   Essie Dean Moon.
22     Q.   Ms. Moon works at the school,
23 doesn't she?

Page 20

1     A.   I said she works at the
2 school.
3     Q.   Okay. She works in the
4 lunchroom?
5     A.   Right, right.
6     Q.   And she told you --
7     A.   Uh-huh.
8     Q.   -- that they needed some help?
9     A.   Yeah.
10     Q.   And you applied?
11     A.   I applied.
12     Q.   Okay. Now, Ms. Moon is your
13 cousin?
14     A.   Niece.
15     Q.   Niece. Does she have a high
16 school degree?
17     A.   I don't even know.
18     Q.   Okay.
19     A.   I don't know.
20     Q.   All right. But she advised
21 you that they had a position open, and you
22 came down here and saw the posting, the
23 job posting?

5 (Pages 17 to 20)

GLORIA SIMS                                                      CALVIN OWENS
COOSA COUNTY BOARD OF EDUCATION, ET AL.                          June 12, 2008

---

Page 21

1    A.    Got an application and filled
2    it out.
3    Q.    All right.  When you -- was
4    there a written job posting?
5    A.    Well, I didn't -- the written
6    job was posted, it didn't say what job,
7    but the vacancy was posted, you know.
8    Q.    Okay.  Well, when you applied
9    for the job, did anybody indicate to you
10   that you had to have a high school degree
11   to get the job?
12   A.    (Witness shakes head
13   negatively.)
14   Q.    No?  Is that no?
15   A.    No, they didn't.
16   Q.    But you can't recall who
17   interviewed you --
18   A.    No.
19   Q.    -- to get the job?
20   A.    I don't -- I don't remember.
21   Q.    Was -- but Mr. Wingard was the
22   superintendent?
23   A.    Yeah.

---

Page 22

1    Q.    And Pam Jones was the
2    nutritional director?
3    A.    Right.
4    Q.    Did you recall ever meeting
5    with Ms. Jones before?
6    A.    Yeah.  She called me about --
7    Q.    About the job?
8    A.    She called me, told me to come
9    down and interview.
10   Q.    Okay.  And you did come down.
11   Did you interview with Ms. Jones?
12   A.    You know, I don't -- really, I
13   don't know who I interviewed with.
14   Q.    Okay.  Well, did somebody call
15   you to let you know you got the job?
16   A.    Yeah.
17   Q.    Who was that?
18   A.    Ms. Jones.
19   Q.    Ms. Jones called you to tell
20   you you had been selected?
21   A.    Uh-huh.
22   Q.    And you'd already provided a
23   written application that said you didn't

---

Page 23

1    have a high school degree, correct?
2    A.    (Witness nods head
3    affirmatively.)
4    Q.    Is that a yes?
5    A.    Right.
6    Q.    Okay.  You got the job in 2002
7    at Goodwater?
8    A.    Right.
9    Q.    You worked there and worked at
10   Kellyton, and now you're at the middle
11   school at Rockford?
12   A.    I worked there, worked
13   Kellyton, and then come to Rockford and
14   worked and then went to the middle school.
15   Q.    Okay.  And nobody -- since
16   you've been working there, nobody has ever
17   told you you needed to have a high school
18   education to work there, have they?
19   A.    No, not -- I don't -- I don't
20   recall that.
21   Q.    Mr. Owens, what year were you
22   born?
23   A.    1936.

---

Page 24

1    Q.    You grew up -- where were you
2    working in 1960?  For Madix?
3    A.    19 -- 1960 --
4    Q.    Yeah.
5    A.    -- I was working for Marietta
6    Howell Marble Company in Sylacauga.
7    Q.    Okay.  Well, do you remember
8    in 1964 when they passed this law that
9    made it illegal to discriminate against
10   people because of their race?  Do you
11   remember that?
12   A.    Yeah, I remember that.
13   Q.    The civil rights laws?
14   A.    Yeah, I remember that.
15   Q.    Those were important pieces of
16   legislation, weren't they?
17   A.    Yeah.
18   Q.    I mean, just think about it.
19   They're historic pieces of legislation.
20   This year we have a black man that's the
21   Democratic nominee.  That's progress,
22   isn't it?
23   A.    (No response.)

6 (Pages 21 to 24)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

CALVIN OWENS
June 12, 2008

Page 25

1    Q.    Don't you think that's
2  progress?
3    A.    Yeah.
4    Q.    I mean, do you think we could
5  have had a black man as the Democratic
6  nominee in 1960?
7    A.    (Witness shakes head
8  negatively.)
9    Q.    I don't think so.  Is that a
10  no?
11    A.    No.
12    Q.    Okay.  Well, so it's important
13  that we enforce the civil rights laws,
14  don't you agree?
15    A.    Yeah.
16    Q.    And you shouldn't be
17  discriminated against because you're
18  black; do you agree with that?
19    A.    Yeah.
20    Q.    You shouldn't be discriminated
21  against because you're a female; you agree
22  with that?
23    A.    Well, no, you shouldn't be

Page 26

1  discriminated against.
2    MR. ROBERSON:  Okay.  I don't
3  have anything further, Mr. Owens.
4
5  EXAMINATION BY MS. YUENGERT:
6    Q.    Mr. Owens, the only question I
7  have for you is, when you started working,
8  were you splitting your time between
9  Goodwater and Kellyton?
10    A.    Yes, ma'am.
11    Q.    So you were working three
12  hours at one?
13    A.    Three hours at Goodwater and
14  three hours at Kellyton.
15    Q.    And three hours at Kellyton?
16    A.    Yes, ma'am.
17    MS. YUENGERT:  Okay.  That's
18  all I have.
19    MR. ROBERSON:  Thank you, Mr.
20  Owens.  Okay.  We'll go off the record at
21  11:05.
22
23    FURTHER THE DEPONENT SAITH NOT

Page 27

1    C E R T I F I C A T E
2
3
4  STATE OF ALABAMA)
5  JEFFERSON COUNTY)
6
7    I hereby certify that the
8  above and foregoing deposition was taken
9  down by me in stenotypy, and the questions
10  and answers thereto were reduced to
11  typewriting under my supervision, and that
12  the foregoing represents a true and
13  correct transcript of the deposition given
14  by said witness upon said hearing.
15    I further certify that I am
16  neither of counsel nor of kin to the
17  parties to the action, nor am I in anywise
18  interested in the result of said cause.
19
20
21
22
    COMMISSIONER - NOTARY PUBLIC
23    ACCR LICENSE NO. 278

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                        http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

CALVIN OWENS
June 12, 2008

**A**

ACCR
27:23
acting
5:4
action
1:5  27:17
advised
20:20
affirmatively
23:3
ago
7:21
agree
25:14,18,21
AGREED
2:3
al
1:10
Alabama
1:2  3:8,16  5:3,4,11,21  6:4
   27:4
Anne
3:11  6:11
answers
27:10
anybody
17:13  21:9
anywise
27:17
application
17:3,6,11,22,23  21:1
   22:23
applied
7:6  20:10,11  21:8
Arant
3:13
assign
2:19
assume
11:16
attorney
3:5,12  5:23  6:7
audience
13:16
Avenue
3:15
a.m
5:12

**B**

back
15:1
bars
11:18,18
began
9:10
beginning
7:23  8:2,2
Birmingham

3:8,16  5:3
black
24:20  25:5,18
board
1:10  5:20  6:3,13  7:7,14
   17:23
born
23:22
Box
3:7
Bradley
3:13
bring
11:11
business
18:8  19:13

**C**

C
3:1  27:1,1
call
22:14
called
15:22  22:6,8,19
Calvin
1:17  2:6  5:12,18  6:17
   7:12
case
6:1
cause
5:13  27:18
Certified
1:22  2:7  5:2
certify
5:5  27:7,15
checkout
18:10
civil
1:5  5:7  24:13  25:13
clean
11:2
close
10:7
closed
10:10,10,12,13,20
come
8:16  11:3  22:8,10  23:13
commencing
5:11
Commissioner
2:7  5:5  27:22
Company
24:6
compliance
2:12
contributions
13:5
Coosa
1:10  5:20  6:2,12  7:6,7,14
   16:3,4

correct
8:13  14:15  23:1  27:13
Cottage
15:22
counsel
2:5,16,18  5:9  6:9  27:16
counters
18:10
County
1:10  5:20  6:2,12  7:7,14
   16:3,4  27:5
Court
1:1  2:13  5:8  6:5,14
cousin
20:13
CV
6:6

**D**

D
3:4
date
5:6
day
12:2
Dean
19:21
DEFENDANT
3:10
Defendants
1:11
degree
17:14  20:16  21:10  23:1
Democratic
24:21  25:5
DEPONENT
13:13  26:23
deposition
1:15  2:5,10,11,21  5:18
   27:8,13
depositions
2:14
director
22:2
discriminate
24:9
discriminated
25:17,20  26:1
District
1:1,2  5:8  6:4,5
Division
1:3  6:5
draw
14:3
duly
6:18

**E**

E
3:1,1  27:1,1

earlier
10:8
eat
12:19,21
education
1:10  5:21  6:3,13  7:14
   15:11,15  23:18
Educations
7:7
effect
2:12
eight
16:1
Eighteen
19:1
Eleanor
1:21  2:6  5:1
elementary
8:23  9:3
eleventh
15:19  17:9
enforce
25:13
English
16:10,13
Essie
19:21
et
1:10
evidence
2:22
examination
4:1,3,4  5:13  7:3  26:5
examined
6:18
extent
15:14

**F**

F
27:1
far
13:17  15:18  17:6
Federal
3:14  5:6
feed
12:19
female
25:21
Fifth
3:15
filed
7:8
fill
17:2
filled
11:18  21:1
find
17:20  19:14
finish

16:5,7
finished
17:9
finishing
16:11,14
first
6:18  7:11  9:15  16:17
five–hour
12:7
Fixtures
18:13,14
floors
11:4,5
following
5:14
follows
6:19
food
18:16
force
2:12
foregoing
5:8  27:8,12
forgot
16:20
form
2:17
found
19:17
freezer
11:13,15
full
2:12
further
26:3,23  27:15

**G**

GED
15:12  16:8
given
27:13
Gloria
1:7  3:20  6:1,2,8  7:5
   14:18
go
15:18,20  18:15  26:20
Goodwater
8:15,15,20,21  9:9,17  16:18
   23:7  26:9,13
grade
15:19  17:9
graduate
15:11
grew
24:1
groceries
11:11
grounds
2:20
Grove

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

CALVIN OWENS
June 12, 2008

15:22

**H**

half
16:10,12
hand
11:3
head
21:12 23:2 25:7
health
13:8
hearing
27:14
help
11:3 13:15 20:8
high
8:23 9:3 15:2,10,11 16:5
16:7 17:13 20:15 21:10
23:1,17
hire
14:7,9,10
hired
7:20 8:5,8,10
historic
24:19
hot
11:18
hour
12:17
hours
9:7 12:9,10,11 26:12,13,14
26:15
Howell
24:6

**I**

illegal
24:9
important
24:15 25:12
INDEX
4:1
indicate
21:9
individual
1:7
insurance
13:8
interested
27:18
interview
16:18,23 17:1 22:9,11
interviewed
16:16,20 21:17 22:13
investment
13:22
I-x
18:21

**J**

JEFFERSON
27:5
Jerry
3:4 5:22 6:6 7:4
job
7:6 16:16 17:20 19:14,17
20:23 21:4,6,6,9,11,19
22:7,15 23:6
Jones
22:1,5,11,18,19
June
1:18 5:11,19,22

**K**

keeping
11:17
Kellyton
8:15 9:6,10,12,20 23:10
23:13 26:9,14,15
kin
27:16
kind
9:13
know
7:16,19 10:2,5 13:12 14:6
14:17,19,21 15:5,8 16:19
16:20 20:17,19 21:7
22:12,13,15

**L**

L
2:1
lacked
16:9,9,12
Large
5:4
law
3:5,12 24:8
laws
2:13 24:13 25:13
lawsuit
7:9
leading
2:18
left
10:9
legislation
24:16,19
LICENSE
27:23
list
17:5
LLP
3:13
load
11:8
long
7:16 12:4 14:3,21 18:23
lunchroom
8:9,11 9:18,19,21,22 10:17

10:23 12:20,21 14:5
16:17 19:19 20:4

**M**

Madix
18:1,7,19,21 24:2
man
24:20 25:5
Marble
24:6
Marietta
24:5
math
12:15
ma'am
26:10,16
mean
12:12 15:16 24:18 25:4
meeting
22:4
middle
1:2 6:4 8:12 9:16,20 10:1
10:19 12:2 15:1 23:10
23:14
miles
16:1
missed
12:16
money
13:19,21 14:2
Moon
19:21,22 20:12
mop
11:4,5
M-a-d-i-x
18:19,20

**N**

N
2:1 3:1
name
5:22 6:6,9 7:4,10 18:17
nearly
16:10
necessary
2:15
needed
20:8 23:17
negatively
21:13 25:8
neither
27:16
never
17:12
niece
19:18,20 20:14,15
Nixburg
5:10
nods
23:2

nominee
24:21 25:6
North
3:15
Northern
1:3 6:4
Notary
1:23 2:8 5:3 27:22
nutritional
22:2

**O**

O
2:1
objections
2:16,19
occasions
15:1
offered
2:21
offices
5:20
Oh
7:21
Okay
7:23 8:8 9:5,20,23 10:18
10:22 11:4,8,16,23 12:7
12:18,22 13:17 14:4
15:9,20 16:5 17:12,19
18:22 19:2,5,10 20:3,12
20:18 21:8 22:10,14
23:6,15 24:7 25:12
26:2,17,20
old
19:5
open
17:21 20:21
oral
5:13
Owens
1:17 2:6 5:12,18 6:17 7:4
7:12,13 10:23 14:4 15:9
23:21 26:3,6,20

**P**

P
2:1 3:1,1
PAGE
4:2
Pam
22:1
parties
2:4,19 27:17
party
6:10
part-time
19:15
passed
24:8
pending

6:3
people
24:10
Pickett
1:21 2:7 5:1
pieces
24:15,19
place
3:14 15:22
plaintiff
1:8 3:3 6:1,8
position
12:8 17:21 20:21
posted
17:23 21:6,7
posting
20:22,23 21:4
PRESENT
3:18
prior
2:22
Procedure
5:7
proceedings
5:14
progress
24:21 25:2
provided
5:6 13:9 22:22
Public
1:23 2:8 5:3 27:22
put
11:13,14,15 17:10
P.O
3:7

**Q**

question
26:6
questions
2:17,18 7:9 27:9
quite
10:4

**R**

R
3:1 27:1
race
24:10
reading
2:10
really
16:19 22:12
recall
15:3 21:16 22:4 23:20
receive
7:8
record
6:9 26:20
reduced

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

CALVIN OWENS
June 12, 2008

27:10
relating
2:14
remember
21:20  24:7,11,12,14
report
12:1
REPORTED
1:21
Reporter
1:22  2:8  5:2  6:15,21
represent
6:10,12  7:5
represents
27:12
respective
2:5
response
24:23
responsibility
11:17
result
27:18
retired
18:1  19:2,4,6,7
retirement
12:23  13:2,6
right
8:4  10:18,21,21  11:23
  12:14,16,18,23  13:3
  16:15  20:5,5,20  21:3
  22:3  23:5,8
rights
24:13  25:13
road
5:10  16:1
Roberson
3:4,6,6  4:3  5:17,23  6:7
  6:14  7:1,3,5  26:2,19
Rockford
5:10,21  8:16  10:2,14,15,16
  10:19  23:11,13
rolled
18:11
Rose
3:13
rules
2:13  5:6

**S**

S
1:21  2:1,7  3:1  5:1
SAITH
26:23
saw
20:22
school
7:22  8:1,3,12,18,22,23  9:1
  9:3,4,13,16,17,21  10:1,13
  10:19  12:2  15:1,3,10,12

15:18,21  16:6,7  17:6,13
  19:22  20:2,16  21:10
  23:1,11,14,17
schoolhouse
19:19
schools
10:7,8,11,20
searching
19:15
second
10:5
see
10:4  19:17
selected
22:20
shakes
21:12  25:7
shelves
18:9
Shorthand
1:22  2:8  5:2
signature
2:9
Sims
1:7  3:20  6:1,2,8  7:5
  14:17,18  15:10
sir
7:15  9:19  11:7,10,12  13:7
  13:7,10  14:16,16  15:23
  17:4,4
six
7:18,21  12:9,10,11
sixty-two
19:7
snack
11:18
somebody
18:4  22:14
sorry
18:2
speak
13:23
spell
18:18
splitting
26:8
stack
18:10,16
started
7:22  8:14,14,17,19  26:7
state
5:4  6:9  12:22  13:2,6
  27:4
States
1:1  5:7  6:5
stenotypy
27:9
STIPULATED
2:3
stipulation
5:9

stipulations
6:22
stores
18:12,15,16
studio
13:16
stuff
11:2
styled
6:2
subject
16:10,12
substituted
14:23
superintendent
8:6  21:22
supervision
27:11
swear
6:15
sworn
6:18
Sylacauga
24:6
system
13:3,6

**T**

T
2:1,1  27:1,1
take
11:6,7  13:19,21  14:1
taken
2:6  5:19  27:8
tell
15:6  22:19
tenure
14:5,8,12
testified
6:19
Thank
26:19
thereto
2:22  27:10
things
11:5  18:11,11
think
9:15  13:18  14:23  24:18
  25:1,4,9
third
10:6
thought
12:14
three
9:6  14:11  26:11,13,14,15
time
2:20,21  8:4  12:2  26:8
times
14:22
today

7:10
Todd
3:19  8:5
told
17:8,12  20:6  22:8  23:17
transcript
27:13
trash
11:2,6,7
trays
11:18
trial
2:20
trucks
11:9
true
27:12
typewriting
27:11

**U**

U
2:1
Uh-huh
15:13  19:9  20:7  22:21
United
1:1  5:7  6:5
unload
11:8
Usual
6:21

**V**

vacancy
21:7
versus
6:2
videotape
1:15  5:18
vs
1:9

**W**

waived
2:11
walked
14:18
want
7:9  15:6
went
9:15,16  17:6  23:14
weren't
24:16
We'll
26:20
White
3:13
Wingard
3:19  8:5  21:21
witness

2:10  5:12  6:15  21:12
  23:2  25:7  27:14
work
7:10,13  8:9,10  9:11,18,21
  11:22  12:1,4  14:11  18:6
  18:23  19:15  23:18
worked
7:17  8:15  9:6,8,12,22
  10:16  14:21  15:2  18:2,4
  18:22  19:12,13,19  23:9
  23:9,12,12,14
worker
14:5
working
10:1  15:3  23:16  24:2,5
  26:7,11
works
19:18,22  20:1,3
wouldn't
17:16,18
written
21:4,5  22:23
wrong
15:7

**Y**

yeah
11:14,14  12:21  14:1  18:4
  18:14  20:9  21:23  22:6
  22:16  24:4,12,14,17
  25:3,15,19
year
8:1,3  9:23  10:5,6  23:21
  24:20
years
7:18,21  14:12  19:1
Yuengert
3:11  4:4  6:11,12,23  26:5
  26:17

**0**

07-704
6:6

**1**

1:00
12:6,10
10:50
5:12,22
11:05
26:21
12
1:18  5:11
12th
5:19,22
1819
3:15
19
24:3
1936

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                    http://www.TylerEaton.com

GLORIA SIMS                                                                CALVIN OWENS
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                     June 12, 2008

```
  23:23
1960
 24:2,3  25:6
1964
 24:8

_____
            2
2:00
 12:12,13,13
2:07-CV-704-MEF
 1:5
2001
 5:10
2002
 8:1  23:6
2004
 15:2
2008
 1:18  5:11  7:19
26
 4:4
278
 27:23

_____
            3
35203
 3:16
35238
 3:8
380487
 3:7

_____
            4
401-K
 13:11,14

_____
            6
62
 19:8

_____
            7
7
 4:3

_____
            8
8:00
 12:3,10,12,13
```

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                              http://www.TylerEaton.com

In The Matter Of:

## GLORIA SIMS
v.
## COOSA COUNTY BOARD OF EDUCATION, ET AL.

## NO. 2:07-CV-704-MEF

---

## JERRY MCKINNEY
## June 12, 2008

---



**TYLER EATON MORGAN NICHOLS & PRITCHETT INC.**

## THE HIGHEST QUALITY IN COURT REPORTING

205.252.9152 • Toll-Free 800.458.6031 • Fax 205.252.0196
One Federal Place, Suite 1020 • 1819 Fifth Avenue North • Birmingham, Alabama 35203
——————————— www.TylerEaton.com ———————————

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

JERRY MCKINNEY
June 12, 2008

---

Page 1

1  IN THE UNITED STATES DISTRICT COURT
2  MIDDLE DISTRICT OF ALABAMA
3  NORTHERN DIVISION
4
5  CIVIL ACTION NO. 2:07-CV-704-MEF
6
7  GLORIA SIMS, an individual,
     Plaintiff,
8  vs.
9  COOSA COUNTY BOARD OF EDUCATION, et al.,
     Defendants.
10
11
12
13  VIDEOTAPE DEPOSITION
14  OF
15  JERRY MCKINNEY
16  June 12, 2008
17
18  REPORTED BY:  Eleanor S. Pickett
19        Certified Shorthand Reporter
20        and Notary Public
21
22
23

---

Page 2

1    S T I P U L A T I O N
2
3       IT IS STIPULATED AND AGREED,
4  by and between the parties, through their
5  respective counsel, that the deposition of
6  JERRY MCKINNEY may be taken before Eleanor
7  S. Pickett, Commissioner, Certified
8  Shorthand Reporter and Notary Public;
9       That the signature to and
10  reading of the deposition by the witness
11  is waived, the deposition to have the same
12  force and effect as if full compliance had
13  been had with all laws and rules of Court
14  relating to the taking of depositions;
15       That it shall not be necessary
16  for any objections to be made by counsel
17  to any questions, except as to form or
18  leading questions, and that counsel for
19  the parties may make objections and assign
20  grounds at the time of trial, or at the
21  time said deposition is offered in
22  evidence, or prior thereto.
23

---

Page 3

1    A P P E A R A N C E S
2
3  FOR THE PLAINTIFF:
4    Mr. Jerry D. Roberson
5    Attorney at Law
6    Roberson & Roberson
7    P.O. Box 380487
8    Birmingham, Alabama 35238
9
10  FOR THE DEFENDANT:
11    Ms. Anne Yuengert
12    Attorney at Law
13    Bradley, Arant, Rose & White, LLP
14    One Federal Place
15    1819 Fifth Avenue North
16    Birmingham, Alabama 35203
17
18  OTHERS PRESENT:
19    Mr. Todd Wingard
20    Ms. Gloria Sims
21
22
23

---

Page 4

1    INDEX OF EXAMINATION
2         PAGE:
3  EXAMINATION BY ROBERSON        6
4  EXAMINATION BY MS. YUENGERT   17

---

1 (Pages 1 to 4)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

JERRY MCKINNEY
June 12, 2008

Page 5

1       I, Eleanor S. Pickett, a
2   Certified Shorthand Reporter of
3   Birmingham, Alabama, and a Notary Public
4   for the State of Alabama at Large, acting
5   as Commissioner, certify that on this
6   date, as provided by the Federal Rules of
7   Civil Procedure of the United States
8   District Court, and the foregoing
9   stipulation of counsel, there came before
10  me at 2001 Nixburg Road, Rockford,
11  Alabama, on June 12, 2008, commencing at
12  11:10 a.m., JERRY MCKINNEY, witness in the
13  above cause, for oral examination,
14  whereupon the following proceedings were
15  had:
16
17      MR. ROBERSON:  This is the
18  videotape deposition of Jerry McKinney.
19  It's being taken on June 12th at 11:10
20  p.m.  My name is Jerry Roberson.  We're at
21  the offices of the Coosa County Board of
22  Education in Rockford, Alabama.  My name
23  is Jerry Roberson, and I represent the

Page 6

1   plaintiff, Gloria Sims, in this case
2   that's pending in the United States
3   District Court for the Middle District of
4   Alabama, Northern Division.  It's CV
5   number 07-704, Gloria Sims versus the
6   Coosa County Board of Education.  Would
7   all counsel of record state their name and
8   the party they represent?
9       MS. YUENGERT:  Anne Yuengert
10  for the Coosa County Board of Education.
11      MR. ROBERSON:  Would you swear
12  our witness, please, ma'am?
13
14      JERRY MCKINNEY,
15  having been first duly sworn, was examined
16  and testified as follows:
17
18  EXAMINATION BY ROBERSON:
19      Q.    Would you state your full
20  name, please, sir?
21      A.    Jerry Wayne McKinney.
22      Q.    And, Mr. McKinney, are you
23  employed in the lunchroom at Coosa County?

Page 7

1       A.    Yes.
2       Q.    You work at the high school?
3       A.    High school.
4       Q.    And you obtained that job
5   in -- sometime during the school year of
6   2006?
7       A.    Correct.
8       Q.    Is that correct?
9       A.    (Witness nods head
10  affirmatively.)
11      Q.    What is the extent of your
12  education?  How far did you go in school?
13      A.    I graduated from Goodwater
14  High School in 1980.
15      Q.    1980?
16      A.    Uh-huh.
17      Q.    And could you just tell me,
18  have you worked in the -- in any job where
19  you dealt with preparing food or the food
20  handling before you went to work at the
21  school?
22      A.    Yes, I worked four years at
23  Hardee's.

Page 8

1       Q.    Hardee's?
2       A.    Yeah, Hardee's franchise in
3   Alexander City.
4       Q.    In Alex City?
5       A.    Yes.
6       Q.    What did you do there?
7       A.    I started out being the yard
8   keeper.  And then I was promoted to what
9   they call the grill helper and meat helper
10  cooking, working on the breakfast and the
11  lunch.  And then I was promoted to
12  assistant breakfast manager.
13      Q.    And how did you find out about
14  this position here with the school in
15  2006?
16      A.    Through a friend, Chris Moon.
17  He used to be employed I think at the
18  Kellyton Elementary School.  And we was
19  friends, so he mentioned it to me during
20  the summer that -- he was aware that
21  Russell was closing down.  I was at
22  Russell Corporation at the time.
23      Q.    I see.

2 (Pages 5 to 8)

GLORIA SIMS                                                         JERRY MCKINNEY
COOSA COUNTY BOARD OF EDUCATION, ET AL.                              June 12, 2008

Page 9

1    A.    And my plant was closing down.
2    And he was asking me about a job, what I
3    was going to do; and I was told him I was
4    planning on getting in the school system,
5    like driving the school bus.  That was my
6    plan before I left.  And then he said
7    well, they got a job open at the high
8    school in the cafeteria, lunchroom work,
9    and he said you might want to go apply for
10   that.  So I told him yeah, I'll look into
11   it.  So I came down here to the Board of
12   Education and looked on the post bid and
13   seen that the job was up for bid.  So I
14   applied for it.  I put in an application
15   for it.
16   Q.    And you were eventually hired
17   into that job?
18   A.    First of all as a temporary
19   helper.
20   Q.    Let's -- you worked the job
21   temporarily before you got the permanent
22   position?
23   A.    Uh-huh.

Page 10

1    Q.    Is that what you are saying?
2    A.    Yes.  Because it was still
3    posted.
4    Q.    Okay.  Okay.  Well, and you
5    interviewed with Ms. Jones, with Ms.
6    Forbus and with the principal, Mr.
7    Bullard?
8    A.    Mr. Bullard, right.
9    Q.    Okay.  And you filled out a
10   written job application?
11   A.    Yes, I filled out an
12   application.
13   Q.    And you provided that to them,
14   you came for an interview --
15   A.    Uh-huh.
16   Q.    -- and there were several
17   candidates for that position, were you
18   aware of that?
19   A.    I was told there was three, as
20   far as I know, but I -- I never met any of
21   them, like I said, but I was told there
22   was three.
23   Q.    Did you come down here to the

Page 11

1    Board of Education offices for your
2    interview?
3    A.    Yeah, right here (indicating).
4    Q.    In this room?
5    A.    In this room.
6    Q.    Okay.  And do you know who you
7    replaced, do you know the --
8    A.    Do I know the person that I
9    replaced?
10   Q.    Yes.
11   A.    I don't know if I replaced
12   them, but I know the person that was up at
13   the lunchroom before I -- at the time was
14   Michael Kelly.
15   Q.    Correct.  Do you know Michael?
16   A.    Yeah, we went to school
17   together.
18   Q.    Okay.  Is he a black male?
19   A.    Yes.
20   Q.    Where did -- did he go to work
21   somewhere else?
22   A.    I don't know for sure.  I'm
23   pretty sure he did, but I don't know where

Page 12

1    he went.
2    Q.    I just didn't know why he
3    left.
4    A.    I know where he work now.
5    Q.    You don't know where he works?
6    A.    I know where he work now.
7    Q.    Where does he work?
8    A.    Work at Home Depot in Alex
9    City.
10   Q.    Okay.  Now, Mr. McKinney,
11   there was a written job posting, correct?
12   A.    Correct.
13   Q.    And it was displayed up here
14   on the school board, correct?
15   A.    Uh-huh, correct.
16   Q.    And it had an educational
17   requirement, correct?
18   A.    Correct.
19   Q.    And you met it; that is, it
20   said you had to have a high school degree?
21   A.    High school diploma.
22   Q.    And you have one, correct?
23   A.    Correct.

3 (Pages 9 to 12)

GLORIA SIMS                                              JERRY MCKINNEY
COOSA COUNTY BOARD OF EDUCATION, ET AL.                  June 12, 2008

---

Page 13

1    Q.   Okay.  Now, who do you work
2  with at the school, at the lunchroom?
3    A.   Now?
4    Q.   Yeah.  Do you work with Ms.
5  Murphy?
6    A.   Yes, Ms. Murphy, Ms. Thompson,
7  Ms. Beasley and -- Becky Beasley and Ms.
8  Margaret Henderson.
9    Q.   Who is the cafeteria manager?
10   A.   Becky Beasley.
11   Q.   Okay.  So she was hired to
12  replace Ms. Forbus?  You never worked with
13  Ms. Forbus?
14   A.   Yes, I worked with her for a
15  while.
16   Q.   You did work with Ms. Forbus
17  for the rest of the school year of 2006?
18   A.   She went on leave in --
19  sometime in November, I think, if I ain't
20  mistaken.  It was around November
21  sometime.
22   Q.   Of what year, do you know?
23   A.   Of 2006.

Page 14

1    Q.   2006, so you only worked for
2  her for a short time?
3    A.   Right.
4    Q.   Do you know when you began
5  working?
6    A.   Not the exact date.
7    Q.   Were you -- did she leave
8  before you got the full-time position, or
9  were you subbing, or were you --
10   A.   I was subbing when she left,
11  but she was on leave when I was --
12   Q.   When you were given the
13  full-time position?
14   A.   Right.
15   Q.   Okay.  So you are now working
16  for Ms. Rayfield; is that right?
17   A.   Ms. Beasley.
18   Q.   Ms. Beasley, okay.  When did
19  Ms. Beasley come on, do you know?
20   A.   No, I don't know exactly.
21   Q.   Did y'all have to work a
22  period of time without a cafeteria
23  manager?

Page 15

1    A.   Yes, but she was -- to my
2  knowledge, she was a sub teacherwise, and
3  I'm thinking that's what she was, a sub at
4  the time.  I know she wasn't full-time.
5    Q.   All right.  In your job at the
6  cafeteria now, tell me what it is you do
7  there in the lunchroom.
8    A.   I help prepare the -- well, my
9  job is to put out the milk from the cooler --
10  from the box, cooler box to the cooler and
11  put the chips on the stand and put the
12  flavored water and plain water and juice
13  and all that out to prepare it for lunch,
14  in other words.  And I help -- and I get
15  up the trash and I mop and clean.
16   Q.   Keep the cafeteria clean?
17   A.   Yes.
18   Q.   And you load and unload the
19  groceries, the trucks that come?
20   A.   I put it up.  Now, the driver
21  unloads it.
22   Q.   Okay.  You mean he unloads his
23  truck and sets it somewhere?

Page 16

1    A.   Right.
2    Q.   And then you put it up?
3    A.   Yes.
4    Q.   And you put it in a cooler of
5  some kind?
6    A.   We have a cooler, we have a
7  freezer and we have a stockroom.
8    Q.   Okay.  So you put it where it
9  needs to go?
10   A.   Yes.
11   Q.   Okay.  And then they have some
12  kind of a snack rack --
13   A.   Yes.
14   Q.   -- or snack tray --
15   A.   I prepare that.
16   Q.   -- that you have to keep up?
17   A.   Right.
18   Q.   Okay.  And you empty the
19  trash?
20   A.   Yes.
21   Q.   Okay.  And they -- but you --
22  do you prepare the food; that is, you
23  cook --

4 (Pages 13 to 16)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

JERRY MCKINNEY
June 12, 2008

Page 17

1    A.    I help.
2    Q.    -- or you assist them if they
3    need it?
4    A.    I assist them wherever needed.
5    Q.    Okay.  All right.  Is there
6    anything about the job that you do now
7    that a woman couldn't do that you know of?
8    A.    No.
9          MR. ROBERSON:  Okay.  I don't
10   have anything further.
11
12   EXAMINATION BY MS. YUENGERT:
13   Q.    Mr. McKinney, did you work at
14   a Big Bear Supermarket or something like
15   that?
16   A.    Yes, ma'am, Big Bear Super
17   Food.
18   Q.    What did you do there?
19   A.    I started out as what they
20   call bag boy.  And then I started stocking
21   the groceries when they are brought in in
22   the boxes and cases.  Then I would help in
23   the meat department, the produce

Page 18

1    department.  Really just everything there,
2    and then I was promoted to cashier.
3          MS. YUENGERT:  That's all I
4    have.
5          MR. ROBERSON:  So that
6    concludes the deposition of Mr. McKinney
7    at 11:20.  We'll go off the record.  Thank
8    you, Mr. McKinney.
9
10         FURTHER THE DEPONENT SAITH NOT
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 19

1              C E R T I F I C A T E
2
3
4    STATE OF ALABAMA)
5    JEFFERSON COUNTY)
6
7          I hereby certify that the
8    above and foregoing deposition was taken
9    down by me in stenotypy, and the questions
10   and answers thereto were reduced to
11   typewriting under my supervision, and that
12   the foregoing represents a true and
13   correct transcript of the deposition given
14   by said witness upon said hearing.
15         I further certify that I am
16   neither of counsel nor of kin to the
17   parties to the action, nor am I in anywise
18   interested in the result of said cause.
19
20
21
22
           COMMISSIONER - NOTARY PUBLIC
23         ACCR LICENSE NO. 278

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                    http://www.TylerEaton.com

GLORIA SIMS                                                                    JERRY MCKINNEY
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                        June 12, 2008

---

**A**

ACCR
 19:23
acting
 5:4
action
 1:5  19:17
affirmatively
 7:10
AGREED
 2:3
ain't
 13:19
al
 1:10
Alabama
 1:2  3:8,16  5:3,4,11,22
 6:4  19:4
Alex
 8:4  12:8
Alexander
 8:3
Anne
 3:11  6:9
answers
 19:10
anywise
 19:17
application
 9:14  10:10,12
applied
 9:14
apply
 9:9
Arant
 3:13
asking
 9:2
assign
 2:19
assist
 17:2,4
assistant
 8:12
Attorney
 3:5,12
Avenue
 3:15
aware
 8:20  10:18
a.m
 5:12

**B**

bag
 17:20
Bear
 17:14,16
Beasley
 13:7,7,10  14:17,18,19

Becky
 13:7,10
began
 14:4
bid
 9:12,13
Big
 17:14,16
Birmingham
 3:8,16  5:3
black
 11:18
board
 1:10  5:21  6:6,10  9:11  11:1
 12:14
box
 3:7  15:10,10
boxes
 17:22
boy
 17:20
Bradley
 3:13
breakfast
 8:10,12
brought
 17:21
Bullard
 10:7,8
bus
 9:5

**C**

C
 3:1  19:1,1
cafeteria
 9:8  13:9  14:22  15:6,16
call
 8:9  17:20
candidates
 10:17
case
 6:1
cases
 17:22
cashier
 18:2
cause
 5:13  19:18
Certified
 1:22  2:7  5:2
certify
 5:5  19:7,15
chips
 15:11
Chris
 8:16
City
 8:3,4  12:9
Civil

1:5  5:7
clean
 15:15,16
closing
 8:21  9:1
come
 10:23  14:19  15:19
commencing
 5:11
Commissioner
 2:7  5:5  19:22
compliance
 2:12
concludes
 18:6
cook
 16:23
cooking
 8:10
cooler
 15:9,10,10  16:4,6
Coosa
 1:10  5:21  6:6,10,23
Corporation
 8:22
correct
 7:7,8  11:15  12:11,12,14,15
 12:17,18,22,23  19:13
counsel
 2:5,16,18  5:9  6:7  19:16
County
 1:10  5:21  6:6,10,23  19:5
Court
 1:1  2:13  5:8  6:3
CV
 6:4

**D**

D
 3:4
date
 5:6  14:6
dealt
 7:19
DEFENDANT
 3:10
Defendants
 1:11
degree
 12:20
department
 17:23  18:1
DEPONENT
 18:10
deposition
 1:15  2:5,10,11,21  5:18
 18:6  19:8,13
depositions
 2:14
Depot

12:8
diploma
 12:21
displayed
 12:13
District
 1:1,2  5:8  6:3,3
Division
 1:3  6:4
driver
 15:20
driving
 9:5
duly
 6:15

**E**

E
 3:1,1  19:1,1
education
 1:10  5:22  6:6,10  7:12
 9:12  11:1
educational
 12:16
effect
 2:12
Eleanor
 1:21  2:6  5:1
Elementary
 8:18
employed
 6:23  8:17
empty
 16:18
et
 1:10
eventually
 9:16
evidence
 2:22
exact
 14:6
exactly
 14:20
examination
 4:1,3,4  5:13  6:18  17:12
examined
 6:15
extent
 7:11

**F**

F
 19:1
far
 7:12  10:20
Federal
 3:14  5:6
Fifth
 3:15

filled
 10:9,11
find
 8:13
first
 6:15  9:18
flavored
 15:12
following
 5:14
follows
 6:16
food
 7:19,19  16:22  17:17
Forbus
 10:6  13:12,13,16
force
 2:12
foregoing
 5:8  19:8,12
form
 2:17
four
 7:22
franchise
 8:2
freezer
 16:7
friend
 8:16
friends
 8:19
full
 2:12  6:19
full-time
 14:8,13  15:4
further
 17:10  18:10  19:15

**G**

getting
 9:4
given
 14:12  19:13
Gloria
 1:7  3:20  6:1,5
go
 7:12  9:9  11:20  16:9  18:7
going
 9:3
Goodwater
 7:13
graduated
 7:13
grill
 8:9
groceries
 15:19  17:21
grounds
 2:20

Tyler Eaton Morgan Nichols & Pritchett, Inc.
Toll Free 800.458.6031                                                      http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

JERRY MCKINNEY
June 12, 2008

**H**

handling
7:20
Hardee's
7:23  8:1,2
head
7:9
hearing
19:14
help
15:8,14  17:1,22
helper
8:9,9  9:19
Henderson
13:8
high
7:2,3,14  9:7  12:20,21
hired
9:16  13:11
Home
12:8

**I**

INDEX
4:1
indicating
11:3
individual
1:7
interested
19:18
interview
10:14  11:2
interviewed
10:5

**J**

JEFFERSON
19:5
Jerry
1:17  2:6  3:4  5:12,18,20
5:23  6:14,21
job
7:4,18  9:2,7,13,17,20
10:10  12:11  15:5,9  17:6
Jones
10:5
juice
15:12
June
1:18  5:11,19

**K**

keep
15:16  16:16
keeper
8:8
Kelly
11:14
Kellyton

8:18
kin
19:16
kind
16:5,12
know
10:20  11:6,7,8,11,12,15,22
11:23  12:2,4,5,6  13:22
14:4,19,20  15:4  17:7
knowledge
15:2

**L**

L
2:1
Large
5:4
Law
3:5,12
laws
2:13
leading
2:18
leave
13:18  14:7,11
left
9:6  12:3  14:10
Let's
9:20
LICENSE
19:23
LLP
3:13
load
15:18
look
9:10
looked
9:12
lunch
8:11  15:13
lunchroom
6:23  9:8  11:13  13:2  15:7

**M**

male
11:18
manager
8:12  13:9  14:23
Margaret
13:8
ma'am
6:12  17:16
McKinney
1:17  2:6  5:12,18  6:14,21
6:22  12:10  17:13  18:6,8
mean
15:22
meat
8:9  17:23

mentioned
8:19
met
10:20  12:19
Michael
11:14,15
Middle
1:2  6:3
milk
15:9
mistaken
13:20
Moon
8:16
mop
15:15
Murphy
13:5,6

**N**

N
2:1  3:1
name
5:20,22  6:7,20
necessary
2:15
need
17:3
needed
17:4
needs
16:9
neither
19:16
never
10:20  13:12
Nixburg
5:10
nods
7:9
North
3:15
Northern
1:3  6:4
Notary
1:23  2:8  5:3  19:22
November
13:19,20
number
6:5

**O**

O
2:1
objections
2:16,19
obtained
7:4
offered
2:21

offices
5:21  11:1
okay
10:4,4,9  11:6,18  12:10
13:1,11  14:15,18  15:22
16:8,11,18,21  17:5,9
open
9:7
oral
5:13

**P**

P
2:1  3:1,1
PAGE
4:2
parties
2:4,19  19:17
party
6:8
pending
6:2
period
14:22
permanent
9:21
person
11:8,12
Pickett
1:21  2:7  5:1
Place
3:14
plain
15:12
plaintiff
1:8  3:3  6:1
plan
9:6
planning
9:4
plant
9:1
please
6:12,20
position
8:14  9:22  10:17  14:8,13
post
9:12
posted
10:3
posting
12:11
prepare
15:8,13  16:15,22
preparing
7:19
PRESENT
3:18
pretty
11:23

principal
10:6
prior
2:22
Procedure
5:7
proceedings
5:14
produce
17:23
promoted
8:8,11  18:2
provided
5:6  10:13
Public
1:23  2:8  5:3  19:22
put
9:14  15:9,11,11,20  16:2,4
16:8
p.m
5:20
P.O
3:7

**Q**

questions
2:17,18  19:9

**R**

R
3:1  19:1
rack
16:12
Rayfield
14:16
reading
2:10
Really
18:1
record
6:7  18:7
reduced
19:10
relating
2:14
replace
13:12
replaced
11:7,9,11
REPORTED
1:21
Reporter
1:22  2:8  5:2
represent
5:23  6:8
represents
19:12
requirement
12:17
respective

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                    http://www.TylerEaton.com

**GLORIA SIMS**
**COOSA COUNTY BOARD OF EDUCATION, ET AL.**

**JERRY MCKINNEY**
**June 12, 2008**

2:5
rest
13:17
result
19:18
right
10:8 11:3 14:3,14,16 15:5
16:1,17 17:5
Road
5:10
Roberson
3:4,6,6 4:3 5:17,20,23
6:11,18 17:9 18:5
Rockford
5:10,22
room
11:4,5
Rose
3:13
rules
2:13 5:6
Russell
8:21,22

___ S ___

S
1:21 2:1,7 3:1 5:1
SAITH
18:10
saying
10:1
school
7:2,3,5,12,14,21 8:14,18
9:4,5,8 11:16 12:14,20
12:21 13:2,17
see
8:23
seen
9:13
sets
15:23
short
14:2
Shorthand
1:22 2:8 5:2
signature
2:9
Sims
1:7 3:20 6:1,5
sir
6:20
snack
16:12,14
stand
15:11
started
8:7 17:19,20
state
5:4 6:7,19 19:4
States

1:1 5:7 6:2
stenotypy
19:9
STIPULATED
2:3
stipulation
5:9
stocking
17:20
stockroom
16:7
sub
15:2,3
subbing
14:9,10
summer
8:20
Super
17:16
Supermarket
17:14
supervision
19:11
sure
11:22,23
swear
6:11
sworn
6:15
system
9:4

___ T ___

T
2:1,1 19:1,1
taken
2:6 5:19 19:8
teacherwise
15:2
tell
7:17 15:6
temporarily
9:21
temporary
9:18
testified
6:16
Thank
18:7
thereto
2:22 19:10
think
8:17 13:19
thinking
15:3
Thompson
13:6
three
10:19,22
time

2:20,21 8:22 11:13 14:2
14:22 15:4
Todd
3:19
told
9:3,10 10:19,21
transcript
19:13
trash
15:15 16:19
tray
16:14
trial
2:20
truck
15:23
trucks
15:19
true
19:12
typewriting
19:11

___ U ___

U
2:1
Uh-huh
7:16 9:23 10:15 12:15
United
1:1 5:7 6:2
unload
15:18
unloads
15:21,22

___ V ___

versus
6:5
videotape
1:15 5:18
vs
1:9

___ W ___

waived
2:11
want
9:9
wasn't
15:4
water
15:12,12
Wayne
6:21
went
7:20 11:16 12:1 13:18
We'll
18:7
We're
5:20

White
3:13
Wingard
3:19
witness
2:10 5:12 6:12 7:9 19:14
woman
17:7
words
15:14
work
7:2,20 9:8 11:20 12:4,6,7
12:8 13:1,4,16 14:21
17:13
worked
7:18,22 9:20 13:12,14
14:1
working
8:10 14:5,15
works
12:5
written
10:10 12:11

___ Y ___

yard
8:7
yeah
8:2 9:10 11:3,16 13:4
year
7:5 13:17,22
years
7:22
Yuengert
3:11 4:4 6:9,9 17:12 18:3
y'all
14:21

___ 0 ___

07-704
6:5

___ 1 ___

11:10
5:12,19
11:20
18:7
12
1:18 5:11
12th
5:19
17
4:4
1819
3:15
1980
7:14,15

___ 2 ___

2:07-CV-704-MEF

1:5
2001
5:10
2006
7:6 8:15 13:17,23 14:1
2008
1:18 5:11
278
19:23

___ 3 ___

35203
3:16
35238
3:8
380487
3:7

___ 6 ___

6
4:3

Tyler Eaton Morgan Nichols & Pritchett, Inc.
Toll Free 800.458.6031                http://www.TylerEaton.com

In The Matter Of:

## GLORIA SIMS
v.
## COOSA COUNTY BOARD OF EDUCATION, ET AL.

### NO. 2:07-CV-704-MEF

---

## TODD WINGARD
## June 12, 2008

---



**TYLER EATON**

TYLER EATON MORGAN NICHOLS & PRITCHETT INC.

## THE HIGHEST QUALITY IN COURT REPORTING

205.252.9152 • Toll-Free 800.458.6031 • Fax 205.252.0196
One Federal Place, Suite 1020 • 1819 Fifth Avenue North • Birmingham, Alabama 35203
———————— www.TylerEaton.com ————————

Page 1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CIVIL ACTION NO. 2:07-CV-704-MEF

GLORIA SIMS, an individual,
    Plaintiff,
vs.
COOSA COUNTY BOARD OF EDUCATION, et al.,
    Defendants.


VIDEOTAPE DEPOSITION
OF
TODD WINGARD
June 12, 2008


REPORTED BY: Eleanor S. Pickett
    Certified Shorthand Reporter
    and Notary Public

Page 3

A P P E A R A N C E S

FOR THE PLAINTIFF:
    Mr. Jerry D. Roberson
    Attorney at Law
    Roberson & Roberson
    P.O. Box 380487
    Birmingham, Alabama 35238

FOR THE DEFENDANT:
    Ms. Anne Yuengert
    Attorney at Law
    Bradley, Arant, Rose & White, LLP
    One Federal Place
    1819 Fifth Avenue North
    Birmingham, Alabama 35203

OTHERS PRESENT:
    Ms. Gloria Sims

Page 2

S T I P U L A T I O N

    IT IS STIPULATED AND AGREED,
by and between the parties, through their
respective counsel, that the deposition of
TODD WINGARD may be taken before Eleanor
S. Pickett, Commissioner, Certified
Shorthand Reporter and Notary Public;
    That the signature to and
reading of the deposition by the witness
is waived, the deposition to have the same
force and effect as if full compliance had
been had with all laws and rules of Court
relating to the taking of depositions;
    That it shall not be necessary
for any objections to be made by counsel
to any questions, except as to form or
leading questions, and that counsel for
the parties may make objections and assign
grounds at the time of trial, or at the
time said deposition is offered in
evidence, or prior thereto.

Page 4

INDEX OF EXAMINATION


Page:

EXAMINATION BY MR. ROBERSON    7

EXAMINATION BY MS. YUENGERT    47

1 (Pages 1 to 4)

GLORIA SIMS                                                                              TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                                  June 12, 2008

---

Page 5

1        I, Eleanor S. Pickett, a
2    Certified Shorthand Reporter of
3    Birmingham, Alabama, and a Notary Public
4    for the State of Alabama at Large, acting
5    as Commissioner, certify that on this
6    date, as provided by the Federal Rules of
7    Civil Procedure of the United States
8    District Court, and the foregoing
9    stipulation of counsel, there came before
10   me at 2001 Nixburg Road, Rockford,
11   Alabama, on June 12, 2008, commencing at
12   11:21 a.m., TODD WINGARD, witness in the
13   above cause, for oral examination,
14   whereupon the following proceedings were
15   had:
16
17       MR. ROBERSON:  Okay.  This is
18   the videotape deposition of a 30(b)(6)
19   designated representative of the Coosa
20   County School Board.  Today is June 12th.
21   We're at the offices of Coosa County
22   School Board in Rockford, Alabama.  It's
23   11:20.  My name is Jerry Roberson.  I'm

---

Page 6

1    the attorney for the plaintiff, Gloria
2    Sims.  Her case is styled Gloria Sims
3    versus Coosa County Board of Education,
4    defendant.  It's pending in the United
5    States District Court for the Middle
6    District of Alabama, Northern Division, CV
7    number 07-704.  I would ask all counsel of
8    record to state their name and the party
9    they represent.
10       MS. YUENGERT:  Anne Yuengert.
11   I represent the Coosa County Board of
12   Education.
13       MR. ROBERSON:  Would you swear
14   our witness?
15
16       TODD WINGARD,
17   having been first duly sworn, was examined
18   and testified as follows:
19
20       THE REPORTER:  Usual
21   stipulations?
22       MS. YUENGERT:  Yes.
23       MR. ROBERSON:  Yes.

---

Page 7

1    EXAMINATION BY MR. ROBERSON:
2        Q.   Would you state your full
3    name?
4        A.   Todd Owen Wingard.
5        Q.   And, Mr. Wingard, what is your
6    position?
7        A.   Superintendent of education.
8        Q.   Here at Coosa County?
9        A.   Coosa County schools.
10       Q.   Okay.  And I've asked for the
11   defendant, Coosa County Board of
12   Education, to designate someone who is
13   knowledgeable about certain areas that I'm
14   inquiring about, and do you understand
15   that you've been designated as that
16   person?
17       A.   Yes, sir.
18       Q.   Okay.  Now, I realize -- when
19   did you become the superintendent, what
20   year?
21       A.   January 2001.
22       Q.   Okay.  And one of the areas
23   I've asked about is when Pam Jones became

---

Page 8

1    the director of the dietary -- dietary
2    director or director of nutrition, and
3    that was before, that hiring was actually
4    before you became superintendent; is that
5    correct?
6        A.   That's correct.
7        Q.   Okay.  Who was the
8    superintendent then?
9        A.   Jimmy Lawrence.
10       Q.   And is he still employed with
11   Coosa County?
12       A.   No, he's not.
13       Q.   Do you know where he is now?
14       A.   He is a director with the
15   Southern Association of Colleges and
16   Schools in Montgomery, Alabama.
17       Q.   Okay.  Did you run against
18   him?
19       A.   No.
20       Q.   Did he retire or resign or --
21       A.   No, he had been appointed by
22   the State Department of Education to
23   finish out the vacant position term for

---

2 (Pages 5 to 8)

Toll Free 800.458.6031                                                http://www.TylerEaton.com

GLORIA SIMS                                                                    TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                        June 12, 2008

---

Page 9

1    superintendent in Coosa County.
2        Q.    Okay.  So he was a temporary
3    appointment to fill a vacancy?
4        A.    Correct.
5        Q.    And then he did not choose to
6    run; is that what happened?
7        A.    Correct.
8        Q.    Okay.  All right.  Well, do
9    you know Pam Jones?
10       A.    I do.
11       Q.    And is she a black female?
12       A.    Yes, she is.
13       Q.    Do you know that when she was
14   hired originally, she was the secretary to
15   the person who held the nutrition
16   position?
17       A.    Yes, I knew that.
18       Q.    Okay.  Who was that person?
19       A.    William Campbell.
20       Q.    Mr. Campbell?
21       A.    Yeah.
22       Q.    Is he a black male?
23       A.    No.

Page 10

1        Q.    He's a white male?
2        A.    Correct.
3        Q.    Okay.  Mr. Campbell is
4    deceased, is that correct?
5        A.    Correct.
6        Q.    Did he actually die while he
7    held that position?
8        A.    No.  He had been appointed
9    superintendent prior to Jimmy Lawrence,
10   and died about two months after he was
11   appointed superintendent.
12       Q.    Okay.  Did Mr. Campbell
13   possess some educational degrees that
14   entitled him to work as a nutritionist?
15       A.    He had at least a bachelor's
16   degree.
17       Q.    Well, do you know if he was
18   certified in any way in nutrition?
19       A.    I don't know.
20       Q.    Okay.  What do you call the
21   position that Ms. Jones now holds?
22       A.    Child nutrition director.
23       Q.    Okay.  And that's what you

Page 11

1    called it back when Mr. Campbell held it,
2    child nutrition director?
3        A.    Correct.
4        Q.    And basically that position
5    oversees your food services for all your
6    schools here; is that correct?
7        A.    Correct.
8        Q.    And she does the menus,
9    correct?
10       A.    Correct.
11       Q.    And she's -- there are some
12   requirements, I assume federal
13   requirements, about what food you have
14   to -- you serve, correct?
15       A.    Correct.
16       Q.    And she sees that you comply
17   with those, correct?
18       A.    Correct.
19       Q.    I mean that's part of her job
20   duties?
21       A.    Yes.
22       Q.    Okay.  So the whole purpose of
23   having a child nutrition director is to

Page 12

1    see that your students are served
2    nutritionally appropriate meals, is that a
3    fair statement?
4        A.    Yes.
5        Q.    And she is the, for lack of a
6    better term, department head or supervisor
7    over all your food service workers,
8    correct?
9        A.    Correct.
10       Q.    So all your cafeteria managers
11   report to her, correct?
12       A.    Correct.
13       Q.    And all their staff, not
14   directly, but all their staff answer to
15   her, correct?
16       A.    Correct.
17       Q.    So she's involved in the
18   hiring decision of everyone in food
19   services, correct?
20       A.    Correct.
21       Q.    And that's been true since she
22   got the job in the year 2000?
23       A.    Yes.

3 (Pages 9 to 12)

Toll Free 800.458.6031                                                         http://www.TylerEaton.com

Page 13

1    Q.    Okay.  Now, you became the
2  superintendent in 2001, correct?
3    A.    Correct.  And you believe that
4  in every lunchroom -- every time a
5  lunchroom worker position has been posted,
6  that it has been posted with the same
7  requirement that Ms. Sims had, that is
8  they must have a high school degree or a
9  GED, correct?
10    A.    That's what I believe.
11    Q.    That's -- that's -- my point
12  is, now, you haven't looked to see that
13  you have all those postings, correct?  I
14  wouldn't think you would going back eight
15  years, but do you have the postings?
16    A.    I believe we have some
17  postings, but I'm not sure if it's every
18  posting.
19    Q.    Okay.  Well, have you reviewed
20  those prior to today?
21    A.    Yes.
22    Q.    Does everyone have an
23  educational requirement?

Page 14

1    A.    Yes.
2    Q.    Okay.  Well, you've just sat
3  here during three depositions, correct?
4    A.    Correct.
5    Q.    Mr. Owens, Ms. Murphy and Ms.
6  Cleveland are all presently working in
7  your lunchroom and none of them have a
8  high school education, correct?
9    A.    Correct.
10    Q.    Ms. Jones hired or was in on
11  the promotion -- on the hiring of each one
12  of those people, correct?
13    A.    Correct.
14    Q.    How can that happen?
15    A.    What?
16    Q.    How can you hire people that
17  don't meet your educational requirement?
18    A.    As I explained in the last
19  deposition, we had a less than structured
20  interview process where those employees
21  were hired.  I think basically the --
22  those employees, before they were
23  employees, were recommended to Ms. Jones

Page 15

1  from a child nutrition manager out at the
2  local school level.  Ms. Jones recommended
3  those employees to me or prospective
4  employees to me.  And it was not a good
5  screening process, so a mistake was made.
6    Q.    Does every time that y'all
7  hire someone, do y'all have to have a
8  written job application completed before
9  you hire someone?
10    A.    Yes.
11    Q.    Do you have them for these
12  three individuals?
13    A.    I'm not sure.
14    Q.    If they had to do one, why
15  wouldn't you have them?  They're current
16  employees.  Wouldn't they be in their
17  personnel file?
18    A.    Should be.
19    Q.    Doesn't your job application
20  indicate the extent of someone's
21  education?
22    A.    Yes.
23    Q.    So on -- you would agree with

Page 16

1  me that on each of these occasions, the
2  people provided information that they
3  didn't have these degrees, correct?
4    A.    If they completed the
5  application fully it should be there.
6    Q.    You haven't checked to see if
7  they did?
8    A.    I haven't looked at their
9  application.
10    Q.    Why wouldn't you want to look?
11    A.    When?
12    Q.    Before you gave this
13  deposition.
14    A.    Before the deposition?
15    Q.    Yeah.
16    A.    I already knew they didn't
17  have -- have that high school diploma.
18    Q.    Well, why wouldn't you want to
19  look and see if you should have known back
20  when they were hired?
21    A.    I don't understand your
22  question.
23    Q.    Well, you know my client

GLORIA SIMS                                                                TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                    June 12, 2008

---

Page 17

1  didn't have one, correct?
2      A.    Correct.
3      Q.    You know that this school
4  board has said the reason she didn't get
5  this job was because of that, correct?
6      A.    Correct.
7      Q.    Yet three people also didn't
8  have one and they all work for you,
9  correct?
10     A.    Correct.
11     Q.    Don't you want to know how
12 that happened?
13     A.    I know how it happened.
14     Q.    How?
15     A.    We didn't do a good job
16 screening the applications.
17     Q.    Every time you filled a
18 position, have there been multiple
19 candidates?
20     A.    I'm not sure about that.
21     Q.    Are y'all required to
22 advertise it in the newspaper if there's a
23 vacancy?

Page 18

1      A.    Yes.
2      Q.    What paper do you use to
3  advertise it?
4      A.    We use the local, local paper.
5      Q.    I don't live here.  What is
6  the name of that?
7      A.    Coosa County News.
8      Q.    Is it published here in
9  Rockford?
10     A.    Yeah.
11     Q.    So they'd have to publish your
12 job posting every time, correct?
13     A.    Yes.
14     Q.    Do you know if they keep a
15 file of the job posting?
16     A.    I don't know.
17     MS. YUENGERT:  Of the ad, is
18 that what you mean?
19     MR. ROBERSON:  Uh-huh.
20     Q.    You don't know?
21     A.    I don't know.
22     Q.    Haven't bothered to look for
23 that, have you?

Page 19

1      A.    No.
2      MS. YUENGERT:  Object to the
3  form.  You can answer.
4      Q.    You heard Ms. Murphy testify,
5  right?
6      A.    Yes.
7      Q.    She says she came down here
8  and looked at your posting and that it
9  didn't have an educational requirement.
10 Did you hear that testimony?
11     A.    Uh-huh.
12     Q.    Is that yes?
13     A.    Yes.
14     Q.    Is Ms. Murphy honest?
15     A.    As far as I know, she is.
16     Q.    Well, did you ever look to see
17 if you could find the job posting for the
18 time when you filled this position when
19 Ms. Murphy got it?
20     A.    I would have to go back and
21 look to see what year we hired her and
22 look at that job posting.
23     Q.    She said she began in 2003.

Page 20

1  Do you have a 2003 file?
2      A.    Yeah.
3      Q.    Would it be in there?
4      A.    Yeah.
5      Q.    You think?
6      A.    Yes.
7      Q.    You hadn't bothered to look
8  for it before this deposition?
9      MS. YUENGERT:  Object to the
10 form.  You can answer.
11     A.    Yeah, I did look, look at some
12 of our job postings.
13     Q.    Did you look at one for Ms.
14 Murphy?
15     A.    I saw a 2003 job posting.
16     Q.    Did it have the educational
17 requirement?
18     A.    Yes.
19     Q.    So you think she's just
20 mistaken?
21     A.    She must be.
22     Q.    Okay.  You also filled the
23 position with Ms. Thompson at the same

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

TODD WINGARD
June 12, 2008

---

Page 21

1    time; is that true?
2        A.   I'm -- I'm not sure about
3    that.
4        Q.   Now, up until the last year,
5    y'all were operating under a consent
6    decree, correct?
7        A.   Correct.
8        Q.   And you had to every year list
9    how many minority staff members you had,
10   correct?
11       A.   Correct.
12       Q.   You had to turn in a report to
13   the court, correct?
14       A.   Correct.
15       Q.   And you had to take steps to
16   recruit and retain minority staff members,
17   correct?
18       A.   As I recall under the consent
19   decree, the main focus from what I
20   remember was the recruitment of the
21   certified faculty.  I don't -- I don't
22   recall any wording in the consent decree
23   that mentioned that we had to recruit and

Page 22

1    retain minority support personnel, but
2    those numbers were kept up with, yes.
3        Q.   And would it be fair to say
4    that during this period of time when y'all
5    were under the consent decree, you were
6    working to obtain unitary status, would
7    that be fair?
8        A.   Yes, that's fair.
9        Q.   And what that means is you
10   were trying to get out from under the
11   consent decree and return to self control
12   essentially?
13       A.   Correct.
14       Q.   Okay.  To no longer have to
15   labor under the consent decree.  That was
16   your goal, correct?
17       A.   Correct.
18           MS. YUENGERT:  Object to the
19   form.  You can answer.
20       A.   Correct.
21       Q.   And did that require Coosa
22   County to meet certain guidelines in order
23   to obtain unitary status, that is, they

Page 23

1    had to comply with the decree or show they
2    were in compliance with the decree?
3        A.   Correct.
4        Q.   Okay.  Well, now, Ms. Jones is
5    the child nutrition director, correct?
6        A.   Correct.
7        Q.   And that position requires an
8    educational certification, correct?
9        A.   Yes.
10       Q.   You had -- you have to obtain
11   educational -- attend educational courses
12   that are devoted to child nutrition, pass
13   those in order to become a child
14   nutritionist, correct?
15       A.   Correct.
16       Q.   Ms. Jones is not certified in
17   child nutrition, correct?
18       A.   Correct.
19       Q.   She didn't -- she lacked the
20   educational requirement when she was
21   hired, correct?
22       A.   Correct.
23       Q.   Okay.  She was the secretary

Page 24

1    to the child nutrition person when she was
2    hired -- when he no longer had the job,
3    correct?
4        A.   Correct.
5        Q.   She had been his secretary?
6        A.   Correct.
7        Q.   When she -- Ms. Jones is a
8    minority, correct?
9        A.   Correct.
10       Q.   When she was hired, she was
11   allowed time to comply with those
12   educational requirements, correct?
13       A.   Correct.
14       Q.   It's been seven years.  Is she
15   certified as a child nutritionist?
16       A.   No.
17       Q.   Has she attended courses in
18   child nutrition?
19       A.   I'm not sure about that.
20       Q.   Have you obtained any
21   information that would lead you to believe
22   that she has?
23       A.   Well, I've approved numerous

6 (Pages 21 to 24)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

TODD WINGARD
June 12, 2008

---

Page 25

1  training sessions through the State
2  Department of Education for child
3  nutrition directors, so I don't know if
4  that's counted as course work or just
5  professional development.
6      Q.   Yeah.  Well, has she attended
7  any academic course work, that is, has she
8  gone to any college that offers child
9  nutrition?
10     A.   I don't think she has because
11 she had to meet the requirement of the
12 bachelor degree before she started those
13 child nutrition classes.
14     Q.   Okay.  At the time she was
15 hired in child nutrition, did she have a
16 bachelor's degree?
17     A.   No, she didn't.
18     Q.   So actually she had to make up
19 the bachelor's degree before she began
20 that course of study, correct?
21     MS. YUENGERT:  Object to the
22 form.  You can answer.
23     A.   That's the way I understand

Page 26

1  it, correct.
2      Q.   Okay.  And now she does have a
3  bachelor's degree?
4      A.   She does.
5      Q.   Okay.  As you understand it,
6  is she required to get some academic
7  course work in order to get her
8  certification?
9      A.   Yes, she's required to
10 complete a certain number of hours' course
11 work to get the child nutrition
12 certification.
13     Q.   Has she -- to your knowledge
14 has she attended any of that course work?
15     A.   I'm not certain if she's
16 started that or not.
17     Q.   She's got an office right
18 here, doesn't she?
19     A.   Uh-huh.
20     Q.   Is that yes?
21     A.   Yes.
22     Q.   Have you asked her?
23     A.   Have I asked her?

Page 27

1      Q.   Yeah.
2      A.   I'm just not certain if she's
3  attended any course work.
4      Q.   My question is, have you asked
5  her if she's attended any?
6      A.   No.
7      Q.   When did she get her
8  bachelor's degree, what year?
9      A.   2006, I believe.
10     Q.   Does she have any time limit
11 to obtain this academic course work?
12     A.   Yes, she has -- the State
13 Department of Education has communicated
14 to us that they need a plan of action on
15 how she's going to complete the course
16 work and time lines for that.
17     Q.   When did you receive that?
18     A.   I think 2007, I think.
19     Q.   Have you responded to it?
20     A.   Not yet.
21     Q.   Why not?
22     A.   Why not?  No reason, I just
23 haven't responded to it yet.

Page 28

1      Q.   Well, you recently ran for
2  reelection, correct?
3      A.   Yes.
4      Q.   You got defeated, correct?
5      A.   Correct.
6      Q.   So that can has been kicked
7  down the road; somebody else will have to
8  respond now, won't they?
9      MS. YUENGERT:  Object to the
10 form.  You can answer.
11     A.   No.
12     Q.   You're going to respond?
13     A.   Yes.
14     Q.   What's your response going to
15 be?
16     A.   I'm going to sit down with Pam
17 Jones and work out a plan of action on
18 what she's going to do to complete the
19 requirements.
20     Q.   Ms. Sims is not a minority, is
21 she?
22     A.   No.
23     Q.   She lacked your posted

7 (Pages 25 to 28)

GLORIA SIMS                                                              TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                  June 12, 2008

---

Page 29

1 educational requirement for this position,
2 correct?
3    A.    Correct.
4    Q.    Just like Pam Jones did, she
5 lacked it, correct?
6    A.    Not just like Pam Jones.
7    Q.    Well, Pam Jones didn't have
8 the educational requirements that the job
9 posting required, correct?
10   A.    Correct.
11   Q.    Gloria Sims didn't have the
12 educational requirements that the job
13 posting required, correct?
14   A.    Correct.
15   Q.    Gloria Sims didn't get the job
16 because you say she didn't meet the
17 educational requirements, correct?
18   A.    Correct.
19   Q.    Pam Jones got the job even
20 though she lacked the educational
21 requirements, correct?
22   A.    Correct.
23   Q.    She's had seven years to meet

Page 30

1 the educational requirements and she
2 hasn't done it, or eight years, and she
3 hasn't done it, correct?
4    A.    She hasn't completed it.
5    Q.    Do you think that's fair?
6       MS. YUENGERT:  Object to the
7 form.  You can answer.
8    Q.    You can answer.
9    A.    Do I think it's fair?
10   Q.    Yeah.
11   A.    I think she made a good faith
12 effort to finish a bachelor's degree.
13 That's pretty -- pretty major.
14   Q.    So why would she be allowed
15 time to obtain those requirements, but not
16 Ms. Sims, is it due to her race?
17   A.    No.
18   Q.    No?
19   A.    No.
20   Q.    Well, what was it due to, sir?
21   A.    She was already employed with
22 us doing a good job.
23   Q.    She was a secretary?

Page 31

1    A.    Yes.
2    Q.    She got a position as a child
3 nutrition director without even having a
4 college degree?
5    A.    Yes.
6    Q.    Correct?
7    A.    Correct.
8    Q.    Well, how in the world can you
9 say that that is not based on race, sir?
10   A.    Because Pam Jones worked for
11 Dr. Campbell, he was the child nutrition
12 director, and Pam Jones was the only
13 person here when Jimmy Lawrence come in as
14 interim superintendent that had experience
15 and knowledge of that child nutrition
16 program.
17   Q.    Well, can't you fill the job
18 from outside, sir, someone that meets the
19 requirements?  Did you post it?
20   A.    I wasn't here.
21   Q.    Was the job posted?
22   A.    I'm not sure.
23   Q.    You never advertised the

Page 32

1 position that you're aware of of child
2 director, child nutrition director?
3    A.    I was a principal at that
4 time, I couldn't advertise it.
5    Q.    Are you aware if the school
6 board advertised that position?
7    A.    I'm not aware.
8    Q.    Well, Mr. Wingard, if Pam
9 Jones had been white, would she have been
10 selected for the job?
11      MS. YUENGERT:  Object to the
12 form.  If you know.
13   A.    Repeat the question.
14   Q.    Yeah.  If Pam Jones was white,
15 would she have been promoted to child
16 director, nutrition director?
17      MS. YUENGERT:  Same objection.
18 You are asking him to speculate.
19   A.    How would I know?
20   Q.    Okay.  Well, is it fair to say
21 that in 2000, you were under this consent
22 decree, correct?
23   A.    Correct.

8 (Pages 29 to 32)

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

TODD WINGARD
June 12, 2008

---

Page 33

1    Q.    And the consent decree
2    required you to give special consideration
3    to minority applicants?
4         MS. YUENGERT:  Object.
5    Required the board.
6    Q.    Required the board.  Yeah.
7    A.    I don't -- I don't recall any
8    wording of special consideration from
9    minority applicants.
10   Q.    Well, do you recall any
11   wording that says minority applicants will
12   get additional time to meet the
13   educational requirements even if they
14   don't possess them at the time of their
15   hiring?
16   A.    No, I don't recall that.
17   Q.    Can you think of anybody else
18   that was a minority applicant who didn't
19   meet your requirements at the time they
20   were hired but who got a job and time to
21   meet those requirements since you've been
22   superintendent?
23   A.    With the shortage of math and

Page 34

1    science teachers, not only minority
2    applicants but any applicant when we need
3    a math or science teacher, the State has
4    provisions for alternate certificates and
5    provisions to go back to school and finish
6    class work, and that's the only ones I can
7    think of.
8    Q.    Have you hired since you've
9    been superintendent any minority applicant
10   who didn't meet the educational
11   requirements and given them time to meet
12   them, sir?
13   A.    We've hired -- we've hired
14   teacher, minority and other, that did not
15   have a teaching certificate and they were
16   given time to go through the alternative
17   certification route.
18   Q.    Well, now, tell me who was --
19   when she worked as a substitute, who was
20   Gloria Sims' supervisor?
21   A.    As a substitute, whoever
22   the -- depends on which lunchroom she
23   worked in, but whoever the manager was at

Page 35

1    that --
2    Q.    At the high school, when she
3    worked in 2005, who was her supervisor?
4    A.    Jan Forbus.
5         MS. YUENGERT:  When you say
6    2005, do you mean 2006, Jerry?
7         MR. ROBERSON:  I guess I do,
8    2006.
9    Q.    Was Jan Forbus?
10   A.    Jan Forbus.
11   Q.    All right.  Now, do y'all have
12   any written policy about reference
13   information from Coosa County Board of
14   Education?
15   A.    Not that I'm aware of.
16   Q.    If you get an inquiry from
17   some prospective employer, do you normally
18   ask the supervisor of that person to
19   respond to it?
20   A.    I can't say I've had a
21   situation where I've had to refer it back
22   to a principal or a supervisor.
23   Q.    If a lunchroom worker that's a

Page 36

1    sub applies for a job, wouldn't the
2    cafeteria manager respond on a job
3    reference?  You don't respond to them, do
4    you?  You don't even know those people.
5    A.    That's possible, the cafeteria
6    manager may.
7    Q.    Sure.  Well, that would be the
8    logical person, they're the person that
9    supervised them every day, correct?
10   A.    Correct.
11   Q.    So y'all would -- y'all would
12   send an inquiry to that person, wouldn't
13   you?
14        MS. YUENGERT:  Object to the
15   form.
16   Q.    Sir?  You can answer.
17        MS. YUENGERT:  You can answer,
18   if you can.
19   A.    If the agency that contacted
20   us was asking for that, yes, we would
21   refer them to the supervisor.
22   Q.    Okay.  And as part of their
23   duties as an employee of Coosa Valley,

9 (Pages 33 to 36)

Toll Free 800.458.6031                                           http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

TODD WINGARD
June 12, 2008

Page 37

1    they would respond, correct?
2        MS. YUENGERT:  Coosa County.
3    Q.    Coosa County?
4        MS. YUENGERT:  Object to the
5    form.  You can answer.
6    A.    Yes, they would respond.
7    Q.    I mean, Jan Forbus responded
8    when Gloria Sims applied to work at the
9    hospital, Jan Forbus responded, correct?
10   A.    Correct.
11   Q.    They didn't know to call her,
12   did they?  I mean they didn't look her up
13   in the phone book, they contacted y'all,
14   didn't they?
15   A.    Not that I'm aware of.
16   Q.    They never called this office?
17   A.    Not that I'm aware of.
18   Q.    Wouldn't y'all have given them
19   her number?
20       MS. YUENGERT:  Object to the
21   form.  If you know.
22   A.    If they had called this office
23   and we needed to use her as a reference,

Page 38

1    we would have.
2    Q.    Sure.  And that would be part
3    of her job duties as cafeteria manager,
4    wouldn't it?
5    A.    Correct.
6    Q.    Sure.  I mean, do y'all have
7    somebody that supervises the bus drivers?
8    A.    Yes.
9    Q.    Who is that?
10   A.    Transportation supervisor.
11   Q.    If y'all get a call about a
12   bus driver, he's applying for a job,
13   wouldn't that person respond?
14   A.    Yes.
15   Q.    Sure, they would.  I mean, you
16   don't know about every -- you got two
17   hundred people that works here, right?
18   A.    Correct.
19   Q.    You don't know what
20   everybody's job performance is on a
21   day-to-day basis, do you?
22   A.    No.
23   Q.    You couldn't possibly,

Page 39

1    correct?
2    A.    Correct.
3    Q.    So you ask your department
4    heads to respond about references, right,
5    the people they supervise, they'll
6    respond, correct?
7    A.    We would ask them, yes.
8    Q.    Okay.  And you saw that
9    screening report for Gloria Sims, correct,
10   that reference report?
11   A.    Correct.
12   Q.    At the last deposition?
13   A.    Correct.
14   Q.    Well, what's your policy on
15   rehiring employees, sir, because on that
16   reference report, it says that Ms. Sims is
17   not eligible for rehire.  What is your
18   policy on that?
19   A.    We don't have any policy on
20   that.
21   Q.    Why is -- why would she not be
22   eligible for rehire at this school board
23   -- by this school board?

Page 40

1        MS. YUENGERT:  Are you asking
2    him if she is eligible for rehire?
3    Q.    Is she eligible for rehire?
4    A.    She would be.
5    Q.    Okay.  Do you know why it's
6    checked that she's not on that screening
7    report?
8    A.    That's -- that's that agency's
9    form.  I don't know why they check what
10   they check.
11   Q.    Okay.  Now, it also says on
12   there her attendance was poor.  Are you
13   aware of any information today that would
14   suggest that when Ms. Sims worked here at
15   the high school, her attendance was poor?
16   A.    Only information I'm aware of
17   from all the testimony I've heard was that
18   her attendance was good until she walked
19   off the job that last day.  So that's the
20   only attendance information I know of.
21   Q.    The last day she was told that
22   someone else had gotten the job, correct?
23   A.    Correct.

10 (Pages 37 to 40)

GLORIA SIMS                                                                TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                    June 12, 2008

| Page 41 |
|---|

1  Q.  She left the facility upset
2  and crying, correct?
3  A.  I wasn't there but that's what
4  I've heard.
5  Q.  That was the testimony you
6  heard, correct?
7  A.  Right.  Right.
8  Q.  That's the only issue about
9  attendance that you're aware of, correct?
10  A.  Correct, correct.
11  Q.  Okay.  You heard these three
12  people testify today, Ms. Cleveland, Ms.
13  Murphy and Mr. Owens, correct?
14  A.  Correct.
15  Q.  Do you have any information
16  that any of those people are not doing a
17  good job for you?
18  A.  No.
19  Q.  Every one of them is doing a
20  good job, right?
21  A.  Right.
22  Q.  So does that suggest to you
23  that this educational requirement is

| Page 42 |
|---|

1  unnecessary, sir?
2  A.  No.
3  Q.  Well, if you can do a good job
4  without it, doesn't that suggest that you
5  don't need it?
6  A.  No.
7  Q.  Did you hear Mr. McKinney say
8  there was nothing about this position that
9  a woman couldn't do, did you hear that
10  testimony?
11  A.  Yes.
12  Q.  You agree with that?
13  A.  Yes.
14  Q.  So there would be no reason to
15  indicate that this was a man's job,
16  correct?
17  A.  Correct.
18  Q.  And other than the consent
19  decree, can you explain any reason why
20  someone would suggest that we need to get
21  some color in the lunchroom?
22  MS. YUENGERT:  Object to the
23  form.  You can answer.

| Page 43 |
|---|

1  Q.  You can answer.
2  A.  Who would anyone be?
3  Q.  Ms. Jones or anyone else.
4  A.  I know from listening to
5  depositions that employees within the
6  lunchroom assume that just because a
7  minority was in a position, that a
8  minority would be hired.  But that has
9  nothing to do with the hiring decisions.
10  Q.  It's just a coincidence that a
11  black male left this position and was
12  hired in this position, correct?
13  A.  Yes.
14  Q.  Mr. Wingard, do you agree with
15  me that it is wrong for a school system to
16  discriminate in its hiring decisions based
17  on race?
18  A.  I agree.
19  Q.  Do you agree with me that it
20  is wrong for a school system to
21  discriminate based on gender in its hiring
22  decisions?
23  A.  I agree.

| Page 44 |
|---|

1  Q.  Do you agree that a school
2  system that it is proven that they have
3  discriminated against an individual
4  because of race or gender, that they
5  should be punished if that's proven, do
6  you agree with that?
7  A.  I agree.
8  MS. YUENGERT:  Object to the
9  form.  You can answer.
10  Q.  You can't lock a school system
11  up, though, put them in prison, can you?
12  A.  Not a school system.
13  MS. YUENGERT:  I object to the
14  form on that one.
15  Q.  A school system.  But you can
16  fine a school system, can't you?
17  A.  Yes.
18  Q.  Do you think a fine would
19  discourage and deter a school system from
20  discriminating?
21  MS. YUENGERT:  Object to the
22  form.  You can answer.
23  Q.  Sir?  You can answer.

11 (Pages 41 to 44)

GLORIA SIMS                                                                    TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                                        June 12, 2008

| Page 45 | Page 47 |
|---|---|

### Page 45

1    A.    I don't -- I don't think
2    that -- I really don't think that's
3    relevant.
4    Q.    Do you think it would deter if
5    the school system got fined?  Do you think
6    they would be reluctant to do that again?
7        MS. YUENGERT:  Object to the
8    form.  You can answer.
9    A.    I don't think it's relevant.
10   Q.    Do you think they would do
11   that begin, regardless of what you think
12   is relevant?
13       MS. YUENGERT:  Same objection.
14   A.    I can't speak for any other
15   school system.  I can speak for this one.
16   Q.    That's the only one I'm asking
17   you to speak.
18   A.    Okay.
19   Q.    Would that deter this school
20   system from discriminating against people
21   if they were fined?
22   A.    We've been under a federal
23   court order, and took quite a while to get

### Page 46

1    out from under the federal court order to
2    get unitary status, and U.S. Justice
3    Department was not always pleased with our
4    hiring practices because we chose to hire
5    the best qualified person for the job.
6    And that didn't always include a minority.
7    And it didn't always include a white
8    person.
9    Q.    Did you hire the best person
10   for the job when Pam Jones was made child
11   nutrition director?
12       MS. YUENGERT:  Object to the
13   form.  You are asking him about something
14   that happened before he was in the
15   position.  You can answer, if you can.
16   A.    I can't answer that.
17   Q.    Okay.  Was Jan Forbus
18   authorized to give references about
19   lunchroom workers in 2007, 2006, was she
20   authorized by the school board?
21   A.    She was in a manager's
22   position, and, you know, I can't say she
23   was verbally authorized but that would

### Page 47

1    come with that position.
2    Q.    Okay.  Thank you, Mr. Wingard,
3    I don't have anything else.  Have you got
4    any questions, Ms. Yuengert?
5
6    EXAMINATION BY MS. YUENGERT:
7    Q.    Mr. Wingard, you had said that
8    Ms. Jones was -- has been involved in the
9    hiring of lunchroom staff since she's been
10   in the job.  Do you know what her
11   involvement has been?
12   A.    I know most years the
13   cafeteria managers would make
14   recommendations to Ms. Jones as far as
15   their recommendation to fill vacancies,
16   and those recommendations were passed on
17   through Ms. Jones to me.  I do know Ms.
18   Jones on occasions called those workers
19   in.  I don't think it was an official
20   interview or anything, but called them in
21   to speak to them and make sure they had
22   all their paperwork up to date and what
23   have you before we made a recommendation

### Page 48

1    to the board.
2    Q.    And did that process change in
3    the hiring in 2006?
4    A.    The hiring in 2006 was the
5    first time where I actually required a
6    building principal to be in on the
7    interview process, along with Pam Jones,
8    the child nutrition director, and the
9    cafeteria manager, that's the first time
10   that interview committee process was used.
11       MS. YUENGERT:  I don't have
12   anything else.
13       MR. ROBERSON:  Thank you, Mr.
14   Wingard.  That will conclude your
15   deposition at 12:02.  We'll go off the
16   record.
17
18       FURTHER THE DEPONENT SAITH NOT
19
20
21
22
23

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                    http://www.TylerEaton.com

GLORIA SIMS                                                   TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                      June 12, 2008

Page 49

```
 1          C E R T I F I C A T E
 2
 3
 4    STATE OF ALABAMA)
 5    JEFFERSON COUNTY)
 6
 7          I hereby certify that the
 8    above and foregoing deposition was taken
 9    down by me in stenotypy, and the questions
10    and answers thereto were reduced to
11    typewriting under my supervision, and that
12    the foregoing represents a true and
13    correct transcript of the deposition given
14    by said witness upon said hearing.
15          I further certify that I am
16    neither of counsel nor of kin to the
17    parties to the action, nor am I in anywise
18    interested in the result of said cause.
19
20
21
22
             COMMISSIONER - NOTARY PUBLIC
23           ACCR LICENSE NO. 278
```

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                    http://www.TylerEaton.com

GLORIA SIMS                                                        TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                           June 12, 2008

**A**

academic
25:7 26:6 27:11
ACCR
49:23
acting
5:4
action
1:5 27:14 28:17 49:17
ad
18:17
additional
33:12
advertise
17:22 18:3 32:4
advertised
31:23 32:6
agency
36:19
agency's
40:8
agree
15:23 42:12 43:14,18,19
43:23 44:1,6,7
AGREED
2:3
al
1:10
Alabama
1:2 3:8,16 5:3,4,11,22
6:6 8:16 49:4
allowed
24:11 30:14
alternate
34:4
alternative
34:16
Anne
3:11 6:10
answer
12:14 19:3 20:10 22:19
25:22 28:10 30:7,8
36:16,17 37:5 42:23
43:1 44:9,22,23 45:8
46:15,16
answers
49:10
anybody
33:17
anywise
49:17
applicant
33:18 34:2,9
applicants
33:3,9,11 34:2
application
15:8,19 16:5,9
applications
17:16
applied

37:8
applies
36:1
applying
38:12
appointed
8:21 10:8,11
appointment
9:3
appropriate
12:2
approved
24:23
Arant
3:13
areas
7:13,22
asked
7:10,23 26:22,23 27:4
asking
32:18 36:20 40:1 45:16
46:13
assign
2:19
Association
8:15
assume
11:12 43:6
attend
23:11
attendance
40:12,15,18,20 41:9
attended
24:17 25:6 26:14 27:3,5
attorney
3:5,12 6:1
authorized
46:18,20,23
Avenue
3:15
aware
32:1,5,7 35:15 37:15,17
40:13,16 41:9
a.m
5:12

**B**

bachelor
25:12
bachelor's
10:15 25:16,19 26:3 27:8
30:12
back
11:1 13:14 16:19 19:20
34:5 35:21
based
31:9 43:16,21
basically
11:4 14:21
basis

38:21
began
19:23 25:19
believe
13:3,10,16 24:21 27:9
best
46:5,9
better
12:6
Birmingham
3:8,16 5:3
black
9:11,22 43:11
board
1:10 5:20,22 6:3,11 7:11
17:4 32:6 33:5,6 35:13
39:22,23 46:20 48:1
book
37:13
bothered
18:22 20:7
Box
3:7
Bradley
3:13
building
48:6
bus
38:7,12

**C**

C
3:1 49:1,1
cafeteria
12:10 36:2,5 38:3 47:13
48:9
call
10:20 37:11 38:11
called
11:1 37:16,22 47:18,20
Campbell
9:19,20 10:3,12 11:1 31:11
candidates
17:19
case
6:2
cause
5:13 49:18
certain
7:13 22:22 26:10,15 27:2
certificate
34:15
certificates
34:4
certification
23:8 26:8,12 34:17
certified
1:22 2:7 5:2 10:18 21:21
23:16 24:15
certify

38:21
change
48:2
check
40:9,10
checked
16:6 40:6
child
10:22 11:2,23 15:1 23:5
23:12,13,17 24:1,15,18
25:2,8,13,15 26:11 31:2
31:11,15 32:1,2,15 46:10
48:8
choose
9:5
chose
46:4
Civil
1:5 5:7
class
34:6
classes
25:13
Cleveland
14:6 41:12
client
16:23
coincidence
43:10
college
25:8 31:4
Colleges
8:15
color
42:21
come
31:13 47:1
commencing
5:11
Commissioner
2:7 5:5 49:22
committee
48:10
communicated
27:13
complete
26:10 27:15 28:18
completed
15:8 16:4 30:4
compliance
2:12 23:2
comply
11:16 23:1 24:11
conclude
48:14
consent
21:5,18,22 22:5,11,15
32:21 33:1 42:18
consideration
33:2,8
contacted

36:19 37:13
control
22:11
Coosa
1:10 5:19,21 6:3,11 7:8,9
7:11 8:11 9:1 18:7
22:21 35:13 36:23 37:2
37:3
correct
8:5,6 9:4,7 10:2,4,5 11:3
11:6,7,9,10,14,15,17,18
16:7,9,10,14,15,17,18,20
13:2,3,9,13 14:3,4,8,9
14:12,13 16:3 17:1,2,5,6
17:9,10 18:12 21:6,7,10
21:11,13,14,17 22:13,16
22:17,20 23:3,5,6,8,14
23:15,17,18,21,22 24:3,4
24:6,8,9,12,13 25:20
26:1 28:2,4,5 29:2,3,5
29:9,10,13,14,17,18,21
29:22 30:3 31:6,7
32:22,23 36:9,10 37:1,9
37:10 38:5,18 39:1,2,6
39:9,11,13 40:22,23
41:2,6,9,10,10,13,14
42:16,17 43:12 49:13
counsel
2:5,16,18 5:9 6:7 49:16
counted
25:4
County
1:10 5:20,21 6:3,11 7:8,9
7:11 8:11 9:1 18:7
22:22 35:13 37:2,3
49:5
course
25:4,7,20 26:7,10,14 27:3
27:11,15
courses
23:11 24:17
court
1:1 2:13 5:8 6:5 21:13
45:23 46:1
crying
41:2
current
15:15
CV
6:6

**D**

D
3:4
date
5:6 47:22
day
36:9 40:19,21
day-to-day
38:21

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

TODD WINGARD
June 12, 2008

deceased
10:4
decision
12:18
decisions
43:9,16,22
decree
21:6,19,22  22:5,11,15  23:1
   23:2  32:22  33:1  42:19
defeated
28:4
defendant
3:10  6:4  7:11
Defendants
1:11
degree
10:16  13:8  25:12,16,19
   26:3  27:8  30:12  31:4
degrees
10:13  16:3
department
8:22  12:6  25:2  27:13
   39:3  46:3
depends
34:22
DEPONENT
48:18
deposition
1:15  2:5,10,11,21  5:18
   14:19  16:13,14  20:8
   39:12  48:15  49:8,13
depositions
2:14  14:3  43:5
designate
7:12
designated
5:19  7:15
deter
44:19  45:4,19
development
25:5
devoted
23:12
die
10:6
died
10:10
dietary
8:1,1
diploma
16:17
directly
12:14
director
8:1,2,2,14  10:22  11:2,23
   23:5  31:3,12  32:2,2,16
   32:16  46:11  48:8
directors
25:3
discourage
44:19

discriminate
43:16,21
discriminated
44:3
discriminating
44:20  45:20
District
1:1,2  5:8  6:5,6
Division
1:3  6:6
doing
30:22  41:16,19
Dr
31:11
driver
38:12
drivers
38:7
due
30:16,20
duly
6:17
duties
11:20  36:23  38:3

E

E
3:1,1  49:1,1
education
1:10  6:3,12  7:7,12  8:22
   14:8  15:21  25:2  27:13
   35:14
educational
10:13  13:23  14:17  19:9
   20:16  23:8,11,11,20
   24:12  29:1,8,12,17,20
   30:1  33:13  34:10  41:23
effect
2:12
effort
30:12
eight
13:14  30:2
Eleanor
1:21  2:6  5:1
eligible
39:17,22  40:2,3
employed
8:10  30:21
employee
36:23
employees
14:20,22,23  15:3,4,16
   39:15  43:5
employer
35:17
entitled
10:14
essentially
22:12

et
1:10
everybody's
38:20
evidence
2:22
examination
4:1,4,5  5:13  7:1  47:6
examined
6:17
experience
31:14
explain
42:19
explained
14:18
extent
15:20

F

F
49:1
facility
41:1
faculty
21:21
fair
12:3  22:3,7,8  30:5,9
   32:20
faith
30:11
far
19:15  47:14
federal
3:14  5:6  11:12  45:22  46:1
female
9:11
Fifth
3:15
file
15:17  18:15  20:1
fill
9:3  31:17  47:15
filled
17:17  19:18  20:22
find
19:17
fine
44:16,18
fined
45:5,21
finish
8:23  30:12  34:5
first
6:17  48:5,9
focus
21:19
following
5:14
follows

6:18
food
11:5,13  12:7,18
Forbus
35:4,9,10  37:7,9  46:17
force
2:12
foregoing
5:8  49:8,12
form
2:17  19:3  20:10  22:19
   25:22  28:10  30:7  32:12
   36:15  37:5,21  40:9
   42:23  44:9,14,22  45:8
   46:13
full
2:12  7:2
fully
16:5
further
48:18  49:15

G

GED
13:9
gender
43:21  44:4
give
33:2  46:18
given
34:11,16  37:18  49:13
Gloria
1:7  3:19  6:1,2  29:11,15
   34:20  37:8  39:9
go
19:20  34:5,16  48:15
goal
22:16
going
13:14  27:15  28:12,14,16,18
good
15:4  17:15  30:11,22  40:18
   41:17,20  42:3
gotten
40:22
grounds
2:20
guess
35:7
guidelines
22:22

H

happen
14:14
happened
9:6  17:12,13  46:14
head
12:6
heads

39:4
hear
19:10  42:7,9
heard
19:4  40:17  41:4,6,11
hearing
49:14
held
9:15  10:7  11:1
high
13:8  14:8  16:17  35:2
   40:15
hire
14:16  15:7,9  46:4,9
hired
9:14  14:10,21  16:20  19:21
   23:21  24:2,10  25:15
   33:20  34:8,13,13  43:8
   43:12
hiring
8:3  12:18  14:11  33:15
   43:9,16,21  46:4  47:9
   48:3,4
holds
10:21
honest
19:14
hospital
37:9
hours
26:10
hundred
38:17

I

include
46:6,7
INDEX
4:1
indicate
15:20  42:15
individual
1:7  44:3
individuals
15:12
information
16:2  24:21  35:13  40:13,16
   40:20  41:15
inquiring
7:14
inquiry
35:16  36:12
interested
49:18
interim
31:14
interview
14:20  47:20  48:7,10
involved
12:17  47:8

Tyler Eaton Morgan Nichols & Pritchett, Inc.

Toll Free 800.458.6031                              http://www.TylerEaton.com

GLORIA SIMS                                                          TODD WINGARD
COOSA COUNTY BOARD OF EDUCATION, ET AL.                             June 12, 2008

involvement
47:11

issue
41:8

**J**

Jan
35:4,9,10  37:7,9  46:17
January
7:21
JEFFERSON
49:5
Jerry
3:4  5:23  35:6
Jimmy
8:9  10:9  31:13
job
11:19  12:22  15:8,19  17:5
17:15  18:12,15  19:17,22
20:12,15  24:2  29:8,12
29:15,19  30:22  31:17,21
32:10  33:20  36:1,2
38:3,12,20  40:19,22
41:17,20  42:3,15  46:5
46:10  47:10
Jones
7:23  9:9  10:21  14:10,23
15:2  23:4,16  24:7
28:17  29:4,6,7,19  31:10
31:12  32:9,14  43:3
46:10  47:8,14,17,18
48:7
June
1:18  5:11,20
Justice
46:2

**K**

keep
18:14
kept
22:2
kicked
28:6
kin
49:16
knew
9:17  16:16
know
8:13  9:9,13  10:17,19
16:23  17:3,11,13  18:14
18:16,20,21  19:15  25:3
32:12,19  36:4  37:11,21
38:16,19  40:5,9,20
43:4  46:22  47:10,12,17
knowledge
26:13  31:15
knowledgeable
7:13
known

16:19

**L**

L
2:1
labor
22:15
lack
12:5
lacked
23:19  28:23  29:5,20
Large
5:4
Law
3:5,12
Lawrence
8:9  10:9  31:13
laws
2:13
lead
24:21
leading
2:18
left
41:1  43:11
level
15:2
LICENSE
49:23
limit
27:10
lines
27:16
list
21:8
listening
43:4
live
18:5
LLP
3:13
local
15:2  18:4,4
lock
44:10
logical
36:8
longer
22:14  24:2
look
16:10,19  18:22  19:16,21,22
20:7,11,11,13  37:12
looked
13:12  16:8  19:8
lunchroom
13:4,5  14:7  34:22  35:23
42:21  43:6  46:19  47:9

**M**

main

21:19
major
30:13
male
9:22  10:1  43:11
manager
15:1  34:23  36:2,6  38:3
48:9
managers
12:10  47:13
manager's
46:21
man's
42:15
math
33:23  34:3
McKinney
42:7
meals
12:2
mean
11:19  18:18  35:6  37:7,12
38:6,15
means
22:9
meet
14:17  22:22  25:11  29:16
29:23  33:12,19,21  34:10
34:11
meets
31:18
members
21:9,16
mentioned
21:23
menus
11:8
Middle
1:2  6:5
minority
21:9,16  22:1  24:8  28:20
33:3,9,11,18  34:1,9,14
43:7,8  46:6
mistake
15:5
mistaken
20:20
Montgomery
8:16
months
10:10
multiple
17:18
Murphy
14:5  19:4,14,19  20:14
41:13

**N**

N
2:1  3:1

name
5:23  6:8  7:3  18:6
necessary
2:15
need
27:14  34:2  42:5,20
needed
37:23
neither
49:16
never
31:23  37:16
News
18:7
newspaper
17:22
Nixburg
5:10
normally
35:17
North
3:15
Northern
1:3  6:6
Notary
1:23  2:8  5:3  49:22
number
6:7  26:10  37:19
numbers
22:2
numerous
24:23
nutrition
8:2  9:15  10:18,22  11:2,23
15:1  23:5,12,17  24:1,18
25:3,9,13,15  26:11  31:3
31:11,15  32:2,16  46:11
48:8
nutritionally
12:2
nutritionist
10:14  23:14  24:15

**O**

O
2:1
object
19:2  20:9  22:18  25:21
28:9  30:6  32:11  33:4
36:14  37:4,20  42:22
44:8,13,21  45:7  46:12
objection
32:17  45:13
objections
2:16,19
obtain
22:6,23  23:10  27:11
30:15
obtained
24:20

occasions
16:1  47:18
offered
2:21
offers
25:8
office
26:17  37:16,22
offices
5:21
official
47:19
Okay
5:17  7:10,18,22  8:7,17
9:2,8,18  10:3,12,20,23
11:22  13:1,19  14:2
20:22  22:14  23:4,23
25:14  26:2,5  32:20
36:22  39:8  40:5,11
41:11  45:18  46:17  47:2
ones
34:6
operating
21:5
oral
5:13
order
22:22  23:13  26:7  45:23
46:1
originally
9:14
outside
31:18
oversees
11:5
Owen
7:4
Owens
14:5  41:13

**P**

P
2:1  3:1,1
Page
4:3
Pam
7:23  9:9  28:16  29:4,6,7
29:19  31:10,12  32:8,14
46:10  48:7
paper
18:2,4
paperwork
47:22
part
11:19  36:22  38:2
parties
2:4,19  49:17
party
6:8
pass

Page 52

GLORIA SIMS

**COOSA COUNTY BOARD OF EDUCATION, ET AL.**

TODD WINGARD
June 12, 2008

| | | | | |
|---|---|---|---|---|
| 23:12 | 3:18 | 3:1 49:1 | Reporter | 8:17 9:6 |
| passed | presently | race | 1:22 2:8 5:2 6:20 | |
| 47:16 | 14:6 | 30:16 31:9 43:17 44:4 | represent | **S** |
| pending | pretty | ran | 6:9,11 | S |
| 6:4 | 30:13,13 | 28:1 | representative | 1:21 2:1,7 3:1 5:1 |
| people | principal | reading | 5:19 | SAITH |
| 14:12,16 16:2 17:7 36:4 | 32:3 35:22 48:6 | 2:10 | represents | 48:18 |
| 38:17 39:5 41:12,16 | prior | realize | 49:12 | sat |
| 45:20 | 2:22 10:9 13:20 | 7:18 | require | 14:2 |
| performance | prison | really | 22:21 | saw |
| 38:20 | 44:11 | 45:2 | required | 20:15 39:8 |
| period | Procedure | reason | 17:21 26:6,9 29:9,13 | says |
| 22:4 | 5:7 | 17:4 27:22 42:14,19 | 33:2,5,6 48:5 | 19:7 33:11 39:16 40:11 |
| person | proceedings | recall | requirement | school |
| 7:16 9:15,18 24:1 31:12 | 5:14 | 21:18,22 33:7,10,16 | 13:7,23 14:17 19:9 20:17 | 5:20,22 13:8 14:8 15:2 |
| 35:18 36:8,8,12 38:13 | process | receive | 23:20 25:11 29:1 41:23 | 16:17 17:3 32:5 34:5 |
| 46:5,8,9 | 14:20 15:5 48:2,7,10 | 27:17 | requirements | 35:2 39:22,23 40:15 |
| personnel | professional | recommendation | 11:12,13 24:12 28:19 29:8 | 43:15,20 44:1,10,12,15 |
| 15:17 22:1 | 25:5 | 47:15,23 | 29:12,17,21 30:1,15 | 44:16,19 45:5,15,19 |
| phone | program | recommendations | 31:19 33:13,19,21 34:11 | 46:20 |
| 37:13 | 31:16 | 47:14,16 | requires | schools |
| Pickett | promoted | recommended | 23:7 | 7:9 8:16 11:6 |
| 1:21 2:7 5:1 | 32:15 | 14:23 15:2 | resign | science |
| Place | promotion | record | 8:20 | 34:1,3 |
| 3:14 | 14:11 | 6:8 48:16 | respective | screening |
| plaintiff | prospective | recruit | 2:5 | 15:5 17:16 39:9 40:6 |
| 1:8 3:3 6:1 | 15:3 35:17 | 21:16,23 | respond | secretary |
| plan | proven | recruitment | 28:8,12 35:19 36:2,3 | 9:14 23:23 24:5 30:23 |
| 27:14 28:17 | 44:2,5 | 21:20 | 37:1,6 38:13 39:4,6 | see |
| pleased | provided | reduced | responded | 12:1 13:12 16:6,19 19:16 |
| 46:3 | 5:6 16:2 | 49:10 | 27:19,23 37:7,9 | 19:21 |
| point | provisions | reelection | response | sees |
| 13:11 | 34:4,5 | 28:2 | 28:14 | 11:16 |
| policy | Public | refer | result | selected |
| 35:12 39:14,18,19 | 1:23 2:8 5:3 49:22 | 35:21 36:21 | 49:18 | 32:10 |
| poor | publish | reference | retain | self |
| 40:12,15 | 18:11 | 35:12 36:3 37:23 39:10 | 21:16 22:1 | 22:11 |
| position | published | 39:16 | retire | send |
| 7:6 8:23 9:16 10:7,21 | 18:8 | references | 8:20 | 36:12 |
| 11:4 13:5 17:18 19:18 | punished | 39:4 46:18 | return | serve |
| 20:23 23:7 29:1 31:2 | 44:5 | regardless | 22:11 | 11:14 |
| 32:1,6 42:8 43:7,11,12 | purpose | 45:11 | reviewed | served |
| 46:15,22 47:1 | 11:22 | rehire | 13:19 | 12:1 |
| possess | put | 39:17,22 40:2,3 | right | service |
| 10:13 33:14 | 44:11 | rehiring | 9:8 19:5 26:17 35:11 | 12:7 |
| possible | P.O | 39:15 | 38:17 39:4 41:7,7,20,21 | services |
| 36:5 | 3:7 | relating | road | 11:5 12:19 |
| possibly | | 2:14 | 5:10 28:7 | sessions |
| 38:23 | **Q** | relevant | Roberson | 25:1 |
| post | qualified | 45:3,9,12 | 3:4,6,6 4:4 5:17,23 6:13 | seven |
| 31:19 | 46:5 | reluctant | 6:23 7:1 18:19 35:7 | 24:14 29:23 |
| posted | question | 45:6 | 48:13 | shortage |
| 13:5,6 28:23 31:21 | 16:22 27:4 32:13 | remember | Rockford | 33:23 |
| posting | questions | 21:20 | 5:10,22 18:9 | Shorthand |
| 13:18 18:12,15 19:8,17,22 | 2:17,18 47:4 49:9 | Repeat | Rose | 1:22 2:8 5:2 |
| 20:15 29:9,13 | quite | 32:13 | 3:13 | show |
| postings | 45:23 | report | route | 23:1 |
| 13:13,15,17 20:12 | | 12:11 21:12 39:9,10,16 | 34:17 | signature |
| practices | **R** | 40:7 | rules | 2:9 |
| 46:4 | R | REPORTED | 2:13 5:6 | Sims |
| PRESENT | | 1:21 | run | |

**Tyler Eaton Morgan Nichols & Pritchett, Inc.**

Toll Free 800.458.6031                    http://www.TylerEaton.com

GLORIA SIMS
COOSA COUNTY BOARD OF EDUCATION, ET AL.

TODD WINGARD
June 12, 2008

1:7  3:19  6:2,2  13:7
28:20  29:11,15  30:16
34:20  37:8  39:9,16
40:14

**sir**
7:17  30:20  31:9,18  34:12
36:16  39:15  42:1  44:23

**sit**
28:16

**situation**
35:21

**somebody**
28:7  38:7

**someone's**
15:20

**Southern**
8:15

**speak**
45:14,15,17  47:21

**special**
33:2,8

**speculate**
32:18

**staff**
12:13,14  21:9,16  47:9

**started**
25:12  26:16

**state**
5:4  6:8  7:2  8:22  25:1
27:12  34:3  49:4

**statement**
12:3

**States**
1:1  5:7  6:5

**status**
22:6,23  46:2

**stenotypy**
49:9

**steps**
21:15

**STIPULATED**
2:3

**stipulation**
5:9

**stipulations**
6:21

**structured**
14:19

**students**
12:1

**study**
25:20

**styled**
6:2

**sub**
36:1

**substitute**
34:19,21

**suggest**
40:14  41:22  42:4,20

**superintendent**

7:7,19  8:4,8  9:1  10:9,11
13:2  31:14  33:22  34:9

**supervise**
39:5

**supervised**
36:9

**supervises**
38:7

**supervision**
49:11

**supervisor**
12:6  34:20  35:3,18,22
36:21  38:10

**support**
22:1

**sure**
13:17  15:13  17:20  21:2
24:19  31:22  36:7  38:2
38:6,15  47:21

**swear**
6:13

**sworn**
6:17

**system**
43:15,20  44:2,10,12,15,16
44:19  45:5,15,20

---

**T**

**T**
2:1,1  49:1,1

**take**
21:15

**taken**
2:6  49:8

**teacher**
34:3,14

**teachers**
34:1

**teaching**
34:15

**tell**
34:18

**temporary**
9:2

**term**
8:23  12:6

**testified**
6:18

**testify**
19:4  41:12

**testimony**
19:10  40:17  41:5  42:10

**Thank**
47:2  48:13

**thereto**
2:22  49:10

**they'd**
18:11

**think**
13:14  14:21  20:5,19  25:10

27:18,18  30:5,9,11
33:17  34:7  44:18  45:1
45:2,4,5,9,10,11  47:19

**Thompson**
20:23

**three**
14:3  15:12  17:7  41:11

**time**
2:20,21  13:4  15:6  17:17
18:12  19:18  21:1  24:2
24:11  25:14  27:10,16
30:15  32:4  33:12,14,19
33:20  34:11,16  48:5,9

**today**
5:20  13:20  40:13  41:12

**Todd**
1:17  2:6  5:12  6:16  7:4

**told**
40:21

**training**
25:1

**transcript**
49:13

**Transportation**
38:10

**trial**
2:20

**true**
12:21  21:1  49:12

**trying**
22:10

**turn**
21:12

**two**
10:10  38:16

**typewriting**
49:11

---

**U**

**U**
2:1

**Uh-huh**
18:19  19:11  26:19

**understand**
7:14  16:21  25:23  26:5

**unitary**
22:6,23  46:2

**United**
1:1  5:7  6:4

**unnecessary**
42:1

**upset**
41:1

**use**
18:2,4  37:23

**Usual**
6:20

**U.S**
46:2

---

**V**

**vacancies**
47:15

**vacancy**
9:3  17:23

**vacant**
8:23

**Valley**
36:23

**verbally**
46:23

**versus**
6:3

**videotape**
1:15  5:18

**vs**
1:9

---

**W**

**waived**
2:1

**walked**
40:18

**want**
16:10,18  17:11

**wasn't**
31:20  41:3

**way**
10:18  25:23

**We'll**
48:15

**We're**
5:21

**we've**
34:13,13  45:22

**white**
3:13  10:1  32:9,14  46:7

**William**
9:19

**Wingard**
1:17  2:6  5:12  6:16  7:4,5
32:8  43:14  47:2,7
48:14

**witness**
2:10  5:12  6:14  49:14

**woman**
42:9

**wording**
21:22  33:8,11

**work**
10:14  17:8  25:4,7  26:7,11
26:14  27:3,11,16  28:17
34:6  37:8

**worked**
31:10  34:19,23  35:3
40:14

**worker**
13:5  35:23

**workers**
12:7  46:19  47:18

**working**
14:6  22:6

**works**
38:17

**world**
31:8

**wouldn't**
13:14  15:15,16  16:10,18
36:1,12  37:18  38:4,13

**written**
15:8  35:12

**wrong**
43:15,20

---

**Y**

**Yeah**
9:21  16:15  18:10  20:2,4
20:11  25:6  27:1  30:10
32:14  33:6

**year**
7:20  12:22  19:21  21:4,8
27:8

**years**
13:15  24:14  29:23  30:2
47:12

**Yuengert**
3:11  4:5  6:10,10,22  18:17
19:2  20:9  22:8  25:21
28:9  30:6  32:11,17
33:4  35:5  36:14,17
37:2,4,20  40:1  42:22
44:8,13,21  45:7,13
46:12  47:4,6  48:11

**y'all**
15:6,7  17:21  21:5  22:4
35:11  36:11,11  37:13,18
38:6,11

---

**0**

**07-704**
6:7

---

**1**

**11:20**
5:23

**11:21**
5:12

**12**
1:18  5:11

**12th**
5:20

**12:02**
48:15

**1819**
3:15

---

**2**

**2:07-CV-704-MEF**
1:5

**2000**

Page 54

**GLORIA SIMS**
**COOSA COUNTY BOARD OF EDUCATION, ET AL.**

TODD WINGARD
June 12, 2008

```
   12:22  32:21
2001
   5:10  7:21  13:2
2003
   19:23  20:1,15
2005
   35:3,6
2006
   27:9  35:6,8  46:19  48:3,4
2007
   27:18  46:19
2008
   1:18  5:11
278
   49:23
```

---
**3**
---

```
30(b)(6)
   5:18
35203
   3:16
35238
   3:8
380487
   3:7
```

---
**4**
---

```
47
   4:5
```

---
**7**
---

```
7
   4:4
```

**Tyler Eaton Morgan Nichols & Pritchett, Inc.**

Toll Free 800.458.6031                    http://www.TylerEaton.com

| CNP STAFF | DATE HIRED | GED, HS DIPLOMA |
|---|---|---|
| Rebecca Beasley | 08-09-2007 | HS Diploma |
| Margaret Henderson | 09-18-2002 | HS Diploma |
| Barbara Murphy | 09-09-2003 | Neither |
| Sandra Thompson | 09-09-2003 | HS Diploma |
| Jerry McKinney | 12-01-2006 | HS Diploma |

| CNP STAFF | DATE HIRED | GED, HS DIPLOMA |
|---|---|---|
| Dianne Rayfield | 12-01-1985 | HS Diploma |
| Brenda Sayers | 10-27-1994 | HS Diploma |
| Lisa Cleveland | 08-08-2005 | Neither |
| Teresa Mitchell | 08-21-1996 | HS Diploma |
| Essie Moon | 09-01-1978 | Neither |
| Gwendolyn Chapman | 01-28-2003 | HS Diploma |
| Calvin Owens | 07-22-2002 | Neither |
| Michael Billingsley | 01-28-2003 | HS Diploma |