IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

GLORIA SIMS,                )
                              )
      Plaintiff,          )
                              )
v.                      )  CIVIL ACTION NUMBER:
                              )  2:07-cv-704-MEF
COOSA COUNTY BOARD OF  )
EDUCATION,            )
                              )
      Defendant.

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Gloria Sims ("Plaintiff") was a substitute worker for the Coosa County Board of Education (the "Board" or "Defendant") in August and September 2006. She applied for a position as a Lunchroom Worker but did not meet the posted educational requirement for the job. The Board hired a candidate who met the posted requirement who happened to be African American and male and Plaintiff claims that was discriminatory. There exist no genuine issues of material fact and the Board is entitled to judgment on all Plaintiff's claims.

A.    **The Board Did Not Hire Plaintiff Because She Did Not Meet the Posted Qualifications and the Successful Candidate Did.**

The Board did not hire Plaintiff because she did not meet the posted job qualification (a high school diploma or GED); the decision had nothing to do

with race or gender.  It is undisputed that the Board had seven candidates for the job, three of whom had diplomas, and it hired a Jerry McKinney, who has a diploma. (Jones Aff., ¶¶ 7, 9; Pl. Evid. PEX 14 (McKinney Dep. 7)).  It is also undisputed that the interview committee treated Plaintiff just like it treated the other three candidates (an African American female, an African American male, and a white male) who lacked diplomas or GEDs. (Bullard Aff., p.1; Forbus Aff., ¶ 5; Jones Aff., ¶¶ 7, 8).  No one who had a diploma was excluded and no one who did not was allowed to compete further in the process.  This is simply not disparate treatment on the basis of race or gender.

Plaintiff's argument that the educational requirement is "unnecessary, discretionary, and has never been followed" (Plaintiff's Brief, p. 18) is not relevant or evidence of discrimination.  As an organization "in the education business" (Wingard Dep. 34-35), it is the Board's prerogative to have an educational requirement for employees.  The law permits the Board to apply discretionary standards as long as they are not discriminatory.  That the Board "slipped up" and did not ensure three Lunchroom Workers (2 white females, 1 African American male) (Jones Dep. PEX7 (Bates No. 0035); Jones Aff. ¶ 4) had high school diplomas simply does not suggest, let alone prove, discrimination.  An employer seeking to exclude female or white candidates would hardly choose this method— an educational standard that is available to everyone regardless of race or gender.

(*See* Pl. Dep. 58-59).  Plaintiff does not like the diploma requirement (because she does not meet it) and is essentially asking the Court to sit as a super-personnel department and rewrite its job postings.

Despite her best efforts, Plaintiff has offered no evidence of disparate treatment.  In her statement of facts Plaintiff suggests that by "often" giving minority candidates[1] time post-hire "to obtain any mandatory educational requirement" (apparently referring to Pam Jones), the Board discriminated against her. (Plaintiff's Brief, pp. 9-10).    The Board's treatment of Jones is simply not relevant to Plaintiff's claims.  First, Plaintiff has offered no evidence of minority candidates for Lunchroom Worker (the job for which Plaintiff applied) being permitted to obtain a high school diploma later.  Second, she has offered no evidence of any other candidates for the Child Nutrition Director position or their qualifications—so she has no basis to argue that Jones was actually treated more favorably than other candidates because of her race.  Finally, Ms. Jones was hired before Wingard became Superintendent, so there was an entirely different decision maker involved. (Pl. Evid. PEX 15 (2nd Wingard Dep. 7-8)).

---

[1] This is at the very least an overstatement of the record.  Wingard testified that some candidates for math and science teaching jobs (both minority and nonminority) were hired conditionally and given an opportunity to obtain their certification. (Wingard Dep. 33-34).  The only other example of any candidate being given an opportunity to meet educational requirements post-hire is Pam Jones (African American), the Child Nutrition Director. (Wingard Dep. 22).

Regardless of Plaintiff's arguments about her evidence (direct[2] or circumstantial), the undisputed evidence establishes that in filling the Lunchroom Worker position in September 2006, the Board enforced its educational requirement. (Jones Aff., ¶ 8). Its past failures on that front simply do not matter. If the Board's previous failure to enforce the requirement had resulted in the hiring of only African Americans or men, Plaintiff could perhaps craft an argument about disparate treatment. Similarly, if McKinney, the successful candidate, lacked the educational requirement, that might be evidence to support her claim. Those, however, are not the facts and Plaintiff's claim fails as a matter of law.

### B.    Plaintiff's Retaliation Claim Fails as a Matter of Law.

Despite Plaintiff's insistence otherwise, she has not established a *prima facie* case of retaliation. The Board has not argued that Plaintiff did not engage in protected activity or that a false job reference could not, as a matter of law, be considered an adverse employment action. Rather, the Board argues that Plaintiff has failed to establish with any admissible evidence that she suffered an adverse employment action at the Board's hands or that the alleged adverse action was causally related to her protected activity.

---

[2] Plaintiff has not offered direct evidence because Forbus' alleged statements do not establish intent to discriminate without inference or presumption. (*See* Defendant's Initial Brief, pp. 10-12). With regard to the statement ultimately attributed to Jones, Plaintiff offers no evidence about when Jones allegedly said it or any context.

The admissible evidence establishes that (1) Plaintiff applied for a position with Coosa Valley Medical Center (Pl. Dep. 90-91), (2) Forbus was contacted for a reference and gave her honest opinion about Plaintiff (Forbus Aff., ¶ 8); and (3) Plaintiff did not get the job. (Pl. Dep. 91).  None of these facts establish either an adverse employment action[3] or a causal connection between Plaintiff's protected activity and her failure to get a job.

As an initial matter, Plaintiff has offered no admissible evidence that Forbus' comments had any affect on her.  Instead, Plaintiff testified about what someone on the telephone allegedly told her. (Pl. Dep. 92 (Plaintiff was told she not get the position because she had a bad reference from Coosa Central High School)).  Plaintiff's testimony is inadmissible hearsay, *see* Fed.R.Evid. 801, 802, and she cannot rely upon it to avoid summary judgment.

Plaintiff has another evidentiary problem in that the ESS form, which she appears to offer as proof that Forbus' reference was not truthful, is not admissible evidence.  First, Plaintiff offers the ESS form with no attempt at authentication; she merely attaches it as an exhibit to her evidentiary submission.  Plaintiff has not offered any testimony from ESS or any other witness regarding the form's preparation, maintenance, or content.  Second, the ESS form is hearsay.  Plaintiff is

---

[3]  An honest opinion should not, as a matter of law be considered an adverse action. (*See* Defendant's Initial Brief, p. 19).  Forbus did not call around Coosa County offering her opinion—she was tracked down at home while she was on terminal leave dealing with a family tragedy.  That she now has to defend her truthful comments is ridiculous.

offering the form in an attempt to establish that Forbus made certain statements to ESS about Plaintiff:

- "Forbus has testified that Sims' attendance was good, but the report indicates that *she stated to ESS* that Sims' attendance was poor." (Plaintiff's Brief, p. 7);
- "The *form also indicates* that Sims is not eligible for rehire, although Forbus denies making this statement." (Plaintiff's Brief, p. 7);
- "Sims was not even considered for this employment because *Forbus said* her attendance was poor, she walked off the job, and she was not eligible for rehire. (Pl. Ex. 6)." (Plaintiff's Brief, p. 22).

(*emphasis added*).   Plaintiff is offering the ESS form to prove the truth of the statements it contains.   The form is hearsay per FRE 801 and does not qualify for any of the hearsay exceptions in FRE 803 or 804.   Plaintiff cannot rely upon the ESS form to avoid summary judgment.

Finally, Plaintiff still has not offered any evidence to establish a causal connection between her protected activity and the alleged adverse action.   In essence, Plaintiff has merely shown that the alleged adverse action occurred sometime after her protected expression—which is not sufficient as a matter of law. *Davis v. Coca-Cola*, 516 F.3d at fn. 52 (*citing Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).   Forbus testified that Plaintiff's complaints did not affect her reference. (Forbus Aff., ¶¶ 8-10).   Plaintiff has offered no evidence suggesting that Forbus had a bias against Plaintiff because of her protected activity.   In fact, Plaintiff testified that when she voiced her opinion that

it would be unfair to hire someone because of their race or gender, Forbus agreed with her. (Pl. Dep. 106-107).

Plaintiff mistakenly argues that Forbus' signing an affidavit in April 2007 establishes sufficient temporal proximity. Plaintiff makes clear in her brief that Plaintiff's initial protected activity is her complaint *to Forbus* while she was still employed. (Plaintiff's Brief, p. 10). Several pages later, however, Plaintiff argues that Forbus only learned of Plaintiff's complaints in April 2007. (Plaintiff's Brief, p. 23 ("Forbus was made aware of Sims' EEOC charge only two weeks before she gave Sims the derogatory job reference . . . . Forbus found out about it when she completed her affidavit to give to the EEOC on April 11, 2007.") She cannot have it both ways. Forbus knew of Plaintiff's discrimination complaints in August or September 2006. (Plaintiff's Brief, p. 10). That Forbus is later reminded that Plaintiff was claiming that Forbus discriminated against her in April (when she signed her affidavit) does not change anything. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)(noting that defendant's receipt of right-to-sue letter on plaintiff's charge shortly before its decision to transfer plaintiff was not new information establishing sufficient temporal proximity).

Given Plaintiff's lack of any evidence of retaliatory bias, the seven months that elapsed after her complaint to Forbus is simply too long to establish temporal proximity. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)(three

to four months is enough to dispel suggestion of causation); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

There exists no dispute of material fact and the Board is entitled to judgment as a matter of law.

s/Donald B. Sweeney, Jr.
DONALD B. SWEENEY, JR.

s/Anne R. Yuengert
ANNE R. YUENGERT

OF COUNSEL

Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jerry Roberson, Esq.
Roberson & Roberson
P.O. Box 380487
Birmingham, AL  35238

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None


s/Anne R. Yuengert
Of Counsel