IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GLORIA SIMS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07cv704-MEF |
| | ) | |
| COOSA COUNTY BOARD OF | ) | (WO-Do Not Publish) |
| EDUCATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gloria Sims ("Sims") brings suit against the Coosa County Board of Education ("the Board") pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. In this action, she contends that the Board failed to hire her for a position because of her race and her sex and then retaliated against her for complaining about what she believed constituted discrimination against her. This cause is before the Court on the May 30, 2008 Motion for Summary Judgment on Behalf of Defendant Coosa County Board of Education (Doc. # 12). The Board contends that Sims' claims are not viable because she cannot make out a *prima facie* case of discrimination on the basis of her race or sex or of retaliation. For the reasons set forth below, the Motion for Summary Judgment is due to be DENIED.

### JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest

personal jurisdiction and venue, and the Court finds adequate allegations in support of personal jurisdiction and venue.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

2

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Sims, a Causasian female, worked for the Board as a substitute lunchroom worker beginning in August of 2004. She worked as a substitute in a variety of schools under the Board during the 2004/2005 school year. The Board does not have educational requirements or qualifications for its substitute employees.

Commencing in August of 2006, Sims worked as a substitute lunchroom worker in the Central High School ("Central High") cafeteria. At that time, Jan Forbus ("Forbus"), a Caucasian female, worked as the Central High Cafeteria Manager. Forbus asked Sims to substitute on a daily because one of the regular employees, Michael Kelly, the sole African-American working in the lunchroom at Central High, had just quit. Forbus put Sims to work and told her she was doing a good job. According to Sims, Forbus never expressed to Sims any criticism of her performance.

On several occasions in August of 2006, Forbus said that the lunchroom position was a "man's job."[1] According to Sims, Forbus also made numerous statements indicating that the position was going to be filed by a male and probably by a "black" male. Forbus also stated that Pam Jones ("Jones")[2] had said that she had to get some color in the lunchroom or that Jones had stated that she was putting some color in the lunchroom.[3] When Forbus made these comments, Sims told her that to do so would be unfair and discriminatory.

---

[1] While Forbus denies making these comments, she does admit that she felt that the job was better suited for a man because of the lifting. Due to the procedural posture of this matter, the Court must view the facts in the light most favorable to Sims, as she is the non-movant. This means that, for purposes of this motion, the Court accepts Sims' account of Forbus' statements which is corroborated by at least one other witness.

[2] Since 2001, Jones, an African-American female, has served as the Child Nutrition Director for the Coosa County Board of Education. Jones oversees all the lunchroom operations in the school system operated by the Board. Consequently, she is involved in the hiring of lunchroom workers. Prior to 2006, however, Jones did not participate in the interview process for lunchroom workers.

[3] Jones denies having made such a statement to Forbus, but given the procedural posture of the case the Court must view the facts in the light most favorable to Sims.

4

In early September of 2006, Central High posted the Lunchroom Worker job opening.[4] Although the job posting for the position indicated that it involved heavy lifting, the sole minimum qualification listed for the position was a high school diploma or GED.[5] While this is the same job posting that Central High had previously used when hiring for similar positions, it is undisputed that the Board had approved some employees to work as lunchroom workers at various schools in the system who did not have either a high school diploma or a GED.[6]

Central High's interview committee for this selection process consisted of Forbus, Jones, and Keith Bullard ("Bullard").[7]   The interview committee interviewed seven candidates for the position:

---

[4] Although it is somewhat confusing, the job posting denominated the vacancy as a "6-Hour Temporary Lunchroom Worker."  It is clear from the record that this job posting was for employment that, while called "temporary," was intended to be more lasting than Sims' work as a substitute.  This temporary position would include some benefits. Additionally, persons hired into the temporary position had the potential for earning tenure.

[5] The only proffered rationale for this requirement is that it sets a good example.  It is undisputed that there is no requirement under state law that a lunchroom worker have a GED or a high school diploma.  The Board has the discretion to eliminate this requirement. Lunchroom workers do not provide academic instruction.  Interestingly, the Board does not require that a person who wishes to work as a substitute teacher and provide academic instruction as such possess either a high school diploma or a GED.

[6] Additionally, the Board hired Jones, an African-American, for a position even though she clearly did not possess the mandatory educational requirements for the position. The Board has allowed Jones years to work toward the required qualifications of the position she occupies while working in the position.

[7] Bullard was the Central High Principal.  He is a Caucasian male.

| Candidate | Race/Sex | Diploma/GED |
|---|---|---|
| Sims | Caucasian/Female | no |
| Krystal Benson | African-American/Female | high school diploma |
| Anthony Braxton Borden | African-American/Male | high school diploma |
| Gladdis M. Harris | African-American/Female | no |
| Frank T. Jones | African-American/Male | no |
| Jerry W. McKinney | African-American/Male | high school diploma |
| Larry Wayne Rogers | Caucasian/Male | no |

Interestingly, only three of the applicants, all of whom are African-American, met the minimum qualification for the position because they possessed high school diplomas. Two of these three minimally qualified applicants were male. Only two of the seven applicants were Caucasian. Only three of the seven applicants were female.

During Sims' interview, Forbus complimented Sims on her job performance. During each of the seven interviews, the committee asked each of the candidates whether he or she had either a high school diploma or a GED. The committee claims that they did not consider further any of the applicants who indicated that they did not possess either a high school diploma or a GED. Consequently, despite the fact that Sims had been performing well in the position that the committee was seeking to fill, the committee recommended Jerry McKinney ("McKinney"), an African-American male, for the position. The Board unanimously voted in favor of hiring McKinney.

After the decision to recommend McKinney was made, Forbus told Sims that she was

not recommended to fill the position. Forbus told Sims that the committee had selected an African-American male. Sims told Forbus that the decision was not fair and asked why the successful candidate had been selected instead of her. Forbus said it was because Sims did not have a high school diploma and the successful candidate did. Sims said she was being treated unfairly. According to Sims, Forbus agreed. Sims became too upset to work and left without finishing her shift. Forbus felt that Sims had walked off the job and left her "in the lurch" and understaffed for the lunch hour.

In addition to her complaints about discrimination or unfairness during her employment, of which Forbus was clearly aware,[8] Sims also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in November of 2006. In this Charge, Sims complained of discrimination on the basis of her race and sex and retaliation. Forbus was on a leave of absence from her position when she learned that Forbus had filed a formal Charge of Discrimination with the EEOC.[9] About two weeks after Forbus indicated that she had read Sims' EEOC Charge, an employment screening service hired to check out Sims for a job with another employer called Forbus at her home to ask about Sims. There is evidence before this Court which is capable of being reduced to an admissible form and from which a reasonable jury could find that Forbus provided negative and possibly

---

[8] If the facts before the Court are viewed in the light most favorable to Sims, it is clear that Forbus was aware of Sims' complaints of discrimination prior to the filing of the formal EEOC Charge. In her testimony, Forbus denies such knowledge.

[9] On April 11, 2007, Forbus signed an affidavit in which she indicated that she had read Sims' EEOC Charge.

inaccurate information about Sims during this April 24, 2007 telephone conversation. Moreover, Sims was informed that she was not hired because of the bad reference she received from Central High.[10]

## DISCUSSION

As previously stated, Sims' lawsuit is comprised of two types of claims: the discrimination claims arising out of the Board's failure to select her for the position as a Temporary Lunchroom Worker and the retaliation claim arising out of the negative reference provided after the termination of her employment and the filing of her Charge of Discrimination with the EEOC. The discrimination claims are predicated on allegations of discrimination on the basis of Sims' race and sex. For the reasons set forth below, the Court is not persuaded that the Board has met its burden of establishing that there exist no genuine issues of material fact and that it is entitled to judgment as a matter of law. Consequently, its motion is due to be DENIED.

## A. FAILURE TO SELECT CLAIM

Under Title VII it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's"

---

[10] Again, this is not supported by admissible evidence at this stage, but it is supported by evidence which is capable of being reduced to admissible form as the law of the Eleventh Circuit requires.

race or sex. 42 U.S.C. § 2000e-2(a)(1). The elements of a § 1981[11] race discrimination claim in the employment context are the same as a Title VII disparate treatment claim. *See, e.g., Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000); *Howard v. BP Oil*, 32 F.3d 520, 524 n.2 (11th Cir. 1994). "[T]he plaintiff in an employment discrimination lawsuit always has the burden of demonstrating that, more probably than not, the employer took an adverse employment action against him on the basis of a protected personal characteristic." *Wright v. Southland Corp.,* 187 F.3d 1287, 1292 (11th Cir. 1999).

An employee bringing a claim under Title VII must initially establish a *prima facie* case of discrimination through one of three methods: by presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny, or by introducing statistical evidence of discrimination. *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995). Sims argues that she has both direct and circumstantial evidence of her claims of discrimination.

## 1. Direct Evidence

In the context of employment discrimination cases, it is well-settled that direct

---

[11] Section 1981 makes it unlawful to discriminate on the basis of race in the making and enforcing of contracts. 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

evidence is evidence which, if believed, proves the existence of a fact in issue, such as the existence of a discriminatory motive, *without inference or presumption*; if the evidence merely suggests that the employer acted with a discriminatory motive then it is circumstantial evidence, not direct evidence. *See, e.g., Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086-87 (11th Cir. 2004); *Standard v. A.B.E.L. Servs.*, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); *Burrell v. Board of Trs. of Ga. Military Coll.,* 125 F.3d 1390, 1393 (11th Cir. 1997); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1987); *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir.1987). Direct evidence of discrimination is evidence which reflects a discriminatory attitude *correlating to the discrimination complained of* by the employee. *Wilson,* 376 F.3d at 1086. "Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard,* 161 F.3d at 1330. Moreover, direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor. *Carter,* 870 F.2d at 582. Remarks which do not constitute direct evidence can serve as circumstantial evidence.

Sims relies on statements that she contends Jones and Forbus made shortly before they served on the interview committee which recommended a candidate for the Board's approval. During the weeks before the selection process, Forbus repeatedly stated that the lunchroom worker position was a man's job. She admits that she believed that the job was better suited

10

for a man because of the lifting it required. While it is a close question, the Court finds that

Forbus' repeated statements that the position was a "man's job" do constitute evidence

which, if believed, proves the existence of sex discrimination without inference or

presumption. The statements immediately preceded Forbus' role in the selection process,

they reveal her preconceived notion that a male would better be able to perform in the

position, and despite the Board's argument to the contrary, the statements are incapable of

construction in a way that fails to reveal sexist bias with regard to the position of lunchroom

worker.

The Board has vigorously argued that Forbus' statements about the lunchroom worker

position being a "man's job" in the period immediately before the position was filled do not

constitute direct evidence. The Board does not appear to argue, in the alternative, that even

if the comments constituted direct evidence it would have made the same employment

decision absent discriminatory intent. "In the face of direct evidence, an employer must

prove that the same employment decision would have been made absent any discriminatory

intent." *Carter*, 870 F.2d at 582. Because this Court has found that the Forbus statements

constitute direct evidence of sex discrimination, the Board is not entitled to summary

judgment on the sex discrimination claim. It has not satisfied its legal burden of showing that

the same employment decision would have been made absent any discriminatory intent. To

the extent that the Board's arguments regarding Sims' failure to satisfy the minimum

qualifications for the position could be construed as an attempt to satisfy this burden, the

11

Court cannot grant summary judgment because the record before the Court creates a jury issue on whether the Board would have made the same employment decision. The fact that the Board had hired other lunchroom workers who did not possess the minimum qualification for the position makes the case one in which the jury will be required to resolve the issues at hand.[12]

With respect to direct evidence of race discrimination, the evidentiary record before the Court is lacking. Jones' remarks about getting some color in the lunchroom or putting some color in the lunchroom which were made at some unknown time do not constitute direct evidence of race discrimination with respect to the hiring of McKinney instead of Sims. Indeed, Sims has pointed to nothing that constitutes direct, rather than circumstantial evidence, that she was not hired because of her race. The Jones comment is not direct evidence. There is no evidence that suggests that the comment was made at or near the time Jones was recommending that the Board hire McKinney. Moreover, the comment does not specifically refer or correlate to Sims or to the decision not to hire her for the position. Finally, the comment is capable of being understood by a reasonable jury to refer to matters wholly unrelated to race and hiring. For example, it could have referred to decor. While the statement is circumstantial evidence of a racist motive on Jones' part, this evidence does not establish, without inference or presumption, discriminatory intent to refuse to hire Sims

---

[12] In the alternative, as will be discussed below, the Court finds that an analysis of the sex claim using the circumstantial evidence approach yields the same result.

because of her race.  Thus, the Court will address whether, under the circumstantial evidence analysis, the Board is entitled to judgment as a matter of law on the undisputed evidence.

### 2.  Circumstantial Evidence

To establish a discrimination claim by circumstantial evidence using the *McDonnell Douglas* framework, the employee has the initial burden of showing, by a preponderance of the evidence, a *prima facie* case of the proscribed practice.  *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied,* 488 U.S. 1004 (1989).  The essence of the *prima facie* case is that the employee presents circumstantial evidence sufficient to generate a reasonable inference by the fact finder that the employer used prohibited criteria in making an adverse decision about the employee.  If established, the *prima facie* case raises a rebuttable presumption that the employer is liable to the employee.  *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981).  "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997).

In general a *prima facie* case of race or sex discrimination in the context of a decision concerning hiring requires an employee to produce evidence that: (1) she belongs to the protected group; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's

13

qualifications or the position was filled by a person outside the protected class who was only equally or less qualified. *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253 n.6; *Arrington v. Cobb County,* 139 F.3d 865, 873 (11th Cir. 1998)**;** *Jones v. Gerwens*, 874 F.2d 1534, 1539 (11th Cir.1989); *Hill v. Seaboard Coast Line R. Co.,* 885 F.2d 804, 808 (11th Cir. 1989).

The Board argues that Sims cannot establish a *prima facie* case of race discrimination with respect to its decision not to hire her. Specifically, the Board contends that it is undisputed that Sims does not possess the stated minimum qualification for the job because she does not have either a GED or a high school diploma. At best, Sims' response appears to be that she has direct evidence of discrimination, as previously discussed, that she was qualified for the position because she successfully performed in the position, and that the qualification of a GED or a high school diploma is unrelated to the job's actual requirements. Moreover, Sims' notes inconsistency by the Board with respect to enforcing this requirement for the lunchroom worker position which suggests that the requirement is not one about which the Board is really concerned. Furthermore, Sims argues that the Board has provided at least one African-American job candidate to be hired into a position without possessing the minimum qualifications for the position so long as she agreed to work toward obtaining those qualifications. Finally, the statements by Forbus and Jones constitute circumstantial evidence of race and sex discrimination.

The United States Supreme Court and the Eleventh Circuit Court of Appeals have

14

repeatedly emphasized that the requisite showings that make up a *prima facie* case are not meant to be rigid or inflexible. *See, e.g., Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. at 253 n.6; *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999) (collecting cases); *Hill,* 885 F.2d at 808 n.5; *Jones v. Gerwens*, 874 F.2d at 1539.

> In cases where the evidence does not fit neatly into the classic prima facie case formula, for example, [the Eleventh Circuit has] stated that "[a] prima facie case of disparate treatment can be established by any 'proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.'"

*Schoenfeld*, 168 F.3d at 1268 (citing *Hill v. Metro. Atlanta Rapid Trans. Auth.,* 841 F.2d 1533 (11th Cir. 1988), *modified,* 848 F.2d 1522 (11th Cir. 1988) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978))).  The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." *Burdine*, 450 U.S. at 253.  In other words, is "the employer ... treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978), quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).  The prima facie case method established in McDonnell Douglas was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco*, 438 U.S. at 577.  The Court finds that this case is one

15

in which the facts, when viewed in the light most favorable to Sims, sufficiently established actions taken by the Board from which a reasonable jury could infer discriminatory animus on the basis of either Sims' sex or her race.  For this reason, the Court finds that the Board is not entitled to summary judgment on Sims' claims of disparate treatment with respect to the Board's failure to hire her for the lunchroom worker position at Central High despite Sims' failure to demonstrate a *prima facie* case by showing that she possessed the advertised minimum qualifications for the position.

Once a plaintiff establishes the requisite elements of the *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d at 1564 (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)).  The employer's burden is "exceedingly light." *Holifield,* 115 F.3d at 1564.  This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See, e.g., Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d 1314, 1321 (M.D. Ala. 2001).

If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination. *See, e.g., Holifield,* 115 F.3d at 1565; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff "has the opportunity to discredit the defendant's proffered reasons for its decision").  Thus, once the

16

employer articulates a legitimate, non-discriminatory reason, the burden returns to the employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F. Supp. 2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Combs,* 106 F.3d at 1528. A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

Here the Board's proffered legitimate, non-discriminatory reason for its decision not to hire Sims for the Lunchroom Worker position is that she did not meet the posted job qualification. Thus, the Board easily satisfies its intermediate burden under the *McDonnell Douglas* analysis. The Board further contends that Sims cannot show that this reason is pretextual. When the evidence is viewed in the light most favorable to Sims, the Court cannot say that no reasonable jury could find that the proffered legitimate, non-discriminatory reason is false. To the contrary, a reasonable jury could conclude that the Board unlawfully

discriminated against Sims on the basis of either her race or her sex or both.  Thus, the

Board's motion for summary judgment on the disparate treatment claims is due to be

DENIED.

## B.  RETALIATION CLAIM

The anti-retaliation provision of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §

2000e-3(a), prohibits employer actions that "discriminate against" an employee because she

has "opposed" practices that Title VII forbids or because she has "made a charge, testified,

assisted, or participated in" a Title VII "investigation, proceeding, or hearing."  The

provision is not restricted to discriminatory employer actions that affect the terms and

conditions of employment encompassed by Title VII's substantive discrimination ban, 42

U.S.C. § 2000e-2(a).  In fact, retaliation claims can be pursued based on actions that go

beyond workplace-related or employment-related retaliatory acts and harm.  In short, the

provision extends to materially adverse nonemployment-related discriminatory actions that

might dissuade a reasonable employee from lodging a discrimination charge.  *See Burlington*

*Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006).  It is well-established that a

former employee, such as Sims, can assert a claim that she was given negative references in

retaliation for engaging in protected activity.  *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).

With respect to the retaliation claim, Sims has no direct evidence.  Instead, this claim

must only be analyzed under the circumstantial evidence paradigm.  To establish a prima

facie case of retaliation, an employee must show: (1) she engaged in protected activity; (2)

her employer was aware of that activity; (3) she suffered adverse employment action; and (4) there was a causal link between her protected activity and the adverse employment action. *See, e.g., Maniccia v. Brown,* 171 F.3d 1364, 1369 (11th Cir. 1999) (*citing Little v. United Tech.,* 103 F.3d 956, 959 (11th Cir. 1997)).

The Board does not dispute that Sims satisfied the first element of the *prima facie* case. "To establish that a plaintiff engaged in statutorily protected expression, ... a plaintiff must show that [he] 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1311 (11th Cir. 2002). Protected expression includes filing complaints with the EEOC or through an employer's internal grievance procedure. *Berman v. Orkin Exterminating Co.,* 160 F.3d 697, 702 (11th Cir. 1998) (filing EEOC complaint is protected conduct); *Rollins v. Florida Dep't of Law Enforcement,* 868 F.2d 397, 400 (11th Cir. 1989) (internal complaints of discrimination are statutorily protected conduct). Sims made both information internal complaints of discrimination to Forbus and a formal complaint to the EEOC. Moreover, it is not disputed that Forbus was aware of both Sims' formal complaint to the EEOC and her earlier informal complaints of discrimination prior to the date on which she gave the negative reference regarding Sims which prevented her from getting a job. The Board's contention that the negative job reference which caused Sims not to be hired for a position is not a materially adverse employment discrimination is meritless and does not warrant further

19

discussion.[13]  *See, e.g., Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (explaining that the anti-retaliation provision protects an individual from retaliation that produces an injury or harm material enough that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination).  Receiving a false or unfair job reference which results in the denial of other employment satisfies the Supreme Court's requirement in this regard.

The Board also argues that Sims cannot offer evidence in support of the causation element of the *prima facie* case of retaliation.  Close temporal proximity between the protected conduct and the adverse action constitutes circumstantial evidence of causation, however, the protected conduct or at least the employers' discovery of that conduct must immediately precede the adverse action for the negative inference to attach.  *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing affirmatively several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244-45 (11th Cir. 2001) (While a close temporal proximity between two events may support a finding of a causal connection between those two events, the three and one-half month period between plaintiff's protected conduct and the adverse employment action challenged does not, standing alone, establish a causal connection); *Keel v. United States Dep't of Air Force,* 256 F. Supp. 2d 1269, 1291 (M.D. Ala. 2003) (more than seven month

---

[13]  The Board cites no legal precedent for this contention.

gap between protected conduct and allegedly retaliatory conduct was insufficient as a matter of law to establish the causation element of the *prima facie* case of retaliation). Here it is undisputed that Sims filed her EEOC charge in November of 2006. At that time, Forbus was on a leave of absence from Central High. A reasonable jury could find from the evidence before this Court that Forbus learned of and read Sims' EEOC Charge in early April of 2007, when she was asked to provide the affidavit as part of the Board's response to the Charge. It is also undisputed that Forbus spoke to a reference checking service about Sims in April of 2007. According to records of that service, Forbus provided negative information about Sims, some of which was not correct. From the evidence, a reasonable jury could find that Sims has established a causal connection between the retaliatory conduct and her complaint to the EEOC of discrimination.[14]

As its legitimate non-retaliatory reason for the job reference, the Board argues that Forbus was not authorized to speak for it and that she gave a truthful personal reference about Sims. The Court finds that genuine issues of material fact regarding whether Forbus was authorized to speak and whether she gave a truthful personal reference preclude summary judgment on Sims' retaliation claims. For this reason, the Board's motion for summary judgment is due to be DENIED as to Sims' retaliation claim.

---

[14] The Board argues that Forbus' knowledge of Sims' earlier informal complaints is the key triggering event. The Court disagrees. A reasonable jury could find that it is one thing to hear about an informal complaint and quite another to later learn that the accusation of discriminatory animus has been formally reported to a federal agency. The timing between the formal report and the retaliatory conduct is therefore the relevant inquiry in this case.

**CONCLUSION**

For the reasons stated above, it is hereby ORDERED as that the Motion for Summary Judgment on Behalf of Defendant Coosa County Board of Education (Doc. # 12) is DENIED.

DONE this the 2nd day of September, 2008.

            /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1. **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.    <u>**Time for Filing**</u>: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    <u>**Format of the notice of appeal:**</u> Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    <u>**Effect of a notice of appeal:**</u> A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).